United States District Court
Southern District of Texas
FILED

JAN 0 9 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

**PLAINTIFF'S MOTION TO REMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, as Plaintiff, GREATER BROWNSVILLE INCENTIVES CORPORATION, hereinafter "GBIC," by and through its undersigned counsel, and moves this Court to remand this case -- removed to this Court by Defendant -- to the 107th Judicial District Court of Cameron County, Texas, the court in which this case was pending at the time of removal, pursuant to 28 U.S.C. § 1447; in support of same, GBIC would respectfully show the following:

I.

Background

A.

Plaintiff, GBIC, filed a suit for declaratory relief (only) in state district court regarding a certain (economic development) Project Agreement with and a related Deed to Defendant, hereinafter "TITAN," the declaratory relief being limited to the following:

"Declaring that under the said Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is

PLAINTIFF'S MOTION TO REMAND - PAGE 1

no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements thereon (as indicated above), as purchased through funds of GBIC, have reverted to GBIC." PLAINTIFF'S ORIGINAL PETITION 9 (the prayer for relief).

### B.

As set forth in greater detail in (GBIC's) Plaintiff's Original Petition, a true and correct copy of which is on file with this Court, GBIC, an economic development corporation created under Texas (statutory) law, enters into project agreements with various business concerns, almost always to create jobs, in consideration for certain incentives being paid (such as building/lease assistance and/or site development funding).

### C.

In this instance, GBIC and TITAN entered into a Project Agreement, which involved the funding of millions of dollars for the establishment of a tire manufacturing operation (by TITAN) in or near Brownsville, which anticipated 500 new jobs.

### D.

A large part of the funds paid by GBIC was for the purchase of the land and site improvements to same and/or construction of the facility to operate the tire manufacturing plant of TITAN. TITAN created no more than 122 jobs at the facility, resulting in an overpayment by GBIC. A claim letter regarding this situation was submitted to TITAN by GBIC, a copy of which is annexed to

Plaintiff's Original Petition as Exhibit "D" and incorporated by reference herein.

E.

In the Project Agreement, at Paragraph II., which is set forth (the Agreement) as Exhibit "A" to Plaintiff's Original Petition and incorporated by reference herein (which Petition is on file with the Court), the parties (GBIC and TITAN) agreed that:

> "... in the event that TITAN WHEEL INTERNATIONAL, INC., <u>discontinues operations</u> or is dissolved or liquidated or <u>no longer maintains a tire manufacturing operation in or near Brownsville</u> ... from the date of execution of this Project Agreement (February 27, 1997), any property or assets held by TITAN WHEEL INTERNATIONAL, INC., which were acquired with funds, in whole or in part (including such funds), provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION, shall <u>revert</u> to that CORPORATION (subject to any superior liens); ... ." [emphasis added].

F.

As reflected by Exhibit "C" to Plaintiff's Original Petition, which is on file with the Court and is incorporated by reference herein, TITAN publicly announced that its tire manufacturing operation in Brownsville would be consolidated (with all of its tire manufacturing operations) into its principal tire facility located in Des Moines, Iowa.

G.

Thus, GBIC, as set forth in its claim letter, invoked the said (reversion) clause and sought the return of the land it purchased for TITAN and that portion of the facility thereon it (GBIC) paid

PLAINTIFF'S MOTION TO REMAND - PAGE 3

for.  To judicially enforce that reversion clause, suit was filed in state district court, as set forth above, for declaratory relief to that effect (only), plus court costs and attorney fees.

## II.

### Contentions

#### A.

GBIC seeks the remand of this removed case to the said pending state court proceeding, involving declaratory relief (only) as regards the enforcement of a reversion in a contract governing certain real property and improvements thereon in the state of Texas.  That is, the only issue in this case is the reversion of the land, under the Project Agreement (the debt claim as regards the said overpayment is not at issue in this proceeding), and the entirety of such case (involving real property) is properly within the jurisdiction and authority of the courts of the State Of Texas. GBIC hereby denies any and all of TITAN's assertions to the contrary.

#### B.

GBIC seeks the remand of this removed case to the said pending state court proceeding, involving the reversion of certain real property and improvements thereon in the state of Texas, as this land is owned (in part) by a subsidiary (or affiliate) of TITAN known as "TITAN TIRE CORPORATION OF TEXAS," a Texas business corporation, which has an address of 6700 Paredes Line Road,

Brownsville, Cameron County, Texas 78526 (TITAN being the
Registered Agent for the Texas corporation and the Registered
Office being the said Paredes Line Road address), in that both
TITAN entities are listed in a (1) Deed Of Trust, Assignment And
Security Agreement, (2) Master Lease, (3) Financing Statement, and
(4) Amendment To Deed Of Trust, in favor of General Electric
Capital Corporation (GECC), as "grantors," "lessees" or "debtors,"
as reflected by the recorded instruments filed with this Motion (as
a separate instrument) as Exhibits "1" - "4," which are
incorporated by reference herein as if fully copied and set forth
at length, raising a question as to the existence of "complete
diversity" of the parties in this proceeding, without which,
diversity (i.e., subject matter) jurisdiction over this case does
not exist.  GBIC hereby denies any and all of TITAN's assertions to
the contrary.

C.

GBIC seeks the remand of this removed case to the said pending
state court proceeding, involving the enforcement of a reversion of
certain real property and improvements thereon in the state of
Texas, in that the federal courts acknowledge a judicially-crafted
exception to the diversity jurisdiction statute, 28 U.S.C. § 1332,
the basis for the removal of this case from state district court
alleged by TITAN, for matters pertaining to probate and domestic
relations, both of which involve the matter (at times) of property

PLAINTIFF'S MOTION TO REMAND - PAGE 5

and the title to same, because of a deference to matters in equity (i.e., courts of equity or chancery), and in this case, while declaratory relief is not necessarily an equitable matter, a request to interpret a contract so as to address the issue of enforcement of a reversion is virtually the same as a claim for specific performance or an injunction, both of which are recognized, in Texas law (for example), as equitable actions/remedies, meriting the Court's serious consideration of deferring this suit to enforce a reversion in land and improvements thereon, and to remand this case to state district court. GBIC hereby denies any and all of TITAN's assertions to the contrary.

III.

Summary

In that this case is a request for declaratory relief (only) filed in state court to enforce a reversion of land and improvements thereon, which land is owned by both Defendant -- an Illinois business corporation -- and a separate subsidiary -- a Texas business corporation -- complete diversity of the parties does not exist, plus the Court may -- since this case is in the nature of an equitable proceeding involving the right to real property -- defer from assuming jurisdiction over this proceeding, and in any event, as complete diversity in this case does not exist, this case should be remanded by this Court to the said state district court, which court clearly has proper jurisdiction of this

Texas property law dispute, to enable that court to proceed with this case.

WHEREFORE, GBIC respectfully requests that the Court grant its Motion To Remand this case to the 107th Judicial District Court of Cameron County, Texas, in which this case was pending at the time of removal (by TITAN), that GBIC be awarded its costs incurred in this removal/remand proceeding (to be assessed against TITAN), and that GBIC have such other and further relief to which it may be justly and equitably entitled.

DATED this 9th day of January, 2004.

Respectfully submitted,

GREATER BROWNSVILLE INCENTIVES
CORPORATION, Plaintiff

BY: _____
Brian G. Janis

Southern District Of Texas
Federal Admissions ID. No. 1201
(Texas State Bar No. 10570300)

OF COUNSEL:                    ATTORNEY-IN-CHARGE FOR PLAINTIFF

SANCHEZ, WHITTINGTON, JANIS    100 North Expressway 83
  & ZABARTE, L.L.P.            Brownsville, Texas 78521-2284
                               Telephone: 956/546-3731
                               Telefax: 956/546-3766


## CERTIFICATE OF CONFERENCE

This is to confirm that the Plaintiff, acting through its undersigned counsel, conferred with the Defendant, acting by and through its counsel, on or about December 12, 2003, and that

PLAINTIFF'S MOTION TO REMAND - PAGE 7

Defendant's counsel could not agree to the requested relief set forth in this Motion or with this Motion (itself).

Brian G. Janis

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing GBIC's Motion To Remand has been served upon Michael Rodriguez, counsel of record for TITAN, at 1000 East Madison Street, Brownsville, Texas 78520, by mailing same United States Mail, postage prepaid and properly addressed, and by hand-delivering same, on this 9th day of January, 2004.

Brian G. Janis

PLAINTIFF'S MOTION TO REMAND - PAGE 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |


**<u>PLAINTIFF'S EXHIBITS TO ITS MOTION TO REMAND</u>**
(set forth below: Exhibits 1 - 4)

192.634 AC %

8h 19 Th 3B ES6

69406    CCTC

39432

VOL 5178 PAGE 121

**OFFICIAL RECORDS**

$17,266,022.00
(Principal amount
secured hereby)

### DEED OF TRUST, ASSIGNMENT AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT AND SECURITY AGREEMENT (this "Deed of Trust") is made effective as of the 21st day of May, 1998, by TITAN TIRE CORPORATION OF TEXAS, a Texas corporation and TITAN INTERNATIONAL, INC. an Illinois corporation, (hereinafter collectively the "Grantor") to Samuel Kinslow (collectively Trustee" or "Trustees") for the benefit of GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND AS AGENT FOR CERTAIN OTHER PARTICIPANTS ("GE Capital").

#### R E C I T A L S

WHEREAS, the Grantor and General Electric Capital Corporation, for itself and as Agent for Certain Participants (the "Agent") have entered into that certain Master Lease Agreement dated as of May 21, 1998 (such Master Lease Agreement, as the same may be amended or supplemented from time to time to the extent permitted by the terms thereof, being herein called the "Master Lease"), whereby, subject to the terms and conditions set forth therein, GE Capital has agreed to lease to the Grantor, and the Grantor has agreed to lease from GE Capital certain Lease Assets, as more particularly described therein. Capitalized terms used herein without definition shall have the meanings ascribed to them in the Master Lease.

WHEREAS, pursuant to such Master Lease, the Agent has leased to the Grantor certain real property located in Cameron County, Texas as more particularly described in Exhibit A attached hereto and made a part hereof (the "Land"), for the term specified therein. A Memorandum of the Master Lease has been recorded or will be recorded among the Land Records of Cameron County, Texas immediately prior to the recordation of this Deed of Trust.

