United States District Court
Southern District of Texas
FILED

JAN 0 9 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO REMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, as Plaintiff, GREATER BROWNSVILLE INCENTIVES CORPORATION, hereinafter "GBIC," by and through its undersigned counsel, pursuant to 28 U.S.C. § 1447, and files this Memorandum In Support Of Its Motion To Remand.

I.

<u>Introduction</u>

GBIC filed a declaratory judgment action (only) in state district court to determine that certain land and improvements thereon reverted, under a Project Agreement, from TITAN INTERNATIONAL, INC., hereinafter "TITAN," because -- in essence -- TITAN failed to maintain a tire manufacturing operation in Brownsville, for which GBIC paid TITAN millions of dollars as incentives under the Agreement. TITAN was served with citation and petitioned for the removal of this case to the above-captioned

(federal) court, resulting in GBIC's Motion To Remand this case
(back) to state district court.

II.

<u>Complete Diversity Does Not Exist</u>

A.

TITAN removed this case to this Court under 28 U.S.C.A. § 1332
(1993; Supp. 2003) (Diversity of citizenship; amount in
controversy; costs), claiming diversity jurisdiction exists in this
case, because GBIC is a Texas economic development corporation and
TITAN is an Illinois business corporation.

B.

However, as set forth in greater detail in GBIC's Motion To
Remand, the owner of the land and improvements thereon, as
(variously) purchased or financed by GBIC, on behalf of TITAN, is
not only TITAN, the grantee in a deed from GBIC, in accordance with
a contract for the transaction (i.e., GBIC paid incentives to TITAN
and bought land and financed improvements thereon, in consideration
of the creation of 500 jobs) between GBIC and TITAN, a Project
Agreement, in that various recorded real property instruments
reflect that both TITAN and TITAN TIRE CORPORATION OF TEXAS, a
Texas business corporation, own such property.

C.

Therefore, this action to enforce a reversion clause
judicially (a declaratory judgment action) involves an out-of-state

corporation (TITAN) and a Texas corporation (TITAN TIRE CORPORATION OF TEXAS) that are the owners (grantors, debtors and lessees) of said land and improvements (i.e., the real property).

D.

As the owners, both must be parties to this proceeding, as a matter of declaratory judgment practice. E.g., Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co., 416 F.2d 707, 710 (7th Cir. 1969) ("To avoid a partial disposition of a controversy, all persons who have an interest in the determination of the questions raised in a declaratory judgment suit should be before the court.").

E.

28 U.S.C. § 1332 (c) (1993) provides that:

> "... a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ... ."
> Id.

TITAN TIRE CORPORATION OF TEXAS is a subsidiary or affiliate of TITAN but it operates locally (exclusively) and managed the now-closed facility; as indicated above, it has an ownership interest in the said property.

F.

TITAN TIRE CORPORATION OF TEXAS's interest in the land and improvements thereon defeats the "complete diversity" requirement of the said statute, 28 U.S.C. § 1332, because it is a Texas business corporation and GBIC is a Texas economic development

corporation, regardless of the fact that TITAN is an Illinois business corporation.    This proposition is supported by the following authorities:

1 -   <u>Colon Muntaner v. Chart House Enterprises of Puerto Rico</u>, 848 F.Supp. 314, 316 (D. Puerto Rico 1993) (holding that a corporation which operated a restaurant in Puerto Rico was a citizen of Puerto Rico, for diversity purposes, even though it was a subsidiary of a parent corporation located in Louisiana, as all of the day to day management of the corporation was conducted in Puerto Rico and the subsidiary's principal place of business was in Puerto Rico).

2 -   <u>China Basin Properties, Ltd. v. Allendale Mutual Insurance Co.</u>, 818 F.Supp. 1301, 1305 (N.D. Cal. 1992) (determining that the parent's principal place of business in the State of Wisconsin would not be attributed to a defunct subsidiary where the last principal place of business of the subsidiary was in California, for the purpose of determining diversity jurisdiction; thus, the parent's actions in settling an insurance claim and performing other "winding down" activities for the subsidiary did not transfer the subsidiary's last principal place of business to Wisconsin).

