IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
Ft. 1

JAN 2 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES CORPORATION, | § § § | |
| Plaintiff | | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

### TITAN INTERNATIONAL, INC.'S, RESPONSE TO THE PLAINTIFF'S MOTION TO REMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, TITAN INTERNATIONAL, INC., DEFENDANT, and files this Response to Plaintiffs Motion to Remand and would show unto the Court the following:

### I.

### Procedural History

On November 10, 2003, Plaintiff, Greater Brownsville Incentives Corporation (hereinafter referred to as "GBIC" or "Plaintiff") filed a lawsuit against Titan International, Inc. (hereinafter referred to as "Titan" or "Defendant"), in the 107th Judicial District Court, Cameron County, Texas, styled *GREATER BROWNSVILLE INCENTIVES CORPORATION vs. TITAN INTERNATIONAL, INC.*, Cause No. 2003-11-5493-A. On December 12, 2003, Titan properly removed this case to the United States District Court for the Southern District of Texas Brownsville Division, pursuant to Title

28 U.S.C. § 1441(a) and 28 U.S.C. § 1332.  Despite having been timely removed, Plaintiff filed the present Motion to Remand on January 9, 2004.

## II.

### Background Facts

This is a civil action for declaratory relief pertaining to a Project Agreement entered into between GBIC and Titan involving the financing of a tire manufacturing facility in or near Brownsville, Texas and a related Special Warranty Deed. (Plfs.' Original Petition, ¶X).  As part of the Project Agreement, one of the incentives to be paid to Titan was a "Site Development Credit" in the sum of $1,000,000.00, to be paid in the form of a land grant.  *Id. at ¶VII A*.  A copy of the Project Agreement and Special Warranty Deed are attached hereto as Exhibit 1 and 2.

Plaintiff alleges that Removing Defendant no longer maintains a tire manufacturing operation in or near Brownsville as required by the Project Agreement, and therefore the land conveyed by Plaintiff to Defendant has reverted to Plaintiff, under and pursuant to the Project Agreement.  *Id.* at ¶ IX.  The Project Agreement contains a clause which the Plaintiff claims allows for a reversion of the property upon which Titan built the tire manufacturing plant.  The determination of the applicability of this clause and whether or not the property is to revert back to the Plaintiff pursuant to this clause is the subject of the Declaratory Judgment action filed by Plaintiff in the State Courts of Texas which was removed to this Honorable Court by Titan.

### III.

### Plaintiff Incorrectly Asserts that Titan Texas is a "Real Party in Interest"

Plaintiff incorrectly argues this case should be remanded due to the alleged lack of complete diversity. "GBIC seeks the remand of the removed case to the said pending state court proceeding, involving the reversion of certain real property and improvements thereon in the state (sic) of Texas, as this land is owned (in part) by a subsidiary (or affiliate) of Titan known as 'Titan Tire Corporation of Texas', a Texas business corporation..." (Plaintiffs Motion to Remand at II C). Plaintiff claims that Titan Tire Corporation of Texas (hereinafter referred to as "Titan Texas"), a non-party to this litigation, is a "real party in interest." According to Plaintiff's theory, because Titan Texas is listed as a "grantor" on a completely separate financing agreement and other documents, they conclude Titan Texas is a "real party in interest."[1]

### IV.

### Only the Citizenship of Named Parties to be Considered in Determining

### Diversity Jurisdiction

Diversity jurisdiction is determined as of the date the action is commenced. *Freeport-McMoran, Inc. v. KN Energy, Inc., 498 U.S. 426, 428, 111 S.Ct. 858, 860 (1991).* Diversity jurisdiction is defined in terms of the citizenship of the parties to the

---

[1] See Deed of Trust, Assignment and Security Agreement, Master Lease, Financing Statement and Amendment to Deed of Trust conveying the subject property from Titan and Titan Texas to Samuel Kinslow as the trustee for the benefit of General Electric Capitol Corporation. (See Documents attached to Plaintiffs Motion to Remand).

action. 28 U.S.C. § 1332; 13 B Wright, Miller & Cooper § 3611.  It is undisputed that at the commencement of this suit Plaintiff sued only Titan.  It is further undisputed that GBIC is a citizen of Texas.  As noted in its Notice of Removal, Titan is a corporation incorporated in the State of Illinois with its principal place of business in Quincy, Illinois. (See Affidavits of Cheri T. Holley and Jennifer L. Cramm Attached as exhibits 3 and 4)[2] The amount in controversy at issue in this matter far exceeds the required $75,000.00 exclusive of interests and costs.  Therefore, Titan has satisfied the requirements under 28 U.S.C. § 1332 and the Court properly has subject matter jurisdiction over this action.

Plaintiff did not sue Titan Texas at the commencement of the lawsuit and to date Titan Texas is not a party to the suit.  As a non-party, Titan Texas' citizenship cannot be used to defeat diversity.  See *Planters Growers, Inc v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250 (5th Cir. 1973)*.  Given that the Plaintiff decided not to sue Titan Texas, it may not now complain that Titan Texas' citizenship should be considered by this Court when weighing the jurisdictional question.  "There is no basis for the plaintiff to complain when federal jurisdiction is determined by the citizenship of only those parties which plaintiff has chosen to include in the lawsuit." *Id. at 252 citing Provident Tradesmens Bank & Trust Co., Adm'r v. Patterson, Adm'r, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) and Saint Paul Mercury Indemn. Co. v. Red Cab. Co., 303 U.S. 283, 58 S. Ct. 586, 82 L.Ed. 845 (9138)*.

---

[2] Attached as Exhibit 5 is a true and correct copy of the Articles of Incorporation of Can-Am Industries; Exhibit 6 is a true and correct copy of the Articles of Amendment for Can-Am Industries detailing name change to Titan Wheel International, Inc.; Exhibit 7 is a true and correct copy of the Articles of Amendment for Titan Wheel International, Inc. detailing name change to Titan International, Inc.

Because it is well settled that Courts only look to the citizenship of the named parties when determining if complete diversity exists, Plaintiff's "real party in interest" theory fails as a matter of law.

## V.

## Plaintiff's Arguments Analogizing this Matter to a Family Law or Probate Matter are Misplaced

In its next argument, Plaintiff asserts that despite the presence of complete diversity this Court should refrain from exercising jurisdiction because this lawsuit involves the enforcement of a contract provision which deals with real property. Because probate cases and family law cases sometimes involve property, Plaintiff concludes that this case falls into an exception to the diversity rule. (Plaintiffs Memorandum in Support of its Motion to Remand at 5). Not only does Plaintiff cite no authority to support the proposition that a commercial contract negotiated at arms length by sophisticated parties falls into the exception for probate and family law matters, this argument is based on an erroneous assumption. While courts do make narrow exceptions to the complete diversity rule, these exceptions are not predicated on the presence or absence of property in the lawsuit. Rather, Professors Wright, Miller and Cooper properly outline where diversity jurisdiction is applicable but deference is nonetheless paid to State courts. "This phenomenon has been explained on the ground that the two areas of the law involved are fields in which the states have an especially strong interest in the proper implementation of their policies and local courts have a well-developed competence." 13B Charles A.

Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §3609, 459-461 (1984).

