Case 1:03-cv-00224   Document 23   Filed in TXSD on 07/09/2004   Page 1 of 8

United States District Court
Southern District of Texas
FILED

JUL 0 9 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES CORPORATION, § § | CIVIL ACTION | |
| Plaintiff § § | | |
| VS. § | NO. B-03-224 | |
| § | | |
| TITAN INTERNATIONAL, INC., § | | |
| Defendant § | | |

### AFFIDAVIT OF ARNOLD BENSON

THE STATE OF TEXAS         §
                           §
COUNTY OF CAMERON          §

BEFORE ME, the undersigned authority, on this day personally appeared ARNOLD BENSON, known to me, and being by me duly sworn, deposed and said on his oath that:

1 -  I am of the age of majority, of sound mind and capable of making this Affidavit.

2 -  I am personally acquainted with the facts stated in this Affidavit.

3 -  I submit this Affidavit in support of the foregoing Motion For Summary Judgment filed in this action on behalf of GREATER BROWNSVILLE INCENTIVES CORPORATION (GBIC).

4 -  At all material times, I was (and am) the President of the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas economic development corporation, hereinafter referred to as "GBIC," which expends public funds it receives (from city sales taxes) for economic development purposes (and projects), and I am authorized to act on behalf of GBIC in this matter.

5 -  GBIC filed a suit for declaratory relief (only) in state district court regarding a certain (economic development) Project Agreement (contract) with and a related Deed to Defendant, TITAN INTERNATIONAL, INC., hereinafter referred to as "TITAN," previously known as "TITAN WHEEL INTERNATIONAL, INC.," as set forth in Plaintiff's Original Petition filed in

the 107th Judicial District Court of Cameron County, Texas, and docketed as Cause No. 2003-11-5493-A (having the same style as set forth in the caption above).

6 - As set forth in detail in that Petition, and in the foregoing Motion For Summary Judgment, the GBIC is an economic development corporation created under Texas (statutory) law that enters into project agreements with various business concerns, almost always to create jobs, in consideration for certain incentives (such as building/lease assistance and/or site development funding).

7 - In this instance, GBIC and TITAN entered into a Project Agreement, which involved the funding of millions of dollars for the establishment by TITAN of a tire manufacturing operation in or near Brownsville, which was anticipated to enhance economic development and to create 500 jobs; a copy of the Project Agreement was filed with the Court as Exhibit 2 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment.

8 - A large part of the funds paid for by GBIC was for the purchase of the land -- as reflected by a Special Warranty Deed from GBIC, a copy of which was filed with the Court as Exhibit 4 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, conveying the land to TITAN, pursuant to the Project Agreement -- and site improvements and/or construction of the facility to operate the tire manufacturing plant of TITAN in Brownsville.

9 - However, TITAN created no more that 122 jobs at the Brownsville facility, resulting in an overpayment by GBIC, and a claim letter being submitted to TITAN by GBIC, a copy of which was filed with the Court as Exhibit 1 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, advising TITAN of the situation.

10 - As part of the Project Agreement, particularly Subparagraph A. of Paragraph II., one of the incentives to be paid to TITAN by GBIC was a "Site Development Credit" in the sum of $1,000,000.00, which was not paid in cash as such but in the form of a grant (i.e., conveyance) of a site to locate the facility needed for this project.

11 - This site (land), of up to two-hundred acres north of Brownsville, to locate the facility for this project (the

"plant" of TITAN) in or near Brownsville, was acquired (i.e., paid for) by GBIC as a "site improvement expense."

12 - Subsequently, a Special Warranty Deed (Exhibit 4), dated November 14, 1996, was executed by GBIC in favor of TITAN, with an effective date of February 28, 1997, pursuant to the said Project Agreement.

13 - The Deed indicates that the consideration given "is in accordance with [the] Project Agreement by and between [the] Grantor and Grantee" (i.e., GBIC and TITAN), and involved the conveyance of 192 acres (more or less), to provide a site for the construction and operation of the said tire manufacturing facility (of TITAN) in or near Brownsville.

14 - Under the Project Agreement, which explicitly refers to a conveyance of land by GBIC for the use of TITAN, as evidenced by the Special Warranty Deed, the land was granted, sold and conveyed to TITAN by GBIC. However, this conveyance is <u>subject to</u> other provisions of the said Project Agreement, such as the third (unnumbered) subparagraph of Paragraph II. (entitled "Disbursement Of Funds"), at Page 4 of the Agreement.

