UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES CORPORATION, | § § | CIVIL ACTION |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |


## LIST OF PLAINTIFF'S EXHIBITS


| Ex. No. | Item | Other Ex. ID* |
|---|---|---|
| 1 - | Claim letter (of GBIC) | D |
| 2 - | Project Agreement (of GBIC & TITAN) | A |
| 3 - | News Release (of TITAN) | C |
| 4 - | Special Warranty Deed (from GBIC to TITAN) | B |
| 5 - | Advertisement (of TITAN) | (N/A) |
| 6 - | Defendant's Responses To Plaintiff's First Request For Admissions | (N/A) |

_____

*In Plaintiff's Original Petition

- ii -

# EXHIBIT "1"

SANCHEZ, WHITTINGTON, JANIS & ZABARTE, L.L.P.

ATTORNEYS AT LAW

100 NORTH EXPRESSWAY 83

BROWNSVILLE, TEXAS 78521-2284

JACK D SANCHEZ (1945-1987)

DENNIS M SANCHEZ P C
ROBERT A WHITTINGTON, P C
BRIAN G JANIS, P C
FRANCISCO J ZABARTE, P C
C FRANK WOOD, P C

TEL (956) 546 3731
FAX (956) 546 3765

August 21, 2003

Mr. Maurice Taylor, Jr.,President/CEO        SENT   BY   REGULAR MAIL
Titan Wheel International, Inc.              AND BY CERTIFIED MAIL,
2701 Spruce Street                          RETURN RECEIPT REQUESTED
Quincy, Illinois   62301

                              RE:   Project Agreement Between
                                    Greater Brownsville Incentives
                                    Corporation (GBIC) And Titan Wheel
                                    International, Inc. (Titan)

Dear Mr. Taylor:

     As you know, on February 27, 1997, to facilitate the opening
of a tire manufacturing facility in or near Brownsville, Titan
entered into a Project Agreement with the Greater Brownsville
Incentives Corporation (GBIC), an economic development corporation
established under Texas law under the auspices of the City Of
Brownsville.

     Under this Agreement, Titan was to receive various incentives,
in anticipation of a large manufacturing facility being constructed
in Brownsville and the employment of 500 people (in "new jobs") at
such facility.

     Unfortunately, over the five-year term of the contract, 500
jobs were not created, and the best operating year for Titan, job-
wise, at the Brownsville facility yielded only 122 jobs.

     A small amount (proportionately) of "job creation credits" and
"lease/building assistance credits" were paid to Titan, in the sum
of $490,200.00.    In addition to that amount, the sum of
$3,832,863.00 (the majority of the incentives paid to Titan) was
paid for various "site development credits."

     Under the Project Agreement, the "site development credits"
were paid "up-front," or in other words, prior to the time of
contractual performance by Titan (for job creation), the other
incentives having been paid under such performance-based criteria,
to-wit, the jobs were created during the course of the agreement.



EXHIBIT A
PAGE 1 OF 6 PAGES

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 2

     The Board Of Directors of GBIC observed a limited amount of
jobs created at the Brownsville facility of Titan under the Project
Agreement, and more recently, statements about the plant being
"shut down."

     The significance of these developments, taken as a whole, is
that there is a provision in the Project Agreement that indicates
that the "maximum amount of reimbursement is not to exceed (for all
credits hereunder) $13,040.73 per 'new job created' at 'the
Brownsville facility of Titan,'" and to that extent, a question
arose at a prior Board meeting about whether Titan was in fact
overpaid.

     In other words, because the majority of the incentives paid by
GBIC involved money paid "up-front," in light of the 500 jobs
promised not being created, the "per job cost" increased
dramatically, over the amount ($13,040.73) authorized by the
Project Agreement, prompting the retention of an independent
certified public accountant, under the contract, to calculate the
nature and extent of that "overpayment."

     In summary, the amount of the credits committed to Titan,
under the contract, was $6,520,363.00, and the actual expenditures,
under the contract, the majority of which involved "site
development credits," was $4,568,863.00.  For the one year that
there was a basis for the payment of the "job creation" and
"building assistance" credits, the payment was premised on the
$13,040.73 (maximum) "per job cost."

     When the "per job cost" is multiplied by the 122 jobs created,
the result is $1,590,969.00, according to the said accountant, such
that, if the actual funds disbursed ($4,568,863.00) is considered,
and the correct payment to Titan (based on the said 122 jobs, the
sum of $1,590,969.00) is considered, the overpayment to Titan is
(therefore) $2,977,894.00.

     In light of the foregoing, and in light of cash flow
considerations of GBIC (as well as your company), the GBIC Board Of
Directors has directed that I apprise you, on behalf of Titan, of
this development.

     That is, a final review of this Project revealed that Titan
was overpaid, based on the factors above (for the reasons set forth
above), such that, because of the limited job creation of 122 (out
of a promised 500) jobs (500 jobs mathematically would have allowed

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 3

the amount spent to be "absorbed" by the limit on "per job costs" of $13,040.73 per job), instead of the 500 jobs required by the Project Agreement, Titan was overpaid by the sum of $2,977,894.00.

Having been presented with this information, the GBIC Board Of Directors has directed me to not only notify you of this situation, but to advise you that GBIC, by this letter, asserts a claim with your company for the reimbursement of such overpayment, to be considered by the appropriate corporate officials, pursuant to the terms of the Project Agreement, a copy of which is enclosed for your consideration.

Having just advised you of this situation, I anticipate that you want some time to study the matter and respond to same, and I await such response either by you or your corporate counsel. In any event, GBIC, in addition to advising Titan of its claim for reimbursement of the overpayment, is willing to discuss the method, manner and timing of such repayment.

