26

United States District Court
Southern District of Texas
FILED

JUL 0 9 2004

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, as Plaintiff, GREATER BROWNSVILLE INCENTIVES CORPORATION, hereinafter "GBIC," by and through its undersigned counsel, pursuant to FED. R. CIV. P. 56, and submits this Memorandum In Support Of Its Motion For Summary Judgment.

I.

Introduction

A.

GBIC filed a declaratory judgment action (only) in state district court to determine that certain land and improvements thereon reverted, under a Project Agreement, from TITAN INTERNATIONAL, INC., hereinafter "TITAN," because -- in essence -- TITAN failed to maintain a tire manufacturing operation in Brownsville, for which GBIC paid TITAN millions of dollars as incentives under the Agreement (as explained in greater detail in GBIC's Motion For Summary Judgment).

B.

TITAN was served with citation and responded with various affirmative defenses in an effort to bar or preclude (in whole or in part) GBIC's claims for declaratory and related relief, as set forth in GBIC's prima facie case for such relief.

II.

Summary Judgments

A.

FED. R. CIV. P. 56 governs the award of a summary judgment, and indicates that:

> "A party seeking to recover upon a claim ... or to obtain a declaratory judgment may ... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." FED. R. CIV. P. 56 (a).

B.

The standard for granting a summary judgment is as follows:

> "... . ... . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ... ." FED. R. CIV. P. 56 ©).

C.

GBIC avers that its Motion, pursuant to FED. R. CIV. P. 56, fulfills the said standards, and in accordance with the motion, affidavits, exhibits, brief and admissions (in the form of responses in TITAN's [first amended] answer [at Paragraphs VI. C., VII. A., VII. B., VII. E., and VIII. A.], as well as Defendent's

Response To Plaintiff's First Request For Admissions [a copy of which is annexed to Plaintiff's Exhibits To Its Motion For Summary Judgment as Exhibit 6 and incorporated by reference herein]), there being no genuine issue as to any material fact, GBIC is entitled to a (summary) judgment in its favor as a matter of law.

III.

Declaratory Relief

A.

Although this action is pending in federal court, it was filed in state district court, and removed to the federal courts, as reflected by the pleadings on file in this case.

B.

This removal was premised upon 28 U.S.C. § 1332 (Diversity of citizenship; amount in controversy, costs), which enables parties, without there being a federal question (case or issue) to remove the case to federal court, where the case involves "citizens of different States." 28 U.S.C. § 1332 (a) (1).

C.

In such cases, although the case is in federal court, the law governing is that of the state in which the original suit was filed, or in other words (and in this case), Texas (state) law controls the matter of the requested declaratory relief. See Mobil Oil Corp. v. Kelley, 493 F.2d 784, 789 n.2 (5th Cir. 1974), cert. denied, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974)

(determining, in part, that where "jurisdiction is based on diversity of citizenship, the fundamental claim for relief is by definition based on state law."); <u>Hutchinson v. Commercial Trading Co., Inc.</u>, 427 F. Supp. 662, 665 (N.D. Tex. 1977), <u>aff'd</u>, 586 F.2d 840, <u>aff'd</u>, 587 F.2d 808 (1978) (holding that "since this case is founded on diversity jurisdiction, 28 U.S.C. § 1332, this Court must decide the present case as would a court of the State Of Texas.").

### D.

As indicated above, this case is a request for declaratory relief, filed (originally) in a state district court, regarding the reversion of certain land and improvements under a Project Agreement from TITAN to GBIC, because TITAN failed to maintain and continuously operate a tire manufacturing operation in Brownsville.

### E.

The applicable state law governing this case, as regards the remedy of declaratory relief, is TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001, <u>et seq.</u> (Vernon 1997; Vernon Supp. 2004) (the Texas Uniform Declaratory Judgments Act). This Act states its purpose as follows:

> "This chapter is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (b) (Vernon 1997).

**F.**

Such Act, in most instances, focuses upon the resolution of a controversy through the construction of a written instrument, such that:

> "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. §37.004 (a) (Vernon 1997).

See TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (b) (Vernon 1997) ("A contract may be construed either before or after there has been a breach.").

**G.**

In addition to declaratory relief, a party in a suit for declaratory relief under the Act may also recover attorney fees and court costs. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997) (Costs) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

**IV.**

**Project Agreement**

**A.**

As reflected in detail above and in the Motion For Summary Judgment, this entire case involves (only) a request for

declaratory relief regarding a reversion of certain land and improvements, under a Project Agreement, from TITAN to GBIC because, under one provision of the contract (the reversion clause), TITAN failed to maintain and continuously operate a tire manufacturing operation.

B.

Thus, this entire case involves the interpretation of such clause in the said contract, which deals with an interest in land, based on a reversion, transferring "back" to the earlier owner (GBIC), and moreover, the enforceability – judicially -- of the reversion, under the contract, which, under Texas law, is an appropriate basis for declaratory relief. See Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140, 142 (1940) (holding that a refusal of an owner of a mineral estate to ratify an oil and gas lease executed by its grantors, in order to enable lessees to make arrangements with oil companies to drill a test well on the leased premises, authorized an action by lessees for a declaratory judgment as to the validity of the lease); U.S. Coffee & Tea Co. v. Texas & Pacific Railway Co., 280 S.W.2d 290, 293 (Tex. Civ. App. - Dallas 1955, writ ref'd n.r.e.) (holding that where a railroad "either had the right to remove the tracks or it did not," and adjoining property owners "either had the right to require the continued presence of the tracks adjacent to their place of business" or did not, their "respective rights were vested and

present as of ... [the] time" of trial, making "the situation one
ideally suitable for a declaratory judgment" to determine the
rights of the parties).

### C.

The question of the enforceability of the said reversion,
based on the said clause in the Project Agreement, is an
appropriate component of or basis for declaratory relief in this
case, to -- in effect -- confirm (and enforce) such reversion. See
Candlelight Hills Civic Ass'n v. Goodwin, 763 S.W.2d 474, 481 (Tex.
App. - Houston [14th Dist.] 1988, writ denied) ("... . ... . An
action for a declaratory judgment is an appropriate means for
seeking a determination of the validity, applicability, or
enforceability of a restrictive covenant. ... . ... ."); Lovelace
v. Bandera Cemetery Ass'n, 545 S.W.2d 194, 197-198 (Tex. Civ. App.
- San Antonio 1976, writ ref'd n.r.e.) (same).

### D.

A declaratory judgment action is an appropriate vehicle to
construe a contract and to enforce its terms, in the context of a
real estate transaction or in any contractual relationship. See
Texas & New Orleans Railroad Co. v. Houston Belt & Terminal Railway
Co., 308 S.W.2d 912, 919 (Tex. Civ. App. - Houston 1957, no writ)
(holding that where a railroad brought a suit for declaratory
judgment to determine its rights under a track agreement with

another railroad, the court was "empowered to declare rights and other legal relations whether or not other relief" was sought, such that a "showing of damage" was not required); Hasty, Inc. v. Inwood Buckhorn Joint Venture, 908 S.W.2d 494, 499 (Tex. App. - Dallas 1995, writ denied) (holding that a "trial court may construe a contract in a declaratory judgment suit either before or after a breach occurs."); Creative Thinking Sources, Inc. v. Creative Thinking, Inc., 74 S.W.3d 504, 513 (Tex. App. - Corpus Christi 2002, no pet.) (holding that a "justiciable controversy about the rights and status of the parties under the contract between the" parties existed, in that a "declaratory judgment is appropriate only if there is a justiciable controversy about the rights and status of the parties and the declaration would resolve the controversy.").

