United States District Court
Southern District of Texas
FILED

SEP 1 0 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GREATER BROWNSVILLE INCENTIVES §
CORPORATION, §
    Plaintiff §
VS. § CIVIL ACTION NO. B-03-224
§
§
TITAN INTERNATIONAL, INC., §
  Defendant §

## TITAN INTERNATIONAL, INC.'S, RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, TITAN INTERNATIONAL, INC., DEFENDANT ("Titan" or "Defendant"), and files this Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment. In support thereof Defendant would show the Court the following:

Plaintiff Greater Brownsville Incentives Corporation's ("GBIC" or "Plaintiff") motion for summary judgment can be distilled to the following argument: Titan closed or discontinued its tire manufacturing plant in Brownsville, thus any asset purchased with GBIC grants reverts to GBIC. Plaintiff conveniently ignores the facts of this case, the terms of the Project Agreement, and the applicable Texas laws. The Project Agreement ended on October 31, 2001; there can be no "breach" after that date. Titan never closed the tire manufacturing plant in Brownsville. The reversion clause has never been and

now never can be triggered.

Plaintiff's motion for summary judgment should be denied, and Defendant Titan's motion for summary judgment should be granted.

## I.     Factual Background

Titan International, Inc., is a publicly traded company that produces off-highway tires for the agricultural, construction and military sectors.  In the mid-nineties, Titan was considering developing a tire manufacturing plant in Texas.  Titan negotiated with GBIC, among others, and reached an agreement regarding incentives to be paid to Titan in exchange for construction of a tire plant in Brownsville.  The negotiations resulted in the execution of the Project Agreement[1] that was signed on or about November 7, 1997, but made effective as of February 1997.

The general terms of the contract called for GBIC to give certain incentives[2] to Titan and Titan to develop and operate a tire manufacturing facility in or near Brownsville.  *See, e.g.,* Project Agreement.  Specifically, GBIC would give a "Site Development Credit" of $1,000,000 in the form of real property rather than cash.  *See id.* at II. A.  GBIC purchased nearly two hundred acres north of Brownsville at 6700 Paredes Line Road and conveyed the property by special warranty deed[3] to Titan.  Additional "Site Development Credits" in varying amounts were awarded to Titan to cover site improvement expenses such as building the plant, paving an access road, paving a facility

---

[1]     The Project Agreement is attached hereto at Exhibit 1 to the Affidavit of Cheri T. Holey.

[2]     Titan received funds from GBIC on only two occasion:  one payment was made for a site development credit and the other payment was made in lieu of the promised fill dirt.  Aside from these two payments, Titan only received grants, credits, and abatements.

[3]     The Special Warranty Deed is attached hereto at Exhibit 2 to the Affidavit of Cheri T. Holey.

*Defendant's Response to Plaintiff's Motion For Summary Judgment and*                                    2
*Cross-Motion For Summary Judgment*

parking lot, installation of utilities, acquiring fill dirt to elevate the site of the plant. *See id.* at II. B., C., & D. GBIC also agreed to a "Lease/Building Assistance Credit" and "Job Creation Credit." *See id.* at II. E. & F. These credits were to be used by Titan "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby . . .." *See id.* at I. The Project Agreement was intended to last five years. Section V. of the Project Agreement contains the following language:

<u>**Term of Agreement**</u>

**The term of this Agreement shall be five (5) years, commencing November 1, 1996, and ending October 31, 2001.**

*See id.* at V. (emphasis added).

Titan's efforts to comply with the Project Agreement were immediately frustrated. Plant construction was delayed pending the outcome of litigation regarding the proximity of the plant to the Palo Alto Battleground, a National Historic Site. The delay caused irreparable harm to Titan. The nearly two year delay in construction coincided with a strike at Titan's flagship plant. Had the Brownsville plant not been delayed, Titan would have been able to continue production simply by shifting production from Iowa to Brownsville. Instead, Titan lost manufacturing capacity.

Nonetheless, Titan constructed and opened the tire manufacturing operation at 6700 Paredes Line Road. In November 2003, twenty five months after the Project Agreement expired, the tire manufacturing operation in Brownsville had a mass layoff of employees pursuant to the WARN Act. The tire manufacturing operation has never been discontinued, dissolved, or liquidated. It is being maintained until it becomes

*Defendant's Response to Plaintiff's Motion For Summary Judgment and Cross-Motion For Summary Judgment*

economically feasible to again produce tires there in mass quantities.

## II.     Issue Presented on Summary Judgment

Under the terms of the Project Agreement, does the property located at 6700 Paredes Line Road, including improvements, revert to GBIC if the alleged breach of the Project Agreement occurred after the contract terminated?     No, the property and improvements do not revert to GBIC.

## III.     Summary of Argument

The Project Agreement contains a "Term of Agreement" clause limiting the duration of the Project to five years ending on October 31, 2001.     The Term of Agreement clause applies to the entire Project Agreement. The only alleged breach, discontinuing operation for the tire manufacturing plant, which would trigger the reversion clause, happened in November 2003.[4] It is uncontroverted that Titan operated a tire manufacturing plant well beyond the end of the contract period, in fact Titan still operates the Brownsville plant.  Therefore, Titan did not breach any term of the contract as alleged by the Plaintiff and the reversion clause of the Project Agreement was never triggered.  Plaintiff's motion for summary judgment should be denied and Defendant's cross motion for summary judgment should be granted on this basis.

Even assuming Plaintiff's arguments are correct, which they are not, Defendant is still entitled to summary judgment in its favor.  Plaintiff argues that the conditions and contingencies in the contract continue indefinitely.   Under applicable Texas law a contract with indefinite duration is terminable at will and, therefore, unenforceable. Moreover, an indefinite contract either does not have mutuality of obligation or requires

---

[4]     Defendant expressly denies allegation that is closed its tire manufacturing plant in

*Defendant's Response to Plaintiff's Motion For Summary Judgment and*     4
*Cross-Motion For Summary Judgment*

only an insubstantial promise and is illusory. Finally, under Plaintiff's interpretation of the Project Agreement, *i.e.* that Titan must maintain a tire manufacturing operation indefinitely, the property would be impermissibly alienated *ad infinitum*. If the Project Agreement imposes a continuous or continuing duty on Titan, then the Project Agreement is invalid and unenforceable.

Thus, the Court can interpret the contract to have a definite duration as Defendant argues and find that there was no breach while the Project Agreement was in force. Alternatively, the Court can accept GBIC's arguments and interpret the reversion clause to be a duty lasting indefinitely and find that the Project Agreement is unenforceable. Either way, Plaintiff's motion for summary judgment should be denied and Defendant's cross motion for summary judgment should be granted.

**IV.      Standard for Summary Judgement**

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an

---

absence of evidence to support the nonmoving party's case"). *See also Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (citing *Celotex*, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See id.* (citing *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *see also* FED. R. CIV. P. 56(e)). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

## V.    Applicable Law

It is axiomatic that a federal court sitting in diversity jurisdiction applies the state law governing the dispute. In this case, it is undisputed that Texas law applies. Under Texas law a petition for declaratory judgment is merely a theory of recovery. The Texas

Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE. ANN. § 37.001 *et seq.* (Vernon 1997), is merely a procedural device; it does not create any substantive rights or causes of action. *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993). Consequently, the Court should construe the request for declaratory judgment as a theory of recovery predicated upon a cause of action for breach of contract, which Plaintiff has neither pled nor proved. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy*, 99 F.3d 746 (5th Cir. 1996).

