**EXHIBIT "2"**

### SANCHEZ, WHITTINGTON, JANIS & ZABARTE, L.L.P.
ATTORNEYS AT LAW
100 NORTH EXPRESSWAY 83
BROWNSVILLE, TEXAS 78521-2284

JACK D. SANCHEZ (1945-1987)

DENNIS M SANCHEZ, P C.
ROBERT A WHITTINGTON, P C
BRIAN G JANIS, P C.
FRANCISCO J ZABARTE, P C
C FRANK WOOD, P C.

TEL (956) 546-3731
FAX (956) 546 3765

August 21, 2003

Mr. Maurice Taylor, Jr., President/CEO
Titan Wheel International, Inc.
2701 Spruce Street
Quincy, Illinois  62301

SENT BY REGULAR MAIL
AND BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

RE: Project Agreement Between
Greater Brownsville Incentives
Corporation (GBIC) And Titan Wheel
International, Inc. (Titan)

Dear Mr. Taylor:

As you know, on February 27, 1997, to facilitate the opening of a tire manufacturing facility in or near Brownsville, Titan entered into a Project Agreement with the Greater Brownsville Incentives Corporation (GBIC), an economic development corporation established under Texas law under the auspices of the City Of Brownsville.

Under this Agreement, Titan was to receive various incentives, in anticipation of a large manufacturing facility being constructed in Brownsville and the employment of 500 people (in "new jobs") at such facility.

Unfortunately, over the five-year term of the contract, 500 jobs were not created, and the best operating year for Titan, job-wise, at the Brownsville facility yielded only 122 jobs.

A small amount (proportionately) of "job creation credits" and "lease/building assistance credits" were paid to Titan, in the sum of $490,200.00. In addition to that amount, the sum of $3,832,863.00 (the majority of the incentives paid to Titan) was paid for various "site development credits."

Under the Project Agreement, the "site development credits" were paid "up-front," or in other words, prior to the time of contractual performance by Titan (for job creation), the other incentives having been paid under such performance-based criteria, to-wit, the jobs were created during the course of the agreement.

EXHIBIT D
PAGE 1 OF 6 PAGES

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 2

The Board Of Directors of GBIC observed a limited amount of jobs created at the Brownsville facility of Titan under the Project Agreement, and more recently, statements about the plant being "shut down."

The significance of these developments, taken as a whole, is that there is a provision in the Project Agreement that indicates that the "maximum amount of reimbursement is not to exceed (for all credits hereunder) $13,040.73 per 'new job created' at 'the Brownsville facility of Titan,'" and to that extent, a question arose at a prior Board meeting about whether Titan was in fact overpaid.

In other words, because the majority of the incentives paid by GBIC involved money paid "up-front," in light of the 500 jobs promised not being created, the "per job cost" increased dramatically, over the amount ($13,040.73) authorized by the Project Agreement, prompting the retention of an independent certified public accountant, under the contract, to calculate the nature and extent of that "overpayment."

In summary, the amount of the credits committed to Titan, under the contract, was $6,520,363.00, and the actual expenditures, under the contract, the majority of which involved "site development credits," was $4,568,863.00. For the one year that there was a basis for the payment of the "job creation" and "building assistance" credits, the payment was premised on the $13,040.73 (maximum) "per job cost."

When the "per job cost" is multiplied by the 122 jobs created, the result is $1,590,969.00, according to the said accountant, such that, if the actual funds disbursed ($4,568,863.00) is considered, and the correct payment to Titan (based on the said 122 jobs, the sum of $1,590,969.00) is considered, the overpayment to Titan is (therefore) $2,977,894.00.

In light of the foregoing, and in light of cash flow considerations of GBIC (as well as your company), the GBIC Board Of Directors has directed that I apprise you, on behalf of Titan, of this development.

That is, a final review of this Project revealed that Titan was overpaid, based on the factors above (for the reasons set forth above), such that, because of the limited job creation of 122 (out of a promised 500) jobs (500 jobs mathematically would have allowed

EXHIBIT D
PAGE 2 OF 6 PAGES

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 3

the amount spent to be "absorbed" by the limit on "per job costs" of $13,040.73 per job), instead of the 500 jobs required by the Project Agreement, Titan was overpaid by the sum of $2,977,894.00.

