IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| GREATER BROWNSVILLE INCENTIVES CORPORATION, | § § § |
| Plaintiff | § |
| VS. | § CIVIL ACTION NO. B-03-224 |
| | § |
| | § |
| TITAN INTERNATIONAL, INC., | § |
| Defendant | § |

**EXHIBITS IN SUPPORT OF
TITAN INTERNATIONAL, INC.'S MOTION TO DISMISS
PURSUNT TO RULE 12(b)(7)**

| **EXHIBIT NUMBER** | **EXHIBIT** |
|---|---|
| 1 | Defendant's Responses to Plaintiff's First Set of Request for Production of Documents |

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GREATER BROWNSVILLE INCENTIVES         §
CORPORATION,                           §
        Plaintiff              §
VS.                                    § CIVIL ACTION NO. B-03-224
                                       §
                                       §
TITAN INTERNATIONAL, INC.,             §
      Defendant                  §
                                       §

Defendant's Responses to Plaintiff's First Set of
Request for Production of Documents

TO:   Greater Brownsville Incentives Corporation,
      by and through its Attorney
      Brian Janis
      SANCHEZ, WHITTENGTON, JANIS & ZABARTE, L.L.P.
      100 North Expressway 83
      Brownsville, Texas 78521-2284

NOW COMES, Defendant, Titan International, Inc., and responds to Plaintiff's
First Set of Request for Production pursuant to the Federal Rules of Civil
Procedure.

                            Respectfully Submitted,
                            MICHAEL RODRIGUEZ, P.L.L.C.

                            Michael Rodriguez
                            State Bar No. 00791553
                            Federal I.D. No. 18759
                            319 E. Elizabeth Street
                            Brownsville, Texas 78520
                            (956) 574-9333; Fax (956) 574-9337


EXHIBIT
1

## CERTIFICATE OF SERVICE

I hereby certify that a true copy and correct copy of this instrument has on June 2, 2004, been forwarded via Certified Mail Return Receipt Requested and facsimile to:

Brian G. Janis
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521
(956) 546-3731 telephone
(956) 546-3766 facsimile

James R. Goza
City Attorney, City of Brownsville, Texas
P.O. Box 911
Brownsville, Texas 78522
(956) 548-6011 telephone
(956) 546-4291 facsimile

Michael Rodriguez

Request for Production of Documents

1.     Produce any and all documents (as that term is defined under the Federal Rules of Civil Procedure) that reflects the basis for the inclusion of TITAN TIRE CORPORATION OF TEXAS as a party to various financing instruments and security agreements, including but not limited to a deed of trust and related instruments indicating an ownership or similar interest in the land and improvements thereon that are at issue in this case, or reflects the relationship, in regard to said land and improvements thereon, between TITAN TIRE CORPORATION OF TEXAS and TITAN INTERNATIONAL, INC. (TITAN), or any predecessor, affiliate, parent, subsidiary or related holding company of TITAN, including all instruments and/or agreements reflecting the payment for same or any related transfer of funds between the said "TITAN" entities.

**RESPONSE:**

Defendant objects to this Request for Production as being overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Additionally, as phrased this Request for Production is unintelligible.

Subject to and without waiving the foregoing objections, please see attached documents.  Subject to the entry of a Protective Order, further documentation will be provided.  Please see draft Protective Order attached hereto.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GREATER BROWNSVILLE INCENTIVES §
CORPORATION, §
           Plaintiff §
VS. §     CIVIL ACTION NO. B-03-224
§
§
TITAN INTERNATIONAL, INC., §
    Defendant §

## STIPULATED PROTECTIVE ORDER

WHEREAS, Plaintiff has requested the production of certain documents/materials from Defendant Titan International, Inc., (hereinafter referred to as "Titan"), which contain confidential, proprietary, commercial, business and trade secret information of Titan, and which require protection against unrestricted disclosure, dissemination and use; and

WHEREAS, the parties hereto, through their respective counsel, have agreed to the entry of this order, and the Court being fully advised in the premises;

**THEREFORE, IT IS ORDERED that:**

1.    The confidential, proprietary, commercial, business and trade secret documents/materials produced which have been stamped CONFIDENTIAL may be consulted and otherwise used only in connection with the preparation and trial of the above-captioned case and in accordance with the provisions of this order.

2.    Viewing of such confidential documents/materials, and any notes arising therefrom, and discussion of either, shall be restricted to attorneys for plaintiff and defendant who are employees of the law firm of Sanchez, Whittington, Janis & Zabarte, L.L.P., other employees of the law firm, technical experts hired for consultation and/or testimony in connection with the above-captioned case, and general counsel or in-house

counsel and his/her staff for any of the parties involved in the litigation, who have executed the Viewing Affidavit provided for in paragraph 4 below.

3.    The confidential documents/materials, depending on the manner in which they are produced, and any notes, reports or summaries arising therefrom, shall have affixed to it or them a copy of this protective order.

4.    The confidential documents/materials produced herein may be copied and disclosed only to the persons enumerated in paragraph 2 above and only after attorneys for plaintiffs have first advised each person to whom the documents/materials are to be disclosed that pursuant to this order such person may not disclose copies or the substance or identity of such documents/materials to any other person, except as provided herein, and after the attorneys have provided a copy of this protective order to such person and has secured from such person a Viewing Affidavit describing such person, and stating that such person has read a copy of this order, that he/she has been provided a copy of the protective order, that he/she understands its terms and agrees to be bound by its terms, that he/she understands that he/she may not use the documents/materials for any purpose other than the preparation and trial of this case, that he/she may not divulge any copies or the identity or substance of any of the documents/materials disclosed to him/her except in the preparation or trial of this litigation, that he/she shall return all such documents/materials, copies and notes arising therefrom at the termination of this litigation to counsel for Titan, and that he/she submits to the jurisdiction of this Court for the purpose of enforcement of this order.  Possession of each such executed Viewing Affidavit shall be maintained by plaintiff's counsel until "needed".  An exemplar "Viewing Affidavit" is attached hereto as Exhibit A.

5.    Each person signing a Viewing Affidavit thereby submits himself/herself to the jurisdiction of this Court for contempt and all other appropriate proceedings, during and after conclusion of this litigation, in the event of an alleged violation of this protective order.

6.    Neither    the    identity    nor    the    contents    of    the    confidential documents/materials produced hereunder nor any notes arising from such production may be used in connection with any other lawsuit or for any purposes whatsoever other than the preparation and trial of the above captioned case.