WHEREAS, as security for the payment of Grantor's obligation under the Master Lease and the performance of all other obligations of the Grantor under the Master Lease or any documents related thereto (collectively, the "Obligations"), GE Capital has required that the Grantor execute and deliver this Deed of Trust assigning and securing to GE Capital, as agent, (among other things) all of Grantor's interest in the Property now owed or hereafter acquired, including without limitation, Grantor's leasehold interest in the Master Lease and the Property.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and adequacy of which are hereby conclusively acknowledged by the Grantor, in order to secure the full and punctual payment and performance of the Obligations, the Grantor does hereby grant, convey, bargain, sell, assign, pledge, transfer and set over to GE Capital and its successors and assigns, and does hereby grant to GE Capital, and its successors and assigns, a lien on and a security interest in, all and each of the properties, rights, interests and privileges described in the following paragraphs:

ALL of the Grantor's right, title and interest in and to Property.

TOGETHER with all right, title and interest of the Grantor including any after-acquired right, title or reversion, in and to the beds of the ways, streets, avenues and alleys adjoining the Property.

TOGETHER with all right, title and interest of the Grantor in and to all and singular the rights, alleys, ways, tenements, hereditaments, easements, appurtenances, passages, waters, water rights, water courses, riparian rights, liberties, advantages, accessions and privileges now or hereafter appertaining to the Property or any part thereof, including, but not limited to, any homestead or other claim at law or in equity, the reversion or reversions, remainder or remainders thereof, and also all the estate, property, claim, right, title or interest now owned or hereafter acquired by the Grantor in or to the Property or any part thereof.

VOL. 5178 PAGE 122

or any part thereof, including, but not limited to, any homestead or other claim at law or in equity, the reversion or reversions, remainder or remainders thereof, and also all the estate, property, claim, right, title or interest now owned and hereafter acquired by the Grantor in or to the Property or any part thereof.

TOGETHER with all right, title and interest of the Grantor in and to all improvements, structures and buildings now or hereafter erected or placed on the Property and all replacements thereof, (collectively, the "Improvements") and all cash and non-cash proceeds thereto (all of the foregoing being hereinafter sometimes referred to collectively as the "Lease Assets Collateral"). All of the Lease Assets Collateral, so far as permitted by law, shall be deemed to be Lease Assets and part of the Property and of the Improvements, and as to any part of the Lease Assets Collateral deemed by law to be personalty, this Deed of Trust shall also constitute a security agreement under the Uniform Commercial Code currently in effect in the State of Texas (the "State").

Unless specifically designated otherwise, all of the Grantor's right, title and interest in and to the Property, the Improvements, the Lease Assets Collateral and all other items, rights, interests, privileges and property described in the preceding paragraphs hereof, together with all Additions thereto, shall be herein referred to collectively as the "Property".

TOGETHER with any and all judgments, awards of damages (including but not limited to severance and consequential damages), payments, proceeds, settlements or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, in connection with, or in lieu of any taking of title, of use, or of any other property interest of the Property or any part thereof under the exercise of the power of eminent domain, either temporarily or permanently by any governmental authority or by any person acting under governmental authority to the extent of all of the Obligations which may be secured by this Deed of Trust at the date of receipt of any such judgments, awards on other compensation by GE Capital, and of the reasonable counsel fees, costs and disbursements, if any, incurred by GE Capital in connection with the collection of such judgments, awards on other compensation.

TOGETHER with all unearned premiums, accrued, accruing or to accrue under insurance policies with respect to the Property, now or hereafter obtained by the Grantor, and the Grantor's interest in and to all proceeds of the conversion, voluntary or involuntary, and the interest payable thereon, of the Property or any part thereof, into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Property, and the right to collect and receive the same.

TOGETHER with all of the rents, royalties, issues, profits, revenues, income and other benefits of the Property, or arising from the use or enjoyment of all or any portion thereof (provided, however, that the foregoing shall not be deemed to grant a lien upon profits of the business operated on the Property), or from any lease or agreement pertaining thereto, and all right, title and interest of the Grantor in and to, and remedies under, any and all leases and subleases of the Property, or any part thereof, both now in existence or hereafter entered into and all contract rights, accounts receivable and general intangibles growing out of or in connection with such leases and subleases, together with all proceeds thereof; and including, without limitation, all cash or security deposited thereunder to secure performance by the lessees of their obligations thereunder whether such cash or security is to be held until the expiration of the terms of such leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; reserving in the Grantor a license terminable upon the occurrence of a Default (hereinafter defined) hereunder to collect and receive the same.

TO HAVE AND TO HOLD the Property and all other interests described above unto GE Capital and its successors and assigns, for and during all of the rest, residue and remainder of the term of years yet to ___ come and unexpired under the Master Lease.

PROVIDED, HOWEVER, that until the occurrence of a Default hereunder, and subject to any provisions hereof to the contrary, the Grantor shall have the right to remain in quiet and peaceful possession of the

VOL 5178 PAGE 123

Property, and to collect, receive and retain the rents, revenues, profits, proceeds, income and royalties therefrom.

PROVIDED FURTHER, that upon the full payment and performance of all of the Obligations at the time and in the manner stated in the Master Lease, this Deed of Trust, at any time before the sale hereinafter provided for, the lien granted hereby shall cease, determine and become void, and upon proof given to the satisfaction of GE Capital that all of the Obligations have been so paid and performed, this Deed of Trust shall be deemed null and void, and GE Capital shall release and discharge the lien and security interest of this Deed of Trust upon payment to GE Capital of all costs and expenses related to the release and reconveyance of the Property or any partial release and reconveyance thereof.

PROVIDED FURTHER, that upon the occurrence of a substitution under the Master Lease pursuant to which GE Capital is required to release the Property, GE Capital shall release and discharge the lien and security interest of this Deed of Trust upon payment of all costs and expenses related to the release and reconveyance of the Property or any partial release or reconveyance thereof.

AND THIS DEED OF TRUST FURTHER WITNESSETH, that the Grantor hereby represents, warrants, covenants and agrees as follows, and stipulates that a breach of any of the following representations, warranties, covenants and agreements shall be deemed a breach of a material condition of this Deed of Trust:

SECTION 1.  REPRESENTATIONS AND WARRANTIES.  The Grantor represents and warrants to GE Capital that as of the date hereof, the Grantor is the owner of the entire lessees' interest in the Master Lease and, except for this Deed of Trust, the Grantor has not assigned the lessees' interest in the Master Lease or any part thereof to any other party.  Upon the execution and recordation of this Deed of Trust, GE Capital and its assigns shall have a first lien on the lessees' interest in the Master Lease and the Grantor's interest in the Property.

SECTION 2.  GENERAL COVENANTS AND AGREEMENTS.  The Grantor covenants and agrees with GE Capital as follows:

(a)    Upon and subject to the terms of the Master Lease, the Grantor will pay, when due and payable, all Rent payments and all other sums and charges due and to become due under the Master Lease.

(b)    Upon and subject to the terms of the Master Lease, the Grantor will perform and observe all of the terms, covenants and conditions required to be performed and observed by the Grantor as Lessees under the Master Lease, and will do all things necessary to preserve and to keep unimpaired the rights of GE Capital under the Master Lease.

(c)    As of the date hereof, the Master Lease is the only lease covering the Property and the Grantor will not, without the prior written consent of GE Capital, enter into any other leases or any subleases (except Subleases, as defined in and permitted by the Master Lease) of such Property.

(d)    Except for this Deed of Trust, (or as expressly permitted pursuant to the Master Lease) the Grantor will not, without the prior written consent of GE Capital, assign, transfer or encumber the lessees' interest in the Master Lease or permit the assignment, transfer or encumbrance of the lessees' interest in the Master Lease.

(e)    If the Grantor acquires the fee title to the Property during the Term of the Master Lease, whether by purchase or otherwise, this Deed of Trust shall attach to and cover and be a lien upon the fee title so acquired and such fee title shall, subject to applicable law, without further assignment, mortgage or conveyance, become and be subject to the lien of and covered by this Deed of Trust. On written request by GE Capital, Grantor shall cause to be executed and recorded all such other and further assurances or

3

**VOL 5178 PAGE 124**

instruments in writing as may, pursuant to applicable law, be required to carry out the intent and meaning of this subparagraph.

SECTION 3. DEFAULT.    The occurrence of any one or more of the following events shall constitute a default under the provisions of this Deed of Trust, and the term "Default" shall mean, whenever it is used in this Deed of Trust, any one or more of the following events:

(a)    The failure of Grantor to perform, observe or comply with any of the provisions of this Deed of Trust; or

(b)    The occurrence of a default under the Master Lease, which is not cured within any applicable notice and cure periods.

SECTION 4. RIGHTS AND REMEDIES.

(a)    Upon the occurrence of any Default, GE Capital, without in any way waiving such Default, in addition to any other rights and remedies that it may have under applicable law and subject to the terms of the Master Lease, (1) declare the Obligations to be immediately due and payable, (2) sell, assign or transfer the entire lessees' interest in the Master Lease to any third party or (3) take possession of the Property by foreclosure or otherwise and have, hold, manage, lease and operate or sell the same on such terms and for such period of time as GE Capital may deem proper and in connection therewith, subject to applicable law, the Grantor hereby (i) assents to the passage of the decree for the sale of the Property by the equity court having jurisdiction, and (ii) authorizes and empowers GE Capital and its successors and assigns to take possession of and sell (or in case of the default of any purchaser to resell) the Property, or any part thereof, all in accordance with the applicable laws and rules of court relating to mortgages or deeds of trust. In the case of any sale under this Deed of Trust, by virtue of judicial proceedings or otherwise, the Property may be sold as an entirety or in parcels, by one sale or by several sales, as may be deemed by GE Capital to be appropriate and without regard to any right of the Grantor or any other person to the marshalling of assets. Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as GE Capital shall deem appropriate and advantageous and as required by law. Upon the terms of such sale being complied with, GE Capital shall convey to, and at the cost of, the purchaser or purchasers the interest of the Grantor in the Property so sold, free and discharged of and from all estate, title or interest of the Grantor, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Property or from the sale or assignment of GE Capital's interest in the Master Lease shall be applied to the payment of the Obligations in accordance with the terms of the Master Lease. The Grantor hereby agrees to pay GE Capital on demand all of the costs incurred by GE Capital in taking, managing, operating and insuring the Property and/or assigning or selling GE Capital's interest in the Master Lease following a Default and the exercise by GE Capital of the remedies provided herein.