3 -   <u>Sampson v. Yellow Cab Co.</u>, 55 F.Supp.2d 867, 869 (N.D. Ill. 1999) (determining that the addition of a diverse parent corporation of a non-diverse subsidiary defendant did <u>not</u> establish diversity of the parties sufficient to confer diversity jurisdiction).

4 -   <u>Amarillo Oil Co. v. Mapco, Inc.</u>, 99 F.R.D. 602, 605 - 606 (N.D. Tex. 1983) (ruling that although the parent thoroughly dominated and controlled the subsidiary, every dollar taken by the subsidiary was deposited in a bank account which bore the name of the parent, and all dividends of the subsidiary were declared as dividends of the parent, where the subsidiary was properly incorporated under the laws of Texas, and the subsidiary maintained a separate set of books which related only to the operation of the subsidiary, the subsidiary's separate corporate existence would <u>not</u> be disregarded for the purpose of diversity jurisdiction [involving a conveyance of <u>real property</u> (oil and gas rights) from the parent to the subsidiary (at 606)]).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND - PAGE 4

G.

As such, without "complete diversity," as described in cases arising under the diversity jurisdiction statute, E.g., Harrison v. Prather, 404 F.2d 267, 272 (5th Cir. 1968) ("... . ... . It is equally settled that 'complete diversity' must exist for the court to retain jurisdiction of this cause," and this requires that "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side ... ."), there can be no diversity jurisdiction in this case, and thus, the Court should remand this case (back) to state district court because of the lack of subject matter jurisdiction.

III.

Court Need Not Assume Jurisdiction

A.

This case only involves a judicial determination, in a declaratory relief action, of the enforceability of a reversion arising under a contract (the Project Agreement) of certain real property and improvements thereon in the state of Texas; the Court may, under a judicially-created exception to the diversity jurisdiction statute, 28 U.S.C.A. § 1332 (1993; Supp. 2003), opt not to assume jurisdiction over matters pertaining to probate and domestic relations, both of which involve (at times) the matter of property and the title to same.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND - PAGE 5

B.

This exception involves deference to matters of equity, to-wit, matters addressed by courts of equity/chancery, as explained in the following passage from the highly regarded Wright & Miller treatise on federal court practice and procedure:

> "... . Despite this broad language [of 28 U.S.C. § 1332], there are two subject areas, domestic relations and probate, in which the federal courts have refused to adjudicate various disputes even though the requirements for diversity jurisdiction are present. Both exceptions were developed at a time when the diversity statute granted jurisdiction over 'suits of a civil nature in law or in equity.' During that period it was thought that since domestic relations and probate cases were matters that would have been heard in the ecclesiastical courts, they did not fit the statutory description. ... . This phenomenon has been explained on the ground that the two areas of the law involved are fields in which the states have an especially strong interest in the proper implementation of their policies and local courts have a well-developed competence." 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3609, 459 - 461 (1984).

C.

As indicated in the Motion To Remand, declaratory relief is not necessarily an equitable matter. See Wallace v. Norman Industries, Inc., 467 F.2d 824, 827 (5th Cir. 1972) ("... . ... . A declaratory judgment action cannot be termed as either inherently at law or in equity. When classification has been required, courts have examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act. ... ."); But see Wacker v. Bisson, 348 F.2d 602 (5th Cir. 1965) ("... . ... . A declaratory judgment is an equitable

remedy committed to the sound discretion of the courts. ... . ...
.").