It is obvious that this matter is neither a family law case nor a probate matter. According to Plaintiffs own motion, this case involves the determination of a reversion clause within a commercial contract which relates to certain land and improvements.

Plaintiff's final arguments regarding the equitable nature of the relief requested in the declaratory judgment at issue in this case are misplaced. In fact, this lawsuit is a declaratory judgment action to determine the nature of the provisions of a contract entered into by the Plaintiff and Defendant. There is no functional difference between this action and a declaratory judgment action between diverse parties who ask the court to construe an insurance contract. In fact, the Plaintiff could have filed this case as an original, affirmative matter in this very same Federal District and Division based upon diversity of citizenship. In such a scenario, the arguments related to opting out of jurisdiction based upon an analogy to a family law or probate matter would be met with the same skepticism as they should be met with in this case.

## VI.

### Conclusion

As mentioned earlier, the matter before the Court involves completely diverse parties and an amount in controversy which exceeds the minimum requirement of $75,000.00 exclusive of interest and costs. The Plaintiff, Greater Brownsville Incentives Corporation is a Texas resident. The Defendant, Titan International, Inc. is citizen of the State of Illinois with its principal place of business in Quincy, Illinois. Titan Texas is not a party to this lawsuit and therefore its citizenship cannot be considered in determining

diversity jurisdiction. Further, although the Plaintiff makes an attempt to analogize this case to matters which the Federal Courts have declined to exercise jurisdiction, the fact is that this case does not meet any of the criteria generally accepted for the exceptions. Because complete diversity of citizenship exists amongst the named parties and the case was properly removed, the Plaintiff's Motion to Remand should be denied.

**WHEREFORE PREMISES CONSIDERED,** Titan International, Inc. prays that Plaintiff's Motion to Remand be denied and for such other and further relief to which it shows itself justly entitled to receive.

Respectfully submitted,

MICHAEL RODRIGUEZ, P.L.L.C.
1000 East Madison Street
Brownsville, Texas 78520
Telephone: (956) 574-9333
Facsimile: (956) 574-9337

By: _____
        Michael Rodriguez
        State Bar No.00791553
        Federal I.D. No. 18759

## CERTIFICATE OF SERVICE

I hereby certify that a true copy and correct copy of this instrument has on January 28, 2004 been forwarded via certified mail, return receipt requested and via hand delivery to:

Brian G. Janis
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521
(956) 546-3731 telephone
(956) 546-3766 facsimile

James R. Goza
City Attorney, City of Brownsville, Texas
P.O. Box 911
Brownsville, Texas 78522
(956) 548-6011 telephone
(956) 546-4291 facsimile


Michael Rodriguez

THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §

### PROJECT AGREEMENT

THIS Project Agreement is made this 27th day of February, 1997 in Brownsville, Cameron County, Texas, between the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas non-profit corporation established pursuant to Article 5190.6 of the Texas Revised Civil Statutes, having a principal place of business at 1 Market Square, Brownsville, Cameron County, Texas 78522, and TITAN WHEEL INTERNATIONAL, INC., an Illinois business corporation, having a principal place of business at 2701 Spruce Street, Quincy, Adams County, Illinois 62301, regarding funding for the establishment of a tire manufacturing operation in Brownsville, as follows:

I.

### Use Of Funds

The proceeds provided by this Agreement are to be used by TITAN WHEEL INTERNATIONAL, INC. "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby," to be itemized in the schedules or plans for same to be provided to the GREATER BROWNSVILLE INCENTIVES CORPORATION, which Project is to be funded in part by the foregoing proceeds (the said funds having been "leveraged" to obtain additional funding for same).

II.

### Disbursement Of Funds

Such funds will be disbursed in accordance with the following provisions. Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., such that TITAN WHEEL INTERNATIONAL, INC., is required to create 500 "new jobs" (375 during the first year after construction of the facility for the "Project," 75 during the second year thereafter and 50 during the third year thereafter) over the term of this Agreement (as a condition to funding hereunder), the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following:

A - As a "Site Development Credit," the sum of $1,000,000.00, to be paid not in cash but in the form of a grant of a site (of

PROJECT AGREEMENT - PAGE 1

real property, up to 200 acres) north of Brownsville for use as a facility for this "project" (the "plant" for TITAN), such land to be acquired (at a closing to be conducted in the near future) by the GREATER BROWNSVILLE INCENTIVES CORPORATION, constituting part of the "site improvement expense" of TITAN WHEEL INTERNATIONAL, INC., at its new Brownsville area facility, as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the said Brownsville facility (as limited above);

B -  As a "Site Development Credit," the sum of $1,000,000.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of the (non-land acquisition) "site improvement expense" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above);

C -  As an additional "Site Development Credit," the sum of $460,001.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) a 1/4 mile access road, and (2) a facility parking lot, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), it being provided, however, that the sum of $692,862.00 will be paid directly to the Public Utilities Board (i.e., through the City Of Brownsville) for miscellaneous "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) extending water/sewer lines to the site, (2) the purchase of water rights, and (3) acreage charges, which is subject to reimbursement (to GBIC) on receipt of funds from pending grant applications under the auspices of the CITY OF BROWNSVILLE (with the U.S. Economic Development Administration);

D -  As yet an additional (and final) "Site Development Credit," the sum of $680,000.00 (or if less, the maximum cost of 240,000 cubic yards of dirt, as explained below), paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION,

EXHIBIT A
PAGE  2  OF  12  PAGES

for acquiring fill dirt (the local provider of which is to be identified publicly) to elevate the ground level and to provide a sufficient base for the construction of the buildings and improvements required for the contemplated manufacturing operation of TITAN WHEEL INTERNATIONAL, INC., in or near Brownsville, Texas (as limited above), noting further that the sum of $300,000.00 of the aforesaid sums (i.e., the "site development expenses" payable to TITAN hereunder) is to be paid, instead, to the CITY OF BROWNSVILLE for the "EDA Jose Escandon Road Project," which project is being funded by the CITY for the benefit of TITAN and is to involve some reimbursement or payment from the U.S. Economic Development Administration, and that TITAN must first expend its (own) budgeted funds ($50,000.00) for such fill dirt (and invoices for same must be provided to GBIC) before any of the said funds above (in this sub-paragraph) are expended, and moreover, while GBIC will pay for such fill dirt, it (and the CITY) is not responsible for problems or disputes involving quantity, quality, time of service or method of delivery, or the delivery (to the extent possible, the providers of fill dirt should be from Brownsville or its extraterritorial jurisdiction, for which TITAN will submit a signed contract for same, along with proof of all necessary permits for the site and a Texas Department Of Transportation [required] Traffic Control Plan);

E –  As a "Lease/Building Assistance Credit," the sum of $1,712,500.00, paid pro-rata (i.e., annually) over the three years of this Agreement referred to above, after construction of the said facility for the "Project," (i.e., $687,500.00, $737,500.00 and $287,500.00), reflecting the "lease expense" (or the equivalent of such expense to construct a building for manufacturing use) for facilities of TITAN WHEEL INTERNATIONAL, INC. (i.e., 50%, 35% and 20%), as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), during the said term of this Agreement, subject to the right to carryover funds not used in the first or second years to the third year; and

F –  As a "Job Creation Credit," the sum of $975,000.00, paid pro-rata (i.e., annually), in the sum of $780,000.00, $117,000.00 and $78,000.00, reflecting the amount which is TEN (10%) PER CENT of the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as

PROJECT AGREEMENT – PAGE 3

limited above), during the said three (3) years of this Agreement.