15 - As set forth in the Petition, the Motion For Summary Judgment and the Project Agreement itself (at Paragraph II., as referred to in Paragraph 14 above), there is a provision in that contract that was <u>agreed to by the parties</u>, to the effect that <u>if</u> TITAN discontinued its "operations or ... no longer maintains a tire manufacturing operation in or near Brownsville ..." at any time after the execution of the "Agreement (February 27, 1997), any properties or assets held by TITAN ... acquired with funds, in whole or in part (including such funds), provided by" GBIC, "shall revert" to GBIC.

16 - According to information received by GBIC, including but not limited to a press release to this effect, a copy of which (the press release) was filed with the Court as Exhibit 3 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, TITAN publicly announced that its tire manufacturing operation in Brownsville would be consolidated (with all of its tire manufacturing operations) into its principal tire facility located in Des Moines, Iowa.

17 - This press release was augmented by a recent advertisement that appeared in The Brownsville Herald reflecting that "limited quantities" of tires could be purchased, as part of

a "year end inventory liquidation," at the TITAN facility in Brownsville, a copy of which (the advertisement) was filed with the Court as Exhibit 5 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment.

18 - As such, TITAN <u>discontinued</u> its operations in Brownsville and "no longer maintains a tire manufacturing operation in or near Brownsville" (as is set forth in the provision above [referred to in Paragraph 15]).

19 - Thus, two of the reasons (or contingencies) to invoke the said provision (in Paragraph II. of the Project Agreement) have occurred, and therefore the land conveyed by GBIC to TITAN (subject to the said condition), and the improvements thereon (to the extent same has also been financed by GBIC), has <u>reverted</u> to GBIC, under and pursuant to the Project Agreement.

20 - Therefore, GBIC, as set forth in the said claim letter, invoked the reversion clause and sought the return of the land (which "shall revert," according to that clause) it purchased for TITAN and that portion of the improvements thereon paid for by GBIC.

21 - In that TITAN did not respond to the said claim letter by acknowledging the reversion clause or that the reversion clause was activated by TITAN's action to discontinue its operations in Brownsville, it became apparent that TITAN was not going to honor its obligation to GBIC under the Project Agreement (under that clause), necessitating the judicial enforcement of the reversion clause, to confirm the reversion of the land and improvements, resulting in a suit for declaratory relief being filed, seeking that relief, in addition to costs of court and attorney fees.

22 - In filing this case, the only issue is the matter of the reversion of the land and the improvements thereon, under the Project Agreement, according to the directives of the Board Of Directors of GBIC (the debt claim, as regards the said overpayment, and other matters are <u>not</u> at issue in this case).

23 - Thus, GBIC filed suit to obtain a judicial declaration that under the Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements

thereon (as indicated above), as purchased through funds of GBIC, reverted to GBIC.

24 - As I understand this case, it only deals with the matter of the property and the title to same, under the reversion provision referred to above (in the Project Agreement), and I have been advised that the effort to enforce the contract (specifically the reversion clause), to require or mandate a transfer of land and the improvements on the land (judicially), is very similar to a suit for injunction or what has been referred to as "specific performance" of a contract.

25 - Throughout this Affidavit, reference has been made to certain documents, to-wit, a claim letter of GBIC, a Project Agreement, a news release of TITAN, a Special Warranty Deed and an advertisement published by TITAN (the said Exhibits 1-5), which are records of regularly conducted activity of GBIC (and some are recorded instruments as well); to this extent, I hereby aver that I am a custodian of all such records of GBIC, as referenced above and throughout this Affidavit, a copy or original of which (depending on the document) has been kept by me in the regular course of business (of an economic development corporation), it being in the regular course of such business for an employee or representative of such business, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in such record, any such record having been made or recorded at or near the time of the act or event (recorded) or reasonably soon thereafter, and the foregoing and above-referenced records being the original of same or an exact duplicate of the original.

26 - TITAN has not set forth any basis whatsoever for GBIC's claims in this case not to be enforced and reduced to judgment, regardless of various affirmative defenses asserted, which GBIC contends are groundless, inapplicable or both (for the reasons set forth below).