This is also to advise you that, in reviewing the Agreement, the Board was advised that where Titan "discontinues operations or ... no longer maintains a tire manufacturing operation in or near Brownsville ... any properties or assets held by ... [Titan] which were acquired with funds, in whole or in part (including such funds) provided by ... [GBIC] shall revert to ... [GBIC] (subject to any superior liens) ... ."

In light of recent announcements that Titan's operations are being discontinued in Brownsville and that Titan is no longer maintaining a tire manufacturing operation in Brownsville, as set forth (for example) in a press release regarding the consolidation of all manufacturing operations in Des Moines, Iowa, I believe that the foregoing clause has been activated.

Thus, the Board has suggested, in regard to the building and land purchased with GBIC funds, that same be utilized to pay for the said overpayment. Further, since there have been rumors in the area of the possible sale of portions of that land, same should not be considered or proceed because of this contractual provision.

This is to remind you of a later provision in the Agreement, in that same general section of the contract, that indicates that "any properties or assets acquired by ... [Titan] with funds, in whole or in part, provided by ... [GBIC] shall not be alienated,

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 4

conveyed or transferred from ... [Titan] without the prior
authorization of the ... [GBIC] ... ."

Understandably, this is may come as a surprise to you and your
firm, but these provisions have been in the contract between the
parties from the beginning of the contract's term. Unfortunately,
because of minimal (about 20% of 500 jobs promised) job creation,
there has been an overpayment of GBIC funds, which is now due to
GBIC by your firm.

Further, because of the discontinuation of operations at the
Brownsville facility, there has been a reversion of the land and
building (at least in part, to the extent paid for by GBIC for the
benefit of Titan), which could be used to satisfy the overpayment
claim.

In any event, I suggest that these matters be considered and
discussed, and that a response regarding same be forwarded to me by
you or your counsel in the near future.

Should you have any questions or further information, please
advise.  Thank you for your consideration.

                              Sincerely,

                              Brian G. Janis

BGJ/ma
enc.

cc:  Mr. Benancio "Ben" Medina, Jr.        HAND-DELIVERED AND
     Administrator                          SENT BY TELEFAX
     Greater Brownsville Incentives              (548-6134)
       Corporation
     P. O. Box 911
     Brownsville, Texas  78522-0911
     (For Board Distribution)

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 5


Mr. Jason C. Hilts                    SENT BY REGULAR MAIL
President/CEO                         AND BY TELEFAX
Brownsville Economic                      (546-3938)
  Development Council, Inc.
1205 North Expressway 83
Brownsville, Texas  78520

Mr. James R. Goza                     SENT BY REGULAR MAIL
City Attorney                         AND BY TELEFAX
City Of Brownsville                       (546-4291)
P. O. Box 911
Brownsville, Texas 78522-0911

**EXHIBIT "2"**



BRIAN G. JANIS
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 NORTH EXPRESSWAY 83
BROWNSVILLE, TEXAS 78521

4. Restricted Delivery? ☐ Yes

3. Service Type    CERTIFIED

2. Article Number

7100 0000 0100 0000 15

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature ☐ (Addressee or ☐ Agent)
X Kevin Pugh

B. Received By (Please Print Clearly)
Kevin Pugh

C. Date of Delivery
08/26/03

D. Addressee's Address (if different from Address Used by Sender)

Secondary Address / Suite / Apt / Floor (Please Print Clearly)

Delivery Address

City          State          ZIP + 4 Code

1. Article Addressed To:

MR. MAURICE TAYLOR, JR.
PRESIDENT & CEO
2701 SPRUCE STREET
QUINCY IL 62301

7100 0000 0100 0000 1516

THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §

## PROJECT AGREEMENT

THIS Project Agreement is made this 27th day of February, 1997 in Brownsville, Cameron County, Texas, between the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas non-profit corporation established pursuant to Article 5190.6 of the Texas Revised Civil Statutes, having a principal place of business at 1 Market Square, Brownsville, Cameron County, Texas 78522, and TITAN WHEEL INTERNATIONAL, INC., an Illinois business corporation, having a principal place of business at 2701 Spruce Street, Quincy, Adams County, Illinois 62301, regarding funding for the establishment of a tire manufacturing operation in Brownsville, as follows:

I.

### Use Of Funds

The proceeds provided by this Agreement are to be used by TITAN WHEEL INTERNATIONAL, INC. "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby," to be itemized in the schedules or plans for same to be provided to the GREATER BROWNSVILLE INCENTIVES CORPORATION, which Project is to be funded in part by the foregoing proceeds (the said funds having been "leveraged" to obtain additional funding for same).

II.

### Disbursement Of Funds

Such funds will be disbursed in accordance with the following provisions. Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., such that TITAN WHEEL INTERNATIONAL, INC., is required to create 500 "new jobs" (375 during the first year after construction of the facility for the "Project," 75 during the second year thereafter and 50 during the third year thereafter) over the term of this Agreement (as a condition to funding hereunder), the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following:

A - As a "Site Development Credit," the sum of $1,000,000.00, to be paid not in cash but in the form of a grant of a site (of



PROJECT AGREEMENT - PAGE 1

real property, up to 200 acres) north of Brownsville for use as a facility for this "project" (the "plant" for TITAN), such land to be acquired (at a closing to be conducted in the near future) by the GREATER BROWNSVILLE INCENTIVES CORPORATION, constituting part of the "site improvement expense" of TITAN WHEEL INTERNATIONAL, INC., at its new Brownsville area facility, as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the said Brownsville facility (as limited above);