### E.

Ultimately, this case involves a breach of a contract, in that TITAN refuses to honor the said conditional reversion clause of the Project Agreement, requiring an interpretation of the contract as to such mandatory reversion clause and the event (the condition) that triggered the provision so as to give rise to a reversion of the land and improvements at issue from TITAN to GBIC. This is the justiciable controversy in this declaratory judgment action regarding the confirmation of the reversion arising under the Project Agreement. See Crutcher - Rolfs - Cummings, Inc. v.

<u>Ballard</u>, 540 S.W.2d 380, 386 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.), <u>cert. denied</u>, 433 U.S. 910, 97 S.Ct. 2978 (1977) ("... . ... . A breach does not occur until a party to an agreement fails to perform an act or thing that he has expressly or impliedly promised to do. ... . ... ."); <u>Koenning v. Manco Corporation</u>, 521 S.W.2d 691, 695, 699 - 700 (Tex. Civ. App. - Corpus Christi), <u>writ ref'd n.r.e.</u>, 531 S.W.2d 805 (Tex. 1975) (per curiam) (indicating that to recover under the theory of breach of contract, there must be [1] a contractual relationship between the parties, [2] a provision in the contract giving rise to the right to recover [i.e., a duty or obligation of the other party], and [3] a breach of that contract by the other party) ("... . ... . Evidence of a contract, the terms thereof, the breach of the contract, and damages resulting from said breach having been introduced, the trial court erred in granting appellee - Manco's motion for instructed verdict about appellant's alleged contract cause of action."); BLACK'S LAW DICTIONARY 1379 (7th ed. 1999) ("<u>Shall</u>. ... Has a duty to; more broadly, is required to ... . ... .") (as indicated in the reversion provision at issue, at Paragraph II. of the Project Agreement, when one of the prescribed events occurs, "any property or assets ... [of] TITAN ... acquired with funds ... [of GBIC] ... <u>shall revert</u> to ... [GBIC]." [emphasis added]).

V.

<u>Defenses Not Applicable</u>

A.

TITAN's claim of waiver/estoppel is not applicable because GBIC has not knowingly or voluntarily waived any of its rights under the Project Agreement or at law to enforce the reversion that is the sole issue in this case, nor has GBIC attempted to deny the effectiveness of the Project Agreement or the Special Warranty Deed; again, GBIC is seeking to <u>enforce</u> these instruments. <u>See El Paso Development Co. v. Berryman</u>, 769 S.W.2d 584, 589 (Tex. App. - Corpus Christi 1989, writ denied) ("Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. ... . It is a voluntary act and implies an election to dispense with something of value or to forego some advantage which might have been demanded or insisted upon. ... . ... ."); <u>Schroeder v. Texas Iron Works, Inc.</u>, 769 S.W.2d 625, 628-629 (Tex. App. - Corpus Christi 1989), <u>aff'd</u>, 813 S.W.2d 483 (Tex. 1991) ("Estoppels are of two essential types: 1) estoppel by deed, record or contract, and 2) equitable estoppel. ... . Estoppel by deed or contract precludes parties to a valid sealed instrument from denying its force and effect. ... . ... . Equitable estoppel requires a showing of 1) a false representation or concealment of material facts 2) made with knowledge of those facts 3) to a party without knowledge, or means of knowledge, of such facts 4) with the

intention that it be acted on, and 5) detrimental reliance by the party to whom the misrepresentation is made. ... . ... .").

B.

TITAN's claim of laches is not applicable because TITAN discontinued its tire manufacturing operation in Brownsville in July 2003 and this suit was filed in November 2003, a period of four months, which is too short a period of time to argue that GBIC was not vigilant in filing this suit. See Campbell v. Pirtle, 790 S.W.2d 372, 375 (Tex. App. - Amarillo 1990, no writ) ("... . ... . Laches occurs when one unreasonably delays in asserting his rights against another who in good faith has changed his position to his detriment because of the delay. ... ."); BLACK'S LAW DICTIONARY 879 (7TH ed. 1999) ("Laches. ... Unreasonable delay or negligence in pursuing a right or claim -- almost always an equitable one -- in a way that prejudices the party against whom relief is sought. ... . ... ."). See also Transportation League, Inc. v. Morgan Express, Inc., 436 S.W.2d 378, 388 (Tex. Civ. App. - Dallas 1969, writ ref'd n.r.e.) ("In Texas the general rule is that if the action is one to which a statute of limitations is applicable, then equitable defenses of laches and stale demand do not apply; the statute of limitations governs. ... . ... .") (which defense [limitations], raised by Defendant, is addressed below).

C.

TITAN's assertion of an arbitration agreement is not applicable because this suit is not a claim for damages or debt but instead a request for declaratory relief based upon a contractual provision regarding the interpretation and/or enforcement of such provision, and extraordinary relief such as an injunction or declaratory relief is not an arbitrable matter as it is a procedural remedy beyond the purview of an arbitration tribunal (panel); plus, the requested declaratory relief involves a judicial confirmation of a right that has already come into existence by the fulfillment of a condition, to-wit, a reversion of land and improvements as a result of a failure to continue a tire manufacturing operation in Brownsville. See Crow v. City Of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922, 923-924 (1948) (holding that a declaratory judgment is an additional and cumulative remedy "and does not supplant any existing remedy," and the existence of another adequate remedy does not bar the right to maintain an action for a declaratory judgment); Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 713 (1946) (holding that a declaratory judgment action is an "'alternative or additional remedy to facilitate the administration of justice more readily' and further ... 'is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities.'"). Cf. TEX. CIV.

PRAC. & REM. CODE ANN. § 37.002 (b) (Vernon 1997) ("This chapter is remedial ... and it is to be liberally construed and administered."); TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (a) (Vernon 1997) ("A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. ... .").

D.

TITAN's claim of the failure (by GBIC, allegedly) to mitigate its damages is not applicable, because while GBIC has a breach of contract claim (involving damages) against TITAN, same has not been asserted in this case, which (again) only involves a declaratory relief claim regarding a contractual reversion -- in a Project Agreement -- of the land and improvements financed by GBIC to enable TITAN to open a tire manufacturing operation in Brownsville, subject to the terms of the Project Agreement, and therefore, the failure to mitigate damages (which is denied by GBIC) is irrelevant to this case. See Smith v. International Printing Pressmen & Assistants' Union, 190 S.W.2d 769, 775 (Tex. Civ. App. - Dallas 1945), reversed on other grounds, International Printing Pressmen & Assistants' Union v. Smith, 145 Tex. 399, 198 S.W.2d 729 (1946) (holding that under the doctrine of "mitigation of damages," one "who has been injured by" another's conduct, who "fails to exercise reasonable care to avoid the consequences of his injury ... cannot recover for so much of his damage as results from that failure. ...