## VI.    Application of Law to Facts of This Case

### A.    The Alleged Breach Occurred After the Termination of The Project Agreement

Under Texas law, a contractual obligation "terminates upon termination of the contract by its terms." *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 246 F. Supp. 2d 632, 638 (S.D. Tex. 2003). "Unlike the mythical Phoenix, contracts that terminate by their express terms do not rise again." *Griffin Indus., Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (Tex. App. Houston [14th Dist.] 2000, pet. denied). Under the aptly named heading Term of Agreement, the Project Agreement contains the following language:

> **The term of this Agreement shall be five (5) years, commencing November 1, 1996, and ending October 31, 2001.**

Project Agreement, Section V. The term or duration of the Project Agreement was for the five years ending on October 31, 2001.

Plaintiff, however, insists that Titan "discontinued its tire manufacturing operation

in Brownsville in July 2003."[5]  Pl.'s Mot. Summ. J., at p.11.  Plaintiff's theory is that

Titan breached a contractual obligation twenty-one (21) months after the termination of

the Project Agreement.  Plaintiff has not cited, because it cannot, any cases standing for

the untenable proposition that a party to a contract is obligated to continue performance

after the termination of the contract.

Therefore, as a matter of law, on October 31, 2001, the contract was fully

performed, no obligations existed, and no breach of contract could have occurred.

**B.    The Reversion Clause is VOID If It is Not Controlled by The Duration
       Clause[6]**

In the face of a definite duration clause, Plaintiff argues that the reversion clause

outlives the contract by nearly two years.  Plaintiff is wrong in its proposition of law.

Moreover, Plaintiff cites inapposite cases.  The case law cited by Plaintiff controls in

situations where the contract does not have a duration clause and the court must look to

other contractual language to determine whether there was an intended duration, and if so

what it was.  Of course, these cases are irrelevant because the Project Agreement has a

definite duration clause with no exceptions.

---

[5]    In actuality, the WARN Act layoffs occurred in November 2003, twenty five
months after the expiration of the Project Agreement.
[6]    Plaintiff should not be allowed to testify or argue regarding it interpretation of the
contract or any other agreements made between the parties.  The parol evidence rule
dictates that when a written contract is complete and unambiguous, the court shall not
admit extrinsic evidence regarding prior or contemporaneous agreements. *See Nat'l Union
Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). The rule rests in part
on the principle that "[n]egotiations preceding a written contract should not displace the
terms of the written contract." *Fisher Controls Intern., Inc. v. Gibbons*, 911 S.W.2d 135,
141-42 (Tex.App.--Houston [1st Dist.] 1995, writ denied). The rule of merger, a corollary
to the parol evidence rule, provides, "Absent pleading and proof of ambiguity, fraud, or
accident, a written instrument presumes that all the parties' earlier agreements relating to
the transaction have merged into the written instrument." *Texas A & M Univ.-Kingsville
v. Lawson*, 127 S.W.3d 866, 872 (Tex.App.--Austin 2004, no pet. h.).

*Defendant's Response to Plaintiff's Motion For Summary Judgment and*                    8
*Cross-Motion For Summary Judgment*

Even so, Plaintiff first argues that "regardless of a contract's term if there is no

time limit on a condition or contingency set forth in the contract, same (the condition or

contingency) – logically – continues after the term of the contract (expires)." Pl.'s Mot.

Summ. J., at p. 18. There is nothing logical about the wholly unsupported proposition

that a party is bound by a contract after the expiration of the contract. In fact, Texas law

requires the exact opposite holding. *See supra*.

Moreover, Plaintiff mischaracterizes the holding in *City of Big Spring v. Board of

Control*, 389 S.W.2d 523 (Tex. Civ. App. – Austin, 1965), *affirmed*, 404 S.W.2d 810,

815 (Tex. 1966).[7] *Big Spring* stands for the proposition that a court may imply from the

words of a contract a duration or time for performance when there is no duration clause.

In *Big Spring*, the court held that despite the lack of a duration clause, the contract was

not indefinite because the contract was "limited in time by a specified event, to wit, 'as

long as the State of Texas shall in good faith maintain and operate said hospital on said

site.'" *Id.* at 529. In short, Plaintiff cites cases that do not apply to the facts of this case.

Plaintiff also argues, albeit in a parenthetical, that "all rights and remedies

available at law or in equity shall survive the termination of the Project Agreement.")."

Pl.'s Mot. Summ. J., at p. 19 (citing the Project Agreement). The argument and reference

to the Project Agreement language is completely out of context. The complete sentence

in the Project Agreement reads as follows:

> In the event of the termination of this Agreement for any reason **prior to
> the expiration of the term of this Agreement**, the parties shall be entitled
> to all compensation earned by them through the effective date of the

---

[7]    Both *Marshall v. Marshall*, 735 S.W.2d 587, 592 (Tex. App. – Dallas 1997, writ
ref'd n.r.e.) and *Smith v. Lane*, 236 S.W.2d 214,215 (Tex. Civ. App. – San Antonio 1950,
no writ), both cited by Plaintiff stand for the exact same proposition, *i.e.* that a court can
infer a duration when the contract fails to contain a duration clause.

termination, as appropriate, and any remedies available at law or in equity, which rights and remedies shall survive the termination of this Agreement.

Project Agreement, at ¶ VI Termination (emphasis added). This clause applies to situations in which one or both parties terminate the contract before the expiration of the term of the contract. It does not apply to the facts of this case because Project Agreement expired according to its own duration clause on October 31, 2001. Importantly, this sentence demonstrates Plaintiff's understanding, at least at the time it entered into the Project Agreement, that the entire contract was limited by the term or duration clause.

However, if Plaintiff insists that the reversion clause outlived the duration of the contract, the Project Agreement would be terminable by the parties.

Under Texas law, when a contract "contemplate[s] continuing performance (or successive performances) and ... [is] indefinite in duration," it may be terminated at the will of either party. Moreover, "[the Fifth Circuit] "does not favor perpetual contracts" and "presumes that [any such] contract is terminable at will."

*Trient Partners I, Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir.1996) (citations omitted); *see also Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 390 (Tex. 1977). Although the contract in *Trient* specifically stated that it was indefinite in duration, the case did not suggest that this rule only applied to contracts with an express indefinite term; therefore, it should apply equally to a case that is implicitly indefinite, as Plaintiff claims is the case here. If Plaintiff is correct, which it is not, that the reversion clause is indefinite, then the only matter for the Court to determine is the actual duration of the clause. "[Contracts of] indefinite duration are arguably subject to the principle that a reasonable duration will be implied during which time the agreement is not terminable at will." *See Clear Lake,* 549 S.W.2d at 391. A reasonable

duration in this case would be the duration actually found in the contract, five years

ending October 31, 2001, rather than an arbitrary date selected by the Plaintiff.