Having been presented with this information, the GBIC Board Of Directors has directed me to not only notify you of this situation, but to advise you that GBIC, by this letter, asserts a claim with your company for the reimbursement of such overpayment, to be considered by the appropriate corporate officials, pursuant to the terms of the Project Agreement, a copy of which is enclosed for your consideration.

Having just advised you of this situation, I anticipate that you want some time to study the matter and respond to same, and I await such response either by you or your corporate counsel. In any event, GBIC, in addition to advising Titan of its claim for reimbursement of the overpayment, is willing to discuss the method, manner and timing of such repayment.

This is also to advise you that, in reviewing the Agreement, the Board was advised that where Titan "discontinues operations or ... no longer maintains a tire manufacturing operation in or near Brownsville ... any properties or assets held by ... [Titan] which were acquired with funds, in whole or in part (including such funds) provided by ... [GBIC] <u>shall revert</u> to ... [GBIC] (subject to any superior liens) ... ."

In light of recent announcements that Titan's operations are being discontinued in Brownsville and that Titan is no longer maintaining a tire manufacturing operation in Brownsville, as set forth (for example) in a press release regarding the consolidation of all manufacturing operations in Des Moines, Iowa, I believe that the foregoing clause has been activated.

Thus, the Board has suggested, in regard to the building and land purchased with GBIC funds, that same be utilized to pay for the said overpayment. Further, since there have been rumors in the area of the possible sale of portions of that land, same should not be considered or proceed because of this contractual provision.

This is to remind you of a later provision in the Agreement, in that same general section of the contract, that indicates that "any properties or assets acquired by ... [Titan] with funds, in whole or in part, provided by ... [GBIC] shall not be alienated,

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 4

conveyed or transferred from ... [Titan] without the prior authorization of the ... [GBIC] ... ."

Understandably, this is may come as a surprise to you and your firm, but these provisions have been in the contract between the parties from the beginning of the contract's term. Unfortunately, because of minimal (about 20% of 500 jobs promised) job creation, there has been an overpayment of GBIC funds, which is now due to GBIC by your firm.

Further, because of the discontinuation of operations at the Brownsville facility, there has been a reversion of the land and building (at least in part, to the extent paid for by GBIC for the benefit of Titan), which could be used to satisfy the overpayment claim.

In any event, I suggest that these matters be considered and discussed, and that a response regarding same be forwarded to me by you or your counsel in the near future.

Should you have any questions or further information, please advise. Thank you for your consideration.

Sincerely,

Brian G. Janis

BGJ/ma
enc.

cc: Mr. Benancio "Ben" Medina, Jr.          HAND-DELIVERED AND
    Administrator                            SENT BY TELEFAX
    Greater Brownsville Incentives              (548-6134)
      Corporation
    P. O. Box 911
    Brownsville, Texas  78522-0911
    (For Board Distribution)

EXHIBIT D
PAGE 4 OF 6 PAGES

Mr. Maurice Taylor, Jr., President/CEO
August 21, 2003
Page 5

| | |
|---|---|
| Mr. Jason C. Hilts<br>President/CEO<br>Brownsville Economic<br>   Development Council, Inc.<br>1205 North Expressway 83<br>Brownsville, Texas  78520 | SENT BY REGULAR MAIL<br>AND BY TELEFAX<br>     (546-3938) |
| Mr. James R. Goza<br>City Attorney<br>City Of Brownsville<br>P. O. Box 911<br>Brownsville, Texas 78522-0911 | SENT BY REGULAR MAIL<br>AND BY TELEFAX<br>     (546-4291) |

*[Certified mail return receipt, rotated sideways]*

BRIAN G. JANIS
SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 NORTH EXPRESSWAY 83
BROWNSVILLE, TEXAS 78521

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Addressee or ☐ Agent

B. Received By: (Please Print Clearly)
Kevin Pryor

C. Date of Delivery: 08/26/03

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Address

City          State          Zip + 4 Code

4. Restricted Delivery? ☐ Yes
3. Service Type: CERTIFIED
2. Article Number: 7100 0000 0100 0000 15

1. Article Addressed To:
MR. MAURICE TAYLOR, JR.
PRESIDENT & CEO
2701 SPRUCE STREET
QUINCY IL 62301

7100 0000 0100 0000 1516

EXHIBIT D
PAGE 6 OF 6 PAGES