7.    This protective order shall be filed with the Court. All motions, depositions or other documents filed with the Court, if any, which reveal any portions of the contents of the confidential documents/materials produced hereunder, or notes arising from the production, shall be filed in a sealed envelope which shall be kept sealed by the Clerk of this Court until further order of this Court, provided, however, that such documents/materials shall be furnished to the appropriate judge as required for deciding any matter related to the confidential documents/materials, and copies shall be furnished to counsel for plaintiff and counsel for Titan (but not to counsel for any other parties, if any, unless and until they sign and enter into this Stipulated Protective Order, without further order of the Court). All proceedings in connection with such sealed documents/materials shall be conducted in chambers, and any record made of such proceedings shall also be sealed unless the Court orders otherwise.

8.    Upon final termination of this action, if no other disposition is agreed to by counsel for Titan, all confidential documents/materials provided hereunder, and all copies thereof, shall be returned to counsel for Titan. All written extracts from such documents/materials, including abstracts, summaries, descriptions, lists, synopses or other writings reflecting or revealing the contents of such documents, materials or information within the possession, custody or control of plaintiff, plaintiff's counsel, and plaintiff's experts or any other counsel, expert or party to this litigation and any other person to whom the confidential documents/materials have been disclosed, shall also be delivered to counsel for Titan.

9.    At the final termination of this litigation, by trial, settlement or otherwise (including any appeals), counsel for plaintiff (and any other party who as agreed to this stipulation) shall prepare a list identifying by name, title and address each person to whom the confidential documents/materials produced hereunder have been disclosed by plaintiff or its counsel and the original of each executed Viewing Affidavit obtained. Said list shall be filed with the Court clerk by Plaintiff's counsel and kept under seal of the Court. Said documents shall not become public or be disclosed by any person, shall not be included in the public records of this case, and shall not be otherwise disclosed. The documents shall remain sealed until the Court orders otherwise. Titan, and/or its

Page 3 of 7

attorneys may petition the Court to unseal the documents with Notice to Plaintiff's counsel of record.

10.    Upon evidence presented to the Court of a failure of any person to comply with this order, the Court may order an earlier surrender of all confidential documents/materials produced and/or all notes and copies arising from those documents/materials, and may order sanctions, including contempt, as may be appropriate.

11.    Neither the production of said confidential documents/materials nor inspection and note taking therefrom nor any testimony, in a deposition or otherwise, pertaining to such documents/materials shall constitute a waiver of the right of Titan to claim, in this lawsuit, or otherwise, that said documents/materials, or any portion thereof, are privileged or otherwise non-discoverable, or are not admissible in evidence in this proceeding or in any other proceeding.

12.    If after production pursuant to the Stipulated Protective Order plaintiff seeks to challenge the CONFIDENTIAL status of said documents/materials, the initial acceptance of said documents/materials as CONFIDENTIAL is without prejudice to subsequent review by the Court. However, any such challenge to the CONFIDENTIAL status of said documents/materials must maintain and preserve the confidential nature consistent with paragraph 7 above regarding the filing of any challenges with the Court.

13.    After final termination of this litigation, the provisions of this order relating to the confidentiality of the documents/materials produced hereunder and of all copies, derivative materials and information derived therefrom, and relating to the return of such documents/materials and all copies and derivative materials shall continue to be binding. This Court retains jurisdiction over the parties and persons identified in paragraph 2 of this order, following final termination of this litigation.

AGREED:

DATED: _____

By:_____
       **Attorney for Plaintiff**
       **Brian Janice**

SIGNED FOR ENTRY THE _____ DAY OF _____

_____, 2004.

_____
**JUDGE PRESIDING**

EXHIBIT "A"

<u>VIEWING AFFIDAVIT</u>

STATE OF                     §
                             §
COUNTY OF                    §

_____, being first duly sworn,
states:

     1.    I am a _____

                                  Profession or Occupation

with the firm of _____

whose address is _____.

     2.    I have read and been provided with a copy of the Stipulated Protective Order, consisting of _____ pages, entered by the Court in the above-captioned case on the _____ day of _____, 2004, and I understand the requirements of that Stipulated Protective Order and agree to be bound by its terms.

     3.    I understand the documents/materials which are disclosed or provided to me pursuant to the Protective Order contain confidential, proprietary, commercial, business and trade secret information and I further understand and agree I may not use such confidential documents/materials for any purpose other than the preparation and trial of the above-captioned litigation, and I may not divulge any copies or the identity or substance of any of the confidential documents/materials disclosed to me except in the preparation and trial of this case.

     4.    I further understand and agree I must return all confidential documents/materials disclosed to me along with all copies and all notes and other derivative materials arising from the disclosed confidential documents/materials (including all copies of such notes and derivative materials) to counsel for Titan upon the termination of this litigation.

5.    I further acknowledge and agree that by signing this affidavit, I submit myself personally to the jurisdiction of the above-captioned Court for purposes of enforcement of the Protective Order, including punishment for contempt and other appropriate proceedings, in connection with allegations of improper disclosure or use, if any, of the disclosed confidential documents/materials.

_____

The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by _____. Such person is personally known to me or has produced (strike all but one) (i) a driver's license, (ii) a state issued identification card, (iii) a passport, (iv) nothing, (since such person is personally known to me) as identification and did so under oath.

_____
NOTARY PUBLIC

My Commission Expires:

192.634 Ac o/o Svy 38
ESG Sh. 19

Filed with Comanche, TEXAS

THIS SPACE FOR USE OF FILING OFFICER

03186
OFFICIAL RECORDS

1G0946
FILED FOR RECORD
AT ___

Jun 26  2:04 PM '98

**FINANCING STATEMENT** — FOLLOW INSTRUCTIONS CAREFULLY

C. RETURN COPY TO: (Name and Mailing Address)

> Ruth E. Mateo, Paralegal
> Ober, Kaler, Grimes & Shriver
> 120 East Baltimore Street
> Baltimore, MD 21202-1643

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME | | | | |
| TITAN INTERNATIONAL INC. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 1c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 2701 Spruce Street | Quincy | IL | USA | 62301 |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| TITAN TIRE CORPORATION OF TEXAS | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 2c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 4700 Brandes Line Road | Brownsville | TX | USA | 78521 |

3. SECURED PARTY (ORIGINAL S/P or ITS TOTAL ASSIGNEE) EXACT FULL LEGAL NAME

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME | | | | |
| General Electric Capital Corporation, for itself and as agent for certain other participants | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 3c. MAILING ADDRESS | CITY | STATE | COUNTRY | POSTAL CODE |
| 201 Long Ridge Road,, Bldg. B, 1st Floor | Stamford | CT | USA | 06927 |