(b)    Unless GE Capital exercises its option to take over the Property as provided above following a Default, GE Capital shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Master Lease, or under or by reason of this Deed of Trust, and the Grantor shall and does hereby agree to indemnify GE Capital for and to hold GE Capital harmless of and from any and all liability, loss or damage which it might incur under the Master Lease or under or by reason of this Deed of Trust, and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Master Lease, except for liability, loss, damage, claims or demands arising from the gross negligence or willful misconduct of GE Capital. Should GE Capital incur any such liability, loss or damage under the Master Lease or under or by reason of this Deed of Trust or in the defense of any such claims or demand, the amount thereof including costs, expenses and reasonable attorneys' fees shall be secured hereby, and the Grantor shall reimburse GE Capital there for

4

**VOL 5178 PAGE 125**

immediately upon demand, and upon the failure of the Grantor to do so, GE Capital may declare all sums secured hereby immediately due and payable. Except to the extent GE Capital shall exercise its option to take over the Property as provided above, this Deed of Trust shall not operate to place responsibility for the control, care, management or repair of the Property upon GE Capital, nor for the carrying out of any of the terms and conditions of the Master Lease, or for any waste committed on or with respect to the Property by the Grantor or any other parties, or for any dangerous or defective condition of the Property, or to the extent the same is attributable to any period prior to the exercise of such rights, for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

SECTION 5. MISCELLANEOUS.

(a)     GE Capital may take or release other security, may release any party primarily or secondarily liable for any of the Obligations, may grant extensions, renewals or indulgences with respect to the Obligations and may apply any other security therefor held by it, to the satisfaction of the Obligations without prejudice to any of its rights hereunder.

(b)     Nothing herein contained and no act done or omitted by GE Capital pursuant to the powers and rights granted it herein shall be deemed to be a waiver by GE Capital of its rights and remedies hereunder or under the Master Lease, but this Deed of Trust is made and accepted without prejudice to any of the rights and remedies possessed by GE Capital. The right of GE Capital to collect the Obligations and to enforce any other security therefor may be exercised by GE Capital either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

(c)     The Grantor hereby covenants and agrees that all the provisions herein contained shall be applied to and inure to the benefit of GE Capital and its successors and assigns.

(d)     The Grantor hereby waives acceptance of this Deed of Trust by GE Capital and its successors and assigns.

(e)     This Deed of Trust, having been executed, sealed and delivered in the State, shall be interpreted and construed in accordance with and governed by the laws of the State.

(f)     If fulfillment of any provisions hereof or any transaction related hereto, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Deed of Trust in whole or in part, then such clause or provision only shall be void, as though not herein contained, and the remainder of this Deed of Trust shall remain operative and in full force and effect.

(g)     Subject to the terms of the Master Lease, GE Capital may assign all of its rights under this Deed of Trust to a third party at any time either before or after a Default has occurred. Wherever in this Deed of Trust GE Capital is referred to, such reference shall be deemed to include the successors and assigns of GE Capital, and all covenants, promises and agreements by the Grantor contained herein shall inure to the benefit of the successors and assigns of GE Capital.

(h)     This Deed of Trust may be amended only by an instrument in writing executed by the Grantor and GE Capital.

(i)     All notices hereunder shall be sufficiently given and shall be deemed given when sent by confirmed overnight courier service, or three (3) business days after being mailed certified mail, return receipt requested, postage prepaid, addressed to the Grantor or GE Capital at the appropriate addresses designated

5

VOL 5178 PAGE 126

in the Master Lease.  The Grantor or GE Capital may, by notice given hereunder designate any further or different addresses to which subsequent notices shall be sent.

(j) GE may from time to time remove the Trustee hereunder and appoint a substitute trustee by recording a Deed of Appointment and Removal among the land records of Cameron County, Texas.

VOL 5178 PAGE 127

IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust to be executed as of the day and year first written above.

WITNESS:                                              TITAN INTERNATIONAL, INC.

_Cheri Dolling_                                       By _____
                                                      Name: KENT W. HACKAMACK
                                                      Title: VP, TREASURER

WITNESS:                                              TITAN TIRE CORPORATION OF TEXAS

_Linda L. Cann_                                       By _____
                                                      Name: KENT W. HACKAMACK
                                                      Title: _____

STATE OF _____, CITY/COUNTY OF _____, TO WIT:

        I HEREBY CERTIFY, that on this ___ day of _____, 1998, before me, the undersigned Notary Public of said State, personally appeared _____, who acknowledged himself/herself to be a _____ of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized _____ of said corporation by himself/ herself as _____.

        WITNESS my hand and Notarial Seal.


                                                      _____
                                                              Notary Public

My commission expires: _____

STATE OF _____, CITY/COUNTY OF _____, TO WIT:

        I HEREBY CERTIFY, that on this ___ day of _____, 1998, before me, the undersigned Notary Public of said State, personally appeared _____, who acknowledged himself/herself to be a _____ of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized _____ of said corporation by himself/herself as _____.

        WITNESS my hand and Notarial Seal.


                                                      _____
                                                              Notary Public

My commission expires: _____

CHM 215131 1 9 25 98 12 52 PM                    7

VOL. 5178 PAGE 128

IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust to be executed as of the day and year first written above.

WITNESS:                                       TITAN INTERNATIONAL, INC.

_Cheri Dalley_                                 By _[signature]_
                                               Name: Kent W. Hackamack
                                               Title: Vice President of Finance

WITNESS:                                       TITAN TIRE CORPORATION OF TEXAS

_Jaidi L Cann_                                 By _[signature]_
                                               Name: Kent W. Hackamack
                                               Title: Treasurer

STATE OF ILLINOIS/COUNTY OF ADAMS , TO WIT:

I HEREBY CERTIFY, that on this 28th day of September, 1998, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackam, who acknowledged himself/herself to be a VP Finance of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/herself as VP Finance

WITNESS my hand and Notarial Seal.

```
"OFFICIAL SEAL"
CHERYL A LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2000
```
                                               _Cheryl Luthin_
                                               Notary Public

My commission expires: 9/18/2000

STATE OF ILLINOIS, CITY/COUNTY OF ADAMS , TO WIT:

I HEREBY CERTIFY, that on this 28th day of September, 1998, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackam, who acknowledged himself/herself to be a Treasurer of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/herself as Treasurer

WITNESS my hand and Notarial Seal.

                                               _Cheryl Luthin_
                                               Notary Public

My commission expires: 9/11/2000

```
"OFFICIAL SEAL"
CHERYL A LU...
NOTARY PUBLIC, ... ILLINOIS
MY COMMISSION EXPIRES  /18/2000
```

DMS 215131 1 9 25 98 12 52 PM                      7

VOL 5178 PAGE 129

EXHIBIT A

Description of Premises

VOL. **5178** PAGE **130**

Exhibit A Description of Land

GF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of Parcel Two" and "Parcel Four" as described in a deed from Norwill, Incorporated to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed is recorded in Volume 2200, Page 92 of the Official Deed Records of Cameron County, Texas, said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 39, said point is North 84 degrees 55 minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision", a subdivision of the Southern 168.52 acres of said Survey 39, Subdivision "D" of Share 19. Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 936.50 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2, Parcel Two, at a distance of 3,795.20 feet to the Northwest corner of Tract 3, Parcel Two, a concrete nail found North 74 degrees 12 minutes 14 seconds West, ... distance ... 43 feet ... corner ... a total distance of 4,755.01 feet ... "PK" nail set for the Northwest corner of Parce, Four and the Northwest corner of this 192.634 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 1.072 acre tract conveyed by Henry A. Willms, et al to the State of Texas by a deed recorded in Volume 3483, Page 203 of the Official Records of Cameron County, Texas;

3) Thence, along the West line of said 1.072 acre tract, South 5 degrees 05 minutes West, a distance of ... feet to the Southernmost corner of said 1.072 acre tract, recorded North 4 degrees 47 minutes 19 seconds East, ... feet, an iron pin found North 13 degrees 15 minutes 33 seconds West, ... feet from said corner;

4) Thence, along the East line of said 1.072 acre tract, North 11 degrees 24 minutes 12 seconds East, a distance of 319.12 feet, recorded South 10 degrees 6 minutes 41 seconds West, 319.17 feet, an iron pin set for a corner;



— 1 —

VOL. **5178** PAGE **131**

## Continuation of Legal Description

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 30 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 15 minutes 15 seconds East, a distance of 542.25 feet for a corner, recorded South 17 degrees 45 minutes 44 seconds West., an iron pin found South 13 degrees 02 minutes 15 seconds West, 0.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 628.25 feet for a corner, recorded South 5 degrees 29 minutes 35 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 34 degrees 55 minutes East, at a distance of 1,134.18 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al. to Brownsville Navigation District by a deed recorded in Volume 3483, Page 212 of the Official Records of Cameron County, Texas, at a distance of 1,313.13 feet the Northeast corner of said 0.678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 192.634 acre tract, an iron pin found South 47 degrees 44 minutes 11 seconds East, 1.47 feet from said corner;

(10) Thence, South 4 degrees 21 minutes West, at a distance of 121.09 feet the Northwest corner of said 0.678 acre tract an iron pin found North 88 degrees 39 minutes 18 seconds West, 1.27 feet from said corner, at a distance of 150.81 feet the Southeast corner of said 0.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.29 feet from said corner, a total distance of 961.46 feet (recorded 961.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

(11) Thence, South 4 degrees 10 minutes West, at a distance of 956.10 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 1,225.39 feet the center-line of a 75.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 204, Page 49 of the Official Records of Cameron County, Texas, at a distance of 1,497.55 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,853.45 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 3,785.40 feet to an iron pin set



-2-

VOL **5178** PAGE **132**

### Continuation of Legal Description

GF No. or File No.: 69406

for the Southeast corner of said Parcel One and the Southeast corner of this 192.634 acre tract;

(12)  Thence, North 84 degrees 35 minutes West, along the South line of said Parcel One, at a distance of 1,805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.678 acre tract 5.460 acres of said 192.634 acres is right-of-way of FM-1847);

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South Boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 6, 1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acres tract, being described more particularly described by metes and bounds as follows:

1)  Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

2  Thence, South 84 degrees 55 minutes East, a distance of 1,854.42 feet to an iron pin set in the East line of said 192.634 acre tract for a corner of this 4.259 acre tract

3  Thence, South 4 degrees 01 minutes 10 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

4  Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 0.547 acre tract as set out in Special Warranty Deed dated December 21, 1997 executed by Titan Ankel, International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 4841, Page 174, Official Records, Cameron County, Texas, said 0.547 acre tract being described by metes and bounds as follows:

Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees 05 minutes East, along the West line of said survey 8 and the original centerline of FM-1847, a distance of 100.00 feet to the PLACE OF BEGINNING of this 0.547 acre tract.



VOL 5178 PAGE 133

## Continuation of Legal Description

GF No. or File No.: 69406

1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,656.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 1483, Page 203, Official Records of Cameron County, Texas.