### D.

A request to interpret the enforceability of a contract granting a reversion as a result of a contingency (occurring) is virtually the same as a claim for specific performance or injunctive relief, which are recognized in Texas law (for example) as equitable actions or remedies. This proposition is confirmed by the following passages from the Texas Jurisprudence legal encyclopedia:

1 - 67 TEX. JUR. 3d <u>Specific Performance</u> § 1, 207 - 208 (1989) ("Specific performance is the actual performance of a contract by the party bound to perform it. A decree of specific performance is the means of compelling a party to do that which he or she ought to have done without the coercive power of the court. ... . ... . The remedy of specific performance is well established and lies exclusively in the jurisdiction of courts of equity. Accordingly, an action for specific performance is governed by the general rules that prevail in the administration of equitable remedies.").

2 - 44 TEX. JUR. 3d <u>Injunctions</u> § 1, 367 (1985) ("... . ... . Injunction, as a suit, is a form of equitable relief granted a court having chancery jurisdiction to prevent irreparable injury as a consequence of a wrongful act for which courts having only common-law jurisdiction offer either no relief or inadequate relief. As a writ or process, an injunction is a formal command of the court, couched in the form of an order ... directing the persons named therein ... where relief is mandatory in form, commanding them to take certain steps to undo the wrong or injury with which they are charged; a command ... to do ... a particular act. ... .").

### E.

As such, the Court should consider deferring this case, an effort to enforce and confirm a reversion of certain land and

improvements thereon under a contract, under the said judicially-created exception to the diversity jurisdiction statute, by remanding this case (back) to the state district court proceeding, in light of the foregoing.

IV.

<u>Conclusion</u>

In that this case is a request for declaratory relief (only) filed in state court to enforce a reversion of land and improvements thereon, which land is owned by both Defendant -- an Illinois business corporation -- and a separate subsidiary of same -- a Texas business corporation, complete diversity of the parties does not exist, plus the Court may -- since this case is in the nature of an equitable proceeding involving the right to real property -- defer from assuming jurisdiction over this proceeding; in any event, as complete diversity in this case does not exist, this case should be remanded by this Court to the said state district court, which court clearly has proper jurisdiction of this Texas property law dispute, to enable that court to proceed with this case.

WHEREFORE, GBIC respectfully requests that the Court grant its Motion To Remand this case to the 107th Judicial District Court of Cameron County, Texas, in which (Court) this case was pending at the time of removal (by TITAN), that GBIC be awarded its costs incurred in this removal/remand proceeding (to be assessed against

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND - PAGE 8

TITAN), and that GBIC have such other and further relief to which it may be justly and equitably entitled.

DATED this 9th day of January, 2004.

Respectfully submitted,

GREATER BROWNSVILLE INCENTIVES
  CORPORATION, Plaintiff

BY: _____
Brian G. Janis

Southern District Of Texas
Federal Admissions ID. No. 1201
(Texas State Bar No. 10570300)

OF COUNSEL:                  ATTORNEY-IN-CHARGE FOR PLAINTIFF

SANCHEZ, WHITTINGTON, JANIS    100 North Expressway 83
  & ZABARTE, L.L.P.            Brownsville, Texas 78521-2284
                               Telephone: 956/546-3731
                               Telefax: 956/546-3766


CERTIFICATE OF SERVICE


    This is to certify that a true and correct copy of the foregoing GBIC's Memorandum In Support Of Its Motion To Remand has been served upon Michael Rodriguez, counsel of record for TITAN, at 1000 East Madison Street, Brownsville, Texas 78520, by mailing same United States Mail, postage prepaid and properly addressed, and by hand-delivering same, on this 9th day of January, 2004.