The maximum amount of reimbursement is not to exceed (for all credits hereunder) $13,040.73 per "new job created" at TITAN WHEEL INTERNATIONAL, INC. (in or near Brownsville, Texas only), during the term of this Agreement, in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, provided that the GREATER BROWNSVILLE INCENTIVES CORPORATION has first verified and approved the amount of the "site improvement expenses," the "lease/building expense" and the "annual non-principal wages," and the "new jobs created" are valid, continuous and in force for at least ninety (90) days -- as determined at the close of the second quarter of the relevant year -- which amounts are not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 (noting that $692,862.00 will be paid directly to the Public Utilities Board, by and through the City Of Brownsville), $680,000.00 (or if less, the cost of 240,000 cubic yards of dirt), $1,712,500.00 and $975,000.00, respectively, over the term of this Agreement (i.e., five years).'

The parties agree that in the event that TITAN WHEEL INTERNATIONAL, INC., discontinues operations or is dissolved or liquidated or no longer maintains a tire manufacturing operation in or near Brownsville, or if TITAN WHEEL INTERNATIONAL, INC., does not commence such construction within eleven (11) months, does not commence hiring and training for the plant within ten (10) months (involving Spend Skills Development Training dollars, which must be spent in Brownsville), or does not commence operations within two (2) years in or near Brownsville, from the date of execution of this Project Agreement (February 27, 1997), any properties or assets held by TITAN WHEEL INTERNATIONAL, INC., which were acquired with funds, in whole or in part (including such funds), provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION, shall revert to that CORPORATION (subject to any superior liens); to this extent, any properties or assets acquired by TITAN WHEEL INTERNATIONAL, INC., with funds, in whole or in part, provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION shall not be alienated, conveyed or transferred from TITAN WHEEL INTERNATIONAL, INC., without the prior authorization of the GREATER BROWNSVILLE INCENTIVES CORPORATION (except in the ordinary course of business), and, to avoid commingling or problems with tracing such funds, TITAN WHEEL INTERNATIONAL, INC., shall segregate, for accounting and other similar purposes, all funds (and properties) received from the GREATER BROWNSVILLE INCENTIVES CORPORATION and from other sources.

III.

## Consideration

In consideration of the establishment of a tire manufacturing operation in or near Brownsville, Cameron County, Texas, pursuant to this Agreement, which will create jobs, facilitate commerce and trade and improve the economic infrastructure and labor force of the area, thus enhancing economic development, the stated goal of the GREATER BROWNSVILLE INCENTIVES CORPORATION, said entity will finance, for the benefit of TITAN WHEEL INTERNATIONAL, INC., the said "Site Development Credits," "Lease/Building Assistance Credit" and "Job Creation Credit," to enable the initiation of a tire manufacturing operation in or near Brownsville, funding part of the "cost" of a "project" for economic development thereby, as such terms are described and defined in Article 5190.6 of the Texas Revised Civil Statutes, the said CORPORATION's authorizing legislation, same having been found by the said CORPORATION's Board Of Directors "to be required or suitable for the promotion of development and expansion of manufacturing and industrial facilities, ... distribution centers [etc.] ... ."

The foregoing credits are supplemented by other incentives provided by the State Of Texas and other entities, as reflected by the listing annexed hereto as Exhibit "A" and incorporated by reference herein (the total amount of incentives including the said credits), it being understood by the parties to this Project Agreement that the GREATER BROWNSVILLE INCENTIVES CORPORATION (and by extension, the CITY OF BROWNSVILLE) does not control the provision of such incentives (by the State Of Texas and other entities) and has no responsibility for the provision of same, as reflected by Paragraph XV. (and other provisions) of this Project Agreement.

IV.

## Performance Of Agreement

In providing a tire manufacturing operation in or near Brownsville, TITAN WHEEL INTERNATIONAL, INC., acting by and through its respective agents, will conduct itself in conformity with the requirements and standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION. To this extent, TITAN WHEEL INTERNATIONAL, INC., will perform all acts necessary to successfully fulfill the purpose of this Agreement and shall, at all times, faithfully, industriously and to the best of its abilities, experience and talents, perform all the duties that may be required of and from it pursuant to the express and implicit terms hereof and to the reasonable satisfaction of the GREATER BROWNSVILLE INCENTIVES CORPORATION.

PROJECT AGREEMENT - PAGE 5

In a manner calculated to achieve the goals of the GREATER BROWNSVILLE INCENTIVES CORPORATION in enhancing economic development and to maximize the value of the said CORPORATION's investments in various economic development projects, pursuant to the policies set by the CORPORATION's Board Of Directors from time to time, TITAN WHEEL INTERNATIONAL, INC., shall keep the said CORPORATION apprised of the status of the said Project, to insure compliance with this Agreement. To this extent, on a quarterly basis, TITAN WHEEL INTERNATIONAL, INC., shall prepare and send to the GREATER BROWNSVILLE INCENTIVES CORPORATION, by and through its Board Of Directors, a report showing the activities conducted pursuant to this Agreement during the preceding quarter and setting forth an accounting of funds received and expended pursuant to this Agreement during the preceding quarter, with each such report showing the cumulative expenses and revenues for the preceding quarter together with all prior quarters during the term of this Agreement, as well as "employment levels" for all such quarters.

TITAN WHEEL INTERNATIONAL, INC., shall have a "review" audit of all funds and activities of this Project prepared annually by a Certified Public Accountant (which auditor may be employed by the company), a copy of which shall be presented to the GREATER BROWNSVILLE INCENTIVES CORPORATION within ninety (90) days of the close of the said company's fiscal year, and further, the said company will provide a copy of its proposed and adopted budgets regarding this Project to the GREATER BROWNSVILLE INCENTIVES CORPORATION as soon as same can be (reasonably) forwarded to the CORPORATION. Additionally, the said company will make available for inspection, at a reasonable time and place, at the request of the CORPORATION, any or all of the said company's financial and payroll records as same relates to this Project, provided however, that all of such records will be deemed "confidential" and not released to third parties (pursuant to the Texas Open Records Act).

V.

Term Of Agreement

The term of this Agreement shall be five (5) years, commencing November 1, 1996 and ending October 31, 2001.

VI.

Termination

This Agreement may be terminated for cause (including the failure to comply with the requirements or standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION, or any action constituting a

PROJECT AGREEMENT - PAGE 6

EXHIBIT A
PAGE 6 OF 12 PAGES

breach of the terms of this Agreement) by either party, as appropriate, or by mutual agreement of the parties, or in the event of any occurrence (e.g., bankruptcy, dissolution or governmental action, as appropriate) precluding either party from performing the obligations contemplated under this Agreement. In the event of the termination of this Agreement for any reason prior to the expiration of the term of this Agreement, the parties shall be entitled to all compensation earned by them through the effective date of termination, as appropriate, and any remedies available at law or in equity, which rights and remedies shall survive the termination of this Agreement.