27 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of waiver/estoppel for the reason that GBIC has not, at any time, knowingly or voluntarily waived any of its rights under the Project Agreement (or at law) to enforce the reversion that is at issue in this case.

28 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of laches for the reason that TITAN discontinued its Brownsville tire manufacturing

operation in July of 2003 and suit was filed in November of 2003 (within four months), so it cannot be asserted that GBIC "slept on its rights."

29 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of an arbitration agreement for the reason that this case does not involve a dispute under the contract (for debt and the like) but involves (only) a judicial confirmation of a right that has already come into existence by the fulfillment of a condition or contingency under that contract, to-wit, a reversion of land and improvements as a result of a failure to continue a tire manufacturing operation in Brownsville, this suit being in the nature of equitable (e.g., injunctive) relief (fundamentally, a matter that can only be resolved by a court).

30 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged failure to mitigate damages for the reason that this case does not involve a damage claim; this case is limited to declaratory and related relief.

31 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged failure to comply with its duties and obligations under the contract for the reason that GBIC has performed all of its duties under the Project Agreement, and it is TITAN that does not acknowledge its duties under the contract at issue in the only particular at issue in this case, to-wit, the acceptance of the reversion of the land and improvements arising under the contract.

32 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged delay in the construction of the tire manufacturing plant for the reason that GBIC has never invoked that item (construction completion) as a basis for a reversion (although that is another basis in the same provision of the contract for such reversion to arise) and GBIC could not, since it was not acting as a contractor, delay the construction, plus GBIC has always acted to expedite the project (the plant) as it was in the mutual interest of the parties to do so (such as adding funds for additional site development credits, at TITAN's request).

33 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC allegedly failing to provide all incentives promised to TITAN for the reason that

this case does not involve a damage claim (this case is limited to declaratory and related relief), but GBIC awarded all incentives set forth in the Project Agreement that TITAN was entitled to receive, in accordance with the Project Agreement.

34 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of TITAN complying with the Project Agreement, which terminated (i.e., expired) prior to this case being filed, for the reason that this case does not involve a damage (debt) claim, the only issue in <u>this</u> case is TITAN complying with the Project Agreement in regard to the reversion of the land and the improvements (by recognizing and acknowledging the reversion), and the expiration of a contract's term does not nullify the terms of the contract -- particularly where there is no time limit on the provision at issue in the contract.

35 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of frustration for the reason that this case does not involve a damage claim and TITAN did <u>not</u> have to discontinue its Brownsville tire manufacturing operation: it did so knowingly and voluntarily, thus invoking (by its own action) the reversion clause of the Project Agreement.

36 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of accord and satisfaction, or satisfaction, for the reason that GBIC has not entered into any new agreements with TITAN regarding the subject of the said Project Agreement (or Special Warranty Deed).

37 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of (statute of) limitations for the reason that TITAN discontinued its Brownsville tire manufacturing operation in July of 2003 and this suit was filed in November of 2003 (within four months), so it cannot be asserted that GBIC's claim in the instant case is barred by limitations.

38 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of "illusory contract" for the reason that the contract reflected the agreement of the parties in writing, executed after months of "arm's length" negotiations and involving sophisticated parties represented by counsel, supported by substantial consideration as to both

parties, including the reversion clause (which was the "basis for the bargain" [at least in part]).

39 - TITAN cannot preclude GBIC's claim for declaratory and related relief on the basis of "failure of condition precedent' for the reason that the Project Agreement does not contain a "condition precedent" provision as such, GBIC performed all of its obligations under the Project Agreement -- in accordance with its terms -- and the condition precedent -- if this refers to the event giving rise to the reversion (the discontinuance of operations at the said tire manufacturing facility and/or the failure to maintain an ongoing tire manufacturing facility in Brownsville) -- did in fact occur.

40 - Accordingly, TITAN has not presented a valid affirmative defense that bars or precludes GBIC's action (its _prima facie_ case) for declaratory and related relief.

FURTHER AFFIANT SAYETH NOT.

_____
ARNOLD BENSON, President
GREATER BROWNSVILLE INCENTIVES
CORPORATION

SUBSCRIBED AND SWORN TO BEFORE ME on the 9th day of July, 2004, to certify which witness my hand and official seal.



_____
Notary Public in and for
The State Of Texas