B - As a "Site Development Credit," the sum of $1,000,000.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of the (non-land acquisition) "site improvement expense" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above);

C - As an additional "Site Development Credit," the sum of $460,001.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) a 1/4 mile access road, and (2) a facility parking lot, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), it being provided, however, that the sum of $692,862.00 will be paid directly to the Public Utilities Board (i.e., through the City Of Brownsville) for miscellaneous "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) extending water/sewer lines to the site, (2) the purchase of water rights, and (3) acreage charges, which is subject to reimbursement (to GBIC) on receipt of funds from pending grant applications under the auspices of the CITY OF BROWNSVILLE (with the U.S. Economic Development Administration);

D - As yet an additional (and final) "Site Development Credit," the sum of $680,000.00 (or if less, the maximum cost of 240,000 cubic yards of dirt, as explained below), paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION,

PROJECT AGREEMENT - PAGE 2

for acquiring fill dirt (the local provider of which is to be identified publicly) to elevate the ground level and to provide a sufficient base for the construction of the buildings and improvements required for the contemplated manufacturing operation of TITAN WHEEL INTERNATIONAL, INC., in or near Brownsville, Texas (as limited above), noting further that the sum of $300,000.00 of the aforesaid sums (i.e., the "site development expenses" payable to TITAN hereunder) is to be paid, instead, to the CITY OF BROWNSVILLE for the "EDA Jose Escandon Road Project," which project is being funded by the CITY for the benefit of TITAN and is to involve some reimbursement or payment from the U.S. Economic Development Administration, and that TITAN must first expend its (own) budgeted funds ($50,000.00) for such fill dirt (and invoices for same must be provided to GBIC) before any of the said funds above (in this sub-paragraph) are expended, and moreover, while GBIC will pay for such fill dirt, it (and the CITY) is not responsible for problems or disputes involving quantity, quality, time of service or method of delivery, or the delivery (to the extent possible, the providers of fill dirt should be from Brownsville or its extraterritorial jurisdiction, for which TITAN will submit a signed contract for same, along with proof of all necessary permits for the site and a Texas Department Of Transportation [required] Traffic Control Plan);

E -  As a "Lease/Building Assistance Credit," the sum of $1,712,500.00, paid pro-rata (i.e., annually) over the three years of this Agreement referred to above, after construction of the said facility for the "Project," (i.e., $687,500.00, $737,500.00 and $287,500.00), reflecting the "lease expense" (or the equivalent of such expense to construct a building for manufacturing use) for facilities of TITAN WHEEL INTERNATIONAL, INC. (i.e., 50%, 35% and 20%), as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), during the said term of this Agreement, subject to the right to carryover funds not used in the first or second years to the third year; and

F -  As a "Job Creation Credit," the sum of $975,000.00, paid pro-rata (i.e., annually), in the sum of $780,000.00, $117,000.00 and $78,000.00, reflecting the amount which is TEN (10%) PER CENT of the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as

PROJECT AGREEMENT - PAGE 3

limited above), during the said three (3) years of this Agreement.

The maximum amount of reimbursement is not to exceed (for all credits hereunder) $13,040.73 per "new job created" at TITAN WHEEL INTERNATIONAL, INC. (in or near Brownsville, Texas only), during the term of this Agreement, in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, provided that the GREATER BROWNSVILLE INCENTIVES CORPORATION has first verified and approved the amount of the "site improvement expenses," the "lease/building expense" and the "annual non-principal wages," and the "new jobs created" are valid, continuous and in force for at least ninety (90) days -- as determined at the close of the second quarter of the relevant year -- which amounts are not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 (noting that $692,862.00 will be paid directly to the Public Utilities Board, by and through the City Of Brownsville), $680,000.00 (or if less, the cost of 240,000 cubic yards of dirt), $1,712,500.00 and $975,000.00, respectively, over the term of this Agreement (i.e., five years).'

The parties agree that in the event that TITAN WHEEL INTERNATIONAL, INC., discontinues operations or is dissolved or liquidated or no longer maintains a tire manufacturing operation in or near Brownsville, or if TITAN WHEEL INTERNATIONAL, INC., does not commence such construction within eleven (11) months, does not commence hiring and training for the plant within ten (10) months (involving Spend Skills Development Training dollars, which must be spent in Brownsville), or does not commence operations within two (2) years in or near Brownsville, from the date of execution of this Project Agreement (February 27, 1997), any properties or assets held by TITAN WHEEL INTERNATIONAL, INC., which were acquired with funds, in whole or in part (including such funds), provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION, shall revert to that CORPORATION (subject to any superior liens); to this extent, any properties or assets acquired by TITAN WHEEL INTERNATIONAL, INC., with funds, in whole or in part, provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION shall not be alienated, conveyed or transferred from TITAN WHEEL INTERNATIONAL, INC., without the prior authorization of the GREATER BROWNSVILLE INCENTIVES CORPORATION (except in the ordinary course of business), and, to avoid commingling or problems with tracing such funds, TITAN WHEEL INTERNATIONAL, INC., shall segregate, for accounting and other similar purposes, all funds (and properties) received from the GREATER BROWNSVILLE INCENTIVES CORPORATION and from other sources.

PROJECT AGREEMENT - PAGE 4

III.