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT - PAGE 13

. ... .") (which doctrine is legally and factually irrelevant to this case); <u>Fidelity & Deposit Co. Of Maryland v. Stool</u>, 607 S.W.2d 17, 25 (Tex. Civ. App. - Tyler 1980, no writ) ("In Texas it is recognized that the rule of avoidable consequences imposes a duty on the person injured to minimize his damages by the exercise of ordinary care. ... . In a breach of contract action the doctrine requires the injured party to use reasonable diligence to minimize his damages, but does not require him to imperil his cause of action or to sacrifice a substantial right of his own. ... . ... ."); BLACK'S LAW DICTIONARY 1018 (7th ed. 1999) (<u>Mitigation of damages doctrine</u>. The principle requiring a plaintiff, after an injury or breach of contract, to use ordinary care to alleviate the effects of the injury or breach. ... . If the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced. ... .").

E.

TITAN's claim that GBIC (allegedly) failed to comply with its duties and obligations under the Project Agreement is not applicable because GBIC has performed all of its duties and obligations under the Project Agreement; it is TITAN that has failed to acknowledge or perform its duties under the contract, to-wit, the acknowledgement of the reversion of the land and the improvements under the contract. See <u>Fidelity & Deposit Co. Of Maryland v. Stool</u>, 607 S.W.2d 17, 24 (Tex. Civ. App. - Tyler 1980,

no writ) ("... . It is well-established that a breach of contract occurs when a party fails or refuses to perform an act or thing that he has expressly or impliedly promised to do. ... . ... ."); Crutcher - Rolfs - Cummings, Inc. v. Ballard, 540 S.W.2d 380, 386 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978 (1977) ("... . ... . A breach does not occur until a party to an agreement fails to perform an act or thing that he has expressly or impliedly promised to do. ... . ... .").

F.

TITAN's claim that GBIC (allegedly) delayed the construction of the tire manufacturing operation is not applicable because GBIC was not involved in any way with the construction of the facility, and in fact, TITAN made at least two requests for additional funding -- after the purchase of the land at issue -- for site development (construction) costs, which were approved by GBIC and included in the revised and re-executed Project Agreement at issue (Exhibit 2); moreover, the construction deadline was one of several bases in the Project Agreement (Exhibit 2, at Paragraph II., in the third full subparagraph, at Page 4) for claiming the reversion clause was activated, but GBIC never asserted that such event occurred and has not pursued same in this case. See Fidelity & Deposit Co. Of Maryland v. Stool, 607 S.W.2d 17, 24 (Tex. Civ. App. - Tyler 1980, no writ) (cited above); Crutcher - Rolfs - Cummings,

Inc. v. Ballard, 540 S.W.2d 380, 386 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978 (1977) (cited above).

G.

TITAN's claim that GBIC (allegedly) failed to provide all incentives promised to TITAN is not applicable because GBIC has paid all incentives required under the Project Agreement, and it is TITAN that has not performed, by not creating the 500 jobs required (and anticipated) under that contract, resulting in a reduction in incentives paid, pursuant to the terms of the Project Agreement (such that TITAN was overpaid); as this case only deals with declaratory relief involving the reversion clause in the Project Agreement, and does not involve a damage claim, this defense is irrelevant. See Fidelity & Deposit Co. Of Maryland v. Stool, 607 S.W.2d 17, 24 (Tex. Civ. App. - Tyler 1980, no writ) (cited above); Crutcher - Rolfs - Cummings, Inc. v. Ballard, 540 S.W.2d 380, 386 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978 (1977) (cited above); Koenning v. Manco Corporation, 521 S.W.2d 691, 695 (Tex. Civ. App. - Corpus Christi), writ ref'd n.r.e., 531 S.W.2d 805 (Tex. 1975) (per curiam) (cited above).

H.

TITAN's claim that it (TITAN) complied with the Project Agreement is not applicable because while GBIC performed its

obligations under the Project Agreement in all particulars, it is TITAN that is in breach of portions of that contract, as indicated (several times) above, especially the reversion clause of the contract, and this is a claim (again) for declaratory relief (only), as indicated (several times) above. See Fidelity & Deposit Co. Of Maryland v. Stool, 607 S.W.2d 17, 24 (Tex. Civ. App. - Tyler 1980, no writ) ("... . It is well - established that a breach of contract occurs when a party fails or refuses to perform an act or thing he has expressly or impliedly promised to do. ... . ... ."); Crutcher - Rolfs - Cummings, Inc. v. Ballard, 540 S.W.2d 380, 386 (Tex. Civ. App. - Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978 (1977) ("... . ... . A breach does not occur until a party to an agreement fails to perform an act or thing that he has expressly or impliedly promised to do. ... . ... ."); Koenning v. Manco Corporation, 521 S.W.2d 691, 695 (Tex. Civ. App. - Corpus Christi), writ ref'd n.r.e., 531 S.W.2d 805 (Tex. 1975) (per curiam) (indicating that to recover under the theory of breach of contract, there must be [1] a contractual relationship between the parties, [2] a provision in the contract giving rise to the right to recover [i.e., a duty or obligation of the other party], and [3] a breach of that contract by the other party).

I.

TITAN's claim that the Project Agreement's term expired is not applicable because the expiration of a contract's term does not cancel the terms of the contract, especially where there is no time limit in the provision at issue; further, regardless of a contract's term, if there is no time limit on a condition or contingency set forth in the contract, same (the condition or contingency) -- logically -- continues after the term of the contract (expires). See City Of Big Spring v. Board Of Control, 389 S.W.2d 523, 529 (Tex. Civ. App. - Austin 1965), affirmed, 404 S.W.2d 810, 815 (Tex. 1966) ("The Contract in [this] suit is not indefinite as to the period of its duration. It is limited in time by a specified event, to wit, 'as long as the State of Texas shall in good faith maintain and operate said hospital on said site.'"). ("... 'Words which fix an ascertainable fact or event, by which the term of a Contract's [or a provision thereof] duration can be determined, make the Contract definite and certain in that particular.' The contingency upon which the duration of this Contract depends can be ascertained with precision. The duration of the Contract is, therefore, not indefinite."); Marshall v. Marshall, 735 S.W.2d 587, 592 (Tex App. - Dallas 1987, writ ref'd n.r.e.) ("... . ... . When it appears, from the intrinsic nature of the agreement, that an agreement is necessarily limited as to duration by the happening of any one of several contingencies, this

ascertainable contingency determines the duration. ... ."); <u>Smith</u> <u>v. Lane</u>, 236 S.W.2d 214, 215 (Tex. Civ. App. - San Antonio 1950, no writ) ("Appellant's third point presents the contention that the contracts were void in that they did not provide for a specified duration or time of performance.  The contracts were silent as to when they should terminate. Under such circumstances they are not necessarily void.   They may be construed as lasting for a reasonable time or during the life of the promisee, or so long as he may continue in business. ... . We overrule appellant's third and last point.").  <u>See also</u> PROJECT AGREEEMENT (between GBIC and TITAN) ¶ II. (in the third full subparagraph, at Page 4 of Exhibit 2) (the reversion clause, which has no time limit on its effectiveness or a term for same); PROJECT AGREEMENT (between GBIC and TITAN) ¶ VI. (at Page 7 of Exhibit 2) (providing that all rights and remedies available at law or in equity shall survive the termination of the Project Agreement).

J.