Thus, even under Plaintiff's unsupported view of the contract, Plaintiff's motion

for summary judgment must denied.

### C. The Reversion Clause Expired in February 1999

Even assuming the implausible – that the explicit five year term clause in Section

V. does not apply to the reversion clause – the reversion clause itself contains a more

restrictive term clause. The reversion clause requires that Titan performs certain acts –

commence construction, commence hiring, and operate a tire manufacturing facility in

Brownsville, Texas – "within two (2) years . . . from the date of execution of this Project

Agreement." Project Agreement, Section II. F. Therefore, the reversion clause expired in

February 1999, nearly four years before the alleged breach occurred that is supposed to

have triggered the reversion clause.

> The parties agree that in the event that TITAN WHEEL
> INTERNATION, INC., discontinues operations or is dissolved or
> liquidated or no longer maintains a tire manufacturing operation in or near
> Brownsville, or if TITAN WHEEL INTERNATION, INC., does not
> commence such construction within eleven (11) months, does not
> commence hiring and training for the plant within ten (10) months
> (involving Spend Skills Development Training dollars, which must be
> spent in Brownsville), or does not commence operations within two (2)
> years in or near Brownsville, from the date of execution of this Project
> Agreement (February 27, 1997); . . .

Project Agreement, Section II. F. The two-year limitation applies to each and

every clause preceding the semicolon, including the clause regarding maintenance

of a tire manufacturing facility.

### D. Titan Currently Operate A Tire Manufacturing Plant in Brownsville

Titan currently maintains and operates a tire manufacturing plant in Brownsville.

*See* Def.'s Rsp. To Pl.'s First Req. For Admissions, at Question 10. When asked by

Plaintiff to admit that neither Titan Tire Corporation of Texas nor Titan International,

Inc., are manufacturing tires at the Brownsville facility, Defendant responded "Deny."

*See id.* Plaintiff's evidence merely shows that Defendant has reduced its workforce and

capacity, which is completely legal and proper, and not in violation of the Project

Agreement. Plaintiff also cites a newspaper advertisement for a year-end inventory

liquidation sale. This is not evidence that Titan Tire of Texas is not manufacturing tires.

In fact, it is evidence that Titan is selling tires that were manufactured. Plaintiff has no

evidence that Defendant no longer maintains a tire manufacturing plant in Brownsville.

Their evidence – Defendant's admissions and newspaper clippings – demonstrates that

Defendant is operating a tire manufacturing plant in Brownsville.

Moreover, the press release Plaintiff touts simply states that Titan will suspend

production until market demand increases. *See* Pl.'s Ex. No. 3. Operations have not been

discontinued and the plant has neither been dissolved or liquidated. The tire

manufacturing operation has been maintained as a distribution and warehouse center, as

the press release states, and stands ready to increase production once the market

improves.

Assuming Plaintiff is correct in its interpretation of the law, Plaintiff has failed to

demonstrate that there is no genuine issue of material fact on the issue of whether the

Brownsville tire manufacturing plant is still in operation. That fact is controverted. If

anything, the evidence is uncontroverted that the plant is still operational. Plaintiff has

produced no evidence, much less any admissible evidence, that the plant is no longer

maintained by Titan. Thus, the Court should grant summary judgment in favor of

Defendant Titan.

## VII.    Defenses Are Applicable, Contrary to Plaintiff's Assertions

Defendant has valid defenses, which it has pled; however, the Court need not even reach these issues because Plaintiff's claim fails as a matter of law. However, should the Court reach these issues, Defendant requests the Court hold its decision until the completion of discovery in this case, currently set for November 1, 2004, nearly two months from now, so Defendant can fully prepare and substantiate each and every defense.

### A.          Waiver

GBIC has waived its rights to bring this lawsuit. "The elements of waiver include (1) an existing right, benefit, or advantage; (2) a knowledge, actual or constructive, of its existence; and (3) an actual intention to relinquish it (which can be inferred from conduct)." *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.- Texarkana 1992, writ denied). The terms of the Project Agreement condition GBIC's crediting of incentives, credits, and abatements upon Titan's satisfactory compliance with the terms of the Project Agreement. *See* Project Agreement, Section II ("Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., . . . the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following: . . .."). GBIC claims to have had a right to certain conditions; GBIC actually knew of its right to those conditions, having drafted the Project Agreement; and GBIC actually intended to relinquish those rights by extending incentives to Defendant without either enforcing all the terms of the contract or notifying Titan of any alleged non-compliance.

**B.     The Contract Expired On October 31, 2001**

This defense is detailed *supra* in Section VI. A. & B.  The Project Agreement

expired on October 31, 2001, by its own terms.  Under Texas law contractual obligations

do not outlive the duration of the contract.  *See supra* Section VI. A. & B.  Therefore, any

alleged breach after October 31, 2001, is by definition not a breach.  There can be no

cause of action premised on conduct after October 31, 2001.

**VIII.  Declaratory Relief is Improper in This Case**

Plaintiff has impermissibly dressed up a breach of contract claim as a request for

declaratory relief.  Despite repeatedly claiming that it is not alleging a breach of contract

but is only alleging a declaratory judgment cause of action, Plaintiff tellingly requests

relief far beyond that allowed by a declaratory action.  Plaintiff seeks judicial findings

that Defendant has breached the contract.  Moreover, Plaintiff seeks an order from the

Court that Defendant specifically perform a portion of the contract.

Plaintiff seeks an order from the Court adjudicating Defendant in breach of the

contract and ordering specific performance of a contractual term.   Plaintiff seeks

"declaratory relief to judicially confirm the reversion of the land and improvements

thereon (from TITAN) to GBIC . . .."  Pl.'s Mot. Summ J., at p. 24.  "[T]he Court should

declare such in the disposition of this case, judicially confirming such reversion, and

resolving this case by summary judgment in favor of GBIC . . .."  Pl.'s Mot. Summ J., at

p. 25.  Finally, in its prayer for relief, Plaintiff requests the following:

> A Declaration that under the said Project Agreement (and related Special
> Warranty Deed), by virtue of TITAN removing its operations from
> Brownsville, such that it is no longer operating in Brownsville and no
> longer maintains a tire manufacturing operation in or near Brownsville, the
> land and improvements thereon (as indicated above), as purchased through
> funds of GBIC, have reverted to GBIC.

*Defendant's Response to Plaintiff's Motion For Summary Judgment and*                              14
*Cross-Motion For Summary Judgment*

Pl.'s Mot. Summ J., at p. 25.  This requested relief is not permissible in a declaratory relief action.

Texas courts have held that declaratory judgment is not appropriate when plaintiff's cause of action for damages on the same claim is justiciable and provides an appropriate remedy.  *See Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex. App. 1994, no writ) ("declaratory judgment action is not appropriate where plaintiff's cause of action is mature and enforceable"*); Southern Traffic Bureau v. Thompson*, 232 S.W.2d 742, 750-51 (Tex. Civ. App. 1950, writ ref'd n.r.e.) ("'If adequate relief, and an appropriate remedy, are presently available to the complaining party through the means of other existing forms of action or proceeding, jurisdiction for a declaratory judgment will not ordinarily be entertained.'") (citation omitted); *see also Janik v. City of Dallas*, 1998 WL 204623, *5 (N.D. Tex. April 16, 1998) ("Plaintiffs have a justiciable claim for negligence under the Tort Claims Act. Therefore, declaratory judgment is not appropriate for this claim."); *cf. See Sylvester v. Watkins*, 538 S.W.2d 827, 831 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.).  Declaratory relief is not available to Plaintiff under the facts of this case or the relief sought by Plaintiff.