See Attached

6. THIS FINANCING STATEMENT is signed by the debtor

**TITAN INTERNATIONAL, INC.**

**TITAN TIRE CORPORATION OF TEXAS**

(1) FILING OFFICER COPY — NATIONAL FINANCING STATEMENT (FORM UCC1) (TRANS) (REV. 12/18/95)

Attachment to UCC-1
Titan Tire Corporation of Texas and Titan International, Inc. 5377 PAGE 199
as Debtors
and
General Electric Capital Corporation
For itself and as agent for certain participants,
as Secured Party

The Debtors hereby grant the Secured Party a continuing first priority security interest in and lien on the following items of property:

(a) All right, title and interest of the Debtors in and to all improvements, structures and buildings now or hereafter erected or placed on the property described in Exhibit A (the "Land"), (collectively, the "Improvements") (the Land and the Improvements being hereinafter called collectively, the "Property") and all cash and non-cash proceeds thereon; and

(b) Any and all judgments, awards of damages (including but not limited to severance and consequential damages), payments, proceeds, settlements or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, in connection with, or in lieu of any taking of title, of use, or of any other property interest of the Property or any part thereof under the exercise of the power of eminent domain, either temporarily or permanently by any governmental authority or by any person acting under governmental authority; and

(c) All unearned premiums, accrued, accruing or to accrue under insurance policies with respect to the Property, now or hereafter obtained by the Debtors, and the Debtors' interest in and to all proceeds of the conversion, voluntary or involuntary, and the interest payable thereon, of the Property or any part thereof, into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Property, and the right to collect and receive the same; and

(d) All of the rents, royalties, issues, profits, revenue, income and other benefits of the Property, or arising from the use or enjoyment of all or any portion thereof (provided, however, that the foregoing shall not be deemed to grant a lien upon profits of the business operated on the Property), or from any lease or agreement pertaining thereto, and all right, title and interest of the Debtors in and to, and immediate under, any and all leases and subleases of the Property, or any part thereof, both now in existence or hereafter entered into and all amendments, extensions, renewals and grants thereunder (including without limitation, all cash and such leases and subleases, together with all proceeds thereof; and including, without limitation, all cash and security deposited thereunder to secure performance by the lessees of their obligations thereunder whether such cash or security is to be held until the expiration of the terms of such leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; and

(e) All of the assets described in Exhibit A attached hereto; and

(f) All proceeds of all or any of the Collateral described in clauses (a) through (e) hereof.

VOL.5377 PAGE 200

Exhibit A Description of Land

GF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of
Parcel Two" and "Parcel Four" as described in a deed from Morwill, Incorporated
to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed
is recorded in Volume 2200, Page 92 of the (Official) Deed Records of Cameron
County, Texas, said 192.634 acre tract being described more particularly
described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,473.0
feet from the Northwest corner of Survey 38, said point is North 84 degrees 55
minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision",
a subdivision of the Southern 163.53 acres of said Survey 38, Subdivision "D"
of Share 19. Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of
the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38
and the original centerline of FM-1847, a distance of 536.50 feet to a "PK"
nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre
tract; 

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey
38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK"
nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75
feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a
distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2,
Parcel Two, at a distance of 3,795.20 feet to the Northwest corner of Tract 3,
Parcel Two, a concrete nail found North 74 degrees 32 minutes 24 seconds West,
a distance of 0.46 feet from said corner, at a total distance of 4,736.60 feet
a "PK" nail set for the Northwest corner of Parcel Four and the Northwest
corner of this 192.634 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the
Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al to
the State of Texas by a deed recorded in Volume 3483, Page 203 of the Official
Records of Cameron County, Texas;

(3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05
minutes West, a distance of 1,798.37 feet to the Southern most corner of said
7.372 acre tract (recorded North 4 degree 07 minutes 19 seconds East,
1,789.88 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West,
0.90 feet from said corner;

(4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04
minutes 22 seconds East, a distance of 339.13 feet (recorded South 10 degrees
06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner;



—1—

COUNTY CLERK'S MEMO:
PORTIONS OF THIS
DOCUMENT NOT
REPRODUCIBLE
WHEN RECORDED

VOL 5377 PAGE 201

Continuation of Legal Description

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 34 seconds East, a distance of 282.13 feet to an iron pin found for a corner, (recorded South 14 degrees 56 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 37.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet for a corner, (recorded South 17 degrees 05 minutes 44 seconds West). An iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 628.25 feet for a corner, (recorded South 6 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 9.46 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 51 minutes East, at a distance of 1,154.16 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Williams, et al, to Brownsville Navigation District by a deed recorded in Volume 3483, Page 212 of the Official Records of Cameron County, Texas, at a distance of 1,313.13 feet the Northeast corner of said 0.678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 192.634 acre tract. An iron pin found South 67 degrees 46 minutes 01 seconds East, 1.67 feet from said corner;

(10) Thence, South 4 degrees 27 minutes West, at a distance of 121.09 feet the Northeast corner of said 0.678 acre tract an iron pin found North 88 degrees 18 minutes 18 seconds West, 1.27 feet from said corner, at a distance of 250.81 feet the southeast corner of said 0.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.39 feet from said corner, total distance of 961.46 feet (recorded 961.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

(11) Thence, South 4 degrees 30 minutes West, at a distance of 956.39 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 825.89 feet the centerline of a 75.00 foot wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 304, Page 478 of the Official Records of Cameron County, Texas, at a distance of 1,907.55 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,853.85 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 3,796.60 feet to an iron pin set



COUNTY CLERK'S MEMO
PORTIONS OF THIS
DOCUMENT NOT
LEGIBLE WHEN
DOCUMENT WAS
RECORDED

VOL 5377 PAGE 202                                                exhibit A

Continuation of Legal Description

GF No. or File No.: 59406

for the Southeast corner of said Parcel One and the Southeast corner of this
192.634 acre tract;

(12)  Thence, North 84 degrees 55 minutes West, along the South line of said
Parcel One, at a distance of 1,805.84 feet a concrete monument found on the
East Right-of-way of FM-1847, a total distance of 1,895.84 feet to the PLACE
OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.678 acre tract
(5.460 acre of said 192.634 acres is right-of-way of FM-1847);

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South
Boundary line dedicated to the City of Brownsville for Jose Eazenden Road by
Special Warranty Deed dated January 5, 1998, executed by Greater Brownsville
Incentive Corporation, a Texas Non-Profit Corporation to the City of
Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron
County, Texas, said 100 feet wide strip, a 4.259 acres tract, being described
more particularly described by metes and bounds as follows:

(1)  Beginning at a "PK" nail found for the Southeast corner of said 192.634
acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00
feet a point for a corner of this 4.259 acre tract;