3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.37 feet to the Southern most corner of said 7.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 1.90 feet from said corner.

4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, recorded South 14 degrees 26 minutes 30 seconds West);

6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 19 seconds East, a distance of 77.71 feet to an iron pin found for a corner, recorded South 77 degrees 19 minutes 32 seconds West);

7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 13 seconds East, a distance of 542.15 feet a corner, recorded South 17 degrees 05 minutes 44 seconds West, an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 30 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract, recorded South 6 degrees 29 minutes 51 seconds West, an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner;

9) Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 50.01 feet an iron pin set for a corner of this 7.547 acres tract;

10) Thence, South 5 degrees 27 minutes 30 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acres tract;



VOL **5178** PAGE **134**

**Continuation of Legal Description**

GF No. or File No.: 49406

(11) Thence, South 18 degrees 02 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 1,815.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 120.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE: This company does not represent that the acreage and or square footage calculations are correct.

Return to:
Darlene Davis
Ober/Kaler
120 E. Baltimore St.
Baltimore, MD
21202-1693





39432

FILED FOR RECORD
AT_____
1998 SEP 30 P 3:19

VOL 5178 PAGE 135

*192.634 ac %*

*8h 19 TR 38 ESG*

*69406    CCTC /RW*

39431                                    VOL 5178 PAGE 107

## OFFICIAL RECORDS

### MEMORANDUM OF MASTER LEASE

THIS MEMORANDUM OF MASTER LEASE ("Memorandum of Lease") is made effective as of the 21st day May, 1998, by and between GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND CERTAIN OTHER PARTICIPANTS ("Lessor") and TITAN TIRE CORPORATION OF TEXAS and TITAN INTERNATIONAL, INC. (collectively the "Lessees").

### RECITALS

WHEREAS, Lessor and Lessees have executed that certain Master Lease Agreement ("Master Lease") dated as of May 21, 1998, covering certain property as more particularly described in Annex A attached hereto and incorporated herein by this reference and all improvements which may come to be located on the real property more fully described on Exhibit A attached hereto and incorporated herein by this reference ("Land") (the Land, all Lease Assets and the improvements are referred to herein as the "Parcels"); and

WHEREAS, Lessor and Lessees desire to record notice of the Master Lease in the real estate records of Cameron County, Texas;

NOW, THEREFORE, in consideration of the foregoing, Lessor and Lessees hereby declare as follows:

Demise. Lessor hereby leases the Parcels to Lessees and Lessees hereby lease the Parcels from Lessor, subject to the terms, covenants and conditions contained in the Master Lease.

Expiration Date. The term of the Master Lease ("Term") shall commence on May 21, 1998, and shall expire on September 30, 2002, with three (3) possible one-year renewal terms.

Restrictions on Encumbrances. Lessor is prohibited from recording against the Parcels liens (including, without limitation, deeds of trust), encumbrances, and other matters that would constitute exceptions to title, except for those which result from acts of Lessor or otherwise referenced in or permitted under the Master Lease, and from amending or modifying any of the foregoing that may exist now or during the Term, as more particularly described in the Master Lease.

Restrictions on Transfers by Lessor. Subject to certain exceptions, Lessor may transfer its interest in the Parcels to a third party subject to the restrictions which are set forth with more particularity in the Master Lease.

Counterparts. This Memorandum of Master Lease may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall comprise but a single instrument.

Remedies. If a court of competent jurisdiction rules that the Master Lease is a mortgage, deed of trust, or other secured financing, then Lessees hereby mortgage and grant to Lessor a lien against the Parcels with a priority as of the date hereof. Subject to availability of such remedies under state law, upon the occurrence of any Default (as defined in the Master Lease) under the Master Lease, Lessor, may without in any way waiving such Default, in addition to any other rights and remedies that it may have under applicable law and subject to the Master Lease, (1) declare the obligations of Lessees under the Master Lease to be immediately due and payable, (2) sell, assign or transfer the entire lessees' interests in the Master Lease to any third party or (3) take possession of the Parcels by foreclosure or otherwise and have, hold, manage, lease and operate or sell the same on such terms and for such period of time as Lessor may deem proper, and in connection therewith subject to applicable law, the Lessees, hereby (a) assent to the passage of the decree for the sale of the Parcels by the equity court having jurisdiction, and (b) authorize and empower

DMS 215131 1 9 25 98 12 53 PM

VOL. 5178 PAGE 108

Lessor and its successors and assigns to take possession of and sell (or in case of the default of any purchaser to resell) the Parcels, or any part thereof, all in accordance with the applicable laws and rules of court relating to mortgages or deeds of trust. In the case of any sale hereunder, by virtue of judicial proceedings or otherwise, the Parcels may be sold as an entirety or in separate parcels, by one sale or by several sales, as may be deemed by Lessor to be appropriate and without regard to any right of Lessees or any other person to the marshalling of assets. Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as Lessor shall deem appropriate and advantageous and as required by law. Upon the terms of such sale being complied with, Lessor shall convey to, and at the cost of, the purchaser or purchasers the interest of the Lessees in the Parcels so sold, free and discharged of and from all estate, title or interest of Lessees, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Parcels or from the sale or assignment of Lessor's interest in the Master Lease or from the sale of the Parcels shall be applied to the payment of the obligations owed to Lessor in such order of priority as Lessor in its sole discretion may determine and after the payment of all attorneys' fees and any expenses as a result of a sale, assignment or foreclosure.

IN WITNESS WHEREOF, Lessor and Lessees have executed this Memorandum of Master Lease as of the date and year first written above.

"Lessees"

TITAN TIRE CORPORATION OF TEXAS

By: _____
Name: KENT W. HACKBARNCK
Title: _____

TITAN INTERNATIONAL, INC.

By: _____
Name: KENT W. HACKBARNCK
Title: VP / TREASURER

2

SEP-29-1998  16:24

P.02/03

VOL 5178 PAGE 109

"Lessor"

**GENERAL      ELECTRIC      CAPITAL
CORPORATION, FOR ITSELF AND AS AGENT
FOR CERTAIN OTHER PARTICIPANTS**

By: _____

Name: _____

Title: _____

3

SEP-29-1998  16:24                                                      P.03/03

VOL **5178** PAGE **111**

STATE OF _CA_ , CITY/COUNTY OF _SanFrancisco_ TO WIT:

I HEREBY CERTIFY, that on this _29th_ day of _Sept_ , 199_8_, before me, the undersigned Notary Public of said State, personally appeared _Frederick Filmoure_ who acknowledged himself/herself to be the _Rick Mcryry_ of General Electric Capital Corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized _Rick Mcryry_ of said corporation by himself/herself as _Rick Mcryry_ .

WITNESS my hand and Notarial Seal.

_Gloria Yuen_
Notary Public

My commission expires:  _6·18-1999_

GLORIA YUEN
COMM. # 10h2602
Notary Public — California
SAN FRANCISCO COUNTY
My Comm. Expires JUN 18, 1999

5

SEP 29 '98 13:25

TOTAL P.03
PAGE.03

VOL **5178** PAGE **112**

**ANNEX A**
**TO MASTER LEASE AGREEMENT DATED AS OF MAY 21, 1996**

**DESCRIPTION OF LEASE ASSETS/IMPROVEMENTS**

All of the improvements located on the Land described in Exhibit A attached hereto, including the assets described on Exhibit B attached hereto.

VOL 5178 PAGE 113

Exhibit A  Description of Land

JF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of Parcel Two" and "Parcel Four" as described in a deed from Norwill, incorporated to Henry A. Wills, John F. Wills, Gary A. Wills and Myra Foster. Said deed is recorded in Volume 2200, Page 92 of the (Official) Deed Records of Cameron County, Texas, said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 38, said point is North 84 degrees 55 minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision", a subdivision of the Southern 168.82 acres of said Survey 38, Subdivision "D" of Share 19. Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847 a distance of 936.50 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2, Parce Two, at a distance of 3,795.11 feet to the Northwest corner of Tract 3, Parce Two, a concrete nail found North 74 degrees 12 minutes 24 seconds West, a distance of 144 feet from said corner, at a total distance of 3,776.40 feet a "PK" nail set for the Northwest corner of Parcel Four and the Northwest corner of this 192.634 acre tract;

2. Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Wills, et al to the State of Texas by a deed recorded in Volume 1483, Page 203 of the Official Records of Cameron County, Texas;

3 Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,755.07 feet to the Southern most corner of said 7.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,789.19 feet), an iron pin found North 13 degrees 25 minutes 19 seconds West, 1.90 feet from said corner;

4. Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet recorded South 10 degrees 16 minutes 41 seconds West, 339.17 feet, an iron pin set for a corner;



-1-

VOL. 5178 PAGE 114

**Continuation of Legal Description**

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 38 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner. recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 5" minutes 19 seconds East, a distance of 77.71 feet to an iron pin found for a corner. recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 22 minutes 15 seconds East, a distance of 542.25 feet for a corner, recorded South 17 degrees 35 minutes 44 seconds West:, to Brownsville Navigation 13 degrees 22 minutes 15 seconds West, 1.37 feet from said corner;

8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 608.25 feet for a corner, recorded South 5 degrees 29 minutes 51 seconds West:, an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 55 minutes East, at a distance of 1,154.18 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al, to Brownsville Navigation District by a deed recorded in Volume 1481 Page 212 of the Official Records of Cameron County, Texas at a distance of 1,313.13 feet the Northeast corner of said .678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parce. Four, and the Northeast corner of this 192.634 acre tract. an iron pin, and South 4" degrees 16 minutes 5 seconds East 2.17 feet from said corner.

10) Thence, South 4 degrees 47 minutes West, at a distance of 121.19 feet the Northeast corner of said .678 acre tract an iron pin found North 89 degrees 18 minutes 19 seconds West, 1.27 feet from said corner, at a distance of 850.81 feet the Southeast corner of said 1.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.29 feet from said corner, a total distance of 951.16 feet recorded 951.4 feet, to an iron pin set for the Southeast corner of said Parce. Four;

11. Thence, South 4 degrees 30 minutes West, at a distance of 956.30 feet an iron pin set for the Southeast corner of said Tract 1 of Parcel Two at a distance of 1,115.79 feet the centerline of a 75.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 604, Page 173 of the Official Records of Cameron County, Texas, at a distance of 1,177.31 feet an iron pin set for the Southeast corner of said Tract 2 Parcel Two at a distance of 453.45 feet an iron pin set for the Southeast corner of Tract 3 Parcel Two a total distance of 1795.46 feet to an iron pin set



VOL **5178** PAGE **115**

### Continuation of Legal Description

GF No. or File No.: 69406

for the Southeast corner of said Parcel One and the Southeast corner of this 192.634 acre tract;

(12)  Thence, North 84 degrees 55 minutes West, along the South line of said Parcel One, at a distance of 1,805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.678 acre tract 5.460 acres of said 192.634 acres is right-of-way of FM-1847);

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South Boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 6  1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acres tract, being described more particularly described by metes and bounds as follows:

(1)  Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

(2)  Thence, South 84 degrees 55 minutes East, a distance of 1,854.82 feet to an iron pin set in the East line of said 192.634 acre tract for a corner of this 4.259 acre tract,

(3)  Thence, South 4 degrees 30 minutes 00 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

(4)  Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 0.547 acre tract as set out in Special Warranty Deed dated December 31, 1997, executed by Titan Wheel International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 4841, Page 174, Official Records, Cameron County, Texas, said 0.547 acre tract being described by metes and bounds as follows:

Commencing at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 100.00 feet to the PLACE OF BEGINNING of this 0.547 acre tract.