_____
Brian G. Janis


PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO REMAND - PAGE 9

# **A P P E N D I X**

### Table Of Contents

1 -  13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H.
     COOPER, FEDERAL PRACTICE AND PROCEDURE § 3609,
     459 - 461 (1984) . . . . . . . . . . . . . . . . . . . . 1

2 -  67 TEX. JUR. 3d Specific Performance § 1, 207 - 208
     (1989) . . . . . . . . . . . . . . . . . . . . . . . . 4

3 -  44 TEX. JUR. 3d Injunctions § 1, 367 (1985) . . . . . . . 6

§ 3609        DIVERSITY OF CITIZENSHIP        Ch. 3

Both exceptions were developed at a time when the diversity statute granted jurisdiction over "suits of a civil nature in law or in equity." During that period it was thought that since domestic relations and probate cases were matters that would have been heard in the ecclesiastical courts, they did not fit the statutory description.[3] The Judicial Code of 1948 substituted the words "civil action" for those in the previous legislation, but the

Cherry v. Cherry, D.C.Md.1977, 438 F.Supp. 88.

Harley v. Oliver, D.C.Ark.1975, 404 F.Supp. 450, affirmed C.A.8th, 1976, 539 F.2d 1143.

These limitations do not apply to the federal courts in the District of Columbia and the territories, since in those courts diversity is not the basis of subject matter jurisdiction. However, alimony decrees rendered by the federal courts of the District of Columbia or the territories may not be registered in another federal court pursuant to 28 U.S.C.A. § 1963. Gitlin v. Gitlin, D.C.N.Y. 1954, 15 F.R.D. 458. Compare Gullet v. Gullet, C.A.5th, 1951, 188 F.2d 719, allowing the registration of a judgment for separate maintenance as a judgment "for the recovery of money."

**Compare**

Just as federal courts have no jurisdiction to probate a will, administer an estate, or to grant divorces, alimony, or custody, they have no subject matter jurisdiction over the disinterment of dead bodies or the conduct of autopsies. Watson v. Manhattan & Bronx Surface Transit Operating Authority, D.C.N.J.1980, 487 F.Supp. 1273.

**See generally**

Vestal & Foster, Implied Limitations on the Diversity Jurisdiction of Federal Courts, 1956, 41 Minn.L.Rev. 1.

Note, Application of the Federal Abstention Doctrines to the Domestic Relations Exception to Federal Diversity Jurisdiction, 1983, 1983 Duke L.J. 1095.

Comment, Federal Jurisdiction and the Domestic Relations Exception: A Search for Parameters, 1984, 31 U.C.L.A.L.Rev. 843.

**3. Historical justification**

Csibi v. Fustos, C.A.9th, 1982, 670 F.2d 134, citing Wright, Miller & Cooper.

Lucas v. Hope, C.A.5th, 1975, 515 F.2d 234, certiorari denied 96 S.Ct. 1464, 424 U.S. 967, 47 L.Ed.2d 734 (ecclesiastical matters).

Lee v. Hunt, D.C.La.1977, 431 F.Supp. 371, citing Wright, Miller & Cooper.

**But see**

"The historical reasons relied upon to explain the federal courts' complete lack of matrimonial jurisdiction are not convincing. * * * The temporal courts in England always exercised jurisdiction in a broad range of ancillary matters. * * * First, the courts decided questions of status incidental to the exercise of their established jurisdiction. * * * Second, chancery gave the ecclesiastical courts substantial assistance in matters involving matrimonial status. * * * Third, Chancery would, in effect, function as a 'domestic relations tribunal' if some independent basis for the exercise of its jurisdiction was present. * * * Finally, the temporal courts would restrain the church tribunals from exceeding their jurisdiction." Spindel v. Spindel, D.C. N.Y.1968, 283 F.Supp. 797, 806, 807, 808, 809 (per Weinstein, J.), noted 1968, 72 Dick.L.Rev. 692, 54 Iowa L.Rev. 390, 28 Md.L.Rev. 376, 14

2

**Ch. 3**      **DOMESTIC RELATIONS CASES**      **§ 3609**

exceptions persisted.  This phenomenon has been explained on
the ground that the two areas of the law involved are fields in
which the states have an especially strong interest in the proper
implementation of their policies and local courts have a well-de-