VII.

### Indemnity

TITAN WHEEL INTERNATIONAL, INC., shall indemnify, protect and hold harmless the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, from any and all liabilities, claims, demands, actions, losses, damages and costs, including all costs of defense thereof, of any nature whatsoever, for injury to or death of persons or loss or damage to property, or for any other reason, including economic or environmental loss of any kind, in any manner arising out of or connected with the performance of TITAN WHEEL INTERNATIONAL, INC., under this Agreement, or arising out of the execution of or performance (or non-performance) of this Agreement, and including claims and actions based upon the acts or omissions of TITAN WHEEL INTERNATIONAL, INC., or its shareholders, directors, officers, agents, employees, representatives, parents, subsidiaries, affiliates, related holding companies, successors, assigns and insurers.

Upon demand, TITAN WHEEL INTERNATIONAL, INC., shall, at its own expense, defend the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, against any and all such liabilities, claims, demands, actions, losses, damages and costs. Moreover, TITAN WHEEL INTERNATIONAL, INC., shall give the GREATER BROWNSVILLE INCENTIVES CORPORATION prompt notice of any claim within its knowledge that in any way, directly or indirectly, affects either party. Both parties shall have the right to participate in the defense of such claim to the extent of their interests.

VIII.

Insurance

Both parties agree to obtain insurance (to the extent available) in the type and amount deemed advisable to protect their respective interests. To this extent, the parties agree to provide insurance for their respective conveyances, equipment, facilities and instrumentalities, as appropriate.

IX.

Status Of Parties

The parties hereto shall not be construed to have the relationship of partners, joint venturers, principal-agent or employer-employee. The parties hereto are separate entities who enter into this Agreement for their respective benefit.

X.

Compliance With Law

The parties will act, at all times, in compliance with all pertinent and applicable laws.

XI.

Entire Agreement

This Agreement contains the entire agreement between the parties relating to the rights herein granted and the obligations herein assumed, and supersedes any prior understandings, representations, memorandums or agreements regarding the service relationship that is the subject of this Agreement. Any oral representations or modifications concerning this instrument shall be of no force or effect. This Agreement may be amended, provided that no amendment, modification or alteration of the terms of this Agreement shall be binding unless the same is in writing and duly executed by the parties hereto.

XII.

Law Governing; Venue

This Agreement shall be governed by and construed in accordance with the laws of the State Of Texas (and where applicable, the laws of the United States Of America), and, the

obligations and undertakings of each of the parties to this Agreement shall be performable in Cameron County, Texas.

## XIII.

### No Waiver

Any waiver by any party of any default under or breach of this Agreement shall not be construed as a continuing waiver of such default or breach, nor as a waiver of or permission for (express or implied) any other or subsequent default or breach.

## XIV.

### No Assignment

This Agreement shall not be assigned in whole or in part by either party without the consent and approval of the other party, set forth in writing and signed by both parties. Any assignee will be bound by the terms of this Agreement.

## XV.

### No Warranties Or Representations

The parties to this Agreement specifically acknowledge that the GREATER BROWNSVILLE INCENTIVES CORPORATION (or by extension, the CITY OF BROWNSVILLE) shall not be obligated to pay any funds to TITAN WHEEL INTERNATIONAL, INC., beyond the (contingent) payments contemplated by this Agreement, as set forth above, which are not to exceed the sum that is: $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00 (as set forth above) for the "site improvement expenses," $1,712,500.00 for the "lease/building expense" and $975,000.00 for the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., and/or the sum representing $13,040.73 per "new job created," in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION -- for the "Site Development Credits" (not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00, as set forth above), for the "Lease Assistance Credit" (not to exceed the sum of $1,712,500.00), and for the "Job Creation Credit" (not to exceed the sum of $975,000.00).

NO WARRANTY OR REPRESENTATION OF ADDITIONAL PAYMENTS OR FUNDING OR CREDIT OR THE EXTENSION OF CREDIT HAS BEEN MADE, IS BEING MADE OR WILL BE MADE BY THE GREATER BROWNSVILLE INCENTIVES CORPORATION (OR THE CITY OF BROWNSVILLE). FURTHERMORE, NO WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER IS BEING MADE BY THE

GREATER  BROWNSVILLE  INCENTIVES  CORPORATION  OR  TITAN  WHEEL
INTERNATIONAL,  INC.,  IN  CONNECTION  WITH  THE  EXECUTION  OR
PERFORMANCE OF THIS AGREEMENT, except to the extent set forth in
this instrument.

## XVI.

### Parties Bound

This Agreement shall be binding upon and inure to the benefit
of the parties to this Agreement and their respective heirs, legal
representatives, successors and assigns, as appropriate.

## XVII.

### Notices

Any notice to either party shall be sent by certified or
registered mail, addressed to the parties as set forth above, at
their respective addresses set forth above or such other address as
may be designated.

## XVIII.

### Invalidity

If any term, provision, covenant or condition of this
Agreement is held by a tribunal of competent jurisdiction to be
invalid, void or unenforceable, the remainder of the provisions of
this Agreement shall remain in full force and effect and shall in
no way be affected, impaired or invalidated. Moreover, it is the
intention of the parties to this Agreement that in lieu of each
clause or provision of this Agreement that is held to be invalid,
void or unenforceable, there be added as a part of this Agreement
a clause or provision as similar in terms to such invalid, void or
unenforceable clause or provision as may be feasible which shall
nevertheless be valid, legal and enforceable.

## XIX.

### Arbitration

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING
TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY
THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE
FEDERAL ARBITRATION ACT AND THE COMMERCIAL ARBITRATION RULES OF THE
AMERICAN ARBITRATION ASSOCIATION, USING ONE ARBITRATOR -- SUCH
ARBITRATION TO BE CONDUCTED IN BROWNSVILLE, CAMERON COUNTY, TEXAS,

PROJECT AGREEMENT - PAGE 10

IN THE ENGLISH LANGUAGE -- AND A JUDGMENT UPON THE AWARD RENDERED
BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION
THEREOF.

### XX.

### Attorney Fees

If any proceeding is initiated to resolve a dispute arising
under or relating to this Agreement by either of the parties
hereto, it is expressly agreed that the prevailing party shall be
entitled to recover from the other party reasonable attorney fees
and expenses in addition to any other relief that may be awarded.

### XXI.

### Construction Of Instrument

Each of the parties hereto have been represented by the
attorneys of their choice in the negotiation and drafting of this
Agreement.  Accordingly, this Agreement shall not be construed in
favor of either party.

### XXII.

### Authority

The parties to this Agreement, to-wit, TITAN WHEEL
INTERNATIONAL, INC., and the GREATER BROWNSVILLE INCENTIVES
CORPORATION, specifically warrant and represent that the
signatories below are authorized to act on behalf of the respective
party to this instrument, that the signatories have been
specifically authorized to execute this Project Agreement by said
parties in accordance with the requisite corporate formalities of
each such party, that the execution of this instrument by said
signatories constitutes the binding act of each such party to this
instrument and that the execution of this instrument and the
adoption of same by each party is authorized by law.