Consideration

In consideration of the establishment of a tire manufacturing operation in or near Brownsville, Cameron County, Texas, pursuant to this Agreement, which will create jobs, facilitate commerce and trade and improve the economic infrastructure and labor force of the area, thus enhancing economic development, the stated goal of the GREATER BROWNSVILLE INCENTIVES CORPORATION, said entity will finance, for the benefit of TITAN WHEEL INTERNATIONAL, INC., the said "Site Development Credits," "Lease/Building Assistance Credit" and "Job Creation Credit," to enable the initiation of a tire manufacturing operation in or near Brownsville, funding part of the "cost" of a "project" for economic development thereby, as such terms are described and defined in Article 5190.6 of the Texas Revised Civil Statutes, the said CORPORATION's authorizing legislation, same having been found by the said CORPORATION's Board Of Directors "to be required or suitable for the promotion of development and expansion of manufacturing and industrial facilities, ... distribution centers [etc.] ... ."

The foregoing credits are supplemented by other incentives provided by the State Of Texas and other entities, as reflected by the listing annexed hereto as Exhibit "A" and incorporated by reference herein (the total amount of incentives including the said credits), it being understood by the parties to this Project Agreement that the GREATER BROWNSVILLE INCENTIVES CORPORATION (and by extension, the CITY OF BROWNSVILLE) does not control the provision of such incentives (by the State Of Texas and other entities) and has no responsibility for the provision of same, as reflected by Paragraph XV. (and other provisions) of this Project Agreement.

IV.

Performance Of Agreement

In providing a tire manufacturing operation in or near Brownsville, TITAN WHEEL INTERNATIONAL, INC., acting by and through its respective agents, will conduct itself in conformity with the requirements and standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION. To this extent, TITAN WHEEL INTERNATIONAL, INC., will perform all acts necessary to successfully fulfill the purpose of this Agreement and shall, at all times, faithfully, industriously and to the best of its abilities, experience and talents, perform all the duties that may be required of and from it pursuant to the express and implicit terms hereof and to the reasonable satisfaction of the GREATER BROWNSVILLE INCENTIVES CORPORATION.

PROJECT AGREEMENT – PAGE 5

In a manner calculated to achieve the goals of the GREATER BROWNSVILLE INCENTIVES CORPORATION in enhancing economic development and to maximize the value of the said CORPORATION's investments in various economic development projects, pursuant to the policies set by the CORPORATION's Board Of Directors from time to time, TITAN WHEEL INTERNATIONAL, INC., shall keep the said CORPORATION apprised of the status of the said Project, to insure compliance with this Agreement.  To this extent, on a quarterly basis, TITAN WHEEL INTERNATIONAL, INC., shall prepare and send to the GREATER BROWNSVILLE INCENTIVES CORPORATION, by and through its Board Of Directors, a report showing the activities conducted pursuant to this Agreement during the preceding quarter and setting forth an accounting of funds received and expended pursuant to this Agreement during the preceding quarter, with each such report showing the cumulative expenses and revenues for the preceding quarter together with all prior quarters during the term of this Agreement, as well as "employment levels" for all such quarters.

TITAN WHEEL INTERNATIONAL, INC., shall have a "review" audit of all funds and activities of this Project prepared annually by a Certified Public Accountant (which auditor may be employed by the company), a copy of which shall be presented to the GREATER BROWNSVILLE INCENTIVES CORPORATION within ninety (90) days of the close of the said company's fiscal year, and further, the said company will provide a copy of its proposed and adopted budgets regarding this Project to the GREATER BROWNSVILLE INCENTIVES CORPORATION as soon as same can be (reasonably) forwarded to the CORPORATION.  Additionally, the said company will make available for inspection, at a reasonable time and place, at the request of the CORPORATION, any or all of the said company's financial and payroll records as same relates to this Project, provided however, that all of such records will be deemed "confidential" and not released to third parties (pursuant to the Texas Open Records Act).

V.

Term Of Agreement

The term of this Agreement shall be five (5) years, commencing November 1, 1996 and ending October 31, 2001.

VI.

Termination

This Agreement may be terminated for cause (including the failure to comply with the requirements or standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION, or any action constituting a

PROJECT AGREEMENT - PAGE 6

breach of the terms of this Agreement) by either party, as appropriate, or by mutual agreement of the parties, or in the event of any occurrence (e.g., bankruptcy, dissolution or governmental action, as appropriate) precluding either party from performing the obligations contemplated under this Agreement. In the event of the termination of this Agreement for any reason prior to the expiration of the term of this Agreement, the parties shall be entitled to all compensation earned by them through the effective date of termination, as appropriate, and any remedies available at law or in equity, which rights and remedies shall survive the termination of this Agreement.

VII.

## Indemnity

TITAN WHEEL INTERNATIONAL, INC., shall indemnify, protect and hold harmless the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, from any and all liabilities, claims, demands, actions, losses, damages and costs, including all costs of defense thereof, of any nature whatsoever, for injury to or death of persons or loss or damage to property, or for any other reason, including economic or environmental loss of any kind, in any manner arising out of or connected with the performance of TITAN WHEEL INTERNATIONAL, INC., under this Agreement, or arising out of the execution of or performance (or non-performance) of this Agreement, and including claims and actions based upon the acts or omissions of TITAN WHEEL INTERNATIONAL, INC., or its shareholders, directors, officers, agents, employees, representatives, parents, subsidiaries, affiliates, related holding companies, successors, assigns and insurers.

Upon demand, TITAN WHEEL INTERNATIONAL, INC., shall, at its own expense, defend the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, against any and all such liabilities, claims, demands, actions, losses, damages and costs. Moreover, TITAN WHEEL INTERNATIONAL, INC., shall give the GREATER BROWNSVILLE INCENTIVES CORPORATION prompt notice of any claim within its knowledge that in any way, directly or indirectly, affects either party. Both parties shall have the right to participate in the defense of such claim to the extent of their interests.