TITAN's claim of frustration is not applicable because this case seeks declaratory relief (only) and does not seek damages, and more importantly, TITAN did <u>not</u> have to consolidate its operations out of state and thus discontinue its Brownsville tire manufacturing operation: TITAN knowingly and voluntarily decided to discontinue such operation, after having received millions of dollars to fund the Brownsville facility, and in the event such

action occurred, the land and improvements thereon paid for by GBIC would, under the Project Agreement, revert to GBIC. See BLACK'S LAW DICTIONARY 679 (7TH ed. 1999) ("Frustration. The prevention or hindering of the attainment of a goal, such as contractual performance.") (there has never been any valid assertion that TITAN was prevented or hindered from contractual performance involving the operation of its tire manufacturing facility in Brownsville; again, TITAN decided to close its Brownsville facility, as set forth above) (the doctrine of frustration does not appear to be recognized in Texas law); BLACK'S LAW DICTIONARY 679 (7th ed. 1999) ("Commercial frustration. An excuse for a party's nonperformance because of some unforeseeable and uncontrollable circumstance. ... .") (there being no "Act of God" issue in this case, this doctrine is clearly inapplicable, and unavailable to the defense); BLACK'S LAW DICTIONARY 679 (7TH ed. 1999) ("Self-induced frustration. A breach of contract caused by one party's action that prevents the performance. ... The phrase is something of a misnomer, since self-induced frustration is not really a type of frustration at all but is instead a breach of contract.") (this appears to describe the circumstances of this case).

K.

TITAN's claim of accord and satisfaction, or satisfaction, is not applicable because GBIC has not entered into any new agreements with TITAN regarding the subject of the said Project Agreement (or

Special Warranty Deed). <u>See</u> <u>Universe Life Ins. Co. v. Giles</u>, 881 S.W.2d 44, 52 (Tex. App. - Texarkana 1994), <u>aff'd in part</u>, <u>rev'd in part on other grounds</u>, 950 S.W.2d 48 (Tex. 1997) ("The accord and satisfaction necessary to create a binding contract between parties can occur when parties make an agreement to discharge a disputed obligation by a lesser payment tendered and accepted. ... . However, there must also be a meeting of the minds and an unmistakable communication to the creditor that tender of the lesser amount is on the condition that its acceptance will constitute satisfaction of the entire obligation. ... . None appears in the evidence."); <u>Flanagan v. Martin</u>, 880 S.W.2d 863, 867 (Tex. App. - Waco 1994, writ dism'd w.o.j.) ("The satisfaction in an accord and satisfaction is usually the <u>performance</u> of the new promise, rather than the <u>new</u> <u>promise</u> itself. When, however, the new promise itself is accepted as the satisfaction, the accord is more properly termed a novation. ... . ... .").

L.

TITAN's claim of (statute of) limitations is not applicable because TITAN discontinued its Brownsville tire manufacturing operation in July 2003 and this suit was filed in November 2003 (within four months), and all limitations periods, under Texas law, are at least one (1) year. <u>See</u> TEX. CIV. PRAC. & REM. CODE ANN. § 16.002 (Vernon 2002) (One - Year Limitations Period); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2002) (Two-Year Limitations

Period); TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002) (Four-Year Limitations Period); TEX. CIV. PRAC. & REM. CODE ANN. § 16.0045 (Vernon 2002) (Five-Year Limitations Period); TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 1997) (Residual Limitations Period). See also Transporation League, Inc. v. Morgan Express, Inc., 436 S.W.2d 378, 387 (Tex. Civ. App. - Dallas 1969, writ ref'd n.r.e.) ("... . ... . It was held there, as we hold here, that the statute [of limitations] does not begin to run against the right to maintain a suit for declaratory judgment until an actual controversy has occurred, but when such dispute or controversy does arise then the cause of action accrues and the statute begins to run. ... .").

M.

TITAN's claim of an "illusory contract" is not applicable because the Project Agreement at issue reflected the agreement of the parties in writing, executed after months of "arm's length" negotiations and involving sophisticated parties represented by counsel, which contract was supported by substantial consideration as to both parties, including the reversion clause (which was the "basis of the bargain" [at least in part]). See BLACK'S LAW DICTIONARY 322 (7TH ed. 1999) ("Illusory contract. An agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. ... The insubstantial promise renders the contract unenforceable.") (which does not

appear to be a doctrine recognized in Texas law, and which doctrine is irrelevant to this case).

N.

TITAN's claim of a "failure of condition precedent" is not applicable because the Project Agreement at issue does not contain a "condition precedent" provision as such; GBIC performed all of its obligations under the Project Agreement -- in accordance with its terms -- and the "condition precedent" -- if this refers to the event giving rise to the reversion (the discontinuance of operations at the said tire manufacturing facility and the failure to maintain an ongoing tire manufacturing facility in Brownsville) -- did in fact occur. See BLACK'S LAW DICTIONARY 613 (7th ed. 1999) ("Failure. ... Deficiency; lack; want. ... An omission of an expected action, occurrence, or performance. ... ."); BLACK'S LAW DICTIONARY 614 (7TH ed. 1999) ("Failure of a condition. A situation in which an event required in a contract is not satisfied, as a result of which the adversely affected party is discharged from performing. ... This situation does not void the contract; the parties are still bound, but one party does not have to perform because of the failure of the condition.") (which does not appear to be a doctrine recognized in Texas law, and which doctrine is irrelevant to this case).

VI.

Conclusion

A.

GBIC's Motion For Summary Judgment should be granted because GBIC filed a claim for declaratory relief premised on there being a contractual reversion of land and improvements thereon under a Project Agreement entered into by the parties, conditioned on the occurrence of certain events -- including the failure to continue operations and to maintain a tire manufacturing operation in Brownsville -- which did in fact occur, which gave rise (therefore) to such contractual reversion.

B.

However, TITAN has failed and refused to acknowledge the reversion under the Project Agreement, giving rise to a justiciable controversy between the parties, and resulting in this suit for declaratory relief to judicially confirm the reversion of the land and improvements thereon (from TITAN) to GBIC, under the terms of the Project Agreement, whereby the Court will need to interpret the Agreement, and declare the rights or status of the parties under the said contract, to finally resolve the controversy.

C.

In that TITAN received millions of dollars from GBIC to open a tire manufacturing facility in Brownsville, under the Project Agreement, by failing to continue such Brownsville tire

manufacturing operation, under the contract, the land and improvements financed by GBIC reverted, under the contract and as a matter of law, to GBIC, and thus, the Court should declare such in the disposition of this case, judicially confirming such reversion, and resolving this case by a summary judgment in favor of GBIC, awarding costs of court and attorney fees to GBIC.

      \*          \*          \*

WHEREFORE, GBIC respectfully requests that its Motion For Summary Judgment in this case be set for hearing, with notice to all other parties, and that on final hearing, the Court grant GBIC's Motion For Summary Judgment and that GBIC recover from TITAN the following:

1 - A Declaration that under the said Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements thereon (as indicated above), as purchased through funds of GBIC, have reverted to GBIC.

2 - An award to GBIC of reasonable and necessary attorney fees.

3 - An award to GBIC for costs expended or incurred in this action.

4 - An award to GBIC of such other and further relief to which it is justly and equitably entitled.

DATED this 9th day of July, 2004.