The relief Plaintiff requests belies its fervent insistence that this is not a breach of contract case.  Accordingly, Plaintiff's claim for declaratory relief should be denied.

## IX.    Plaintiff Is Not Entitled To Attorneys' Fees

In its brief, Plaintiff seeks attorneys' fees under Texas Civil Practice and Remedies Code § 37.009 (Vernon 1997).  In Mr. Janis's, affidavit which is subject to a motion to strike submitted herewith, Plaintiff appears to seek attorneys' fees under both §

37.009 and § 38 of the Texas Civil Practice and Remedies Code. The Fifth Circuit has held that a Plaintiff in a diversity case may not recover attorneys' fees under either provision of Texas law .

"[A] party may not rely on the Texas [declaratory judgment act] to authorize attorney's fees in a diversity case because the statute is not substantive law." *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998); *see also Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 772 (5th Cir.1999); *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir.1988). Thus, Plaintiff may not seek attorneys' fees under § 37.009.

Moreover, § 38.001 does not even apply to this case. Section 38.001 of the Texas Civil Practice and Remedies Code allows a court to grant an award of attorney's fees when recovery is based on the breach of a written or oral contract. Plaintiff has insisted throughout this litigation that it is seeking a declaratory judgment and is not pursuing a breach of contract claim. If Plaintiff is to be believe, there is no breach of contract claim and there can be no award of fees under section 38.001.

Plaintiff's request for attorneys' fees should be denied.

## X.    Defendant's Cross Motion for Summary Judgment

Defendant is entitled to summary judgment in this case. Plaintiff is seeking a judicial declaration that the reversion clause in the Project Agreement has been invoked by Defendant's failure to continuously operate a tire manufacturing plant in Brownsville. The Project Agreement contains a duration clause, which limits the contractual period to the five years ending on October 31, 2001. The alleged breach, which is supposed to invoke the reversion clause, happened, by Plaintiff's own admission, on or about July

2003, almost two years after the contract expired. Under Texas law contractual obligations do not outlive the duration of the contract. *See supra* Section VI. A. & B.

For these reasons and the reasons stated in Defendant's response to Plaintiff's motion for summary judgment, Defendant is entitled to summary judgment on Plaintiff's claim for declaratory judgment.

## XI.    Conclusion

Plaintiff's motion for summary judgment should be denied because the alleged breach occurred after the contract expired. Plaintiff, therefore, has no cause of action. Plaintiff is not entitled to attorneys' fees under either § 37.009 and § 38 of the Texas Civil Practice and Remedies Code because those procedural remedies are unavailable in a diversity action such as this one.

Lastly, Defendant is entitled to summary judgment because the contract expired on October 31, 2001, and Defendant performed all obligations during the contract period.

WHEREFORE, PREMISES CONSIDERED, Defendant, Titan International, Inc. respectfully requests that this Court deny Plaintiff's motion for summary judgment and grant Defendant's cross motion for summary judgment.

Respectfully submitted,

RODRIGUEZ & NICOLAS, L.L.P.

By: _____

Michael Rodriguez
State Bar No.00791553
Federal I.D. No. 18759
Henri E. Nicolas, Jr.

State Bar No. 24014808
Federal ID No. 26052
319 East Elizabeth Street
Brownsville, Texas  78520
Telephone:  (956) 574-9333
Facsimile:  (956) 574-9337

## CERTIFICATE OF CONFERENCE

I, Henri E. Nicolas, Jr., do hereby, certify that on September 10, 2004 I contacted the Plaintiff's counsel, Mr. Brian Janis regarding this response and motion. Mr. Janis is opposed.

_____
Henri E. Nicolas, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below on September 10, 2004 been forwarded to:

**VIA REGULAR MAIL & HAND DELIVERY**
Brian G. Janis
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521
(956) 546-3731 telephone
(956) 546-3766 facsimile

**VIA FIRST CLASS MAIL & FACSIMILE**
James R. Goza
City Attorney, City of Brownsville, Texas
P.O. Box 911
Brownsville, Texas 78522
(956) 548-6011 telephone
(956) 546-4291 facsimile

_____
Henri E. Nicolas, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | |
| CORPORATION, | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § | |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

**AFFIDAVIT OF CHERI T. HOLLEY
IN SUPPORT OF TITAN INTERNATIONAL, INC.'s
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Before me, the undersigned notary, on this day, personally appeared Cheri T. Holley, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

1. "My name is Cheri T. Holley; I serve as General Counsel for Titan International, Inc. The business address for Titan International, Inc. is 2701 Spruce Street, Quincy, Illinois 62301. I am over the age of 18 and have never been convicted of a felony. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I have reviewed the true and correct copies of the Project Agreement, attached hereto at Exhibit 1, and the Specialty Warranty Deed, attached hereto as Exhibit 2.

3. I have personal knowledge of the corporate structure of Titan International, Inc., and the geographic location of the offices of Titan International, Inc. and other offices of

*AFFIDAVIT OF CHERI T. HOLLEY*
*IN SUPPORT OF TITAN INTERNATIONAL, INC.'s*
*RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*
*AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT*

1

Titan International, Inc. I also have personal knowledge of the business conducted by Titan International, Inc.

4.    Titan International, Inc., is a publicly traded company that produces off-highway tires for the agricultural, construction and military sectors. In the mid-nineties, Titan International, Inc. was considering developing a tire manufacturing plant in Texas. Titan negotiated with GBIC, among others, and reached an agreement regarding incentives to be granted and paid to Titan in exchange for construction of a tire plant in Brownsville. The negotiations resulted in the execution of the Project Agreement that was signed on or about November 7, 1997, but made effective as of February 1997.

5.    The Project Agreement was intended to last five years. Section V. of the Project Agreement contains the following language:

### Term of Agreement

**The term of this Agreement shall be five (5) years, commencing November 1, 1996, and ending October 31, 2001.**

6.    Titan's efforts to comply with the Project Agreement were immediately frustrated. Plant construction was delayed approximately two years pending the outcome of litigation regarding the proximity of the plant to the Palo Alto Battleground, a National Historic Site.

7.    The delay caused irreparable harm to Titan. The approximately two year delay in construction coincided with a strike at Titan's flagship plant. Had the Brownsville

*AFFIDAVIT OF CHERI T. HOLLEY*
*IN SUPPORT OF TITAN INTERNATIONAL, INC.'s*
*RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*
*AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT*

2

plant not been delayed, Titan would have been able to continue production simply by shifting production from Iowa to Brownsville. Instead, Titan lost manufacturing capacity.