(2)  Thence, South 84 degrees 55 minutes East, a distance of 1,854.82 feet to
an iron pin set in the East line of said 192.634 acre tract for a corner of
this 4.259 acre tract;

(3)  Thence, South 4 degrees 30 minutes 00 seconds West, a distance of 100.00
feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

(4)  Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to
the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 7.547 acre tract as set out in Special Warranty Deed
dated December 24, 1997, executed by Titan Wheel International, Inc., an
Illinois Business Corporation to the City of Brownsville, recorded in Volume
4841, Page 174, Official Records, Cameron County, Texas, said 7.547 acre tract
being described by metes and bounds as follows:

Commencing at a "PK" nail found for the Southeast corner of said 192.634 acre
tract, thence, North 5 degrees 05 minutes East, along the West line of said
Survey 38 and the original centerline of FM-1847, a distance of 100.00 feet to
the PLACE OF BEGINNING of this 7.547 acre tract;

Exhibit A

Continuation of Legal Description

VOL 5377 PAGE 203

GF No. or File No.: 69406

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,656.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

(3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,790.37 feet to the Southern most corner of said 7.372 acre tract, (recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 15 degrees 25 minutes 39 seconds West, 0.90 feet from said Corner.

(4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 262.19 feet to an iron pin found for a corner, (recorded South 14 degrees 86 minutes 39 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 Acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 543.25 feet a corner, (recorded South 17 degrees 05 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 12 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract, (recorded South 5 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner;

(9) Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 20.01 feet an iron pin set for a corner of this 7.547 acres tract;

(10) Thence, South 6 degrees 27 minutes 12 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acres tract;



VOL 5377 PAGE 204

Exhibit A

Continuation of Legal Description

GF No. or File No.: 69406

(11) Thence, South 18 degrees 82 minutes 15 seconds West, a distance of 836.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 268.82 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 80 seconds West, a distance of 2,815.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 130.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE:  This company does not represent that the acreage and/or square footage calculations are correct.

-5-



FILED FOR RECORD
AT_____

FEB JUN 26 P 2:06

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY TEXAS
BY_____ DEPUTY

VOL 5377 PAGE 205

03180

VOL 2200 PAGE 92                    37123

## SPECIAL WARRANTY DEED

OFFICIAL RECORDS

DATE: October 1, 1992

GRANTOR: Norwill, Incorporated, a Texas corporation

GRANTOR'S MAILING ADDRESS: One Mile North Paredes Line-Whipple Road
                           Los Fresnos, Cameron County, Texas 78566

GRANTEE: An undivided twenty-five percent (25%) interest to each of
         the following Grantees:

| | |
|---|---|
| Henry A. Willms | Gary A. Willms |
| P. O. Box 361 | P. O. Box 657 |
| Harlingen TX 78551 | Los Fresnos TX 78566 |
| | |
| John F. Willms | Myra Foster |
| Rt. 1 Box 1044 | HC01 Box 21 |
| Elkhart TX 75839 | Freer TX 78357 |

CONSIDERATION: Ten Dollars and other good and valuable consideration,
the receipt of which is hereby acknowledged.

PROPERTY (including any improvements):

PARCEL ONE:

All that certain tract, piece or parcel of land out of what is
commonly known as the "Los Marranos Ranch" located in Survey 38 of
Share 19 of the Espiritu Santo Grant, in Cameron County, Texas, and
more fully described by metes and bounds as follows, to-wit:

BEGINNING at a point set in the Western Boundary Line of the Paredes
Tract, said boundary line being also the Western Boundary Line of
Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 ft. more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espiritu Santo Grant; said point being also the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, of record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonia T. Cantu Estate, a tract of
land containing 200.00 acres out of Survey 38 of Share 19, of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5 deg.
05' East 936.5 feet to a point for the beginning point and the
Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5 deg.
05 min. East 941.5 feet to a point for the Northwest corner of the
tract herein described;

THENCE, South 84 deg. 55 min. East 1846.2 feet to an iron pipe in the
Eastern Boundary Line of Sur. 38 for the Northeast corner of the tract
herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a
fence South 4 deg. 30 min. West 941.5 to an iron pipe for the
Southeast corner of the tract herein described;

THENCE North 84 deg. 55 min. West 1855.8 feet to place of beginning,
containing by the above metes and bounds 39.35 acres of land (net)
exclusive of Paredes Line Road right-of-way.

The land herein described being part of the land heretofore
Partitioned by agreement dated September 25, 1940, recorded in Volume

WARRANTY DEED  -   PAGE ONE

ᵥₒₗ 2200 ᵖₐ𝅝 93

304, pages 72-82, Deed Records of Cameron County, Texas.

PARCEL TWO:

All that certain tract, piece or parcel of land out of what is
commonly known as the "Los Marranos Ranch" located in Survey 38 of
Share 19 of the Espiritu Santo Grant situated in Cameron County,
Texas, and more fully described by mates and bounds as follows,
to-wit:

TRACT 1.  BEGINNING at a point set in the Western Boundary Line of the
Paredes Tract, said boundary line being also the Western Boundary Line
of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espiritu Santo Grant; said point being also the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, or record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonis T. Cantu Estate, a tract of
land containing 200.00 acres out of Sur. 38 of Share 19 of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 1878.0 feet to a point for the beginning point
and Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 946.25 feet to a point for the Northwest
corner of the tract herein described;

THENCE, South 84 degrees 55 minutes East 1836.6 feet to an iron pipe
in the Eastern Boundary Line of said Survey 38 for the Northeast
corner of the tract herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a fence
South 4 degrees 30 minutes West 946.25 feet to an iron pipe for the
Southeast corner of the tract herein described;

THENCE, North 84 degrees 55 minutes West 1846.2 feet to place of
beginning, containing by the above metes and bounds, 39.35 acres of
land (net) exclusive of Paredes Line Road right-of-way.

TRACT 2.  BEGINNING at a point set in the Western Boundary Line of the
Paredes Tract, said boundary line being also the Western Boundary Line
of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu
Santo Grant, Cameron County, Texas, said point being at a distance of
18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of
Share 19 of the Espiritu Santo Grant; said point also being the
Northwest corner of the "Las Lagunas Subdivision", as shown by
recorded map, of record in the Map Records of Cameron County, Texas,
and the Southwest corner of the Antonia T. Cantu Estate, a tract of
land containing 200.00 acres out of Sur. 38 of Share 19 of the
Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 2824.25 feet to a point for the beginning
point and Southwest corner of the tract herein described;

THENCE with said Western Boundary Line of Paredes Tract North 5
degrees 05 minutes East 951.2 feet to a point for the Northwest corner
of tract herein described;

THENCE, South 84 degrees 55 minutes East 1826.9 feet to an iron pipe
in the Eastern Boundary Line of Sur. 38 and along a fence South 4
degrees 30 minutes West 951.2 feet to an iron pipe for the Southeast
corner of the tract herein described;

THENCE, North 84 degrees 55 minutes West 1836.6 feet to place of
beginning, containing by the above metes and bounds, 39.35 acres of
land (net) exclusive of Paredes Line Road right-of-way.