-3-

VOL 5178 PAGE 116

## Continuation of Legal Description

GF No. or File No.: 49404

1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,656.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.17 feet to the Southern most corner of said 7.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 7.90 feet from said corner

4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 19 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 09 minutes 12 seconds West);

7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 12 minutes 11 seconds East, a distance of 542.25 feet a corner, (recorded South 17 degrees 03 minutes 44 seconds West), an iron pin found (with 18 degrees 02 minutes 13 seconds West, 2.97 feet from said corner);

8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 22 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract, recorded South 5 degrees 09 minutes 51 seconds West, an iron pin found North 74 degrees 47 minutes 43 seconds West, 7.66 feet from said corner;

9) Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 800.1 feet an iron pin set for a corner of this 7.547 acre tract.

10) Thence, South 6 degrees 27 minutes 22 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acre tract.



-4-

VOL 5178 PAGE 117

**Continuation of Legal Description**

GF No. or File No.: 69406

(11) Thence, South 18 degrees 02 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner of this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 1,015.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 120.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE:  This company does not represent that the acreage and/or square footage calculations are correct.



VOL 5178 PAGE 118

Exhibit B to Annex A

Exhibit B in Annex A (Continued)

VOL 5178 PAGE 119

Return to:
Darlene Davis
Ober/Kaler
120 E. Baltimore St.
Baltimore, MD
21202-1643

VOL 5178 PAGE 120

39431

FILED FOR RECORD

1998 SEP 30 P 3: 19

CLERK COUNTY COURT
CAMERON COUNTY TEXAS
BY _____ DEPUTY

STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the
date and at the time stamped hereon by me and was duly
RECORDED in the Volume and Page of the named RECORDS
of Cameron County, Texas in the manner between by me

County Clerk
Cameron County, Texas

192.634 Ac o/o Svy 38
ESG Sh. 19

Filed with: Cameron, TEXAS

THIS SPACE FOR USE OF FILING OFFICER

03186
OFFICIAL RECORDS

160946
FILED FOR RECORD
AT
Jan 26  2 04 PM '99

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY, TEXAS
BY
DEPUTY

**FINANCING STATEMENT — FOLLOW INSTRUCTIONS CAREFULLY**
This Financing Statement is presented for filing pursuant to the Uniform Commercial Code
and will remain effective, with certain exceptions, for 5 years from date of filing.

A. NAME & TEL. # OF CONTACT AT FILER (optional)

B. FILING OFFICE ACCT. # (optional)

C. RETURN COPY TO: (Name and Mailing Address)

Ruth E. Mateo, Paralegal
Ober, Kaler, Grimes & Shriver
120 East Baltimore Street
Baltimore, MD 21202-1643

0.OPTIONAL DESIGNATION (if applicable) ☐ LESSOR/LESSEE  ☐ CONSIGNOR/CONSIGNEE  ☐ NON-UCC FILING

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b)

| 1a.ENTITY'S NAME | | | | | |
|---|---|---|---|---|---|
| TITAN INTERNATIONAL, INC. | | | | | |
| 1b.INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c.MAILING ADDRESS | CITY | | STATE | COUNTRY | POSTAL CODE |
| 2701 Spruce Street | Quincy | | TX | USA | 62301 |
| 1d.S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 1e.TYPE OF ENTITY | 1f.ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 1g.ENTITY'S ORGANIZATIONAL I.D.#, if any | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b)

| 2a.ENTITY'S NAME | | | | | |
|---|---|---|---|---|---|
| TITAN TIRE CORPORATION OF TEXAS | | | | | |
| 2b.INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c.MAILING ADDRESS | CITY | | STATE | COUNTRY | POSTAL CODE |
| 6700 Paredes Line Road | Brownsville | | TX | USA | 78521 |
| 2d.S.S. OR TAX I.D.# | OPTIONAL ADD'NL INFO RE ENTITY DEBTOR | 2e.TYPE OF ENTITY | 2f.ENTITY'S STATE OR COUNTRY OF ORGANIZATION | 2g.ENTITY'S ORGANIZATIONAL I.D.#, if any | ☐ NONE |

**3. SECURED PARTY'S (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME** - insert only one secured party name (3a or 3b)

| 3a.ENTITY'S NAME | | | | | |
|---|---|---|---|---|---|
| General Electric Capital Corporation, for itself and as agent for certain other participants | | | | | |
| 3b.INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c.MAILING ADDRESS | CITY | | STATE | COUNTRY | POSTAL CODE |
| Long Ridge Road,, Bldg. B, 1st Floor | Stamford | | CT | USA | 06927 |

4. This FINANCING STATEMENT covers the following types or items of property:

See Attached.

5. CHECK ☐ This FINANCING STATEMENT is signed by the Secured Party instead of the Debtor to perfect a security interest...
BOX

7. If filed in Florida (check one) ☐ Documentary stamp tax paid ☐ Documentary stamp tax not applicable

6. REQUIRED SIGNATURE(S)  TITAN INTERNATIONAL, INC.

TITAN TIRE CORPORATION OF TEXAS

8. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.

9. Check to REQUEST SEARCH CERTIFICATE(S) on Debtor(s) (ADDITIONAL FEE) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

No. of additional sheets presented:
(1) FILING OFFICER COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)

DEC-30-1998  12:47     UBER-KALER (URITES)                    410 547 0699   P.01/01

Attachment to UCC-1

Titan Tire Corporation of Texas and Titan International, Inc. VOL 5377 PAGE 199

as Debtors

and

General Electric Capital Corporation

For itself and as agent for certain participants,

as Secured Party

The Debtors hereby grant the Secured Party a continuing first priority security interest in and lien on the following items of property:

(a) All right, title and interest of the Debtors in and to all improvements, structures and buildings now or hereafter erected or placed on the property described in Exhibit A (the "Land"), (collectively, the "Improvements") (the Land and the Improvements being hereinafter called collectively, the "Property") and all cash and non-cash proceeds thereto; and

(b) Any and all judgments, awards of damages (including but not limited to severance and consequential damages), payments, proceeds, settlements or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, in connection with, or in lieu of any taking of title, of use, or of any other property interest of the Property or any part thereof under the exercise of the power of eminent domain, either temporarily or permanently by any governmental authority or by any person acting under governmental authority; and

(c) All unearned premiums, accrued, accruing or to accrue under insurance policies with respect to the Property, now or hereafter obtained by the Debtors, and the Debtors' interest in and to all proceeds of the conversion, voluntary or involuntary, and the interest payable thereon, of the Property or any part thereof, into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Property, and the right to collect and receive the same; and

(d) All of the rents, royalties, issues, profits, revenues, income and other benefits of the Property, or arising from the use or enjoyment of all or any portion thereof (provided, however, that the foregoing shall not be deemed to grant a lien upon profits of the business operated on the Property), or from any lease or agreement pertaining thereto, and all right, title and interest of the Debtors in and to, and remedies under, any and all leases and subleases of the Property, or any part thereof, both now in existence or hereafter entered into and all contract rights, accounts receivable and general intangibles growing out of or in connection with such leases and subleases, together with all proceeds thereof; and including, without limitation, all cash or security deposited thereunder to secure performance by the lessees of their obligations thereunder whether such cash or security is to be held until the expiration of the terms of such leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; and

(e) All of the assets described in Exhibit A attached hereto; and

(f) all proceeds of all or any of the Collateral described in clauses (a) through (e) hereof.

GEM:323085-3.1 b/26/98 13:40  AM

VOL.5377 PAGE 200

Exhibit A Description of Land

GF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of
Parcel Two" and "Parcel Four" as described in a deed from Morvill, Incorporated
to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed
is recorded in Volume 2200, Page 92 of the (Official) Deed Records of Cameron
County, Texas, said 192.634 acre tract being described more particularly
described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0
feet from the Northwest corner of Survey 38, said point is North 84 degrees 55
minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision",
a subdivision of the Southern 168.52 acres of said Survey 38, Subdivision "D"
of Share 19.  Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of
the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38
and the original centerline of FM-1847, a distance of 936.50 feet to a "PK"
nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre
tract;

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey
38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK"
nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75
feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a
distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2,
Parcel Two, at a distance of 3,795.20 feet to the Northwest corner of Tract 3,
Parcel Two, a concrete nail found North 74 degrees 32 minutes 24 seconds West,
a distance of 0.44 feet from said corner, at a total distance of 4,756.60 feet
a "PK" nail set for the Northwest corner of Parcel Four and the Northwest
corner of this 192.634 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the
Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al to
the State of Texas by a deed recorded in Volume 3483, Page 203 of the Official
Records of Cameron County, Texas;

(3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05
minutes West, a distance of 1,790.37 feet to the Southern most corner of said
7.372 acre tract (recorded North 4 degrees 07 minutes 19 seconds East,
1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West,
0.90 feet from said corner;

(4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04
minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees
06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner;



-1-

VOL 5377 PAGE 201

Continuation of Legal Description

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet for a corner, (recorded South 17 degrees 05 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 628.25 feet for a corner, (recorded South 5 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 55 minutes East, at a distance of 1,154.18 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al, to Brownsville Navigation District by a deed recorded in Volume 1483, Page 212 of the Official Records of Cameron County, Texas, at a distance of 1,313.13 feet the Northeast corner of said 0.678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 192.634 acre tract, an iron pin found South 67 degrees 46 minutes 01 seconds East, 1.47 feet from said corner;

(10) Thence, South 4 degrees 27 minutes West, at a distance of 121.09 feet the Northeast corner of said 0.678 acre tract an iron pin found North 88 degrees 18 minutes 18 seconds West, 1.27 feet from said corner, at a distance of 250.81 feet the southeast corner of said 0.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.29 feet from said corner, a total distance of 961.46 feet (recorded 961.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

(11) Thence, South 4 degrees 30 minutes West, at a distance of 956.30 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 1,025.99 feet the centerline of a 75.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 204, Page 478 of the Official Records of Cameron County, Texas, at a distance of 1,907.55 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,853.85 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 3,795.40 feet to an iron pin set



-3-


COUNTY CLERK'S MEMO
PORTIONS OF THIS
DOCUMENT ARE NOT
REPRODUCIBLE
WHEN RECORDED

gMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMMgMM

Exhibit A

Continuation of Legal Description

VOL 5377 PAGE 203

GF No. or File No.: 69406

(1)  Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,656.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

(2)  Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

(3)  Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.37 feet to the Southern most corner of said 7.372 acre tract, (recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 0.90 feet from said Corner.