EXECUTED in duplicate (as revised) on the ‾7‾th‾ day of
November, 1997 at Brownsville, Cameron County, Texas.

GREATER BROWNSVILLE INCENTIVES
CORPORATION

BY: *Eduardo R̅W̅o R̅nd̅*

Eduardo R. Rodriguez, President

PROJECT AGREEMENT - PAGE 11

EXHIBIT A
PAGE _11_ OF _12_ PAGES

ATTEST:

_____
Irv Downing, Secretary


                              TITAN WHEEL INTERNATIONAL, INC.


                    BY: _____
                         Gary Carlson, Vice-President


ATTEST:

_____
Name: _____
Title: _____


PROJECT AGREEMENT - PAGE 12

EXHIBIT A
PAGE _12_ OF _12_ PAGES

## SPECIAL WARRANTY DEED

Date:    November __14__ , 1996        EFFECTIVE DATE:  February 28, 1997

Grantor:  GREATER BROWNSVILLE INCENTIVES CORPORATION,
          a Texas Non-Profit Corporation

Grantor's Mailing Address (including county):

          City Hall, Market Square, Brownsville, Texas    78520
          CAMERON County

Grantee:  TITAN WHEEL INTERNATIONAL, INC.,
          an Illinois Business Corporation

Grantee's Mailing Address (including County):

          2701 Spruce Street, Quincy, Illinois    62301
          ADAMS County

CONSIDERATION:  IN ACCORDANCE WITH PROJECT AGREEMENT BY AND
                BETWEEN GRANTOR AND GRANTEE OF EVEN DATE HEREWITH

PROPERTY (including any improvements):

          BEING a 192.634 acre tract out of a "Parcel One", "Tracts
          1, 2, and 3 of Parcel Two" and "Parcel Four" as described
          in a Deed from Norwill, Incorporated to Henry A. Willms,
          John F. Willms, Gary A. Willms and Myra Foster.  Said
          Deed is recorded in Volume 2200, Page 92 of the Deed
          Records of Cameron County, Texas.  Said 192.634 acre
          tract being more particularly described on the Exhibit
          "A" attached hereto and made a part hereof.

          SAVE & EXCEPT there is hereby reserved a 100' wide strip
          along the South Boundary line for possible future
          dedication to the City of Brownsville for Jose Escandon
          Road.  In the event that said 100' wide strip is not
          dedicated for said purpose on or before twenty five (25)
          years from date hereof, this reservation shall lapse.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

          This conveyance is made and accepted subject to any and all
          restrictions, covenants, conditions, easements, mineral and
          royalty reservations, zoning laws, leases, regulations and
          ordinances of municipal and other governmental authorities, if
          any, and only to the extent that same are still in effect,
          shown of record in Cameron County, Texas; together with any
          and all visible and apparent easements, to include but not
          limited to easements for roadways on or across the land.

TAX ROLL-BACK:

          If Grantee's use of the property hereafter results in the
          assessment of additional taxes for periods prior to date
          hereof such additional taxes shall be the obligation of
          Grantee.

DISCLAIMER OF REPRESENTATIONS AND WARRANTIES:

          GRANTOR HAS NOT MADE AND HEREBY SPECIFICALLY DISCLAIMS ANY
          WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST,
          PRESENT, FUTURE, AS TO, OR CONCERNING (i) THE NATURE AND
          CONDITION OF THE PROPERTY, INCLUDING BUT NOT BY WAY OF
          LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY
          THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY
          ELECT TO CONDUCT THEREON, (ii) THE MANNER, CONSTRUCTION,
          CONDITION, AND STATE OF REPAIR OR LACK OF REPAIR OF ANY OF THE
          PROPERTY, (iii) EXCEPT FOR ANY WARRANTIES CONTAINED IN THE
          DEED, THE NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE,

POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHERWISE, AND (iv) THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY GOVERNMENT OF OTHER BODY, GRANTEE HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT GRANTEE HAS THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY GRANTEE IN ORDER TO ENABLE GRANTEE TO EVALUATE THE PURCHASE OF THE PROPERTY. GRANTEE HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT GRANTEE IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PROPERTY "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS AND GRANTEE EXPRESSLY ACKNOWLEDGES THAT IN CONSIDERATION OF THE AGREEMENT OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE IN RESPECT OF THE PROPERTY. IT IS FURTHER AGREED THAT GRANTOR HAS NOT WARRANTED, AND DOES NOT HEREBY WARRANT, THAT THE PROPERTY OR ANY IMPROVEMENTS LOCATED THEREON NOW OR IN THE FUTURE WILL MEET OR COMPLY WITH THE REQUIREMENTS OF ANY SAFETY CODE OR REGULATION OF THE STATE OF TEXAS, THE CITY WHERE THE PROPERTY IS LOCATED, THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ANY OTHER AUTHORITY OR JURISDICTION. IT IS FURTHER AGREED THAT GRANTOR DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING SOLID WASTE, AS DEFINED IN THE TEXAS SOLID WASTE DISPOSAL ACT AND THE REGULATIONS ADOPTED THEREUNDER OR THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, THE DISPOSAL OR EXISTENCE IN, OR EMANATING FROM THE PROPERTY, OR ANY HAZARDOUS SUBSTANCE, AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER. GRANTEE HEREBY ASSUMES ALL RISKS (SPECIAL, DIRECT, INDIRECT, CONSEQUENTIAL, OR OTHER DAMAGES) RESULTING OR ARISING FROM OR RELATING TO THE OWNERSHIP, USE, CONDITION, LOCATION, MAINTENANCE, REPAIR OR OPERATION OF THE PROPERTY.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor's heirs, executors, administrators and successors are hereby bound to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty, by, through or under Grantor, but not otherwise.

When the context requires, singular nouns and pronouns include the plural.

GREATER BROWNSVILLE INCENTIVES CORPORATION

by _____
DONALD G. JOHNSON
Chairman of the Board

**ACKNOWLEDGMENT**

STATE OF TEXAS
COUNTY OF CAMERON

     This instrument was acknowledged before me on February 28, 1997, by DONALD G. JOHNSON, Chairman of the Board of GREATER BROWNSVILLE INCENTIVES CORPORATION.



_____
Notary Public, State of TEXAS


AFTER RECORDING RETURN TO:
TITAN WHEEL INTERNATIONAL, INC.
2701 Spruce Street
Quincy, Illinois  62301

PREPARED IN THE OFFICE OF:
MICHELE SANCHEZ, P.C.
717 North Expressway 83
Brownsville, Texas  78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | |
| CORPORATION, | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § | |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

## AFFIDAVIT OF CHERI T. HOLLEY

Before me, the undersigned notary, on this day, personally appeared Cheri T. Holley, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

1.      "My name is Cheri T. Holley; I serve as General Counsel for Titan International, Inc. The business address for Titan International, Inc. is 2701 Spruce Street, Quincy, Illinois 62301. I am over the age of 18 and have never been convicted of a felony. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.      I have reviewed the true and correct copies of the Articles of Incorporation and Amendments to the Articles of Incorporation of Can-Am Industries Inc., Titan Wheel International, Inc. and Titan International, Inc., which were copied from the original Articles of Incorporation and Amendments maintained in Titan International, Inc.'s, corporate minute book and attached to Titan International, Inc.'s Response to the Greater Brownsville Incentives Corporation's Motion to Remand.