PROJECT AGREEMENT - PAGE 7

VIII.

Insurance

Both parties agree to obtain insurance (to the extent available) in the type and amount deemed advisable to protect their respective interests.  To this extent, the parties agree to provide insurance for their respective conveyances, equipment, facilities and instrumentalities, as appropriate.

IX.

Status Of Parties

The parties hereto shall not be construed to have the relationship of partners, joint venturers, principal-agent or employer-employee.  The parties hereto are separate entities who enter into this Agreement for their respective benefit.

X.

Compliance With Law

The parties will act, at all times, in compliance with all pertinent and applicable laws.

XI.

Entire Agreement

This Agreement contains the entire agreement between the parties relating to the rights herein granted and the obligations herein assumed, and supersedes any prior understandings, representations, memorandums or agreements regarding the service relationship that is the subject of this Agreement.  Any oral representations or modifications concerning this instrument shall be of no force or effect.  This Agreement may be amended, provided that no amendment, modification or alteration of the terms of this Agreement shall be binding unless the same is in writing and duly executed by the parties hereto.

XII.

Law Governing; Venue

This Agreement shall be governed by and construed in accordance with the laws of the State Of Texas (and where applicable, the laws of the United States Of America), and, the

PROJECT AGREEMENT - PAGE 8

obligations and undertakings of each of the parties to this Agreement shall be performable in Cameron County, Texas.

## XIII.

### No Waiver

Any waiver by any party of any default under or breach of this Agreement shall not be construed as a continuing waiver of such default or breach, nor as a waiver of or permission for (express or implied) any other or subsequent default or breach.

## XIV.

### No Assignment

This Agreement shall not be assigned in whole or in part by either party without the consent and approval of the other party, set forth in writing and signed by both parties. Any assignee will be bound by the terms of this Agreement.

## XV.

### No Warranties Or Representations

The parties to this Agreement specifically acknowledge that the GREATER BROWNSVILLE INCENTIVES CORPORATION (or by extension, the CITY OF BROWNSVILLE) shall not be obligated to pay any funds to TITAN WHEEL INTERNATIONAL, INC., beyond the (contingent) payments contemplated by this Agreement, as set forth above, which are not to exceed the sum that is: $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00 (as set forth above) for the "site improvement expenses," $1,712,500.00 for the "lease/building expense" and $975,000.00 for the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., and/or the sum representing $13,040.73 per "new job created," in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION -- for the "Site Development Credits" (not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00, as set forth above), for the "Lease Assistance Credit" (not to exceed the sum of $1,712,500.00), and for the "Job Creation Credit" (not to exceed the sum of $975,000.00).

NO WARRANTY OR REPRESENTATION OF ADDITIONAL PAYMENTS OR FUNDING OR CREDIT OR THE EXTENSION OF CREDIT HAS BEEN MADE, IS BEING MADE OR WILL BE MADE BY THE GREATER BROWNSVILLE INCENTIVES CORPORATION (OR THE CITY OF BROWNSVILLE). FURTHERMORE, NO WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER IS BEING MADE BY THE

PROJECT AGREEMENT - PAGE 9

GREATER BROWNSVILLE INCENTIVES CORPORATION OR TITAN WHEEL
INTERNATIONAL, INC., IN CONNECTION WITH THE EXECUTION OR
PERFORMANCE OF THIS AGREEMENT, except to the extent set forth in
this instrument.

XVI.

Parties Bound

     This Agreement shall be binding upon and inure to the benefit
of the parties to this Agreement and their respective heirs, legal
representatives, successors and assigns, as appropriate.

XVII.

Notices

     Any notice to either party shall be sent by certified or
registered mail, addressed to the parties as set forth above, at
their respective addresses set forth above or such other address as
may be designated.

XVIII.

Invalidity

     If any term, provision, covenant or condition of this
Agreement is held by a tribunal of competent jurisdiction to be
invalid, void or unenforceable, the remainder of the provisions of
this Agreement shall remain in full force and effect and shall in
no way be affected, impaired or invalidated. Moreover, it is the
intention of the parties to this Agreement that in lieu of each
clause or provision of this Agreement that is held to be invalid,
void or unenforceable, there be added as a part of this Agreement
a clause or provision as similar in terms to such invalid, void or
unenforceable clause or provision as may be feasible which shall
nevertheless be valid, legal and enforceable.

XIX.

Arbitration

     ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING
TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY
THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE
FEDERAL ARBITRATION ACT AND THE COMMERCIAL ARBITRATION RULES OF THE
AMERICAN ARBITRATION ASSOCIATION, USING ONE ARBITRATOR -- SUCH
ARBITRATION TO BE CONDUCTED IN BROWNSVILLE, CAMERON COUNTY, TEXAS,

IN THE ENGLISH LANGUAGE -- AND A JUDGMENT UPON THE AWARD RENDERED
BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION
THEREOF.

XX.

Attorney Fees

    If any proceeding is initiated to resolve a dispute arising
under or relating to this Agreement by either of the parties
hereto, it is expressly agreed that the prevailing party shall be
entitled to recover from the other party reasonable attorney fees
and expenses in addition to any other relief that may be awarded.

XXI.

Construction Of Instrument

    Each of the parties hereto have been represented by the
attorneys of their choice in the negotiation and drafting of this
Agreement.  Accordingly, this Agreement shall not be construed in
favor of either party.

XXII.