Respectfully submitted,

GREATER BROWNSVILLE INCENTIVES
CORPORATION, Plaintiff

BY: _____
Brian G. Janis

Southern District Of Texas
Federal Admissions ID. No. 1201
(Texas State Bar No. 10570300)

OF COUNSEL:                     ATTORNEY-IN-CHARGE FOR PLAINTIFF

SANCHEZ, WHITTINGTON, JANIS     100 North Expressway 83
 & ZABARTE, L.L.P.              Brownsville, Texas 78521-2284
                                Telephone: 956/546-3731
                                Telefax: 956/546-3766


CERTIFICATE OF SERVICE


     This is to certify that a true and correct copy of the
foregoing GBIC's Memorandum In Support Of Its Motion For Summary
Judgment has been served upon Michael Rodriguez, counsel of record
for TITAN, at 319 East Elizabeth Street, Brownsville, Texas 78520,
by mailing same United States Mail, postage prepaid and properly
addressed, and by hand-delivering same, on this 9th day of July,
2004.


_____
Brian G. Janis

# "A P P E N D I X"

# **A P P E N D I X**

## Table Of Contents

1 -  BLACK'S LAW DICTIONARY 322 (7TH ed. 1999) ("Illusory contract"). . . . . . . . . . . . . . . . . . . .    A

2 -  BLACK'S LAW DICTIONARY 613 (7th ed. 1999) ("Failure").    B

3 -  BLACK'S LAW DICTIONARY 614 (7th ed. 1999) ("Failure of a condition"). . . . . . . . . . . . . . . .    C

4 -  BLACK'S LAW DICTIONARY 679 (7th ed. 1999) ("Commercial frustration"). . . . . . . . . . . . . . . .    D

5 -  BLACK'S LAW DICTIONARY 679 (7th ed. 1999) ("Frustration"). . . . . . . . . . . . . . . . .    D

6 -  BLACK'S LAW DICTIONARY 679 (7th ed. 1999) (Self-induced frustration"). . . . . . . . . . . . . . . .    D

7 -  BLACK'S LAW DICTIONARY 879 (7th ed. 1999) ("Laches"). .    E

8 -  BLACK'S LAW DICTIONARY 1018 (7TH ed. 1999) ("Mitigation of damages doctrine"). . . . . . . . . . . . . .    F

9 -  BLACK'S LAW DICTIONARY 1379 (7th ed. 1999) ("Shall"). .    G

**contract**                                                          322

chance to win a prize. — Also termed *gaming contract*.

> "Generally, under or apart from statutes so providing, or prohibiting such contracts or transactions, gambling contracts and transactions are illegal and void and cannot be enforced, and such contracts are void ab initio    A gambling contract is invalid, no matter what outward form it may assume, and no ingenuity can make it legal." 38 C.J.S. *Gaming* § 26, at 138–39 (1996)

**government contract.** See *procurement contract*.

**gratuitous contract** (gra-t[y]oo-i-təs). A contract made for the benefit of a promisee who does not give consideration to the promisor. — Also termed *contract of beneficence; contract of benevolence.* Cf. *onerous contract.*

**grubstake contract.** A contract between two parties in which one party provides the grubstake — money and supplies — and the other party prospects for and locates mines on public land. ● Each party acquires an interest in the mine as agreed to in the contract. Grubstake contracts are used chiefly in the western United States. In some states, such as Alaska, a request for grubstake money is considered the offer of a security and must be registered. — Also termed *grubstaking contract.*

**guaranteed-sale contract.** A contract between a real-estate agency and a property owner in which the agency agrees to buy the property at a guaranteed price after a specified length of time if it has not been sold under the listing agreement. ● The guaranteed price is usu. a substantial discount from the listed price. — Also termed *guaranteed-purchase contract.*

**hazardous contract.** See *aleatory contract.*

**illegal contract.** A promise that is prohibited because the performance, formation, or object of the agreement is against the law. ● Technically speaking, an illegal contract is not a contract at all, so the phrase is a misnomer.

> "An illegal contract is exceptionally difficult to define. It does not merely mean a contract contrary to the criminal law, although such a contract would indubitably be illegal. But a contract can well be illegal without contravening the criminal law, because there are certain activities which the law does not actually prohibit, but at the same time regards as contrary to the public interest and definitely to be discouraged, for instance, prostitution. While a void contract is not necessarily illegal, an illegal contract is often void However, the consequences of an illegal contract differ somewhat from those usually produced by a simply void contract, so illegal contracts are usually accorded separate treatment." P.S. Atiyah, *An Introduction to the Law of Contract* 38 (3d ed. 1981)

**illusory contract.** An agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. ● The insubstantial promise renders the contract unenforceable.

**immoral contract.** A contract that so flagrantly violates societal norms as to be unenforceable.

**implied contract. 1.** An implied-in-law contract. **2.** An implied-in-fact contract. Cf. *express contract.*

**implied-in-fact contract.** A contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed. — Also termed *contract implied in fact.*

**implied-in-law contract.** An obligation imposed by law because of the conduct of the parties, or some special relationship between them, or because one of them would otherwise be unjustly enriched. ● An implied-in-law contract is not actually a contract, but instead a remedy that allows the plaintiff to recover a benefit conferred on the defendant. — Also termed *contract implied in law; quasi-contract; constructive contract.* See UNJUST ENRICHMENT.

> "[A]dventurous courts have turned to the idea of a 'contract implied in law,' a 'quasi-contract' — not really a contract, a legal fiction necessary to promote the ends of justice and, in particular, to prevent 'unjust enrichment' " Grant Gilmore, *The Death of Contract* 73–74 (1974).

> "Since .   claims for the redress of unjust enrichment did not fit comfortably into either the category of contract or that of tort, they came to be described as claims in *quasi-contract.* Some of them were originally characterized as being in *quantum meruit* (as much as he deserved), a form of action used for claims to payment for services. This procedural term has persisted and is sometimes used inexactly as a synonym for the more general term *quasi-contract,* which refers to any money claim for the redress of unjust enrichment." E. Allan Farnsworth, *Contracts* § 2 20, at 103 (2d ed. 1990).

**impossible contract.** A contract that the law will not enforce because there is no feasible way for one of the parties to perform. See IMPOSSIBILITY (3).

**independent contract.** A contract in which the mutual acts or promises of the parties have no relation to each other, either as equivalents or as considerations. Cf. *commutative contract.*

**informal contract.** See *parol contract* (2).

**innominate contract** (i-**nom**-ə-nit). *Civil law.* A contract not classifiable under any particular name; a contract for which the law supplies nothing in addition to the express



**fact-trier.** See FACT-FINDER.

**factual cause.** See *but-for cause* under CAUSE (1).

**factual impossibility.** See IMPOSSIBILITY.

**factual presumption.** See *presumption of fact* under PRESUMPTION.

**factum** (**fak**-təm), *n.* [Latin] **1.** A fact, such as a person's physical presence in a new domicile. **2.** An act or deed, such as the due execution of a will. ● Over time, *factum* in this sense came to mean "charter" — that is, the act or deed of conveying land, reduced to written form. See *fraud in the factum* under FRAUD.

> "[I]t is only a short step to holding as a matter of law that a 'deed' — and by a deed (*fet, factum*) men are beginning to mean a sealed piece of parchment — has an operative force of its own which intentions expressed, never so plainly, in other ways have not. The sealing and delivering of the parchment is the contractual act. Further, what is done by 'deed' can only be undone by 'deed.'" 2 Frederick Pollock & Frederic W. Maitland, *The History of English Law Before the Time of Edward I* 220 (2d ed. 1899)

> *factum juridicum* (**fak**-təm juu-**rid**-i-kəm). [Latin] A juridical fact.