8.    Nonetheless, Titan constructed and opened the tire manufacturing operation at 6700 Paredes Line Road.

9.    In November 2003, the tire manufacturing operation in Brownsville had a mass layoff of employees pursuant to the WARN Act. The tire manufacturing operation has never been discontinued, dissolved, or liquidated. It is being maintained until it becomes economically feasible to again produce tires there in mass quantities.

FURTHER AFFIANT SAYETH NOT:

Dated: 9/10/04

_Cheri T. Holley_
Cheri T. Holley

STATE OF ILLINOIS        )
                         ) SS.
COUNTY OF ADAMS          )

Subscribed and sworn to before me, the undersigned Notary Public, this 10th day of September, 2004.

_Jennifer L. Cramm_
Notary Public

```
"OFFICIAL SEAL"
JENNIFER L. CRAMM
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/8/2006
```

*AFFIDAVIT OF CHERI T. HOLLEY*
*IN SUPPORT OF TITAN INTERNATIONAL, INC.'s*
*RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*
*AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT*

3

THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §

## PROJECT AGREEMENT

THIS Project Agreement is made this 27th day of February, 1997 in Brownsville, Cameron County, Texas, between the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas non-profit corporation established pursuant to Article 5190.6 of the Texas Revised Civil Statutes, having a principal place of business at 1 Market Square, Brownsville, Cameron County, Texas 78522, and TITAN WHEEL INTERNATIONAL, INC., an Illinois business corporation, having a principal place of business at 2701 Spruce Street, Quincy, Adams County, Illinois 62301, regarding funding for the establishment of a tire manufacturing operation in Brownsville, as follows:

I.

### Use Of Funds

The proceeds provided by this Agreement are to be used by TITAN WHEEL INTERNATIONAL, INC. "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby," to be itemized in the schedules or plans for same to be provided to the GREATER BROWNSVILLE INCENTIVES CORPORATION, which Project is to be funded in part by the foregoing proceeds (the said funds having been "leveraged" to obtain additional funding for same).

II.

### Disbursement Of Funds

Such funds will be disbursed in accordance with the following provisions. Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., such that TITAN WHEEL INTERNATIONAL, INC., is required to create 500 "new jobs" (375 during the first year after construction of the facility for the "Project," 75 during the second year thereafter and 50 during the third year thereafter) over the term of this Agreement (as a condition to funding hereunder), the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following:

A - As a "Site Development Credit," the sum of $1,000,000.00, to be paid not in cash but in the form of a grant of a site (of

**EXHIBIT**
**2**

PROJECT AGREEMENT - PAGE 1

Exhibit
1

real property, up to 200 acres) north of Brownsville for use as a facility for this "project" (the "plant" for TITAN), such land to be acquired (at a closing to be conducted in the near future) by the GREATER BROWNSVILLE INCENTIVES CORPORATION, constituting part of the "site improvement expense" of TITAN WHEEL INTERNATIONAL, INC., at its new Brownsville area facility, as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the said Brownsville facility (as limited above);

B -   As a "Site Development Credit," the sum of $1,000,000.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of the (non-land acquisition) "site improvement expense" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above);

C -   As an additional "Site Development Credit," the sum of $460,001.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) a 1/4 mile access road, and (2) a facility parking lot, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), it being provided, however, that the sum of $692,862.00 will be paid directly to the Public Utilities Board (i.e., through the City Of Brownsville) for miscellaneous "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) extending water/sewer lines to the site, (2) the purchase of water rights, and (3) acreage charges, which is subject to reimbursement (to GBIC) on receipt of funds from pending grant applications under the auspices of the CITY OF BROWNSVILLE (with the U.S. Economic Development Administration);

D -   As yet an additional (and final) "Site Development Credit," the sum of $680,000.00 (or if less, the maximum cost of 240,000 cubic yards of dirt, as explained below), paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION,

PROJECT AGREEMENT - PAGE 2

for acquiring fill dirt (the local provider of which is to be identified publicly) to elevate the ground level and to provide a sufficient base for the construction of the buildings and improvements required for the contemplated manufacturing operation of TITAN WHEEL INTERNATIONAL, INC., in or near Brownsville, Texas (as limited above), noting further that the sum of $300,000.00 of the aforesaid sums (i.e., the "site development expenses" payable to TITAN hereunder) is to be paid, instead, to the CITY OF BROWNSVILLE for the "EDA Jose Escandon Road Project," which project is being funded by the CITY for the benefit of TITAN and is to involve some reimbursement or payment from the U.S. Economic Development Administration, and that TITAN must first expend its (own) budgeted funds ($50,000.00) for such fill dirt (and invoices for same must be provided to GBIC) before any of the said funds above (in this sub-paragraph) are expended, and moreover, while GBIC will pay for such fill dirt, it (and the CITY) is not responsible for problems or disputes involving quantity, quality, time of service or method of delivery, or the delivery (to the extent possible, the providers of fill dirt should be from Brownsville or its extraterritorial jurisdiction, for which TITAN will submit a signed contract for same, along with proof of all necessary permits for the site and a Texas Department Of Transportation [required] Traffic Control Plan);

E - As a "Lease/Building Assistance Credit," the sum of $1,712,500.00, paid pro-rata (i.e., annually) over the three years of this Agreement referred to above, after construction of the said facility for the "Project," (i.e., $687,500.00, $737,500.00 and $287,500.00), reflecting the "lease expense" (or the equivalent of such expense to construct a building for manufacturing use) for facilities of TITAN WHEEL INTERNATIONAL, INC. (i.e., 50%, 35% and 20%), as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), during the said term of this Agreement, subject to the right to carryover funds not used in the first or second years to the third year; and

F - As a "Job Creation Credit," the sum of $975,000.00, paid pro-rata (i.e., annually), in the sum of $780,000.00, $117,000.00 and $78,000.00, reflecting the amount which is TEN (10%) PER CENT of the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as

PROJECT AGREEMENT - PAGE 3

limited above), during the said three (3) years of this Agreement.

The maximum amount of reimbursement is not to exceed (for all credits hereunder) $13,040.73 per "new job created" at TITAN WHEEL INTERNATIONAL, INC. (in or near Brownsville, Texas only), during the term of this Agreement, in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, provided that the GREATER BROWNSVILLE INCENTIVES CORPORATION has first verified and approved the amount of the "site improvement expenses," the "lease/building expense" and the "annual non-principal wages," and the "new jobs created" are valid, continuous and in force for at least ninety (90) days -- as determined at the close of the second quarter of the relevant year -- which amounts are not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 (noting that $692,862.00 will be paid directly to the Public Utilities Board, by and through the City Of Brownsville), $680,000.00 (or if less, the cost of 240,000 cubic yards of dirt), $1,712,500.00 and $975,000.00, respectively, over the term of this Agreement (i.e., five years).'