TRACT 3.  BEGINNING at a point set in the Western Boundary Line of the

WARRANTY DEED  -    PAGE TWO

vol 2200 pac 94

Paredes Tract, said boundary line being also the Western Boundary Line of Share 19 and the Eastern Boundary Line of Share 22 of the Espiritu Santo Grant, Cameron County, Texas, said point being at a distance of 18,427.0 feet, more or less, from the Northwest corner of Sur. 38 of Share 19 of the Espiritu Santo Grant; said point also being the Northwest corner of the "Las Lagunas Subdivision", as shown by the recorded map, of record in the Map Records of Cameron County, Texas, and the Southwest corner of the Antonia T. Cantu Estate, a tract of land containing 200.0 acres out of Sur. 38 of Share 19 of the Espiritu Santo Grant;

THENCE, with said Western Boundary Line of Paredes Tract North 5 degrees 05 minutes East 3775.45 feet to a point for the beginning point and Southwest corner of the tract herein described;

THENCE, with said Western Boundary Line of Paredes Tract North 5 degrees 05 minutes East 956.25 feet to a point for the Northwest corner of the Antonia T. Cantu Estate and also the Northwest corner of the tract herein described;

THENCE, with and along a fence being the Northern Boundary line of the Antonia T. Cantu Estate South 84 degrees 55 minutes East 1817.2 feet to an iron pipe in the Eastern Boundary line of said Sur. 38 for the Northeast corner of the Antonia T. Cantu Estate and also the northeast corner of the tract herein described;

THENCE, with said Eastern Boundary Line of Sur. 38 and along a fence South 4 degrees 30 minutes West 956.25 feet to an iron pipe for the southeast corner of the tract hereind escribed;

THENCE, North 84 degrees 55 minutes West 1826.9 feet to place of beginning, containing the above metes and bounds, 39.35 acres of land (net) exclusive of Paredes Line Road right-of-way.

The land herein described being part of the land heretofore partitioned by agreement dated September 25, 1940, recorded in Vol. 304, pages 72-82, Deed Records of Cameron County, Texas.

PARCEL THREE:

Fifteen (15) acres out of Tract 22 in Share 19 of the Espiritu Santo Grant, in Cameron County, Texas, described as follows:

BEGINNING at a point in S. boundary of a certain 109.4 acre tract described by Deed to W. K. Mendenhall recorded in Vol. Q, Page 141, Deed Records, Cameron County, Texas, said tract being out of and forming a part of Sur. 22 of Share 19, Espiritu Santo Grant, Cameron County, Texas, said point of beginning being the SE corner of a certain 40 acre tract deeded to Joe Ballard by the said W. K. Mendenhall for the SW corner of the tract herein described;

THENCE with S. Boundary of the above mentioned 109.4 acre tract S. 85 deg. E. 1830 ft. to point in W. line of Old Pt. Isabel Road for the SE corner of the tract herein described;

THENCE with said West Line of Old Pt. Isabel Road, N. 24 deg. 52' E. 399.8 feet to point for the NE corner of the tract herein described;

THENCE, N. 85 deg. W. 1645.5 feet to point in E. boundary of the previously mentioned Ballard Tract for the NW corner of the tract herein described;

THENCE, with said last above mentioned East boundary S. 45 deg. 25' W. 493.7 feet to place of beginning and being the same property conveyed to N.F. Willms by Deed from the Estate of Ben E. Miller, recorded in Vol. 521, Pages 554-555, Deed Records, Cameron County, Texas.

PARCEL FOUR:

Forty (40) acres out of Tract 38, PAREDES TRACT, Share 19, Espiritu Santo Grant, in Cameron County, Texas, more particularly described as follows:

WARRANTY DEED  -    PAGE THREE

VOL.2200 PAGE 95

BEGINNING at the Northwest corner of Cantu Estate 200.00 acre tract
out of Survey 38 of Share 19, Espiritu Santo Grant, said corner being
in the West line of the said Survey 38 and the West line of Share 19
for the Southwest corner of the tract herein described;

THENCE, with the North line of said Cantu lands, South 84 deg. 58 min.
East 1817.2 feet to the Northeast corner thereof in the East line of
said Survey 38 for the Southeast corner of the tract herein described;

THENCE, with the line last mentioned, North 4 deg. 27 min. East 961.4
feet to a point for the Northeast corner of the tract herein
described;

THENCE, crossing said Survey 38, North 84 deg. 58 min. West 1807.4
feet to a point in the West line thereof for the Northwest corner of
the tract herein described;

THENCE, with the line last mentioned, South 5 deg. .02 min. West 961.4
feet to the place of beginning, containing 40.0 acres, being a part of
a 88.99 acre tract conveyed by Enrique F. Valentin by Deed dated July
1, 1941.

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Any and all easements, conditions, restrictions, and oil, gas,
mineral, and/or royalty interests, if any, relating to the hereinabove
described property, to the extent, and only to the extent, that the
same remain in effect, shown of record in the office of the County
Clerk of Cameron County, Texas; and any and all easements apparent
upon the ground.

    Grantor, for the consideration and subject to the reservations
from and exceptions to conveyance and warranty, grants, sells and
conveys to Grantee the property, together with all and singular the
rights and appurtenances thereto in any wise belonging, to have and
hold it to Grantee, Grantee's heirs, executors, administrators,
successors, or assigns forever.  Grantor binds Grantor and Grantor's
administrators, and successors to warrant and forever defend all and
singular the property to Grantee and Grantee's heirs, executors,
administrators, successors, and assigns against every person
whomsoever lawfully claiming or to claim the same or any part thereof,
by, through, or under it, but not otherwise, except as to the
reservations from and exceptions to conveyance and warranty.

    When the context requires, singular nouns and pronouns include
the plural.

                         NORWILL, INCORPORATED, a
                         Texas corporation

                    BY: _____
                        Norman F. Willms

THE STATE OF TEXAS  }
                    }
COUNTY OF CAMERON   }

    Acknowledged before me this  9th day of October, 1992 by Norman
F. Willms, President of Norwill, Incorporated, a Texas corporation, on
behalf of said corporation.