(4)  Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

(5)  Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6)  Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7)  Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet a corner, (recorded South 17 degrees 05 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8)  Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract, (recorded South 5 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner;

(9)  Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 20.01 feet an iron pin set for a corner of this 7.547 acres tract;

(10) Thence, South 6 degrees 27 minutes 32 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acres tract;



-4-

VOL 5377 PAGE 204

Exhibit A

Continuation of Legal Description

GF No. or File No.: 69406

(11) Thence, South 18 degrees 02 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 2.815.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 120.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE:  This company does not represent that the acreage and/or square footage calculations are correct.

-5-



03186

FILED FOR RECORD
AT_____
1999 JAN 26 P 2: 06

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY TEXAS
BY_____DEPUTY

VOL 5377 PAGE 265



VOL 2200 PAGE 92          37123

SPECIAL WARRANTY DEED

OFFICIAL RECORDS

DATE: October 1, 1992

GRANTOR: Norwill, Incorporated, a Texas corporation

GRANTOR'S MAILING ADDRESS:  One Mile North Paredes Line-Whipple Road
                            Los Fresnos, Cameron County, Texas 78566

GRANTEE: An undivided twenty-five percent (25%) interest to each of
         the following Grantees:

         Henry A. Willms              Gary A. Willms
         P. O. Box 361                P. O. Box 657
         Harlingen  TX 78551          Los Fresnos  TX 78566

         John F. Willms               Myra Foster
         Rt. 1 Box 1044               HC01 Box 21
         Elkhart  TX 75839            Freer  TX 78357

CONSIDERATION:  Ten Dollars and other good and valuable consideration,
the receipt of which is hereby acknowledged.

PROPERTY (including any improvements):

PARCEL ONE:

All that certain tract, piece or parcel of land out of what is
commonly known as the "Los Marranos Ranch" located in Survey 38 of
Share 19 of the Espiritu Santo Grant, in Cameron County, Texas, and
more fully described by metes and bounds as follows, to-wit:

BEGINNING at a point set in the Western Boundary Line of the Paredes
Tract, said boundary line being also the Western Boundary Line of
Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 ft. more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espiritu Santo Grant; said point being also the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, of record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonia T. Cantu Estate, a tract of
land containing 200.00 acres out of Survey 38 of Share 19, of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5 deg.
05' East 936.5 feet to a point for the beginning point and the
Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5 deg.
05 min. East 941.5 feet to a point for the Northwest corner of the
tract herein described;

THENCE, South 84 deg. 55 min. East 1846.2 feet to an iron pipe in the
Eastern Boundary Line of Sur. 38 for the Northeast corner of the tract
herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a

VOL 2200 PAGE 93

304, pages 72-82, Deed Records of Cameron County, Texas.

PARCEL TWO:

All that certain tract, piece or parcel of land out of what is
commonly known as the "Los Marranos Ranch" located in Survey 38 of
Share 19 of the Espiritu Santo Grant situated in Cameron County,
Texas, and more fully described by metes and bounds as follows,
to-wit:

TRACT 1.  BEGINNING at a point set in the Western Boundary Line of the
Paredes Tract, said boundary line being also the Western Boundary Line
of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espiritu Santo Grant; said point being also the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, or record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonia T. Cantu Estate, a tract of
land containing 200.00 acres out of Sur. 38 of Share 19 of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 1878.0 feet to a point for the beginning point
and Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 946.25 feet to a point for the Northwest
corner of the tract herein described;

THENCE, South 84 degrees 55 minutes East 1836.6 feet to an iron pipe
in the Eastern Boundary Line of said Survey 38 for the Northeast
corner of the tract herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a fence
South 4 degrees 30 minutes West 946.25 feet to an iron pipe for the
Southeast corner of the tract herein described;

THENCE, North 84 degrees 55 minutes West 1846.2 feet to place of
beginning, containing by the above metes and bounds, 39.35 acres of
land (net) exclusive of Paredes Line Road right-of-way.

TRACT 2.  BEGINNING at a point set in the Western Boundary Line of the
Paredes Tract, said boundary line being also the Western Boundary Line
of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espirity Santo Grant; said point also being the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, of record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonia T. Cantu Estate, a tract of
land containing 200.00 acres out of Sur. 38 of Share 19 of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 2824.25 feet to a point for the beginning
point and Southwest corner of the tract herein described;

THENCE with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 951.2 feet to a point for the Northwest corner
of tract herein described;

VOL 2200 PAGE 94

Paredes Tract, said boundary line being also the Western Boundary Line of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu Santo Grant, Cameron County, Texas, said point being at a distance of 18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of Share 19 of the Espiritu Santo Grant; said point also being the Northwest corner of the "Las Lagunas Subdivision", as shown by the recorded map, of record in the Map Records of Cameron County, Texas, and the Southwest corner of the Antonia T. Cantu Estate, a tract of land containing 200.0 acres out of Sur. 38 of Share 19 of the Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5 degrees 05 minutes East 3775.45 feet to a point for the beginning point and Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5 degrees 05 minutes East 956.25 feet to a point for the Northwest corner of the Antonia T. Cantu Estate and also the Northwest corner of the tract herein described;

THENCE, with and along a fence being the Northern Boundary line of the Antonia T. Cantu Estate South 84 degrees 55 minutes East 1817.2 feet to an iron pipe in the Eastern Boundary line of said Sur. 38 for the Northeast corner of the Antonia T. Cantu Estate and also the northeast corner of the tract herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a fence South 4 degrees 30 minutes West 956.25 feet to an iron pipe for the southeast corner of the tract hereind escribed;

THENCE, North 84 degrees 55 minutes West 1826.9 feet to place of beginning, containing by the above metes and bounds, 39.35 acres of land (net) exclusive of Paredes Line Road right-of-way.

The land herein described being part of the land heretofore partitioned by agreement dated September 25, 1940, recorded in Vol. 304, pages 72-82, Deed Records of Cameron County, Texas.

PARCEL THREE:

Fifteen (15) acres out of Tract 22 in Share 19 of the Espiritu Santo Grant, in Cameron County, Texas, described as follows:

BEGINNING at a point in S. boundary of a certain 109.4 acre tract described by Deed to W. K. Mendenhall recorded in Vol. Q, Page 141, Deed Records, Cameron County, Texas, said tract being out of and forming a part of Sur. 22 of Share 19, Espiritu Santo Grant, Cameron County, Texas, said point of beginning being the SE corner of a certain 40 acre tract deeded to Joe Ballard by the said W. K. Mendenhall for the SW corner of the tract herein described;

THENCE with S. Boundary of the above mentioned 109.4 acre tract S. 85 deg. E. 1830 ft. to point in W. line of Old Pt. Isabel Road for the SE corner of the tract herein described;

THENCE with said West Line of Old Pt. Isabel Road, N. 24 deg. 52' E. 399.8 feet to point for the NE corner of the tract herein described;

THENCE, N. 85 deg. W. 1645.5 feet to point in E. boundary of the previously mentioned Ballard Tract for the NW corner of the tract herein described;

THENCE, with said last above mentioned East boundary S. 45 deg. 25' W. 493.7 feet to place of beginning and being the same property conveyed

VOL.2200 PAGE 95

BEGINNING at the Northwest corner of Cantu Estate 200.00 acre tract out of Survey 38 of Share 19, Espiritu Santo Grant, said corner being in the West line of the said Survey 38 and the West line of Share 19 for the Southwest corner of the tract herein described;

THENCE, with the North line of said Cantu lands, South 84 deg. 58 min. East 1817.2 feet to the Northeast corner thereof in the East line of said Survey 38 for the Southeast corner of the tract herein described;

THENCE, with the line last mentioned, North 4 deg. 27 min. East 961.4 feet to a point for the Northeast corner of the tract herein described;

THENCE, crossing said Survey 38, North 84 deg. 58 min. West 1807.4 feet to a point in the West line thereof for the Northwest corner of the tract herein described;

THENCE, with the line last mentioned, South 5 deg. 02 min. West 961.4 feet to the place of beginning, containing 40.0 acres, being a part of a 88.99 acre tract conveyed by Enrique F. Valentin by Deed dated July 3, 1941.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Any and all easements, conditions, restrictions, and oil, gas, mineral, and/or royalty interests, if any, relating to the hereinabove described property, to the extent, and only to the extent, that the same remain in effect, shown of record in the office of the County Clerk of Cameron County, Texas; and any and all easements apparent upon the ground.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through, or under it, but not otherwise, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

NORWILL, INCORPORATED, a Texas corporation

BY: _Norman F. Willms_
Norman F. Willms

THE STATE OF TEXAS  }

VOL. 2200 PAGE 96



BY _____
DEPUTY
CLERK COUNTY, TEXAS

Nov 16  9 46 AM '92

AT
FILED FOR RECORD

37123





STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the
date and at the time stamped hereon by me and was duly
RECORDED in the Volume and page of the named RECORDS
of Cameron County, Texas as stamped hereon by me

County Clerk
Cameron County, Texas

*192.634 Ac. TR.3B, Sh.19 ESG*

DEC-30-1998  12:03        OBER.KALER.GRIMES;                        418 547 0699    P.02/11

**14254**

BOOK 5518 PAGE 298

**OFFICIAL RECORDS**

**AMENDMENT
TO DEED OF TRUST**

This AMENDMENT TO DEED OF TRUST is made as of the 30th day of December, 1998, by TITAN TIRE CORPORATION OF TEXAS, a Texas corporation and TITAN INTERNATIONAL, INC. an Illinois corporation, (hereinafter collectively the "Grantor") and GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND AS AGENT FOR CERTAIN OTHER PARTICIPANTS ("GE Capital".