3.      I have personal knowledge of the corporate structure of Titan International, Inc., and the geographic location of the offices of Titan International, Inc. and other offices of Titan International, Inc. I also have personal knowledge of the business conducted by Titan International,

Exhibit
3

Inc.

4.     Can-Am Industries Inc. was incorporated on March 21, 1983, under the laws of the State of Illinois.  Can-Am Industries Inc. changed its name to Titan Wheel International, Inc. on November 23, 1988, pursuant to the laws of the State of Illinois.

5.     Titan Wheel International, Inc. changed its name to Titan International, Inc. on May 22, 1997, pursuant to the laws of the State of Illinois.

6.     Titan International, Inc. either as Can-Am Industries, Inc. or Titan Wheel International, Inc. has always been a corporation duly authorized and incorporated under the laws of the State of Illinois.  At no time has Titan International, Inc. ever been incorporated under the laws of the State of Texas.

7.     Titan International, Inc. maintains its principle place of business in Quincy, Illinois.


FURTHER AFFIANT SAYETH NOT:

Dated: _1/27/04_ _____

_____
Cheri T. Holley

STATE OF ILLINOIS        )
                                       ) SS.
COUNTY OF ADAMS       )

     Subscribed and sworn to before me, the undersigned Notary Public, this 27th day of January, 2004.

_____
Notary Public

"OFFICIAL SEAL"
CHERYL A. LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2004

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | |
| CORPORATION, | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § | |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

## AFFIDAVIT OF JENNIFER L. CRAMM

Before me, the undersigned notary, on this day, personally appeared Jennifer L. Cramm, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

1.    "My name is Jennifer L. Cramm; I am employed at Titan International, Inc., in the position of Paralegal. My business address is 2701 Spruce Street, Quincy, Illinois 62301. I am over the age of 18 and have never been convicted of a felony. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    Attached are true and correct copies of the Articles of Incorporation and Amendments to the Articles of Incorporation of Can-Am Industries Inc., Titan Wheel International, Inc. and Titan International, Inc., which were copied from the original Articles of Incorporation and Amendments maintained in Titan International, Inc.'s, corporate minute book.

FURTHER AFFIANT SAYETH NOT:

Exhibit
4

Dated: _____1/27/04_____          _____
                                      Jennifer L. Cramm

STATE OF ILLINOIS          )
                           ) SS.
COUNTY OF ADAMS            )

     Subscribed and sworn to before me, the undersigned Notary Public, this 27th day of January, 2004.

                                      _____
                                      Notary Public

"OFFICIAL SEAL"
CHERYL A. LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2004

File Number _____ 5303-536



## STATE OF ILLINOIS
### OFFICE OF
### THE SECRETARY OF STATE

### To all to whom these Presents Shall Come, Greeting:

**Whereas,**   ARTICLES OF INCORPORATION, of

CAN-AM INDUSTRIES INCORPORATED

incorporated under the laws of the State of ILLINOIS have been filed
in the Office of the Secretary of State, as provided by The "Business
Corporation Act" of Illinois, in force July 13, A.D. 1933.

*Now Therefore, I, Jim Edgar, Secretary of State of the State
of Illinois, by virtue of the powers vested in me by law, do hereby
issue this certificate and attach hereto a copy of the Application
of the aforesaid corporation.*

**In Testimony Whereof,** *I hereto set my hand, and cause to
be affixed the Great Seal of the State of Illinois,
at the City of Springfield, this 21st
day of March AD 1983 and
of the Independence of the United States
the two hundred and 7th*

(SEAL)



Jim Edgar

SECRETARY OF STATE

Exhibit
5

**FORM BCA-47**                    **ARTICLES OF INCORPORATION**

Filing Requirements — Present 2 originally signed and
fully executed copies in exact duplicate

For Inserts — Use White Paper — Size 8½ x 11

*(Do not write in this space)*
Date Paid    3/21/83
Initial License Fee    $  5.00
Franchise Tax    $ 25.00
Filing Fee    $ 75.00

Clerk                    $ 105.00

**TO:  JIM EDGAR, Secretary of State**

I/We, the incorporator(s), being one or more natural persons of the age of twenty-one years or more or a corporation for the purpose of forming a corporation under "The Business Corporation Act" of the State of Illinois, do hereby adopt the following Articles of Incorporation:

**ARTICLE ONE**    The name of the corporation is:   Can-Am Industries Incorporated

**ARTICLE TWO**    The name and address of the initial registered agent and registered office are:
Registered Agent    Arthur    N.    Martin

| First Name | Middle Name | Last Name |

Registered Office    Jenner & Block, One IBM Plaza, Suite 4400

| Number | Street | (Do not use P.O. Box) | Suite # |

Chicago,    60611    Cook

| City | Zip Code | County |

**ARTICLE THREE**  The duration of the corporation is ☒ perpetual OR _____ years.

**ARTICLE FOUR**   The purposes for which the corporation is organized are:

To manufacture and sell agricultural and earthmoving equipment steel wheels. To own, acquire, buy, sell, mortgage or otherwise deal in real estate and any interest of any kind therein. To make and perform and carry out contracts of every kind and description. To carry on any other lawful business authorized for a corporation under the Business Corporation Act of Illinois.

**ARTICLE FIVE**   Paragraph 1:   The number of shares which the corporation shall be authorized to issue, itemized by class, series and par value, if any, is

| Class | Series | *Par Value per share | Number of shares authorized |
|-------|--------|----------------------|-----------------------------|
| Common |       | $1.00                | 100,000                     |
|       |        |                      |                             |
|       |        |                      |                             |

Paragraph 2:   The preferences, qualifications, limitations, restrictions and the special or relative rights in respect of the shares of each class are:

None

**ARTICLE SIX**    The number of shares which the corporation proposes to issue without further report to the Secretary of State, itemized by class, series, and par value, if any, and the consideration to be received by the corporation therefor *(expressed in dollars)* are:

| Class | Series | *Par Value per share | Number of shares to be issued | Total consideration to be received therefor |
|-------|--------|----------------------|-------------------------------|---------------------------------------------|
| Common |       | $1.00                | 10,000                        | $ 10,000                                    |
|       |        |                      |                               | $                                           |
|       |        |                      |                               | $                                           |
|       |        |                      |                               | $                                           |

*(Use NPV if no Par Value)                    Total    $  10,000

**FILED**

PLEASE TYPE OR PRINT CLEARLY — FILING DEADLINE IS   PRIOR TO 03/01/86

**RETURN TO:**

Corporation Department
Secretary of State
Springfield, IL. 62756
Telephone (217) 782-780

APR 30 1986

**STATE OF ILLINOIS**
**DOMESTIC CORPORATION ANNUAL REPORT**

YEAR OF 1986

D 5303-538-8
CORPORATION
FILE NO.

Federal Employer
Identification Number
(FEIN)

Secretary of State
Corporation Department

1.)