Authority

    The  parties  to  this  Agreement,  to-wit,  TITAN  WHEEL
INTERNATIONAL,  INC.,  and  the  GREATER  BROWNSVILLE  INCENTIVES
CORPORATION,  specifically  warrant  and  represent  that  the
signatories below are authorized to act on behalf of the respective
party  to  this  instrument,  that  the  signatories  have  been
specifically authorized to execute this Project Agreement by said
parties in accordance with the requisite corporate formalities of
each such party, that the execution of this instrument by said
signatories constitutes the binding act of each such party to this
instrument  and  that  the  execution  of  this  instrument  and  the
adoption of same by each party is authorized by law.

    EXECUTED in duplicate (as revised) on the ____7th____ day of
November, 1997 at Brownsville, Cameron County, Texas.

                         GREATER BROWNSVILLE INCENTIVES
                         CORPORATION

                         BY: _____
                             Eduardo R. Rodriguez, President

PROJECT AGREEMENT - PAGE 11

00059176  OR  9555  306

ATTEST:

_____
Irv Downing, Secretary


                    TITAN WHEEL INTERNATIONAL, INC.


          BY:   _____
                Gary Carlson, Vice-President


ATTEST:

_____
Name: _____
Title: _____


                    PROJECT AGREEMENT - PAGE 12



## CERTIFICATE OF CITY SECRETARY

| | |
|---|---|
| THE STATE OF TEXAS | § |
| COUNTY OF CAMERON | § |
| CITY OF BROWNSVILLE | § |

     I, Inelda T. Garcia, the duly appointed, qualified City Secretary of the City of Brownsville, Texas, do hereby certify that the above and foregoing is a full, true, and correct copy of a *Project Agreement between the Greater Brownsville Incentives Corporation (GBIC) and Titan Wheel International, Inc.,* approved on February 27, 1997, as shown in the GBIC minute book in the records of The Office of the City Secretary.

     In testimony whereof, witness my hand and seal of the said City of Brownsville, Texas, on this the __28th__ day of ___October___, 2003.

By:      Inelda T. Garcia
          City Secretary
          City of Brownsville, Texas

Doc Bk Vol Pg
00059176 OR 9355 308

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: Oct 29,2003 at 03:33P

Document Number:        00059176

By
Marleen Fuentes
Joe G Rivera, County Clerk
Cameron County

EXHIBIT "3"



## News Release from Titan International, Inc.  NYSE: TWI

Contact: Lisa Ross
Communications Coordinator
(217) 221-4489

*FOR IMMEDIATE RELEASE*

July 28, 2003

### Titan International, Inc. consolidates tire manufacturing

Quincy, IL. - Titan Tire, a subsidiary of Titan International, Inc. (NYSE: TWI), is consolidating all tire manufacturing into its principal tire facility located in Des Moines, Iowa. The Brownsville, Texas, location will continue as a distribution and warehouse center for Titan, however, production will be suspended until market demand requires additional capacity. The majority of the costs related to the consolidation will occur in the second and third quarters of 2003.

Prior to the 1998 labor strikes, Titan Tire was pursuing an aggressive plan to increase production capacity which included buying control of bankrupt Fidelity Tire in Natchez, Mississippi, which has been idled since early 2001, and building a one-million square foot factory in Brownsville, Texas. Following the resolution of the 40-month labor strike and corporate campaign against the company, Titan has been steadily increasing efficiency at the Des Moines tire facility. Titan decided to consolidate all tire manufacturing to Des Moines until that facility is operating near its full capacity. The company is maintaining adequate capacity to meet current and future demands without additional planned capital expenditures.

The agricultural and construction markets have not experienced the forecasted growth in 2003 and the new farm bill has not significantly impacted equipment sales this year but an increase is expected in 2004. Growth has been slowed by additional pricing pressure from imports. The weak U.S. dollar should improve this situation over the next six months.

"The North American large farm equipment market has been in a slump since 1998. For example in 1997, approximately 9,000 four-wheel drive large tractors were sold. Last year, however, there were fewer than 4,000 sold. In terms of wheels and tires, that amounts to a decrease of more than 40,000 units," explained Maurice Taylor Jr., Titan president and CEO. "The utility and compact tractor sales, however, are holding up surprisingly well."

New wheels and tires developed and tested during the past year are expected to generate increased sales for the company in 2004. Titan's costs are competitive in the industry and the company is now concentrating on building market share and profitability. Expertise in both wheel and tire engineering allows Titan to enjoy a unique competitive advantage while providing assemblies best suited for the needs of equipment users.

"The United Steelworkers of America strikes and their corporate campaign damaged Titan's financial position, but building wheels and tires that provide the best value while generating a profit will allow the company to move forward and increase Titan's stock price to more accurately reflect the value of the company. Titan's book value today is approximately five times our share price, therefore we need to produce results," stated Taylor.

Titan is a global supplier of mounted wheel and tire systems for off-highway equipment used in agriculture, earthmoving/construction, and consumer (i.e. all terrain vehicles and trailers) applications. Titan has manufacturing and distribution facilities worldwide.