> *factum probandum* (**fak**-təm prə-**ban**-dəm). [Latin] A fact to be proved.

> *factum probans* (**fak**-təm **proh**-banz). [Latin] A probative or evidentiary fact.

**3.** A statement of facts. **4.** BRIEF (1). Pl. **facta.**

**facultative certificate** (**fak**-əl-tay-tiv). *Reinsurance.* A contract of reinsurance separately negotiated to cover risks under a single insurance policy. ● Facultative reinsurance allows the reinsurer the "faculty" of assessing and possibly rejecting a particular risk (esp. if underwriting information is inadequate).

**facultative reinsurance.** See REINSURANCE.

**faculties.** *Hist. Eccles. law.* **1.** An authorization granted to a person to do what otherwise would not be allowed. **2.** The extent of a husband's estate; esp., the ability to pay alimony. See ALLEGATION OF FACULTIES.

**Faculties, Court of.** See COURT OF FACULTIES.

**Faculties, Master of the.** See MASTER OF THE FACULTIES.

**faderfium** (**fah**-thər-fee-əm). *Hist.* A marriage gift to the bride from her father or brother.

**faeder-feoh** (**fah**-thər-fee). *Hist.* Property brought by a wife to her husband at marriage. ● If the husband died, the property reverted to the widow if the heir of the deceased husband refused consent to her second marriage. The property reverted to the widow's family if she returned to them.

**faggot.** *Hist.* **1.** A piece of firewood used to burn a heretic alive. **2.** An embroidered figure of a faggot, required to be worn by heretics who had recanted.

**fail,** *n.* A transaction between securities brokers in which delivery and payment do not occur at the prescribed time, usu. on the settlement date. — Also termed *fail contract.*

> *fail to deliver.* The nondelivery of securities from a selling broker to a buying broker by the settlement date.

> *fail to receive.* The failure of a buying broker to receive delivery of securities from the selling broker by the settlement date.

**fail,** *vb.* **1.** To be deficient or unsuccessful; to fall short <they failed to settle the dispute>. **2.** To become insolvent or bankrupt <two banks failed last week>. **3.** To lapse <the bequest failed as a result of ademption>.

**failing circumstances.** See INSOLVENCY.

**failing-company doctrine.** *Antitrust.* The rule that allows an otherwise proscribed merger or acquisition between competitors when one is bankrupt or near failure. 15 USCA §§ 12–27. — Also termed *failing-firm defense.*

> "The 1992 guidelines provide a limited defense for failing firms and failing divisions of firms. The defense is available if impending failure would cause the assets of one party to leave the market if the merger does not occur. Thus to establish a *failing firm* defense, the parties must show that the failing firm cannot (1) meet its financial obligations, (2) reorganize in bankruptcy, and (3) find another buyer whose purchase of the firm would pose lesser anticompetitive risks. The parties must further show that (4) without the merger, the failing firm's assets will exit the market." Ernest Gellhorn & William E Kovacic, *Antitrust Law and Economics in a Nutshell* 398–99 (4th ed 1994).

**fail position.** A situation existing when, after all transactions in a security have been netted out, a broker owes another broker more securities than it has coming in from other firms.

**failure. 1.** Deficiency; lack; want. **2.** An omission of an expected action, occurrence, or performance. See LAPSE (2).

B

> **failure of a condition.** A situation in which an event required in a contract is not satisfied, as a result of which the adversely affected party is discharged from performing. ● This situation does not void the contract; the parties are still bound, but one party does not have to perform because of the failure of the condition.

**failure of consideration.** See FAILURE OF CONSIDERATION.

**failure of good behavior.** A civil servant's act that is ground for removal.

**failure of issue.** See FAILURE OF ISSUE.

**failure of justice.** See MISCARRIAGE OF JUSTICE.

**failure of proof.** A party's not having produced evidence establishing a fact essential to a claim or defense.

**failure of title.** A seller's inability to establish a good claim to the property contracted for sale. Cf. *clear title* under TITLE.

**failure of trust.** The lapse of a trust because the instrument creating it has a defect or because of its illegality or other legal impediment.

**failure otherwise than on the merits.** The defeat of a plaintiff's claim by a procedural device without a decision on the existence of the claim's elements.

**failure to bargain collectively.** An employer's refusal to discuss labor issues with a union.

**failure to make delivery.** Nondelivery or misdelivery.

**failure to meet obligations.** See BANKRUPTCY (2); INSOLVENCY.

**failure to perform.** A party's not meeting its obligations under a contract. See CONTRACT (4).

**failure to state a cause of action.** A plaintiff's not having alleged facts in the complaint sufficient to maintain a claim. ● This failure warrants dismissal of the complaint.

**failure to testify.** A party's — esp. a criminal defendant's — decision not to testify. ● Under the Fifth Amendment, the prosecutor and the judge cannot comment to the jury on a criminal defendant's failure to testify. But comments on the failure are usu. permissible in a civil case.

**failure of consideration.** A situation in which a contract's basis or inducement ceases to exist or becomes worthless. ● This term, unlike *consideration* per se, relates not to the formation of a contract but to its performance. See CONSIDERATION. Cf. WANT OF CONSIDERATION.

> "An illustration will help indicate how the term is used. If C promises to build a structure for O and O promises to make payment when the work is completed, it is clear that there is consideration on both sides of this contract and that therefore a contract was formed upon the exchange of promises. If C fails to perform, the result is sometimes described as a 'failure of consideration.' 'Failure of consideration' simply means a failure to perform and as used covers both a material breach of constructive conditions and a failure to perform an express condition. The use of the term 'failure of consideration' in this sense appears to be an unnecessary invitation to confusion because the word consideration is being used in two different senses Fortunately, the use of this phrase has gradually fallen into disuse. It is, however, still sufficiently widespread to be mentioned here This volume nowhere utilizes 'failure of consideration' as an operative concept." John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11–21, at 474–75 (3d ed. 1987).

> **partial failure of consideration.** A situation in which the contract consists of separable items of consideration and separable parts of the agreement, so that if part of the consideration fails, the appropriate part of the agreement can be apportioned to it. ● The several parts of the contract are in effect treated as separate contracts, and the contract is voided only to the extent that the consideration for one part fails.

> **total failure of consideration.** A situation in which the contract is indivisible so that a complete lack of consideration voids the contract.

> "The concept of total failure of consideration is a somewhat technical one. In particular there may be a total failure of consideration even though the defendant has actually done some work or expended some money in the performance of the contract, provided that what he has done has not enured to the benefit of the other party. For example, if a person orders machinery to be specially constructed for him, there will be a total failure of consideration if none of the machinery is delivered to him although some work may have been commenced and money expended on it. On the other hand, if some benefit has been received under the contract, no matter how trifling, there is no total failure of consideration In this case, just as there is generally no right to part payment for part performance, so also there is generally no right to part recovery for partial failure of consideration." P.S. Atiyah, *An Introduction to the Law of Contract* 306–07 (3d ed 1981).

**failure of good behavior.** See FAILURE.

**failure of issue.** The fact of dying without children, esp. if they would have inherited the decedent's estate. — Also termed *dying without issue.* See ISSUE (3).

> "There has been considerable litigation during the past several centuries over the meaning of a gift to 'A and

**679**

produce of a thing after being separated from it, and so becoming in law "fruits."