The parties agree that in the event that TITAN WHEEL INTERNATIONAL, INC., discontinues operations or is dissolved or liquidated or no longer maintains a tire manufacturing operation in or near Brownsville, or if TITAN WHEEL INTERNATIONAL, INC., does not commence such construction within eleven (11) months, does not commence hiring and training for the plant within ten (10) months (involving Spend Skills Development Training dollars, which must be spent in Brownsville), or does not commence operations within two (2) years in or near Brownsville, from the date of execution of this Project Agreement (February 27, 1997), any properties or assets held by TITAN WHEEL INTERNATIONAL, INC., which were acquired with funds, in whole or in part (including such funds), provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION, shall revert to that CORPORATION (subject to any superior liens); to this extent, any properties or assets acquired by TITAN WHEEL INTERNATIONAL, INC., with funds, in whole or in part, provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION shall not be alienated, conveyed or transferred from TITAN WHEEL INTERNATIONAL, INC., without the prior authorization of the GREATER BROWNSVILLE INCENTIVES CORPORATION (except in the ordinary course of business), and, to avoid commingling or problems with tracing such funds, TITAN WHEEL INTERNATIONAL, INC., shall segregate, for accounting and other similar purposes, all funds (and properties) received from the GREATER BROWNSVILLE INCENTIVES CORPORATION and from other sources.

PROJECT AGREEMENT - PAGE 4

III.

## Consideration

In consideration of the establishment of a tire manufacturing operation in or near Brownsville, Cameron County, Texas, pursuant to this Agreement, which will create jobs, facilitate commerce and trade and improve the economic infrastructure and labor force of the area, thus enhancing economic development, the stated goal of the GREATER BROWNSVILLE INCENTIVES CORPORATION, said entity will finance, for the benefit of TITAN WHEEL INTERNATIONAL, INC., the said "Site Development Credits," "Lease/Building Assistance Credit" and "Job Creation Credit," to enable the initiation of a tire manufacturing operation in or near Brownsville, funding part of the "cost" of a "project" for economic development thereby, as such terms are described and defined in Article 5190.6 of the Texas Revised Civil Statutes, the said CORPORATION's authorizing legislation, same having been found by the said CORPORATION's Board Of Directors "to be required or suitable for the promotion of development and expansion of manufacturing and industrial facilities, ... distribution centers [etc.] ... ."

The foregoing credits are supplemented by other incentives provided by the State Of Texas and other entities, as reflected by the listing annexed hereto as Exhibit "A" and incorporated by reference herein (the total amount of incentives including the said credits), it being understood by the parties to this Project Agreement that the GREATER BROWNSVILLE INCENTIVES CORPORATION (and by extension, the CITY OF BROWNSVILLE) does not control the provision of such incentives (by the State Of Texas and other entities) and has no responsibility for the provision of same, as reflected by Paragraph XV. (and other provisions) of this Project Agreement.

IV.

## Performance Of Agreement

In providing a tire manufacturing operation in or near Brownsville, TITAN WHEEL INTERNATIONAL, INC., acting by and through its respective agents, will conduct itself in conformity with the requirements and standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION. To this extent, TITAN WHEEL INTERNATIONAL, INC., will perform all acts necessary to successfully fulfill the purpose of this Agreement and shall, at all times, faithfully, industriously and to the best of its abilities, experience and talents, perform all the duties that may be required of and from it pursuant to the express and implicit terms hereof and to the reasonable satisfaction of the GREATER BROWNSVILLE INCENTIVES CORPORATION.

PROJECT AGREEMENT - PAGE 5

In a manner calculated to achieve the goals of the GREATER BROWNSVILLE INCENTIVES CORPORATION in enhancing economic development and to maximize the value of the said CORPORATION's investments in various economic development projects, pursuant to the policies set by the CORPORATION's Board Of Directors from time to time, TITAN WHEEL INTERNATIONAL, INC., shall keep the said CORPORATION apprised of the status of the said Project, to insure compliance with this Agreement.  To this extent, on a quarterly basis, TITAN WHEEL INTERNATIONAL, INC., shall prepare and send to the GREATER BROWNSVILLE INCENTIVES CORPORATION, by and through its Board Of Directors, a report showing the activities conducted pursuant to this Agreement during the preceding quarter and setting forth an accounting of funds received and expended pursuant to this Agreement during the preceding quarter, with each such report showing the cumulative expenses and revenues for the preceding quarter together with all prior quarters during the term of this Agreement, as well as "employment levels" for all such quarters.

TITAN WHEEL INTERNATIONAL, INC., shall have a "review" audit of all funds and activities of this Project prepared annually by a Certified Public Accountant (which auditor may be employed by the company), a copy of which shall be presented to the GREATER BROWNSVILLE INCENTIVES CORPORATION within ninety (90) days of the close of the said company's fiscal year, and further, the said company will provide a copy of its proposed and adopted budgets regarding this Project to the GREATER BROWNSVILLE INCENTIVES CORPORATION as soon as same can be (reasonably) forwarded to the CORPORATION.  Additionally, the said company will make available for inspection, at a reasonable time and place, at the request of the CORPORATION, any or all of the said company's financial and payroll records as same relates to this Project, provided however, that all of such records will be deemed "confidential" and not released to third parties (pursuant to the Texas Open Records Act).

V.

Term Of Agreement

The term of this Agreement shall be five (5) years, commencing November 1, 1996 and ending October 31, 2001.

VI.

Termination

This Agreement may be terminated for cause (including the failure to comply with the requirements or standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION, or any action constituting a

PROJECT AGREEMENT - PAGE 6

breach of the terms of this Agreement) by either party, as appropriate, or by mutual agreement of the parties, or in the event of any occurrence (e.g., bankruptcy, dissolution or governmental action, as appropriate) precluding either party from performing the obligations contemplated under this Agreement. In the event of the termination of this Agreement for any reason prior to the expiration of the term of this Agreement, the parties shall be entitled to all compensation earned by them through the effective date of termination, as appropriate, and any remedies available at law or in equity, which rights and remedies shall survive the termination of this Agreement.

## VII.

### Indemnity

TITAN WHEEL INTERNATIONAL, INC., shall indemnify, protect and hold harmless the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, from any and all liabilities, claims, demands, actions, losses, damages and costs, including all costs of defense thereof, of any nature whatsoever, for injury to or death of persons or loss or damage to property, or for any other reason, including economic or environmental loss of any kind, in any manner arising out of or connected with the performance of TITAN WHEEL INTERNATIONAL, INC., under this Agreement, or arising out of the execution of or performance (or non-performance) of this Agreement, and including claims and actions based upon the acts or omissions of TITAN WHEEL INTERNATIONAL, INC., or its shareholders, directors, officers, agents, employees, representatives, parents, subsidiaries, affiliates, related holding companies, successors, assigns and insurers.

Upon demand, TITAN WHEEL INTERNATIONAL, INC., shall, at its own expense, defend the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, against any and all such liabilities, claims, demands, actions, losses, damages and costs. Moreover, TITAN WHEEL INTERNATIONAL, INC., shall give the GREATER BROWNSVILLE INCENTIVES CORPORATION prompt notice of any claim within its knowledge that in any way, directly or indirectly, affects either party. Both parties shall have the right to participate in the defense of such claim to the extent of their interests.

VIII.

## Insurance

Both parties agree to obtain insurance (to the extent available) in the type and amount deemed advisable to protect their respective interests. To this extent, the parties agree to provide insurance for their respective conveyances, equipment, facilities and instrumentalities, as appropriate.