                        _____
                        NOTARY PUBLIC, STATE OF TEXAS
                        Edith G. Martinez, My Comm. Exp: 3/23/93

WARRANTY DEED -    PAGE FOUR

VOL 2200 PAGE 95

FILED FOR RECORD

AT

NOV 16 9 45 AM '92

371223

STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly RECORDED in the Volume and page of the named RECORDS of Cameron County, Texas as stamped hereon by me

County Clerk
Cameron County, Texas

192.634 PC 90

8h 19 TR 3B ESG

69406    CCTC   DW

39432                        FM 5178 PAGE 121

**$17,266,022.00**
(Principal amount
secured hereby)                    OFFICIAL RECORDS

DEED OF TRUST, ASSIGNMENT AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT AND SECURITY AGREEMENT (this "Deed of Trust") is made effective as of the 21st day of May, 1998, by TITAN TIRE CORPORATION OF TEXAS, a Texas corporation and TITAN INTERNATIONAL, INC. an Illinois corporation, (hereinafter collectively the "Grantor") to Samuel Kinslow (collectively Trustee" or "Trustees") for the benefit of GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND AS AGENT FOR CERTAIN OTHER PARTICIPANTS ("GE Capital").

R E C I T A L S

WHEREAS, the Grantor and General Electric Capital Corporation, for itself and as Agent for Certain Participants (the "Agent") have entered into that certain Master Lease Agreement dated as of May 21, 1998 (such Master Lease Agreement, as the same may be amended or supplemented from time to time to the extent permitted by the terms thereof, being herein called the "Master Lease"), whereby, subject to the terms and conditions set forth therein, GE Capital has agreed to lease to the Grantor, and the Grantor has agreed to lease from GE Capital certain Lease Assets, as more particularly described therein. Capitalized terms used herein without definition shall have the meanings ascribed to them in the Master Lease.

WHEREAS, pursuant to such Master Lease, the Agent has leased to the Grantor certain real property located in Cameron County, Texas as more particularly described in Exhibit A attached hereto and made a part hereof (the "Land"), for the term specified therein. A Memorandum of the Master Lease has been recorded or will be recorded among the Land Records of Cameron County, Texas immediately prior to the recordation of this Deed of Trust.

WHEREAS, as security for the payment of Grantor's obligation under the Master Lease and the performance of all other obligations of the Grantor under the Master Lease or any documents related thereto (collectively, the "Obligations"), GE Capital has required that the Grantor execute and deliver this Deed of Trust assigning and securing to GE Capital, as agent, (among other things) all of Grantor's interest in the Property now owed or hereafter acquired, including without limitation, Grantor's leasehold interest in the Master Lease and the Property.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and adequacy of which are hereby conclusively acknowledged by the Grantor, in order to secure the full and punctual payment and performance of the Obligations, the Grantor does hereby grant, convey, bargain, sell, assign, pledge, transfer and set over to GE Capital and its successors and assigns, and does hereby grant to GE Capital, and its successors and assigns, a lien on and a security interest in, all and each of the properties, rights, interests and privileges described in the following paragraphs:

ALL of the Grantor's right, title and interest in and to Property.

TOGETHER with all right, title and interest of the Grantor including any after-acquired right, title or reversion, in and to the beds of the ways, streets, avenues and alleys adjoining the Property.

TOGETHER with all right, title and interest of the Grantor in and to all and singular the rights, alleys, ways, tenements, hereditaments, easements, appurtenances, passages, waters, water rights, water courses, riparian rights, liberties, advantages, accessions and privileges now or hereafter appertaining to the Property or any part thereof, including, but not limited to, any homestead or other claim at law or in equity, the reversion or reversions, remainder or remainders thereof, and also all the estate, property, claim, right, title or interest now owned and hereafter acquired by the Grantor in or to the Property or any part thereof.

DATE 5/18/98 11:46AM  4:20 PM

VOL. 5178 PAGE 122

or any part thereof, including, but not limited to, any homestead or other claim at law or in equity, the reversion or reversions, remainder or remainders thereof, and also all the estate, property, claim, right, title or interest now owned and hereafter acquired by the Grantor in or to the Property or any part thereof.

TOGETHER with all right, title and interest of the Grantor in and to all improvements, structures and buildings now or hereafter erected or placed on the Property and all replacements thereof, (collectively, the "Improvements") and all cash and non-cash proceeds thereto (all of the foregoing being hereinafter sometimes referred to collectively as the "Lease Assets Collateral"). All of the Lease Assets Collateral, so far as permitted by law, shall be deemed to be Lease Assets and part of the Property and of the Improvements, and as to any part of the Lease Assets Collateral deemed by law to be personalty, this Deed of Trust shall also constitute a security agreement under the Uniform Commercial Code currently in effect in the State of Texas (the "State").

Unless specifically designated otherwise, all of the Grantor's right, title and interest in and to the Property, the Improvements, the Lease Assets Collateral and all other items, rights, interests, privileges and property described in the preceding paragraphs hereof, together with all Additions thereto, shall be herein referred to collectively as the "Property".

TOGETHER with any and all judgments, awards of damages including but not limited to severance and consequential damages), payments, proceeds, settlements or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, in connection with, or in lieu of any taking of title, or use, or of any other property interest of the Property or any part thereof under the exercise of the power of eminent domain, either temporarily or permanently by any governmental authority or by any person acting under governmental authority to the extent of all of the Obligations which may be secured by this Deed of Trust at the date of receipt of any such judgments, awards on other compensation by GE Capital, and of the reasonable counsel fees, costs and disbursements, if any, incurred by GE Capital in connection with the collection of such judgments, awards on other compensation.

TOGETHER with all unearned premiums, accrued, accruing or to accrue under insurance policies with respect to the Property, now or hereafter obtained by the Grantor, and the Grantor's interest in and to all proceeds of the conversion, voluntary or involuntary, and the interest payable thereon, of the Property or any part thereof, into cash or liquidated claims, including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on the Property, and the right to collect and receive the same.

TOGETHER with all of the rents, royalties, issues, profits, revenues, income and other benefits of the Property, or arising from the use or enjoyment of all or any portion thereof (provided, however, that the foregoing shall not be deemed to grant a lien upon profits of the business operated on the Property), or from any lease or agreement pertaining thereto, and all right, title and interest of the Grantor in and to, and remedies under, any and all leases and subleases of the Property, or any part thereof, both now in existence or hereafter entered into and all contract rights, accounts receivable and general intangibles growing out of or in connection with such leases and subleases, together with all proceeds thereof; and including, without limitation, all cash or security deposited thereunder to secure performance by the lessees of their obligations thereunder whether such cash or security is to be held until the expiration of the terms of such leases or are to be applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; reserving in the Grantor a license terminable upon the occurrence of a Default (hereinafter defined) hereunder to collect and receive the same.