<u>RECITALS</u>

A. The Grantor GE Capital have entered into that certain Master Lease Agreement dated as of May 21, 1998 (such Master Lease Agreement, as the same may be amended or supplemented from time to time to the extent permitted by the terms thereof, being herein called the "Master Lease"), whereby, subject to the terms and conditions set forth therein, GE Capitol has agreed to lease to the Grantor, and the Grantor has agreed to lease from GE Capitol certain Lease Assets, as more particularly described therein. Capitalized terms used herein without definition shall have the meanings ascribed to them in the Master Lease.

B. Pursuant to such Master Lease, GE Capital has leased to the Grantor certain real property located in Cameron County, Texas as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof (the "Land"), for the term specified therein. A Memorandum of the Master Lease has been recorded among the Land Records of Cameron County, Texas at Volume 5172 Page 107

C. As security for the payment of Grantor's obligation under the Master Lease and the performance of all other obligations of the Grantor under the Master Lease or any documents relating thereto (collectively, the "Obligations"), the Grantor has executed and delivered a Deed of Trust, Assignment, and Security Agreement dated as of May 21, 1998 (as the same may from time to time be amended, restated, supplemented, or otherwise modified, the "Deed of Trust") assigning (among other things) all of Grantor's interest in the Property now owed or hereafter acquired, including without limitation, Grantor's leasehold interest in the Master Lease and the Property.

The parties desire hereby to amend certain provisions of the Deed of Trust, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the Grantor and GE Capital agree as follows:

<u>AGREEMENTS</u>

1.    <u>Recitals</u>. The Grantor and GE Capital acknowledge that the above Recitals to this Amendment are true and correct, and agree that the same are incorporated by reference into the body of this Amendment. Unless otherwise specifically defined herein, all terms defined by the provisions

DSM:62046536.1

DEC-30-1998  12:03        OBER, KALER, GRIMES,                410 547 0699    P.03/11

BOOK 5518 PAGE 299

of the Deed of Trust shall have the same meanings ascribed to such terms by the provisions of the Deed of Trust when used herein.

2.    Amendments to Deed of Trust.

(a)  The first paragraph of the granting clause of the Deed of Trust is hereby deleted and the following is hereby inserted in lieu thereof:

> NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged by the Grantor, in order to secure the full and punctual payment and performance of the Obligations, the Grantor does hereby grant, convey, bargain, sell, assign, pledge, transfer and set over to Trustee, his successors and substitutes for the benefit of GE Capital and its successors and assigns, and does hereby grant to Trustee, his successors and substitutes, for the benefit of GE Capital and its successors and assigns, a lien on and a security interest in, all and each of the properties, rights, interests and privileges described in the following paragraphs:

(b)  Section 4(a) of the Deed of Trust is hereby deleted, and the following is hereby inserted in lieu thereof:

> (a)  Upon the occurrence of any Default, GE Capital, without in any way waiving such Default, in addition to any other rights and remedies that it may have under applicable law and subject to the terms of the Master Lease, (1) declare the Obligations to be immediately due and payable, (2) give such notices as may be required by applicable laws, the Master Lease, and this Deed of Trust and thereafter sell, assign or transfer pursuant to a non-judicial foreclosure sale or sales conducted in accordance with applicable laws the entire lessees' interest in the Master Lease to any third party or (3) take possession of the Property by foreclosure or otherwise and have, hold, manage, lease and operate or sell the same on such terms and for such period of time as GE Capital may deem proper, and in connection therewith, subject to applicable law, the Grantor hereby (i) assents to the passage of the decree for the sale of the Property by the equity court having jurisdiction, and (ii) authorizes and empowers GE Capital and its successors and assigns to take possession of and sell, by non-judicial sale or otherwise, (or in case of the default of any purchaser to resell) the Property, or any part thereof, all in accordance with the applicable laws and rules of court relating to enforcement of mortgages or deeds of trust by judicial proceedings or otherwise, as GE Capital may elect. In the case of any sale under this Deed of Trust, by virtue of judicial proceedings or otherwise, the Property may be sold as an entirety or in parcels, by one sale or by several sales, as may be deemed by GE Capital to be appropriate and without regard to any right of the Grantor or any other person to the marshalling of assets. Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as GE Capital shall deem appropriate and advantageous and as required by law. Upon the terms of such sale being complied with, GE Capital shall convey to, and at the cost of, the purchaser or

2

DEC-30-1998  12:04      OBER,KALER,GRIMES,              410 547 0699    P.04/11

BOOK 5518 PAGE 300                          ···  ·19 PAGE  ···

purchasers the interest of the Grantor in the Property so sold, free and discharged of and from all estate, title or interest of the Grantor, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Property or from the sale or assignment of GE Capital's interest in the Master Lease shall be applied to the payment of the Obligations in accordance with the terms of the Master Lease. The Grantor hereby agrees to pay GE Capital on demand all of the costs incurred by GE Capital in taking, managing, operating and insuring the Property and/or assigning or selling GE Capital's interest in the Master Lease following a Default and the exercise by GE Capital of the remedies provided herein.

(e) Section 5(e) of the Deed of Trust is hereby deleted, and the following is hereby inserted in lieu thereof:

Except as provided to the contrary below, this Deed of Trust shall be governed by and construed in accordance with the internal laws if the State of New York applicable to contracts made and to be performed in such state (without regard to principles of conflicts of law applicable under New York law) and applicable laws of the United States of America; provided, however, that with respect to the provisions hereof which relate to title or the creation, perfection, priority or enforcement of liens on the Property or as otherwise required by the laws of Texas, being the place in which the Property is located, this Deed of Trust shall be governed by the laws of the State of Texas, and provided further, Grantor agrees that, to the extent not prohibited by New York law, Sections 1301 ad 1371 of the Real Property Actions and Proceedings Law of the State of New York concerning actions on debt and for a deficiency judgment following a mortgage foreclosure are not applicable to this Deed of Trust and compliance by GE Capital is waived, and to the extent required by applicable law, Sections 51.003 and 51.004 of the Texas Property Code shall govern actions brought for a deficiency judgment following foreclosure; it being understood that, to the fullest extent permitted by the laws of the State of Texas, the laws of the State of New York shall govern the validity and enforceability of this Deed of Trust in all instances where Texas law is not specifically made the law applicable to this Deed of Trust.

3.    Amendment and Modification Only.  This Amendment is only an agreement confirming certain provisions of the Deed of Trust. All of the provisions of the Deed of Trust are incorporated herein by reference and shall remain and continue in full force and effect except as specifically amended and modified by this Amendment. The Grantor hereby ratifies and confirms all of the Obligations under the provisions of the Deed of Trust as amended by this Amendment. GE Capital and the Grantor agree it is their intention that nothing herein shall be construed to extinguish, release or discharge or constitute, create or effect a novation of, or an agreement to extinguish, any of the obligations, indebtedness and liabilities of the Grantor or any other party under the provisions of the Deed of Trust as amended by this Amendment, or any grant, bargain, sale,

3

DEC-30-1998  12:04       OBER,KALER,GRIMES,              410 547 0699      P.05/11

BOOK **5518** PAGE **301**

conveyance, assignment, transfer, security interest or lien made or granted by the Grantor to the Trustees for the benefit of GE Capital of, on or in all or any part of the Property.

    4.   **Binding Effect**. This Amendment shall be binding upon and inure to the benefit of the GE Capital and the Grantor and their respective successors and assigns.

    **IN WITNESS WHEREOF**, the Grantor and GE Capital have duly executed this Amendment, under seal, as of the day and year first written above.

WITNESS:                              TITAN INTERNATIONAL, INC.

_____               By _____
                                      Name: KENT W. HACKAMACK
                                      Title: TREASURER

WITNESS:                              TITAN TIRE CORPORATION OF TEXAS

_____               By _____
                                      Name: KENT W. HACKAMACK
                                      Title: TREASURER

WITNESS:                              GE CAPITAL CORPORATION, For Itself
                                      and as Agent for Certain Other Participants

_____               By _____
                                      Name: Frederick J. Murner
                                      Title: Risk Manager

STATE OF Illinois CITY/COUNTY OF __Adams__ TO WIT:

    I HEREBY CERTIFY, that on this 30th day of __December__, 1998, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackamack, who acknowledged himself/herself to be a __officer__ of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein

4

DEC-30-1998  12:04          OBER.KALER.GRIMES.                    410 547 0699    P.06/11

BOOK 5518 PAGE 302

contained as the duly authorized __officer__ of said corporation by himself/herself as __Treasurer__.

WITNESS my hand and Notarial Seal.

*Cheryl*

"OFFICIAL SEAL"
CHERYL A LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2000

Notary Public

My commission expires: 9/18/2000

STATE OF Illinois CITY/COUNTY OF __Adams__ TO WIT:

I HEREBY CERTIFY, that on this 30th day of __December__, 1998, before me, the undersigned Notary Public of said State, personally appeared __Kent W. Hackamack__ who acknowledged himself/herself to be a __officer__ of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized __officer__ of said corporation by himself/herself as __Treasurer__.

WITNESS my hand and Notarial Seal.

*Cheryl A. Luthin*

"OFFICIAL SEAL"
CHERYL A. LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2000

Notary Public

My commission expires: 9/18/2000

STATE OF California CITY/COUNTY OF San Francisco TO WIT:

I HEREBY CERTIFY, that on this 25th day of __March__, 1999, before me, the undersigned Notary Public of said State, personally appeared __Frederick Hauze__ who acknowledged himself/herself to be a __Risk Manager__ of GE Capital Corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized __Risk Manager__ of said corporation by himself/herself as __Risk Manager__.

WITNESS my hand and Notarial Seal.