CAN-AM INDUSTRIES INCORPORATED
% JAY LUNZER                      041984
2701 SPRUCE ST
QUINCY, IL. 62301-0000

1 1 3 6   1   3 4 0 2

**FILED**

MAR 31 1986

**JIM EDGAR**
**Secretary of State**

2.)        FOR CHANGES ONLY

3.) Date Incorporated 03/21/1983 Period of duration PERPETUAL
Give complete address of principal office:   (if not perpetual)

_T. W. BENDORF_
Registered Agent

_____
Registered Office · Street Address

_____
City, County, IL   Zip Code

4.) The names and addresses of the officers and directors are: (If officers are directors, so state.)

| NAME | OFFICE | NUMBER & STREET | CITY | STATE | ZIP |
|------|--------|-----------------|------|-------|-----|
| Joseph Tanenbaum | President | 1051 Tapscott Rd. | Scarborough, | Ontario, | Canada M1X1A1 |
| Reuben Botnick | Secretary | 1051 Tapscott Rd. | Scarborough, | Ontario, | Canada M1X1A1 |
| Joseph Tanenbaum | Treasurer | 1051 Tapscott Rd. | Scarborough, | Ontario, | Canada M1X1A1 |
| Joseph Tanenbaum | Director | 1051 Tapscott Rd. | Scarborough, | Ontario, | Canada M1X1A1 |
| Joseph Tanenbaum | Director | 1051 Tapscott Rd. | Scarborough, | Ontario, | Canada M1X1A1 |
|  | Director |  |  |  |  |
|  | Director |  |  |  |  |
|  | Director |  |  |  |  |

5.) The type of business actually conducted in Illinois is: **manufacturing and sale of steel wheels, rims and related products.**

6.) Number of shares authorized and issued (as of 12/31/85 )

| CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
|-------|--------|-----------|-------------------|---------------|
| Common | None | 1.00 | 100,000 | 10,000 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

7a.) The amount of paid-in capital as of
12/31/85   is:

PAID-IN CAPITAL  $ _____

7b.) The Taxable Capital on record with
the Secretary of State is:

TOTAL  $ _____ 1 500 000

## THIS REPORT MUST BE SIGNED

8.) By _J. Tanenbaum_        PRES. 3/ /86
(Any Authorized Officer's Signature)   (Title)   (Date)
(Pres. or V. Pres. required if changes listed in 2)

Attest _____   SECRETARY 4/17/86
(Secretary's or ass't. Secretary's Signature   (Title)   (Date)
required only if changes listed in 2)

Under the penalty of perjury and as an authorized officer, I declare that this annual report and, if applicable, the statement of change of registered agent and/or office, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct, and complete.

**ARTICLE SEVEN** The corporation will not commence business until at least one thousand dollars has been received as consideration for the issuance of shares.

**ARTICLE EIGHT** The number of directors to be elected at the first meeting of the shareholders is ⬜ 1 .

**ARTICLE NINE** *(Complete EITHER A or B)*

☒　　A.  All the property of the corporation is to be located in this State and all of its business is to be transacted at or from places of business in this State, or the incorporator(s) elect to pay the initial franchise tax on the basis of the entire consideration to be received for the issuance of shares.

☐　　B.  Paragraph 1:  It is estimated that the value of all property to be owned by the corporation for the following year wherever located will be　$ _____
Paragraph 2:  It is estimated that the value of the property to be located within the State of Illinois during the following year will be:　$ _____
Paragraph 3:  It is estimated that the gross amount of business which will be transacted by the corporation during the following year will be　$ _____
Paragraph 4:  It is estimated that the gross amount of business which will be transacted at or from places of business in the State of Illinois during the following year will be:　$ _____

I/WE the incorporator(s) declare that I/we have examined the foregoing Articles of Incorporation and that the statements contained therein are, to the best of my/our knowledge and belief, true, correct and complete. Executed this ___18th___ day of ___March___ , 19 _83_.

*(Signatures must be in ink. Carbon copy, xerox or rubber stamp signatures are not acceptable.)*

**NOTE:** If a corporation acts as incorporator the name of the corporation and the state of incorporation shall be shown and the execution must be by its President or Vice-President and verified by him, and the corporate seal shall be affixed and attested by its Secretary or an Assistant Secretary.

Signature and Names

1.  *Jose M. Sariego*
Signature
Jose M. Sariego
Name (please print)

2.  _____
Signature
_____
Name (please print)

3.  _____
Signature
_____
Name (please print)

Post Office Address

1.  Jenner & Block, One IBM Plaza
Street
Chicago, Illinois   60611
City/Town　　State　　Zip

2.  _____
Street
_____
City/Town　　State　　Zip

3.  _____
Street
_____
City/Town　　State　　Zip

FORM BCA-47

ARTICLES OF INCORPORATION
under the
BUSINESS CORPORATION ACT

For determination of Proper Fees please consult The Business Corporation Act.

PAID
APR - 1 1983

FILED
MAR 21 1983
JIM EDGAR
Secretary of State

RETURN TO:

Corporation Department
Secretary of State
Springfield, Illinois 62756
Telephone (217) 782-4961

C-162.7



**BCA-10.30** *(Form Rev. Jan. 1986)*

*Submit in Duplicate*

*Remit payment in Check or Money Order, payable to "Secretary of State".*

**DO NOT SEND CASH!**

**JIM EDGAR
Secretary of State
State of Illinois**

**ARTICLES OF AMENDMENT**

**File #**

| This Space For Use By Secretary of State | |
|---|---|
| Date | 11-23-88 |
| License Fee | $ |
| Franchise Tax | $ 25 |
| Filing Fee | $ |
| Clerk | MH |

Pursuant to the provisions of "The Business Corporation Act of 1983", the undersigned corporation hereby adopts these Articles of Amendment to its Articles of Incorporation.

**ARTICLE ONE**  The name of the corporation is <u>Can-Am Industries Incorporated</u>

_____ *(Note 1)*

**ARTICLE TWO**  The following amendment of the Articles of Incorporation was adopted on <u>October 5</u> ,

19 <u>88</u> in the manner indicated below. ("X" one box only.)

☐ By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors have been elected; or by a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares as of the time of adoption of this amendment; *(Note 2)*

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder action not being required for the adoption of the amendment; *(Note 3)*

☐ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required by statute and by the articles of incorporation were voted in favor of the amendment; *(Note 4)*

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who have not consented in writing have been given notice in accordance with Section 7.10; *(Note 4)*

☒ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors have been duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote on this amendment. *(Note 4)*

*(INSERT AMENDMENT)*

*(Any article being amended is required to be set forth in its entirety.) (Suggested language for an amendment to change the corporate name is: RESOLVED, that the Articles of Incorporation be amended to read as follows:)* The name of the

corporation shall henceforth be as follows:

<u>Titan Wheel International, Inc.</u>

**(NEW NAME)**

_____

All changes other than name, include on page 2

*(over)*

Exhibit
6

## Page 3

**ARTICLE THREE** The manner in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: (*If not applicable, insert "No change"*)

No Change

**ARTICLE FOUR** (a) The manner in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid in Surplus and is equal to the total of these accounts) is as follows: (*If not applicable, insert "No change"*)

No Change

(b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: (*If not applicable, insert "No change"*)

No Change

| | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $_____ | $_____ |

**(Complete either Item 1 or 2 below)**

**(1)** The undersigned corporation has caused these articles to be signed by its duly authorized officers, each of whom affirm, under penalties of perjury, that the facts stated herein are true.