-end-



EXHIBIT C

PAGE ___1___ OF ___1___ PAGES

EXHIBIT "4"

SPECIAL WARRANTY DEED

Date:       November  14 , 1996       EFFECTIVE DATE: February 28, 1997

Grantor:   GREATER BROWNSVILLE INCENTIVES CORPORATION,
           a Texas Non-Profit Corporation

Grantor's Mailing Address (including county):

           City Hall, Market Square, Brownsville, Texas    78520
           CAMERON County

Grantee:   TITAN WHEEL INTERNATIONAL, INC.,
           an Illinois Business Corporation

Grantee's Mailing Address (including County):

           2701 Spruce Street, Quincy, Illinois   62301
           ADAMS County

CONSIDERATION:   IN ACCORDANCE WITH PROJECT AGREEMENT BY AND
                 BETWEEN GRANTOR AND GRANTEE OF EVEN DATE HEREWITH

PROPERTY (including any improvements):

           BEING a 192.634 acre tract out of a "Parcel One", "Tracts
           1, 2, and 3 of Parcel Two" and "Parcel Four" as described
           in a Deed from Norwill, Incorporated to Henry A. Willms,
           John F. Willms, Gary A. Willms and Myra Foster.  Said
           Deed is recorded in Volume 2200, Page 92 of the Deed
           Records of Cameron County, Texas.   Said 192.634 acre
           tract being more particularly described on the Exhibit
           "A" attached hereto and made a part hereof.

           SAVE & EXCEPT there is hereby reserved a 100' wide strip
           along the South Boundary line for possible future
           dedication to the City of Brownsville for Jose Escandon
           Road.   In the event that said 100' wide strip is not
           dedicated for said purpose on or before twenty five (25)
           years from date hereof, this reservation shall lapse.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

           This conveyance is made and accepted subject to any and all
           restrictions, covenants, conditions, easements, mineral and
           royalty reservations, zoning laws, leases, regulations and
           ordinances of municipal and other governmental authorities, if
           any, and only to the extent that same are still in effect,
           shown of record in Cameron County, Texas; together with any
           and all visible and apparent easements, to include but not
           limited to easements for roadways on or across the land.

TAX ROLL-BACK:

           If Grantee's use of the property hereafter results in the
           assessment of additional taxes for periods prior to date
           hereof such additional taxes shall be the obligation of
           Grantee.

DISCLAIMER OF REPRESENTATIONS AND WARRANTIES:

           GRANTOR HAS NOT MADE AND HEREBY SPECIFICALLY DISCLAIMS ANY
           WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST,
           PRESENT, FUTURE, AS TO, OR CONCERNING (i) THE NATURE AND
           CONDITION OF THE PROPERTY, INCLUDING BUT NOT BY WAY OF
           LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY
           THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY
           ELECT TO CONDUCT THEREON, (ii) THE MANNER, CONSTRUCTION,
           CONDITION, AND STATE OF REPAIR OR LACK OF REPAIR OF ANY OF THE
           PROPERTY, (iii) EXCEPT FOR ANY WARRANTIES CONTAINED IN THE
           DEED, THE NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE,

EXHIBIT B

PAGE  1  OF  3  PAGES



POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHERWISE, AND (iv) THE COMPLIANCE OF THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY GOVERNMENT OF OTHER BODY, GRANTEE HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT GRANTEE HAS THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY GRANTEE IN ORDER TO ENABLE GRANTEE TO EVALUATE THE PURCHASE OF THE PROPERTY. GRANTEE HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT GRANTEE IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PROPERTY "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS AND GRANTEE EXPRESSLY ACKNOWLEDGES THAT IN CONSIDERATION OF THE AGREEMENT OF GRANTOR HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE IN RESPECT OF THE PROPERTY. IT IS FURTHER AGREED THAT GRANTOR HAS NOT WARRANTED, AND DOES NOT HEREBY WARRANT, THAT THE PROPERTY OR ANY IMPROVEMENTS LOCATED THEREON NOW OR IN THE FUTURE WILL MEET OR COMPLY WITH THE REQUIREMENTS OF ANY SAFETY CODE OR REGULATION OF THE STATE OF TEXAS, THE CITY WHERE THE PROPERTY IS LOCATED, THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ANY OTHER AUTHORITY OR JURISDICTION. IT IS FURTHER AGREED THAT GRANTOR DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING SOLID WASTE, AS DEFINED IN THE TEXAS SOLID WASTE DISPOSAL ACT AND THE REGULATIONS ADOPTED THEREUNDER OR THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, THE DISPOSAL OR EXISTENCE IN, OR EMANATING FROM THE PROPERTY, OR ANY HAZARDOUS SUBSTANCE, AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER. GRANTEE HEREBY ASSUMES ALL RISKS (SPECIAL, DIRECT, INDIRECT, CONSEQUENTIAL, OR OTHER DAMAGES) RESULTING OR ARISING FROM OR RELATING TO THE OWNERSHIP, USE, CONDITION, LOCATION, MAINTENANCE, REPAIR OR OPERATION OF THE PROPERTY.

Grantor, for the consideration, receipt of which is acknowledged, and subject to the reservations from and exceptions to conveyance and warranty, grants, sells and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executor, administrators, successors or assigns forever. Grantor's heirs, executors, administrators and successors are hereby bound to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty, by, through or under Grantor, but not otherwise.

When the context requires, singular nouns and pronouns include the plural.

GREATER BROWNSVILLE INCENTIVES CORPORATION

by:

DONALD G. JOHNSON,
Chairman of the Board

## ACKNOWLEDGMENT

STATE OF TEXAS
COUNTY OF CAMERON

This instrument was acknowledged before me on February 28, 1997, by DONALD G. JOHNSON, Chairman of the Board of GREATER BROWNSVILLE INCENTIVES CORPORATION.



_____
Notary Public, State of TEXAS

AFTER RECORDING RETURN TO:
TITAN WHEEL INTERNATIONAL, INC.
2701 Spruce Street
Quincy, Illinois 62301

PREPARED IN THE OFFICE OF:
MICHELE SANCHEZ, P.C.
717 North Expressway 83
Brownsville, Texas  78520

EXHIBIT B
PAGE 3 OF 3 PAGES

**EXHIBIT "5"**

would rather see more affordable robots — rather than astronauts — exploring the lunar and martian surfaces.

news of the announcement next week and what it means for the future direction of NASA."