*fructus stantes* (frək-təs stan-teez). [Latin "standing fruits"] Fruits that have not yet been severed from the stalk or stem.

*fructuum perceptio* (frək-choo-əm pər-sep-shee-oh). [Latin] *Roman & civil law.* The rightful taking of the produce of property by a person who does not own the property.

*fruges* (**froo**-jeez). [Latin "fruits" or "crops"] *Roman & civil law.* Edible produce or crops; esculents.

**fruit. 1.** The produce or product of something (as of land or property). **2.** *Civil law.* Income or goods derived or produced from property without a diminution of the property's value.

   *civil fruit. Civil law.* Revenue received from property, such as interest income or a lease payment. See FRUCTUS CIVILES.

   *natural fruit. Civil law.* A product of the land or of animals, whether edible or otherwise useful. ● Examples are crops and eggs. See FRUCTUS NATURALES.

**3.** Something (such as evidence) obtained during an activity or operation <the fruit of the officer's work>. See FRUIT-OF-THE-POISONOUS-TREE DOCTRINE.

**fruit-and-the-tree doctrine.** *Tax.* The rule that an individual who earns income cannot assign that income to another person to avoid taxation.

**fruit-of-the-poisonous-tree doctrine.** *Criminal procedure.* The rule that evidence derived from an illegal search, arrest, or interrogation is inadmissible because the evidence (the "fruit") was tainted by the illegality (the "poisonous tree"). ● Under this doctrine, for example, a murder weapon is inadmissible if the map showing its location and used to find it was seized during an illegal search. — Also termed *fruits doctrine.* See EXCLUSIONARY RULE; ATTENUATION DOCTRINE; INDEPENDENT-SOURCE RULE; INEVITABLE-DISCOVERY RULE.

**fruits of a crime.** The proceeds acquired through criminal acts.

*frustra* (frəs-trə). [Latin] *Hist.* In vain; to no purpose.

**frustration,** *n.* **1.** The prevention or hindering of the attainment of a goal, such as contractual performance.

   **commercial frustration.** An excuse for a party's nonperformance because of some unforeseeable and uncontrollable circumstance. — Also termed *economic frustration.*

   **self-induced frustration.** A breach of contract caused by one party's action that prevents the performance. ● The phrase is something of a misnomer, since *self-induced frustration* is not really a type of frustration at all but is instead a breach of contract.

   **temporary frustration.** An occurrence that prevents performance and legally suspends the duty to perform for the duration of the event. ● If the burden or circumstance is substantially different after the event, then the duty may be discharged.

**2.** *Contracts.* The doctrine that, if the entire performance of a contract becomes fundamentally changed without any fault by either party, the contract is considered terminated. — Also termed *frustration of purpose.* — **frustrate,** *vb.* Cf. IMPOSSIBILITY (4); IMPRACTICABILITY; MISTAKE.

> "Where the entire performance of a contract becomes substantially impossible without any fault on either side, the contract is prima facie dissolved by the doctrine of frustration For instance, where a person contracted to let a hall to the plaintiff for use for some concerts, and the hall was accidentally destroyed by fire before the date of the first concert, it was held that the contract was dissolved." P.S Atiyah, *An Introduction to the Law of Contract* 200–01 (3d ed 1981)

*frustrum terrae* (frəs-trəm ter-ee). [Latin] *Hist.* A piece of land. ● This usu. referred to a fragment of land remaining after a survey.

**Frye test.** The defunct federal common-law rule of evidence on the admissibility of scientific evidence. ● It required that the tests or procedures must have gained general acceptance in their particular field. In *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court held that scientific evidence must meet the requirements of the Federal Rules of Evidence, not the *Frye* test, to be admissible. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923).

**FSIA.** *abbr.* FOREIGN SOVEREIGN IMMUNITIES ACT.

**FSLIC.** *abbr.* FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION.

**FST.** See *field sobriety test* under SOBRIETY TEST.

D

**Labor–Management Relations Act.** A federal statute, enacted in 1947, that regulates certain union activities, permits suits against unions for proscribed acts, prohibits certain strikes and boycotts, and provides steps for settling strikes involving national emergencies. 29 USCA §§ 141 et seq. — Also termed *Taft-Hartley Act.* See NATIONAL LABOR RELATIONS BOARD.

**labor organization.** See UNION.

**labor-relations act.** A statute regulating relations between employers and employees. ● Although the Labor–Management Relations Act is the chief federal labor-relations act, various states have enacted these statutes as well.

**Labor Relations Board.** See NATIONAL LABOR RELATIONS BOARD.

**labor union.** See UNION.

*lacca.* See LACTA.

**Lacey Act.** A federal law, originally enacted in 1900, that permits states to enforce their own game laws against animals imported from other states or countries. 16 USCA §§ 661 et seq. See GAME LAW.

*la chambre des esteilles* (lə **shahm**-brə də zes-tay), *n.* [French] *Hist.* The Star Chamber. See STAR CHAMBER, COURT OF.

**laches** (**lach**-iz). [Law French "remissness; slackness"] **1.** Unreasonable delay or negligence in pursuing a right or claim — almost always an equitable one — in a way that prejudices the party against whom relief is sought.

> "Early in its history, Chancery developed the doctrine that where the plaintiff in equity delayed beyond the period of the statute applicable at law, relief would be refused on the ground of laches even though no specific prejudice to the defendant was shown. Today, in most states, there are statutes of limitations applying to suits in equity Despite these, however, the doctrine still holds that even if the delay is for a shorter period of time than that of the statute, it may still bar equitable relief if it is unreasonable and prejudicial to the defendant " John F O'Connell, *Remedies in a Nutshell* 16 (2d ed. 1985).

**2.** The equitable doctrine by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting the claim, when that delay or negligence has prejudiced the party against whom relief is sought. Cf. LIMITATION (3).

> "The doctrine of laches   is an instance of the exercise of the reserved power of equity to withhold relief other-

> wise regularly given where in the particular case the granting of such relief would be unfair or unjust " William F. Walsh, *A Treatise on Equity* 472 (1930).

**laches, estoppel by.** See *estoppel by laches* under ESTOPPEL.

*Lackey* **claim.** A prisoner's assertion that incarceration on death row for a protracted period is cruel and unusual punishment. *Lackey v. Texas,* 514 U.S. 1045, 115 S.Ct. 1421 (1995) (denying cert.).

**lack of jurisdiction.** See WANT OF JURISDICTION.

**lack of prosecution.** See WANT OF PROSECUTION.

*lacta* (**lak**-tə), *n.* [Law Latin] *Hist.* Lack of or defect in the weight of money. — Also termed *lacca.*

*l'acte de l'état civil.* See ACTE (1).

*lada* (**lay**-də), *n.* [Law Latin] **1.** *Hist.* A court of justice. **2.** A canal for draining marshy ground; a watercourse; a lade.

**lade** (layd), *n. Hist.* The mouth of a river. — Also spelled *lode.*

**laden in bulk,** *adj. Maritime law.* (Of a vessel) freighted with a cargo that lies loose in the hold, protected from water and moisture by mats and dunnage, instead of cargo packed in containers. ● Cargoes of corn, salt, and similar items are usu. shipped in bulk.

**lading, bill of.** See BILL OF LADING.

**lady.** In Britain, a title belonging to the wife of a peer, (by courtesy) the wife of a baronet or knight, or any single or married woman whose father was a nobleman carrying a rank of earl or higher.