IX.

## Status Of Parties

The parties hereto shall not be construed to have the relationship of partners, joint venturers, principal-agent or employer-employee. The parties hereto are separate entities who enter into this Agreement for their respective benefit.

X.

## Compliance With Law

The parties will act, at all times, in compliance with all pertinent and applicable laws.

XI.

## Entire Agreement

This Agreement contains the entire agreement between the parties relating to the rights herein granted and the obligations herein assumed, and supersedes any prior understandings, representations, memorandums or agreements regarding the service relationship that is the subject of this Agreement. Any oral representations or modifications concerning this instrument shall be of no force or effect. This Agreement may be amended, provided that no amendment, modification or alteration of the terms of this Agreement shall be binding unless the same is in writing and duly executed by the parties hereto.

XII.

## Law Governing; Venue

This Agreement shall be governed by and construed in accordance with the laws of the State Of Texas (and where applicable, the laws of the United States Of America), and, the

PROJECT AGREEMENT - PAGE 8

obligations and undertakings of each of the parties to this Agreement shall be performable in Cameron County, Texas.

## XIII.

### No Waiver

Any waiver by any party of any default under or breach of this Agreement shall not be construed as a continuing waiver of such default or breach, nor as a waiver of or permission for (express or implied) any other or subsequent default or breach.

## XIV.

### No Assignment

This Agreement shall not be assigned in whole or in part by either party without the consent and approval of the other party, set forth in writing and signed by both parties. Any assignee will be bound by the terms of this Agreement.

## XV.

### No Warranties Or Representations

The parties to this Agreement specifically acknowledge that the GREATER BROWNSVILLE INCENTIVES CORPORATION (or by extension, the CITY OF BROWNSVILLE) shall not be obligated to pay any funds to TITAN WHEEL INTERNATIONAL, INC., beyond the (contingent) payments contemplated by this Agreement, as set forth above, which are not to exceed the sum that is: $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00 (as set forth above) for the "site improvement expenses," $1,712,500.00 for the "lease/building expense" and $975,000.00 for the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., and/or the sum representing $13,040.73 per "new job created," in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION -- for the "Site Development Credits" (not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00, as set forth above), for the "Lease Assistance Credit" (not to exceed the sum of $1,712,500.00), and for the "Job Creation Credit" (not to exceed the sum of $975,000.00).

NO WARRANTY OR REPRESENTATION OF ADDITIONAL PAYMENTS OR FUNDING OR CREDIT OR THE EXTENSION OF CREDIT HAS BEEN MADE, IS BEING MADE OR WILL BE MADE BY THE GREATER BROWNSVILLE INCENTIVES CORPORATION (OR THE CITY OF BROWNSVILLE). FURTHERMORE, NO WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER IS BEING MADE BY THE

PROJECT AGREEMENT - PAGE 9

GREATER BROWNSVILLE INCENTIVES CORPORATION OR TITAN WHEEL INTERNATIONAL, INC., IN CONNECTION WITH THE EXECUTION OR PERFORMANCE OF THIS AGREEMENT, except to the extent set forth in this instrument.

XVI.

Parties Bound

This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legal representatives, successors and assigns, as appropriate.

XVII.

Notices

Any notice to either party shall be sent by certified or registered mail, addressed to the parties as set forth above, at their respective addresses set forth above or such other address as may be designated.

XVIII.

Invalidity

If any term, provision, covenant or condition of this Agreement is held by a tribunal of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. Moreover, it is the intention of the parties to this Agreement that in lieu of each clause or provision of this Agreement that is held to be invalid, void or unenforceable, there be added as a part of this Agreement a clause or provision as similar in terms to such invalid, void or unenforceable clause or provision as may be feasible which shall nevertheless be valid, legal and enforceable.

XIX.

Arbitration

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT AND THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, USING ONE ARBITRATOR -- SUCH ARBITRATION TO BE CONDUCTED IN BROWNSVILLE, CAMERON COUNTY, TEXAS,

IN THE ENGLISH LANGUAGE -- AND A JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

XX.

Attorney Fees

If any proceeding is initiated to resolve a dispute arising under or relating to this Agreement by either of the parties hereto, it is expressly agreed that the prevailing party shall be entitled to recover from the other party reasonable attorney fees and expenses in addition to any other relief that may be awarded.

XXI.

Construction Of Instrument

Each of the parties hereto have been represented by the attorneys of their choice in the negotiation and drafting of this Agreement. Accordingly, this Agreement shall not be construed in favor of either party.

XXII.

Authority

The parties to this Agreement, to-wit, TITAN WHEEL INTERNATIONAL, INC., and the GREATER BROWNSVILLE INCENTIVES CORPORATION, specifically warrant and represent that the signatories below are authorized to act on behalf of the respective party to this instrument, that the signatories have been specifically authorized to execute this Project Agreement by said parties in accordance with the requisite corporate formalities of each such party, that the execution of this instrument by said signatories constitutes the binding act of each such party to this instrument and that the execution of this instrument and the adoption of same by each party is authorized by law.

EXECUTED in duplicate (as revised) on the ___7th___ day of November, 1997 at Brownsville, Cameron County, Texas.

GREATER BROWNSVILLE INCENTIVES CORPORATION

BY: _Eduardo Roberto Rodriguez_
Eduardo R. Rodriguez, President

PROJECT AGREEMENT - PAGE 11

ATTEST:

_____
Irv Downing, Secretary


                              TITAN WHEEL INTERNATIONAL, INC.


                    BY:  _____
                              Gary Carlson, Vice-President


ATTEST:

_____
Name: _____
Title: _____


PROJECT AGREEMENT - PAGE 12



**BROWNSVILLE**
*On the Border By the Sea*

## CERTIFICATE OF CITY SECRETARY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| COUNTY OF CAMERON | § | |
| CITY OF BROWNSVILLE | § | |

I, Inelda T. Garcia, the duly appointed, qualified City Secretary of the City of Brownsville, Texas, do hereby certify that the above and foregoing is a full, true, and correct copy of a *Project Agreement between the Greater Brownsville Incentives Corporation (GBIC) and Titan Wheel International, Inc.*, approved on February 27, 1997, as shown in the GBIC minute book in the records of The Office of the City Secretary.

In testimony whereof, witness my hand and seal of the said City of Brownsville, Texas, on this the __28th__ day of __October__, 2003.

By:    Inelda T. Garcia
       City Secretary
       City of Brownsville, Texas

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS
On: Oct 29,2003 at 03:35P

Document Number:        03059175

                    By
Marleen Fuentes
Joe G Rivera, County Clerk
Cameron County

S    IAL WARRANTY DEED

Date:    November  14 , 1996        EFFECTIVE DATE: February 28, 1997

Grantor:  GREATER BROWNSVILLE INCENTIVES CORPORATION,
          a Texas Non-Profit Corporation

Grantor's Mailing Address (including county):

          City Hall, Market Square, Brownsville, Texas    78520
          CAMERON County

Grantee:  TITAN WHEEL INTERNATIONAL, INC.,
          an Illinois Business Corporation

Grantee's Mailing Address (including County):

          2701 Spruce Street, Quincy, Illinois  62301
          ADAMS County

CONSIDERATION:  IN ACCORDANCE WITH PROJECT AGREEMENT BY AND
               BETWEEN GRANTOR AND GRANTEE OF EVEN DATE HEREWITH

PROPERTY (including any improvements):

          BEING a 192.634 acre tract out of a "Parcel One", "Tracts
          1, 2, and 3 of Parcel Two" and "Parcel Four" as described
          in a Deed from Norwill, Incorporated to Henry A. Willms,
          John F. Willms, Gary A. Willms and Myra Foster.  Said
          Deed is recorded in Volume 2200, Page 92 of the Deed
          Records of Cameron County, Texas.  Said 192.634 acre
          tract being more particularly described on the Exhibit
          "A" attached hereto and made a part hereof.