TO HAVE AND TO HOLD the Property and all other interests described above unto GE Capital and its successors and assigns, for and during all of the rest, residue and remainder of the term of years yet to come and unexpired under the Master Lease.

PROVIDED, HOWEVER, that until the occurrence of a Default hereunder, and subject to any provisions hereof to the contrary, the Grantor shall have the right to remain in quiet and peaceful possession of the

NW 2/13/31 - 1 2 25 99 12 32 PM

2

VOL 5178 PAGE 123

Property, and to collect, receive and retain the rents, revenues, profits, proceeds, income and royalties therefrom.

PROVIDED FURTHER, that upon the full payment and performance of all of the Obligations at the time and in the manner stated in the Master Lease, this Deed of Trust, at any time before the sale hereinafter provided for, the lien granted hereby shall cease, determine and become void, and upon proof given to the satisfaction of GE Capital that all of the Obligations have been so paid and performed, this Deed of Trust shall be deemed null and void, and GE Capital shall release and discharge the lien and security interest of this Deed of Trust upon payment to GE Capital of all costs and expenses related to the release and reconveyance of the Property or any partial release and reconveyance thereof.

PROVIDED FURTHER, that upon the occurrence of a substitution under the Master Lease pursuant to which GE Capital is required to release the Property, GE Capital shall release and discharge the lien and security interest of this Deed of Trust upon payment of all costs and expenses related to the release and reconveyance of the Property or any partial release or reconveyance thereof.

AND THIS DEED OF TRUST FURTHER WITNESSETH, that the Grantor hereby represents, warrants, covenants and agrees as follows, and stipulates that a breach of any of the following representations, warranties, covenants and agreements shall be deemed a breach of a material condition of this Deed of Trust:

SECTION 1. REPRESENTATIONS AND WARRANTIES. The Grantor represents and warrants to GE Capital that as of the date hereof, the Grantor is the owner of the entire lessees' interest in the Master Lease and, except for this Deed of Trust, the Grantor has not assigned the lessees' interest in the Master Lease or any part thereof to any other party. Upon the execution and recordation of this Deed of Trust, GE Capital and its assigns shall have a first lien on the lessees' interest in the Master Lease and the Grantor's interest in the Property.

SECTION 2. GENERAL COVENANTS AND AGREEMENTS. The Grantor covenants and agrees with GE Capital as follows:

(a)    Upon and subject to the terms of the Master Lease, the Grantor will pay, when due and payable, all Rent payments and all other sums and charges due and to become due under the Master Lease.

(b)    Upon and subject to the terms of the Master Lease, the Grantor will perform and observe all of the terms, covenants and conditions required to be performed and observed by the Grantor as Lessees under the Master Lease, and will do all things necessary to preserve and to keep unimpaired the rights of GE Capital under the Master Lease.

(c)    As of the date hereof, the Master Lease is the only lease covering the Property and the Grantor will not, without the prior written consent of GE Capital, enter into any other leases or any subleases (except Subleases, as defined in and permitted by the Master Lease) of such Property.

(d)    Except for this Deed of Trust, (or as expressly permitted pursuant to the Master Lease) the Grantor will not, without the prior written consent of GE Capital, assign, transfer or encumber the lessees' interest in the Master Lease or permit the assignment, transfer or encumbrance of the lessees' interest in the Master Lease.

(e)    If the Grantor acquires the fee title to the Property during the Term of the Master Lease, whether by purchase or otherwise, this Deed of Trust shall attach to and cover and be a lien upon the fee title so acquired and such fee title shall, subject to applicable law, without further assignment, mortgage or conveyance, become and be subject to the lien of and covered by this Deed of Trust. On written request by GE Capital, Grantor shall cause to be executed and recorded all such other and further assurances or

3

VOL 5178 PAGE 124

instruments in writing as may, pursuant to applicable law, be required to carry out the intent and meaning of this subparagraph.

**SECTION 3. DEFAULT.** The occurrence of any one or more of the following events shall constitute a default under the provisions of this Deed of Trust, and the term "Default" shall mean, whenever it is used in this Deed of Trust, any one or more of the following events:

(a) The failure of Grantor to perform, observe or comply with any of the provisions of this Deed of Trust; or

(b) The occurrence of a default under the Master Lease, which is not cured within any applicable notice and cure periods.

**SECTION 4. RIGHTS AND REMEDIES.**

(a) Upon the occurrence of any Default, GE Capital, without in any way waiving such Default, in addition to any other rights and remedies that it may have under applicable law and subject to the terms of the Master Lease, (1) declare the Obligations to be immediately due and payable, (2) sell, assign or transfer the entire lessees' interest in the Master Lease to any third party or (3) take possession of the Property by foreclosure or otherwise and have, hold, manage, lease and operate or sell the same on such terms and for such period of time as GE Capital may deem proper and in connection therewith, subject to applicable law, the Grantor hereby (i) assents to the passage of the decree for the sale of the Property by the equity court having jurisdiction, and (ii) authorizes and empowers GE Capital and its successors and assigns to take possession of and sell (or in case of the default of any purchaser to resell) the Property, or any part thereof, all in accordance with the provisions of law and rules of court relating to mortgages or deeds of trust. In the case of any sale under this Deed of Trust, by virtue of judicial proceedings or otherwise, the Property may be sold as an entirety or in parcels, by one sale or by several sales, as may be deemed by GE Capital to be appropriate and without regard to any right of the Grantor or any other person to the marshalling of assets. Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as GE Capital shall deem appropriate and advantageous and as required by law. Upon the terms of such sale being complied with, GE Capital shall convey to, and at the cost of, the purchaser or purchasers the interest of the Grantor in the Property so sold, free and discharged of and from all estate, title or interest of the Grantor, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Property or from the sale or assignment of GE Capital's interest in the Master Lease shall be applied to the payment of the Obligations in accordance with the terms of the Master Lease. The Grantor hereby agrees to pay GE Capital on demand all of the costs incurred by GE Capital in taking, managing, operating and insuring the Property and/or assigning or selling GE Capital's interest in the Master Lease following a Default and the exercise by GE Capital of the remedies provided herein.