PHYLLIS A. CRONIN
COMM. #1195433
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Sept. 3, 2002

*Phyllis A. Cronin*

Notary Public

My commission expires: Sept. 3, 2002

EXHIBIT A

BOOK 5513 PAGE - 303

GF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of Parcel Two" and "Parcel Four" as described in a deed from Norvill, Incorporated to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed is recorded in Volume 2200, Page 92 of the (Official) Deed Records of Cameron County, Texas, said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 38, said point is North 84 degrees 55 minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision", a subdivision of the Southern 168.52 acres of said Survey 38, Subdivision "D" of Share 19. Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 936.50 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.50 feet to a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2, Parcel Two, at a distance of 3,795.11 feet to the Northwest corner of Tract 3, Parcel Two, a concrete nail found North 74 degrees 30 minutes 24 seconds West, a distance of 0.44 feet from said corner, at a total distance of 4,756.45 feet a "PK" nail set for the Northwest corner of Parcel Four and the Northwest corner of this 192.634 acre tract;

2. Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al to the State of Texas by a deed recorded in Volume 3483, Page 203 of the Official Records of Cameron County, Texas;

3. Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.37 feet to the Southern most corner of said 7.372 acre tract, (recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 0.30 feet from said corner;

4. Thence, along the East line of said 7.372 acre tract, North 10 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet, an iron pin set for a corner;



—1—

BOOK **5518** PAGE **304**                     **5519** PAGE **111**

Continuation of Legal Description

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet for a corner, (recorded South 17 degrees 05 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 628.25 feet for a corner, (recorded South 5 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 55 minutes East, at a distance of 1,154.18 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al, to Brownsville Navigation District by a deed recorded in Volume 3483, Page 212 of the Official Records of Cameron County, Texas, at a distance of 1,313.13 feet the Northeast corner of said 0.678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 192.634 acre tract, an iron pin found South 6° degrees 46 minutes 11 seconds East, 1.47 feet from said corner;

(10) Thence, South 4 degrees 27 minutes West, at a distance of 101.19 feet the Northeast corner of said 0.678 acre tract an iron pin found North 88 degrees 18 minutes 18 seconds West, 1.27 feet from said corner, at a distance of 250.81 feet the southeast corner of said 0.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.29 feet from said corner, a total distance of 961.46 feet (recorded 961.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

(11) Thence, South 4 degrees 30 minutes West, at a distance of 956.30 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 1,625.99 feet the centerline of a 75.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 204, Page 478 of the Official Records of Cameron County, Texas, at a distance of 1,907.55 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,883.35 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 3,795.40 feet to an iron pin set



-3-

BOOK 5818 PAGE 30.

## Continuation of Legal Description

GF No. or File No.: 69406

for the Southeast corner of said Parcel One and the Southeast corner of this 192.634 acre tract;

(12) Thence, North 84 degrees 55 minutes West, along the South line of said Parcel One, at a distance of 1,805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.678 acre tract (5.460 acres of said 192.634 acres is right-of-way of FM-1847);

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South Boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 5, 1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4861, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acre tract, being described more particularly described by metes and bounds as follows:

(1) Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 1,854.82 feet to an iron pin set in the East line of said 192.634 acre tract for a corner of this 4.259 acre tract;

(3) Thence, South 4 degrees 30 minutes 00 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

(4) Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 7.547 acre tract as set out in Special Warranty Deed dated December 14, 1997, executed by Titan Wheel International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 4861, Page 174, Official Records, Cameron County, Texas, said 7.547 acre tract being described by metes and bounds as follows:

Commencing at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees 05 minutes East, along the West line of said Survey 28 and the original centerline of FM-1847, a distance of 110.00 feet to the PLACE OF BEGINNING of this 7.547 acre tract;



-3-

BOOK 5518 PAGE 306          BOOK 5519 PAGE

### Continuation of Legal Description

CF No. or File No.: 69406

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,686.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

(3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.27 feet to the Southern most corner of said 7.372 acre tract, (recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 0.90 feet from said corner.

(4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 14 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 562.25 feet a corner, recorded South 17 degrees 05 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 0.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract, recorded South 5 degrees 29 minutes 03 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner;

(9) Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 25.01 feet an iron pin set for a corner of this 7.547 acres tract;

(10) Thence, South 6 degrees 27 minutes 32 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acres tract;

 -4-

BOOK 5518 PAGE 307

**Continuation of Legal Description**

GF No. or File No.: 69406

(11) Thence, South 18 degrees 02 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 1,815.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 120.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE: This company does not represent that the acreage and/or square footage calculations are correct.

-5-

14254

BOOK 5518 PAGE 308

FILED FOR RECORD

AT_____

1999 APR -7 A 10: 36

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY, TEXAS

BY_____ DEPUTY

STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the
date and at the time stamped hereon by me and was duly
RECORDED in the volume and page of the named RECORDS
of Cameron County, Texas as stamped hereon by me



County Clerk
Cameron County, Texas

TR. 38 Sh. 19  ESG

00016672

Return To:
LexisNexis Document Solution
801 Adlai Stevenson Drive
Springfield, IL 62703
Phone: (217) 544-5000

166985

1781478 - 5

Federal Express    Search After (FX TR V) - ("A")
Debtor: TITAN TIRE CORPORATION OF TEXAS, INC
Juris:    County Clerk, Cameron County, TX

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY, TX
2003 APR - 2 P

FILED FOR RECORD AT

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
| 166975  3/13/03 | ☑ |

2  ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3  ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4  ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5  ☐ AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Titan Tire Corporation of Texas, Inc. | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☑ restated collateral description, or describe collateral ☐ assigned.

See Exhibit A attached hereto and incorporated herein by this reference for amended and restated collateral description.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| General Electric Capital Corporation, as Agent | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA
Cameron County, TX  (617311 - 7694.187)

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Doc 00016672
Bk Vol 0004
OR Pg 243

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

## AFFIDAVIT OF ROSARIO PEÑA

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned authority, on this day personally appeared ROSARIO PEÑA, known to me, and being by me duly sworn, deposed and said on her oath that:

1 - I am of the age of majority, of sound mind and capable of making this Affidavit.

2 - I am personally acquainted with the facts stated in this Affidavit.

3 - I submit this Affidavit in support of the foregoing Motion To Remand filed in this cause on behalf of GREATER BROWNSVILLE INCENTIVES CORPORATION (GBIC).

4 - At all material times, I was (and am) the First Vice-President of the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas economic development corporation, hereinafter referred to as "GBIC," and I am authorized to act on behalf of GBIC in this matter.

5 - GBIC filed a suit for declaratory relief (only) in state district court regarding a certain (economic development) Project Agreement (contract) with and a related Deed to Defendant, TITAN INTERNATIONAL, INC., hereinafter referred to as "TITAN," previously known as "TITAN WHEEL INTERNATIONAL, INC.," as set forth in Plaintiff's Original Petition filed in the 107th Judicial District Court of Cameron County, Texas, and

docketed as Cause No. 2003-11-5493-A (having the same style as set forth in the caption above).

6 -  As set forth in detail in that Petition, the GBIC is an economic development corporation created under Texas (statutory) law, that enters into project agreements with various business concerns, almost always to create jobs, in consideration for certain incentives (such as building/lease assistance and/or site development funding).

7 -  In this instance, GBIC and TITAN entered into a Project Agreement, which involved the funding of millions of dollars for the establishment of a tire manufacturing operation in or near Brownsville, anticipated to create 500 jobs.

8 -  A large part of the funds paid for by GBIC was for the purchase of the land (as reflected by a Special Warranty Deed from GBIC, conveying the land to TITAN, pursuant to the Project Agreement) and site improvements and/or construction of the facility to operate the tire manufacturing plant of TITAN.

9 -  However, TITAN created no more that 122 jobs at the facility, resulting in an overpayment by GBIC, and a claim letter being submitted to TITAN by GBIC, advising TITAN of the situation.

10 - As set forth in the Petition and the Project Agreement itself (at Paragraph II.), there was a provision in that contract that was agreed to by the parties, to the effect that if TITAN discontinued its operations or no longer maintained a tire manufacturing operation in or near Brownsville, at any time after the execution of the agreement (February 27, 1997), "any property or assets held by TITAN ... acquired with funds, in whole or in part (including such funds), provided by" GBIC, was to "revert" to GBIC.

11 - According to information received by GBIC, including but not limited to a press release to this effect, TITAN publicly announced that its tire manufacturing operation in Brownsville would be consolidated (with all of its tire manufacturing operations) into its principal tire facility located in Des Moines, Iowa.

12 - Therefore, GBIC, as set forth in the said claim letter, invoked the reversion clause and has sought the return of the land it purchased for TITAN and that portion of the improvements thereon paid for by GBIC.

AFFIDAVIT OF ROSARIO PEÑA - PAGE 2

13 - In that TITAN did not respond to the said claim letter by acknowledging the reversion clause, the reversion clause being activated by TITAN's action to discontinue its operations in Brownsville and so forth, it became apparent that TITAN was not going to honor its obligation to GBIC under the Project Agreement, necessitating the judicial enforcement of that reversion clause, resulting in a suit for declaratory relief being filed, seeking that relief, in addition to costs of court and attorney fees.

14 - In filing this case in state district court, the only issue in this case was the matter of the reversion of the land and the improvements thereon under the Project Agreement, according to the directives of the Board Of Directors of the GBIC (the debt claim as regards the said overpayment and other matters are <u>not</u> at issue in this case).

15 - GBIC, prior to filing the suit, learned that a subsidiary or affiliate of TITAN, known as "TITAN TIRE CORPORATION OF TEXAS," a Texas business corporation, had an ownership interest in the land and improvements at issue in this case, this Texas corporation having a business address of 6700 Paredes Line Road, Brownsville, Texas 78526, which is the location of the facility and the land that is at issue in this case (TITAN is listed as the Registered Agent for the Texas corporation, which has a registered office at the same address as the tire manufacturing facility in Brownsville).

16 - The basis for the conclusion that TITAN TIRE CORPORATION OF TEXAS is an owner, in part, of this property, are references in several recorded (in the real property records of Cameron County) documents, including a (1) Deed Of Trust, Assignment And Security Agreement, (2) Master Lease, (3) Financing Statement and (4) Amendment To Deed Of Trust (all such documents being drawn in favor of General Electric Capital Corporation [GECC]), to TITAN TIRE CORPORATION OF TEXAS as, variously, along with TITAN, "grantor," "lessee" or "debtor."

17 - As I understand this case, it only deals with the matter of the property and the title to same, under the reversion provision referred to above (in the Project Agreement), and I have been advised that the effort to enforce the contract (specifically the reversion clause), to require or mandate a transfer of land and the improvements on the land (judicially), is very similar to a suit for injunction or what has been referred to as "specific performance" of a contract.

AFFIDAVIT OF ROSARIO PEÑA - PAGE 3

18 - It is my understanding that TITAN is an Illinois business corporation, and that TITAN TIRE CORPORATION OF TEXAS, a Texas business corporation, operated in Brownsville exclusively and was charged with the task, amongst others, of managing or "running" the (now closed) manufacturing facility of TITAN (in Brownsville).

FURTHER AFFIANT SAYETH NOT.

ROSARIO PEÑA, First Vice-President
GREATER BROWNSVILLE INCENTIVES
CORPORATION

SUBSCRIBED AND SWORN TO BEFORE ME on the _9th_ day of January, 2004, to certify which witness my hand and official seal.

MARGARITA ALVAREZ
Notary Public, State of Texas
My Commission Expires 06-17-05

Notary Public in and for
The State Of Texas

AFFIDAVIT OF ROSARIO PEÑA - PAGE 4