65803          APR 3 1989

8:35 ᵐ

Name _____

Name _____

Can-Am Industries Incorporated
*(Exact Name of Corporation)*

by x _J Tanenbaum_
*(Signature of President or Vice President)*

etary    Joseph Tanenbaum, President
*(Type or Print Name and Title)*

STATE OF ILLINOIS,   }
Adams County         }  ss.   No. 65803
                           Recorder's Office

I, Charles E. (Charlie) Williams,
Recorder within and for the County and State aforesaid,
do hereby certify that the within and foregoing instrument of writing was filed for

record on the ___3rd___ day of

___April___ A. D. 19 89

at 8:35 o'clock A. M., and duly recorded in

Volume 26 of Corps.

on Page 636

IN TESTIMONY WHEREOF, I have hereunto set my
hand the day and year aforesaid.

_____ , Recorder

By _____ , Deputy

the incorporators must sign below.

OR

re no officers, then a majority of the directors or such directors as

hat the facts stated herein are true.

FILE
NOV 23 1988
JIM EDGAR
Secretary of State

88-21002

65S03

## NOTES and INSTRUCTIONS

**NOTE 1:** State the true exact corporate name as it appears on the records of the office of the Secretary of State, BEFORE any amendments herein reported.

**NOTE 2:** Incorporators are permitted to adopt amendments ONLY before any shares have been issued and before any directors have been named or elected.
(§ 10.10)

**NOTE 3:** Directors may adopt amendments without shareholder approval in only six instances, as follows:
(a) to remove the names and addresses of directors named in the articles of incorporation;
(b) to remove the name and address of the initial registered agent and registered office, provided a statement pursuant to § 5.10 is also filed;
(c) to split the issued whole shares and unissued authorized shares by multiplying them by a whole number, so long as no class or series is adversely affected thereby;
(d) to change the corporate name by substituting the word "corporation", "incorporated", "company", "limited", or the abbreviation "corp.", "inc.", "co.", or "ltd." for a similar word or abbreviation in the name, or by adding a geographical attribution to the name;
(e) to reduce the authorized shares of any class pursuant to a cancellation statement filed in accordance with § 9.05.
(f) to restate the articles of incorporation as currently amended.
(§ 10.15)

**NOTE:** All amendments not adopted under § 10.10 or § 10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

Shareholder approval may be (1) by vote at a shareholders' meeting (either annual or special) or (2) by consent, in writing, without a meeting.

To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least 2/3 of the outstanding shares entitled to vote on the amendment (but if class voting applies, then also at least a 2/3 vote within each class is required).

The articles of incorporation may supersede the 2/3 vote requirement by specifying any larger or smaller vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies.
(§ 10.20)

**NOTE:** When shareholder approval is by written consent, all shareholders must be given notice of the proposed amendment at least 5 days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment. (§§ 7.10 & 10.20)

Page 4

ARTICLES OF AMENDMENT

Filing Fee $25.00

Filing Fee for Re-Stated Articles $100.00

PAID
NOV 3 0 1988

FILED
NOV 2 8 1988
JIM EDGAR
Secretary of State

Prepared by: P. Lippincott

RETURN TO:

Corporation/Department
/Secretary of State
105 - 7th Street
Springfield, Illinois 62756
Telephone 217 - 782-6961

McGehee, Boling, Whitmire & Olson, Ltd.
105 - 7th Street
Suite A
(309) 755-5096

Form BCA-10.30/10.35

File No.



File Number    5303-538-8

FILED
ADAMS COUNTY
STATE OF ILLINOIS

059085

VOLUME _27_
OF _Corp._
PAGE _939_

1997 MAY 29 P 3: 50

COUNTY RECORDER

# State of Illinois
## Office of
## The Secretary of State

Schmiedeskamp, Robertson

**Whereas,** ARTICLES OF AMENDMENT TO THE ARTICLES OF
INCORPORATION OF
TITAN WHEEL INTERNATIONAL, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

Now Therefore, I, George H. Ryan, Secretary of State of the State of
Illinois, by virtue of the powers vested in me by law, do hereby issue
this certificate and attach hereto a copy of the Application of the
aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be
affixed the Great Seal of the State of Illinois,
at the City of Springfield, this 22ND
day of MAY A.D. 19 97 and of
the Independence of the United States the two
hundred and 21ST

George H Ryan

Secretary of State

C-212.2

Exhibit
7

Form **BCA-10.30**
(Rev. Jan. 1995)

**ARTICLES OF AMENDMENT**

File # 5303 - 538 - 1

George H. Ryan
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-1832

# FILED

MAY 22 1997

GEORGE H. RYAN
SECRETARY OF STATE

Remit payment in check or money
order, payable to "Secretary of State."

*The filing fee for articles of
amendment - $25.00

**SUBMIT IN DUPLICATE**

This space for use by
Secretary of State

Date 05-22-97

Franchise Tax    $
Filing Fee*      $25.00
Penalty          $
Approved: ∿∿

1.  **CORPORATE NAME:**  Titan Wheel International, Inc.

(Note 1)

2.  **MANNER OF ADOPTION OF AMENDMENT:**

The following amendment of the Articles of Incorporation was adopted on ___May 22,___ ,

19 _97_ in the manner indicated below. ( "X" one box only)

[ ] By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors have been elected;

(Note 2)

[ ] By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares as of the time of adoption of this amendment;

(Note 2)

[ ] By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder action not being required for the adoption of the amendment;

(Note 3)

[x] By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required by statute and by the articles of incorporation were voted in favor of the amendment;

(Note 4)

[ ] By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who have not consented in writing have been given notice in accordance with Section 7.10;

(Notes 4 & 5)

[ ] By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote on this amendment.

(Note 5)

3.  **TEXT OF AMENDMENT:**

a.  When amendment effects a name change, insert the new corporate name below. Use Page 2 for all other amendments.

Article I: The name of the corporation is:

**EXPEDITED**

Titan International, Inc.

(NEW NAME)

MAY 22 1997

**SECRETARY OF STATE**

All changes other than name, include on page 2
(over)

## Text of Amendment

b. *(If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety. If there is not sufficient space to do so, add one or more sheets of this size.)*

4.    The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

              No Change

5.    (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

              No Change

    (b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")*

              No Change

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $_____ | $_____ |

**(Complete either Item 6 or 7 below. All signatures must be in <u>BLACK INK</u>.)**

6.    The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirms, under penalties of perjury, that the facts stated herein are true.

Dated    May 22,      , 19 97    Titan Wheel International, Inc.
                                          *(Exact Name of Corporation at date of execution)*

attested by                         by
    *(Signature of Secretary or Assistant Secretary)*      *(Signature of President or Vice President)*
      Cheri T. Holley, Secretary    Maurice M. Taylor, Jr., President
        *(Type or Print Name and Title)*        *(Type or Print Name and Title)*

7.    If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

                        **OR**

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

Dated _____, 19 ____