# TIRE SALE
## Year End Inventory Liquidation

Limited quantities of Agricultural, Construction, and Consumer tires.

Call Titan Tire of Texas at 956-541-7500

For pricing and availability



EXHIBIT "6"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | |
| CORPORATION, | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § | |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

Defendant's Responses to Plaintiff's First Request for Admissions

---

TO:    Greater Brownsville Incentives Corporation,
       by and through its Attorney
       Brian Janis
       SANCHEZ, WHITTENGTON, JANIS & ZABARTE, L.L.P.
       100 North Expressway 83
       Brownsville, Texas 78521-2284

NOW COMES, Defendant, Titan International, Inc., and responds to Plaintiff's
Request for Admissions pursuant to the Federal Rules of Civil Procedure.

Respectfully Submitted,
MICHAEL RODRIGUEZ, P.L.L.C.

Michael Rodriguez
State Bar No.  00791553
Federal I.D. No.  18759
319 E. Elizabeth Street
Brownsville, Texas 78520
(956) 574-9333; Fax (956) 574-9337



1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy and correct copy of this instrument has on June 2, 2004, been forwarded via Certified Mail Return Receipt Requested and facsimile to:

Brian G. Janis
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521
(956) 546-3731 telephone
(956) 546-3766 facsimile

James R. Goza
City Attorney, City of Brownsville, Texas
P.O. Box 911
Brownsville, Texas 78522
(956) 548-6011 telephone
(956) 546-4291 facsimile

_____
Michael Rodriguez

## REQUEST FOR ADMISSIONS

1.    Exhibits 1-4, annexed to Plaintiff's (GBIC's) Motion To Remand (as Plaintiff's Exhibits To Its Motion to Remand), are true and correct copies of recorded instruments involving TITAN INTERNATIONAL, INC., and TITAN TIRE CORPORATION OF TEXAS.

**RESPONSE:**

Defendant cannot either admit or deny.

2.    Exhibits 1-4, annexed to Plaintiff's Motion to Remand, reflect that TITAN TIRE CORPORATION OF TEXAS is a party to such instruments, which involve the parcel of land and improvements thereon that are at issue in this case.

**RESPONSE:**

Admit

3.    Exhibits 1-4, annexed to Plaintiff's Motion to Remand, reflect that TITAN TIRE CORPORATION OF TEXAS has an interest in the said land and/or the improvements thereon (the building located on such parcel of land), and that such interest is being used as security for a financing transaction involving General Electric Capital Corporation (GECC).

**RESPONSE:**

Admit as to an interest in improvements thereon.

4.    The reason for the inclusion of TITAN TIRE CORPORATION OF TEXAS as party to the said security/financing instruments (Exhibits 1-4) is because TITAN TIRE CORPORATION OF TEXAS owns or has similar interest in the said land and/or building that are at issue in this proceeding.

**RESPONSE:**

Admit as to building.

5.    TITAN TIRE CORPORATION OF TEXAS owns or has a similar interest in the said land and/or building that are at issue in this proceeding.

**RESPONSE:**

Admit as to building.

6.      In light of the said ownership or similar interest in the said land and/or building, GECC was given a security interest in such land and/or building by TITAN TIRE CORPORATION OF TEXAS and TITAN INTERNATIONAL, INC. (TITAN), to enable a loan or financing to the said TITAN entities.

**REPONSE:**

Due to the wording of the Request for Admission, defendant cannot either admit or deny.

7.      TITAN TIRE CORPORATION OF TEXAS owns or has similar interest in the parcel of property and the building constructed on such land that is at issue in this proceeding.

**RESPONSE:**

Deny

8.      TITAN TIRE CORPORATION OF TEXAS is not only a subsidiary of TITAN INTERNATIONAL, INC., (TITAN), it is (or was) the manager of the tire manufacturing facility in Brownsville at issue in this proceeding, acting on behalf of TITAN INTERNATIONAL, INC., the parent of or the holding company for TITAN TIRE CORPORATION OF TEXAS.

**RESPONSE:**

Deny

9.      TITAN TIRE CORPORATION OF TEXAS conducted its business entirely in Texas and operated a tire manufacturing facility -- owned by it and/or TITAN INTERNATIONAL, INC. -- in Brownsville, Cameron County, Texas.

**RESPONSE:**

Due to the wording of the Request for Admission, defendant cannot either admit or deny.

10.     TITAN TIRE CORPORATION OF TEXAS and/or TITAN INTERNATIONAL, INC. (TITAN), no longer operate a tire manufacturing facility in Brownsville, Cameron County, Texas (i.e., neither entity is manufacturing tires at the said Brownsville facility).

**RESPONSE:**

Deny

11.    TITAN INTERNATIONAL, INC. (TITAN), publicly announced, as
reflected by Exhibit "C" to Plaintiff's Original Petition, that it was going to
consolidate its entire tire manufacturing operations in Des Moines, Polk County,
Iowa.

**RESPONSE:**

Deny

12.    At no time did TITAN INTERNATIONAL, INC., (TITAN), or TITAN
TIRE CORPORATION OF TEXAS advise GBIC (or its agents) about or seek the
permission of GBIC (or its agents) to enter into the said financing/loan
transactions involving the property that was sold to TITAN INTERNATIONAL,
INC.'s (TITAN'S) predecessor, TITAN WHEEL INTERNATIONAL, INC.,
which land and the building thereon is the subject on this case.

**RESPONSE:**

Deny