**lady-court.** *Hist.* The court of a lady of the manor.

**lady's friend.** *Hist.* The title of an officer in the English House of Commons, whose duty was to secure a suitable provision for a wife when her husband sought a parliamentary divorce. ● In 1857, parliamentary divorces and the office of lady's friend were abolished by statute.

**laenland.** See LOANLAND.

E

**mistrial. 1.** A trial that the judge brings to an end, without a determination on the merits, because of a procedural error or serious misconduct occurring during the proceedings. **2. A** trial that ends inconclusively because the jury cannot agree on a verdict.

**misuse,** *n.* **1.** *Products liability.* A defense alleging that the plaintiff used the product in an improper, unintended, or unforeseeable manner. **2.** *Patents.* The use of a patent either to improperly extend the granted monopoly to nonpatented goods or to violate antitrust laws.

**misuser.** An abuse of a right or office, as a result of which the person having the right might lose it <it is an act of misuser to accept a bribe>. Cf. USER.

**mitigate** (mit-ə-gayt), *vb.* To make less severe or intense <the fired employee mitigated her damages for wrongful termination by accepting a new job>. — **mitigation,** *n.* — **mitigatory** (mit-ə-gə-tor-ee), *adj.* Cf. MILITATE.

**mitigating circumstance.** See CIRCUMSTANCE.

**mitigation-of-damages doctrine.** The principle requiring a plaintiff, after an injury or breach of contract, to use ordinary care to alleviate the effects of the injury or breach. ● If the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced. — Also termed *avoidable-consequences doctrine.*

**mitigation of punishment.** *Criminal law.* A reduction in punishment due to mitigating circumstances that reduce the criminal's level of culpability, such as the existence of no prior convictions. See *mitigating circumstances* under CIRCUMSTANCE.

**mitiori sensu.** See IN MITIORI SENSU.

**mitter avant** (mit-ər ə-vant), *vb.* [Law French] *Hist.* To present or produce (evidence, etc.) to a court.

**mittimus** (mit-ə-məs). [Law Latin "we send"] *Hist.* **1.** A court order or warrant directing a jailer to detain a person until ordered otherwise; COMMITMENT (4). **2.** A certified transcript of a prisoner's conviction or sentencing proceedings. **3.** A writ directing the transfer of records from one court to another. Pl. **mittimuses.**

**mixed action.** See ACTION.

**mixed blood.** See BLOOD.

**mixed cognation.** See COGNATION.

**mixed condition.** See CONDITION (2).

**mixed contract.** See CONTRACT.

**mixed cost.** See COST (1).

**mixed government.** See GOVERNMENT.

**mixed insurance company.** See INSURANCE COMPANY.

**mixed jury.** See JURY.

**mixed larceny.** See LARCENY.

**mixed law.** A law concerning both persons and property.

**mixed marriage.** See MISCEGENATION.

**mixed-motive doctrine.** *Employment law.* The principle that, when the evidence in an employment-discrimination case shows that the complained-of employment action was based in part on a nondiscriminatory reason and in part on a discriminatory reason, the plaintiff must show that discrimination was a motivating factor for the employment action and, if the plaintiff makes that showing, then the defendant must show that it would have taken the same action without regard to the discriminatory reason.

**mixed nuisance.** See NUISANCE.

**mixed policy.** See INSURANCE POLICY.

**mixed presumption.** See PRESUMPTION.

**mixed property.** See PROPERTY.

**mixed question. 1.** MIXED QUESTION OF LAW AND FACT. **2.** An issue involving conflicts of foreign and domestic law.

**mixed question of law and fact.** An issue that is neither a pure question of fact nor a pure question of law. ● Mixed questions of law and fact are typically resolved by juries. — Also termed *mixed question of fact and law.* — Often shortened to *mixed question.*

F

**1379**                                                                                                  **shall**

**severance of actions.** See SEVERANCE (2).

**severance of claims.** See SEVERANCE (2).

**severance pay.** Money (apart from back wages or salary) paid by an employer to a dismissed employee. ● Such a payment is often made in exchange for a release of any claims that the employee might have against the employer. — Also termed *separation pay; dismissal compensation.*

**severance tax.** See TAX.

**seward.** See CUSTOS MARIS.

**sewer service.** See SERVICE (2).

**sex. 1.** The sum of the peculiarities of structure and function that distinguish a male from a female organism. **2.** Sexual intercourse. **3.** SEXUAL RELATIONS (2).

**sex discrimination.** See DISCRIMINATION.

**sexual abuse.** See ABUSE.

**sexual activity.** See SEXUAL RELATIONS.

**sexual assault.** See ASSAULT.

**sexual battery.** See BATTERY.

**sexual harassment.** A type of employment discrimination consisting in verbal or physical abuse of a sexual nature. See HARASSMENT.

    *hostile-environment sexual harassment.* Sexual harassment in which a work environment is created where an employee is subject to unwelcome verbal or physical sexual behavior that is either severe or pervasive. ● This type of harassment might occur, for example, if a group of coworkers repeatedly e-mailed pornographic pictures to a colleague who found the pictures offensive.

    *quid pro quo sexual harassment.* Sexual harassment in which the satisfaction of a sexual demand is used as the basis of an employment decision. ● This type of harassment might occur, for example, if a boss fired or demoted an employee who refused to go on a date with the boss.

    *same-sex harassment.* See HARASSMENT.

**sexually transmitted disease.** A disease transmitted only or chiefly by engaging in sexual acts with an infected person. ● Common exam-
ples are syphilis and gonorrhea. — Abbr. STD. — Also termed *venereal disease.*

**sexual offense.** See OFFENSE (1).

**sexual orientation.** A person's predisposition or inclination toward a particular type of sexual activity or behavior; heterosexuality, homosexuality, or bisexuality. ● There has been a trend in recent years to make sexual orientation a protected class, esp. in employment and hate-crime statutes.

**sexual relations. 1.** Sexual intercourse. **2.** Physical sexual activity that does not necessarily culminate in intercourse. ● Sexual relations usu. involve the touching of another's breast, vagina, penis, or anus. Both persons (the toucher and the person touched) engage in sexual relations. — Also termed *sexual activity.*

**SF.** See *sinking fund* under FUND (1).

**S/F.** *abbr.* STATUTE OF FRAUDS.

**SG.** *abbr.* **1.** SOLICITOR GENERAL. **2.** SURGEON GENERAL.

**shack.** *Hist.* The straying and escaping of cattle out of their owner's land into other unenclosed land; an intercommoning of cattle.

**shadow jury.** See JURY.

**shadow stock plan.** See PHANTOM STOCK PLAN.

**shakedown. 1.** An extortion of money using threats of violence or, in the case of a police officer, threats of arrest. **2.** See *shakedown search* under SEARCH.

**shakedown search.** See SEARCH.

**shakeout,** *n.* An elimination of weak or nonproductive businesses in an industry, esp. during a period of intense competition or declining prices.

**shall,** *vb.* **1.** Has a duty to; more broadly, is required to <the requester shall send notice> <notice shall be sent>. **2.** Should (as often interpreted by courts) <all claimants shall request mediation>. **3.** May <no person shall enter the building without first signing the roster>. **4.** Will (as a future-tense verb) <the debtor shall then be released from all debts>. **5.** Is entitled to <the secretary shall be reim-

$G$