          SAVE & EXCEPT there is hereby reserved a 100' wide strip
          along the South Boundary line for possible future
          dedication to the City of Brownsville for Jose Escandon
          Road.  In the event that said 100' wide strip is not
          dedicated for said purpose on or before twenty five (25)
          years from date hereof, this reservation shall lapse.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

          This conveyance is made and accepted subject to any and all
          restrictions, covenants, conditions, easements, mineral and
          royalty reservations, zoning laws, leases, regulations and
          ordinances of municipal and other governmental authorities, if
          any, and only to the extent that same are still in effect,
          shown of record in Cameron County, Texas; together with any
          and all visible and apparent easements, to include but not
          limited to easements for roadways on or across the land.

TAX ROLL-BACK:

          If Grantee's use of the property hereafter results in the
          assessment of additional taxes for periods prior to date
          hereof such additional taxes shall be the obligation of
          Grantee.

DISCLAIMER OF REPRESENTATIONS AND WARRANTIES:

          GRANTOR HAS NOT MADE AND HEREBY SPECIFICALLY DISCLAIMS ANY
          WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST,
          PRESENT, FUTURE, AS TO, OR CONCERNING (i) THE NATURE AND
          CONDITION OF THE PROPERTY, INCLUDING BUT NOT BY WAY OF
          LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY
          THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY
          ELECT TO CONDUCT THEREON, (ii) THE MANNER, CONSTRUCTION,
          CONDITION, AND STATE OF REPAIR OR LACK OF REPAIR OF ANY OF THE
          PROPERTY, (iii) EXCEPT FOR ANY WARRANTIES CONTAINED IN THE
          DEED, THE NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE,

EXHIBIT
4

EXHIBIT B
PAGE  1  OF  3  PAGES

Exhibit
2

POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION
OR OTHERWISE, AND (iv) THE COMPLIANCE OF THE PROPERTY OR ITS
OPERATION WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF
ANY GOVERNMENT OF OTHER BODY, GRANTEE HEREBY EXPRESSLY
ACKNOWLEDGES AND AGREES THAT GRANTEE HAS THOROUGHLY INSPECTED
AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY
GRANTEE IN ORDER TO ENABLE GRANTEE TO EVALUATE THE PURCHASE OF
THE PROPERTY.  GRANTEE HEREBY FURTHER ACKNOWLEDGES AND AGREES
THAT GRANTEE IS RELYING SOLELY UPON THE INSPECTION,
EXAMINATION, AND EVALUATION OF THE PROPERTY "AS IS", "WHERE
IS" AND "WITH ALL FAULTS" BASIS AND GRANTEE EXPRESSLY
ACKNOWLEDGES THAT IN CONSIDERATION OF THE AGREEMENT OF GRANTOR
HEREIN, EXCEPT AS OTHERWISE SPECIFIED HEREIN, GRANTOR MAKES NO
WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY
OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO ANY
WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR
FITNESS FOR A PARTICULAR PURPOSE IN RESPECT OF THE PROPERTY.
IT IS FURTHER AGREED THAT GRANTOR HAS NOT WARRANTED, AND DOES
NOT HEREBY WARRANT, THAT THE PROPERTY OR ANY IMPROVEMENTS
LOCATED THEREON NOW OR IN THE FUTURE WILL MEET OR COMPLY WITH
THE REQUIREMENTS OF ANY SAFETY CODE OR REGULATION OF THE STATE
OF TEXAS, THE CITY WHERE THE PROPERTY IS LOCATED, THE COUNTY
WHERE THE PROPERTY IS LOCATED, OR ANY OTHER AUTHORITY OR
JURISDICTION.  IT IS FURTHER AGREED THAT GRANTOR DOES NOT MAKE
ANY REPRESENTATIONS OR WARRANTIES REGARDING SOLID WASTE, AS
DEFINED IN THE TEXAS SOLID WASTE DISPOSAL ACT AND THE
REGULATIONS ADOPTED THEREUNDER OR THE U.S. ENVIRONMENTAL
PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, THE
DISPOSAL OR EXISTENCE IN, OR EMANATING FROM THE PROPERTY, OR
ANY HAZARDOUS SUBSTANCE, AS DEFINED BY THE COMPREHENSIVE
ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980,
AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER.  GRANTEE
HEREBY ASSUMES ALL RISKS (SPECIAL, DIRECT, INDIRECT,
CONSEQUENTIAL, OR OTHER DAMAGES) RESULTING OR ARISING FROM OR
RELATING TO THE OWNERSHIP, USE, CONDITION, LOCATION,
MAINTENANCE, REPAIR OR OPERATION OF THE PROPERTY.

Grantor, for the consideration, receipt of which is
acknowledged, and subject to the reservations from and exceptions
to conveyance and warranty, grants, sells and conveys to Grantee
the property, together with all and singular the rights and
appurtenances thereto in any wise belonging, to have and hold it to
Grantee, Grantee's heirs, executor, administrators, successors or
assigns forever.  Grantor's heirs, executors, administrators and
successors are hereby bound to warrant and forever defend all and
singular the property to Grantee and Grantee's heirs, executors,
administrators, successors and assigns against every person
whomsoever lawfully claiming or to claim the same or any part
thereof, except as to the reservations from and exceptions to
conveyance and warranty, by, through or under Grantor, but not
otherwise.

When the context requires, singular nouns and pronouns include
the plural.

GREATER BROWNSVILLE INCENTIVES CORPORATION

by: Donald G. Johnson
DONALD G. JOHNSON,
Chairman of the Board

EXHIBIT B
PAGE 2 OF 3 PAGES

ACKNOWLEDGMENT

STATE OF TEXAS
COUNTY OF CAMERON

This instrument was acknowledged before me on February 28, 1997, by DONALD G. JOHNSON, Chairman of the Board of GREATER BROWNSVILLE INCENTIVES CORPORATION.

Notary Public, State of TEXAS

MICHELE SANCHEZ
Notary Public, State of Texas
My Commission Expires 6-06-97

AFTER RECORDING RETURN TO:
TITAN WHEEL INTERNATIONAL, INC.
2701 Spruce Street
Quincy, Illinois 62301

PREPARED IN THE OFFICE OF:
MICHELE SANCHEZ, P.C.
717 North Expressway 83
Brownsville, Texas  78520

EXHIBIT B
PAGE 3 OF 3 PAGES