(b) Unless GE Capital exercises its option to take over the Property as provided above following a Default, GE Capital shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Master Lease, or under or by reason of this Deed of Trust, and the Grantor shall and does hereby agree to indemnify GE Capital for and to hold GE Capital harmless of and from any and all liability, loss or damage which it might incur under the Master Lease or under or by reason of this Deed of Trust, and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Master Lease, except for liability, loss, damage, claims or demands arising from the gross negligence or willful misconduct of GE Capital. Should GE Capital incur any such liability, loss or damage under the Master Lease or under or by reason of this Deed of Trust or in the defense of any such claims or demand, the amount thereof including costs, expenses and reasonable attorneys' fees shall be secured hereby, and the Grantor shall reimburse GE Capital there for

4

VOL 5178 PAGE 125

immediately upon demand, and upon the failure of the Grantor to do so, GE Capital may declare all sums secured hereby immediately due and payable. Except to the extent GE Capital shall exercise its option to take over the Property as provided above, this Deed of Trust shall not operate to place responsibility for the control, care, management or repair of the Property upon GE Capital, nor for the carrying out of any of the terms and conditions of the Master Lease, or for any waste committed on or with respect to the Property by the Grantor or any other parties, or for any dangerous or defective condition of the Property, or to the extent the same is attributable to any period prior to the exercise of such rights, for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

### SECTION 5. MISCELLANEOUS.

(a)    GE Capital may take or release other security, may release any party primarily or secondarily liable for any of the Obligations, may grant extensions, renewals or indulgences with respect to the Obligations and may apply any other security therefor held by it, to the satisfaction of the Obligations without prejudice to any of its rights hereunder.

(b)    Nothing herein contained and no act done or omitted by GE Capital pursuant to the powers and rights granted it herein shall be deemed to be a waiver by GE Capital of its rights and remedies hereunder or under the Master Lease, but this Deed of Trust is made and accepted without prejudice to any of the rights and remedies possessed by GE Capital. The right of GE Capital to collect the Obligations and to enforce any other security therefor may be exercised by GE Capital either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

(c)    The Grantor hereby covenants and agrees that all the provisions herein contained shall be applied to and inure to the benefit of GE Capital and its successors and assigns.

(d)    The Grantor hereby waives acceptance of this Deed of Trust by GE Capital and its successors and assigns.

(e)    This Deed of Trust, having been executed, sealed and delivered in the State, shall be interpreted and construed in accordance with and governed by the laws of the State.

(f)    If fulfillment of any provisions hereof or any transaction related hereto, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if any clause or provision herein contained operates or would prospectively operate to invalidate this Deed of Trust in whole or in part, then such clause or provision only shall be void, as though not herein contained, and the remainder of this Deed of Trust shall remain operative and in full force and effect.

(g)    Subject to the terms of the Master Lease, GE Capital may assign all of its rights under this Deed of Trust to a third party at any time either before or after a Default has occurred. Wherever in this Deed of Trust GE Capital is referred to, such reference shall be deemed to include the successors and assigns of GE Capital, and all covenants, promises and agreements by the Grantor contained herein shall inure to the benefit of the successors and assigns of GE Capital.

(h)    This Deed of Trust may be amended only by an instrument in writing executed by the Grantor and GE Capital.

(i)    All notices hereunder shall be sufficiently given and shall be deemed given when sent by, confirmed overnight courier service, or three (3) business days after being mailed certified mail, return receipt requested, postage prepaid, addressed to the Grantor or GE Capital at the appropriate addresses designated

5

VOL 5178 PAGE 126

in the Master Lease.  The Grantor or GE Capital may, by notice given hereunder designate any further or different addresses to which subsequent notices shall be sent.

(j) GE may from time to time remove the Trustee hereunder and appoint a substitute trustee by recording a Deed of Appointment and Removal among the land records of Cameron County, Texas.

6

VOL 5178 PAGE 127

IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust to be executed as of the day and
year first written above.

WITNESS:                                           TITAN INTERNATIONAL, INC.

_Alan Delling_                                     By _____
                                                   Name: KENT W. HACKAMACK
                                                   Title: VP / TREASURER

WITNESS:                                           TITAN TIRE CORPORATION OF TEXAS

_Judy L. Crann_                                    By _____
                                                   Name: KENT W. HACKAMACK
                                                   Title: _____

STATE OF _____, CITY/COUNTY OF _____, TO WIT:

     I HEREBY CERTIFY, that on this ___ day of _____, 1998, before me, the undersigned Notary
Public of said State, personally appeared _____, who acknowledged himself/herself to be a
_____ of Titan International, Inc., an Illinois corporation, known to me for satisfactorily proven) to be
the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the
same for the purposes therein contained as the duly authorized _____ of said corporation by himself/
herself as _____.

     WITNESS my hand and Notarial Seal.


                                                   _____
                                                          Notary Public

My commission expires: _____

STATE OF _____, CITY/COUNTY OF _____, TO WIT:

     I HEREBY CERTIFY, that on this ___ day of _____, 1998, before me, the undersigned Notary
Public of said State, personally appeared _____, who acknowledged himself/herself to be a
_____ of Titan Tire Corporation of Texas, a Texas corporation, known to me for satisfactorily proven)
to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed
the same for the purposes therein contained as the duly authorized _____ of said corporation by
himself/herself as _____.

     WITNESS my hand and Notarial Seal.


                                                   _____
                                                          Notary Public

My commission expires: _____

_____ 7

VOL. 5178 PAGE 128

IN WITNESS WHEREOF, the Grantor has caused this Deed of Trust to be executed as of the day and year first written above.

WITNESS:                                    TITAN INTERNATIONAL, INC.

_Alvin Kelley_                              By _____
                                            Name: Kent W. Hackamack
                                            Title: Vice President of Finance

WITNESS:                                    TITAN TIRE CORPORATION OF TEXAS

_Judy L. Cramer_                            By _____
                                            Name: Kent W. Hackamack
                                            Title: Treasurer

STATE OF ILLINOIS/COUNTY OF ADAMS , TO WIT:

I HEREBY CERTIFY, that on this 28th day of September, 1998, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackamack, who acknowledged himself/herself to be a VP Finance of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/ herself as VP Finance

WITNESS my hand and Notarial Seal.

```
"OFFICIAL SEAL"
CHERYL A LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/11/2000
```
                                            _Cheryl Luthin_
                                            Notary Public

My commission expires: 9/11/2000

STATE OF ILLINOIS , CITY/COUNTY OF ADAMS , TO WIT:

I HEREBY CERTIFY, that on this 28th day of September, 1998, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackamack, who acknowledged himself/herself to be a Treasurer of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/herself as Treasurer

WITNESS my hand and Notarial Seal.

                                            _Cheryl Luthin_
                                            Notary Public

My commission expires: 9/11/2000

```
"OFFICIAL SEAL"
CHERYL A. LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/11/2000
```

7

VOL 5178 PAGE 129

EXHIBIT A

Description of Premises