VOL 5178 PAGE 130

Exhibit A  Description of Land

JF No. or File No.: 63406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of Parcel Two", and "Parcel Four" as described in a deed from Norvill, Incorporated to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed is recorded in Volume 1200, Page 92 of the Official Deed Records of Cameron County, Texas. Said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 38, said point is North 84 degrees 13 minutes West 30.50 feet from the Northwest corner of "Las Lagunas Subdivision", a subdivision of the Southern 168.52 acres of said Survey 38, Subdivision "D" in Share 19. Said Las Lagunas Subdivision as recorded in Volume 7, Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 35 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 936.50 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

1) Thence, North 5 degrees 35 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2,818.95 feet a "PK" nail set for the Northwest corner of Tract 2, Parce. Two, at a distance of 3,738.20 feet to the Northwest corner of Tract 3, Parce. Two, a concrete nail found North 74 degrees 12 minutes 24 seconds West, a distance ... 50 feet this said corner. At a total distance of ... feet, "PK" nail set for the Northwest corner of Parce. Four and the Northwest corner of this 192.634 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 30.00 feet to the Northwest corner of a ... acre tract conveyed by Henry A. Willms, et al to the State of Texas by a deed recorded in Volume 1483, Page 280 of the Official Records of Cameron County, Texas;

3) Thence, along the West line of said ... acre tract, South 5 degrees 35 minutes West, a distance of ... feet to the Southern most corner of said ... acre tract, recorded North 4 degrees 37 minutes 19 seconds East, ...,749.19 feet, an iron pin found North 11 degrees 45 minutes 29 seconds West, ... feet from said corner;

4) Thence, along the East line of said ... acre tract, North 11 degrees 24 minutes 22 seconds East, a distance of 118.12 feet recorded South 10 degrees 4 minutes 41 seconds West, 118.27 feet an iron pin set for a corner;



—1—

VOL 5178 PAGE 131

Continuation of Legal Description

ZF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 16 degrees 58 minutes 24 seconds East, a distance of 382.29 feet to an iron pin found for a corner, (recorded South 16 degrees 36 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 30 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 23 seconds East, a distance of 542.23 feet for a corner, recorded South 17 degrees 55 minutes 44 seconds West, an iron pin found South .3 degrees 02 minutes 24 seconds West, 2.97 feet from said corner;

8' Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 628.23 feet for a corner, recorded South 6 degrees 25 minutes 41 seconds West, an iron pin found North 74 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 36 degrees 55 minutes East, at a distance of 1,234.28 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al. to Brownsville Navigation District by a deed recorded in Volume 1483, Page 222 of the Official Records of Cameron County, Texas. At a distance of 1,213.33 feet the Northeast corner of said 1.578 acre tract, a total distance of 1,461.53 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 290.634 acre tract, an iron pin found South 37 degrees 46 minutes 21 seconds East, 2.47 feet from said corner;

(10) Thence, South 4 degrees 19 minutes West, at a distance of 101.09 feet the Northeast corner of said 6.678 acre tract an iron pin found North 88 degrees 8 minutes 18 seconds West, 1.27 feet from said corner, at a distance of 156.41 feet the Southeast corner of said 0.678 acre tract. An iron pin found South 74 degrees 4" minutes 25 seconds East, 2.29 feet from said corner, a total distance of 941.36 feet (recorded 941.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

11. Thence, South 4 degrees 19 minutes West, at a distance of 956.13 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 1,029.99 feet the centerline of a 7.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 204, Page 474 of the Official Records of Cameron County, Texas, at a distance of 1,797.99 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,053.49 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 2,795.49 feet to an iron pin set



-2-

VOL 5178 PAGE 132

### Continuation of Legal Description

DF No. or File No.: 49476

for the Southeast corner of said Parcel One and the Southeast corner of this 192.634 acre tract;

(12) Thence, North 84 degrees 55 minutes West, along the South line of said Parcel One, at a distance of 1.805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1.855.84 feet to the PLACE OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.878 acre tract 5.460 acres of said 192.634 acres is right-of-way of FM-1847;

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South Boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 5, 1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acre tract, being described more particularly described by metes and bounds as follows:

1)   Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees, 25 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

2    Thence, South 84 degrees 55 minutes East, a distance of 1.854.82 feet to an iron pin set in the East line of said 192.634 acre tract for a corner of this 4.259 acre tract;

3    Thence, South 4 degrees 30 minutes 30 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

4    Thence, North 84 degrees 55 minutes West, a distance of 1.855.84 feet to the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

AND FURTHER SAVE AND EXCEPT a 0.547 acre tract as set out in Special Warranty Deed dated December 11, 1997 executed by Titan Wheel International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 3841 Page 174, Official Records, Cameron County, Texas, said 0.547 acre tract being described by metes and bounds as follows:

Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees 25 minutes East, along the West line of said tract, along the original centerline of FM-1847, a distance of 100.00 feet to the PLACE OF BEGINNING for this 0.547 acre tract;

VOL 5178 PAGE 133

Continuation of Legal Description

GF No. or File No.: 49406

(1) Thence, North 5 degrees 05 minutes East, along the West line of said survey 38 and the original centerline of FM-1847, a distance of 4,656.60 feet a 'PK' nail found for the Northwest corner of this 7.347 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Williams, et al. to the State of Texas by a deed recorded in Volume 1483, Page 303, Official Records of Cameron County, Texas.

3) Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,799.37 feet to the Southern most corner of said 7.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet; an iron pin found North 11 degrees 25 minutes 19 seconds West, 1.90 feet from said corner.

4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 06 minutes 22 seconds East, a distance of 339.22 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, recorded South 14 degrees 26 minutes 30 seconds West;

4) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 17 minutes 28 seconds East, a distance of 77.71 feet to an iron pin found for a corner, recorded South 77 degrees 19 minutes 32 seconds West;

7. Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 11 seconds East, a distance of 542.11 feet a corner, recorded South 17 degrees 05 minutes 44 seconds West, an iron pin found South 14 degrees 07 minutes 15 seconds West, 2.9 feet from said corner;

4) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 625.28 feet for a corner in said 132.434 acre tract, recorded South 6 degrees 29 minutes 41 seconds West, an iron pin found North 74 degrees 17 minutes 43 seconds West, 3.66 feet from said corner;

9) Thence, along the North line of said 182.434 acre tract, South 84 degrees 55 minutes East, a distance of 22.00 feet an iron pin set for a corner of this 7.347 acres tract;

10) Thence, South 4 degrees 27 minutes 42 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.347 acres tract;



VOL 5178 PAGE 134

**Continuation of Legal Description**

GF No. or File No.: 49406

(11) Thence, South 19 degrees 62 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 57 minutes 39 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 04 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 2,425.13 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 55 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 128.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE: This company does not represent that the acreage and or square footage calculations are correct.

Return to:
Darlene Davis
Ober / Kaler
20 E. Baltimore St.
Baltimore, MD
21202-1643





VOL 5178 PAGE 135

FILED FOR RECORD
AT_____

H90 SEP 30 P 3: 19

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON, TEXAS
BY_____ DEPUTY

39432

192.634 Ac.   TR. 38, Sh. 19   ESG

DEC-30-1998  12:03      OBER.KALER.GRIMES.                412 547 8699   P.02/11

BOOK 5518 PAGE 298

14254
OFFICIAL RECORDS
AMENDMENT
TO DEED OF TRUST

This AMENDMENT TO DEED OF TRUST is made as of the 30th day of December, 1998, by TITAN TIRE CORPORATION OF TEXAS, a Texas corporation (and TITAN INTERNATIONAL, INC. an Illinois corporation, (hereinafter collectively the "Grantor") and GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND AS AGENT FOR CERTAIN OTHER PARTICIPANTS ("GE Capital".

RECITALS

A. The Grantor GE Capital have entered into that certain Master Lease Agreement dated as of May 21, 1998 (such Master Lease Agreement, as the same may be amended or supplemented from time to time to the extent permitted by the terms thereof, being herein called the "Master Lease"), whereby, subject to the terms and conditions set forth therein, GE Capital has agreed to lease to the Grantor, and the Grantor has agreed to lease from GE Capital certain Lease Assets, as more particularly described therein. Capitalized terms used herein without definition shall have the meanings ascribed to them in the Master Lease.

B. Pursuant to such Master Lease, GE Capital has leased to the Grantor certain real property located in Cameron County, Texas as more particularly described in Exhibit A attached hereto and made a part hereof (the "Land"), for the term specified therein. A Memorandum of the Master Lease has been recorded among the Land Records of Cameron County, Texas at Volume 777, Page 107.

C. As security for the payment of Grantor's obligation under the Master Lease and the performance of all other obligations of the Grantor under the Master Lease or any documents related thereto (collectively, the "Obligations"), the Grantor has executed and delivered a Deed of Trust, Assignment, and Security Agreement dated as of May 21, 1998 (as the same may from time to time be amended, restated, supplemented, or otherwise modified, the "Deed of Trust") assigning (among other things) all of Grantor's interest in the Property now owed or hereafter acquired, including without limitation, Grantor's leasehold interest in the Master Lease and the Property.

The parties desire hereby to amend certain provisions of the Deed of Trust, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, the Grantor and GE Capital agree as follows:

AGREEMENTS

1.    Recitals. The Grantor and GE Capital acknowledge that the above Recitals to this Amendment are true and correct, and agree that the same are incorporated by reference into the body of this Amendment. Unless otherwise specifically defined herein, all terms defined by the provisions

DEC-30-1998 12:03    OBER·KALER·GRIMES·    410 547 0699    P.03/11

BOOK 5518 PAGE 299

of the Deed of Trust shall have the same meanings ascribed to such terms by the provisions of the
Deed of Trust when used herein.

2. Amendments to Deed of Trust.

(a) The first paragraph of the granting clause of the Deed of Trust is hereby deleted and
the following is hereby inserted in lieu thereof:

NOW, THEREFORE, in consideration of the premises and for other good and
valuable consideration, the receipt and sufficiency of which are hereby conclusively
acknowledged by the Grantor, in order to secure the full and punctual payment and
performance of the Obligations, the Grantor does hereby grant, convey, bargain, sell,
assign, pledge, transfer and set over to Trustee, his successors and substitutes for the
benefit of GE Capital and its successors and assigns, and does hereby grant to
Trustee, his successors and substitutes, for the benefit of GE Capital and its
successors and assigns, a lien on and a security interest in, all and each of the
properties, rights, interests and privileges described in the following paragraphs:

(b) Section 4(a) of the Deed of Trust is hereby deleted, and the following is hereby inserted
in lieu thereof:

(a) "Upon the occurrence of any Default, GE Capital, without in any way waiving
such Default, in addition to any other rights and remedies that it may have under
applicable law and subject to the terms of the Master Lease, (1) declare the
Obligations to be immediately due and payable, (2) give such notices as may be
required by applicable laws, the Master Lease, and this Deed of Trust and thereafter
sell, assign or transfer pursuant to a non-judicial foreclosure sale or sales conducted
in accordance with applicable laws the entire lessees' interest in the Master Lease to
any third party or (3) take possession of the Property by foreclosure or otherwise and
have, hold, manage, lease and operate or sell the same on such terms and for such
period of time as GE Capital may deem proper, and in connection therewith, subject
to applicable law, the Grantor hereby (i) assents to the passage of the decree for the
sale of the Property by the equity court having jurisdiction, and (ii) authorizes and
empowers GE Capital and its successors and assigns to take possession of and sell,
by non-judicial sale or otherwise, (or in case of the default of any purchaser to resell)
the Property, or any part thereof, all in accordance with the applicable laws and rules
of court relating to enforcement of mortgages or deeds of trust by judicial
proceedings or otherwise, as GE Capital may elect. In the case of any sale under this
Deed of Trust, by virtue of judicial proceedings or otherwise, the Property may be
sold at an entirety or in parcels, by one sale or by several sales, as may be deemed
by GE Capital to be appropriate and without regard to any right of the Grantor or any
other person to the marshalling of assets. Any sale hereunder may be made at public
auction, at such time or times, at such place or places, and upon such terms and
conditions and after such previous public notice as GE Capital shall deem appropriate
and advantageous and as required by law. Upon the terms of such sale being
complied with, GE Capital shall convey to, and at the cost of, the purchaser or

2

DEC-30-1998  12:04    DEER.KALER.DRIPES.    418 547-9693    P.04/11

BOOK 5518 PAGE 300

purchasers the interest of the Grantor in the Property so sold, free and discharged of and from all estate, title or interest of the Grantor, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Property or from the sale or assignment of GE Capital's interest in the Master Lease shall be applied to the payment of the Obligations in accordance with the terms of the Master Lease. The Grantor hereby agrees to pay GE Capital on demand all of the costs incurred by GE Capital in making, managing, operating and insuring the Property and/or assigning or selling GE Capital's interest in the Master Lease following a Default and the exercise by GE Capital of the remedies provided herein.

(e) Section 5(e) of the Deed of Trust is hereby deleted, and the following is hereby inserted in lieu thereof:

Except as provided to the contrary below, this Deed of Trust shall be governed by and construed in accordance with the internal laws if the State of New York applicable to contracts made and to be performed in such state (without regard to principles of conflicts of law applicable under New York law) and applicable laws of the United States of America; provided, however, that with respect to the provisions hereof which relate to title or the creation, perfection, priority or enforcement of liens on the Property or as otherwise required by the laws of Texas, being the place in which the Property is located, this Deed of Trust shall be governed by the laws of the State of Texas, and provided further, Grantor agrees that, to the extent not prohibited by New York law, Sections 1301 and 1371 of the Real Property Actions and Proceedings Law of the State of New York concerning actions on debt and for a deficiency judgment following a mortgage foreclosure are not applicable to this Deed of Trust and compliance by GE Capital is waived, and to the extent required by applicable law, Sections 51.003 and 51.004 of the Texas Property Code shall govern actions brought for a deficiency judgment following foreclosure; it being understood that, to the fullest extent permitted by the laws of the State of Texas, the laws of the State of New York shall govern the validity and enforceability of this Deed of Trust in all instances where Texas law is not specifically made the law applicable to this Deed of Trust.

3. Amendment and Modification Only. This Amendment is only an agreement confirming certain provisions of the Deed of Trust. All of the provisions of the Deed of Trust are incorporated herein by reference and shall remain and continue in full force and effect except as specifically amended and modified by this Amendment. The Grantor hereby ratifies and confirms all of the Obligations under the provisions of the Deed of Trust as amended by this Amendment. GE Capital and the Grantor agree it is their intention that nothing herein shall be construed to extinguish, release or discharge or constitute, create or effect a novation of, or an agreement to extinguish, any of the obligations, indebtedness and liabilities of the Grantor or any other party under the provisions of the Deed of Trust as amended by this Amendment, or any grant, bargain, sale,

3

DEC-30-1998  12:04       OBER.KALER.GRIMES.              418 547 0699   P.05/11

BOOK 5518 PAGE 301

conveyance, assignment, transfer, security interest or lien made or granted by the Grantor to the Trustees for the benefit of GE Capital of, on or in all or any part of the Property.

4.     **Binding Effect.** This Amendment shall be binding upon and inure to the benefit of the GE Capital and the Grantor and their respective successors and assigns.

IN WITNESS WHEREOF, the Grantor and GE Capital have duly executed this Amendment, under seal, as of the day and year first written above.

WITNESS:                         TITAN INTERNATIONAL, INC.

_Cheri L. Hally_                 By _K. W. Hall_
                                 Name: _Ken M. Hackamack_
                                 Title: _Treasurer_

WITNESS:                         TITAN TIRE CORPORATION OF TEXAS

_Cheri L. Hally_                 By _K. W. Hall_
                                 Name: _Ken M. Hackamack_
                                 Title: _Treasurer_

WITNESS:                         GE CAPITAL CORPORATION, For Itself
                                 and as Agent for Certain Other Participants

_____                By _____
                                 Name: _Frederick S. Munsun_
                                 Title: _Risk Manager_

STATE OF Illinois CITY/COUNTY OF  Adams   , TO WIT:

I HEREBY CERTIFY, that on this 30th day of December , 1998, before me, the undersigned Notary Public of said State, personally appeared Kent M. Hackamack, who acknowledged himself/herself to be a officer of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein

BAL:243846.3                     4

DEC-30-1998  12:04    OBER.KALER.GRIMES.    410 547 0699    P.06/11

BOOK 5518 PAGE 302    100

contained as the duly authorized _officer_ of said corporation by himself/herself as _Treasurer_.

WITNESS my hand and Notarial Seal.

Cheryl
Notary Public

*OFFICIAL SEAL*
CHERYL A LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2000

My commission expires: 9/18/2000

STATE OF _Illinois_ CITY/COUNTY OF _Adams_ TO WIT:

I HEREBY CERTIFY, that on this _30th_ day of _December_, 1998, before me, the undersigned Notary Public of said State, personally appeared _Kent W. Hackmann_ who acknowledged himself/herself to be a _officer_ of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized _officer_ of said corporation by himself/herself as _Treasurer_.

WITNESS my hand and Notarial Seal.

Cheryl
Notary Public

*OFFICIAL SEAL*
CHERYL A LUTHIN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/18/2000

My commission expires: 9/18/2000

STATE OF _California_ CITY/COUNTY OF _San Francisco_ TO WIT:

I HEREBY CERTIFY, that on this _25th_ day of _March_, 1998, before me, the undersigned Notary Public of said State, personally appeared _Frederick_ who acknowledged himself/herself to be a _Risk Manager_ of GE Capital Corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized _Risk Manager_ of said corporation by himself/herself as _Risk Manager_.

WITNESS my hand and Notarial Seal.

PHILLIE A. CRONIN
COMM. #1195433
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Sept. 3, 2002

Phyllis A. Cronin
Notary Public

My commission expires: Sept. 3, 2002

EXHIBIT A

BOOK 5518 PAGE 303

2F No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One". Tracts 1, 2, and 3 of Parcel Two" and "Parcel Four" as described in a deed from Norvill, incorporated to Henry A. Willms, John. F. Willms, Gary A. Willms and Myra Foster. Said deed is recorded in Volume 2200; Page 92 of the (Official) Deed Records of Cameron County, Texas, said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 38, said point is North 84 degrees 55 minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision", a subdivision of the Southern 168.53 acres of said Survey 38. Subdivision "D" of Share 19. Said Las Lagunas Subdivision is recorded in.Volume 7. Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 936.50 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.50 feet a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1.887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2.838.95 feet a "PK" nail set for the Northwest corner of Tract 3, Parcel Two, at a distance of 3,795.00 feet to the Northwest corner of Tract 3, Parcel Two, a concrete nail found North 74 degrees 30 minutes 30 seconds West, a distance of 1.44 feet from said corner, at a total distance of 4.756.65 feet a "PK" nail set for the Northwest corner of Parcel Four and the Northwest corner of this 192.634 acre tract;

2. Thence, South 84 degrees 55 minutes East, a distance of 30.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al to the State of Texas by a deed recorded in Volume 3483, Page 203 of the Official Records of Cameron County, Texas;

3. Thence, along the West line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1.795.1" feet to the Southern most corner of said 7.372 acre tract, (recorded South 4 degrees 07 minutes 19 seconds East, 1.799.19 feet), an iron pin found North 15 degrees 05 minutes 19 seconds West, 2.75 feet from said corner;

4) Thence, Along the East line of said 7.372 acre tract, North 11 degrees 04 minutes 20 seconds East, a distance of 339.13 feet recorded South 15 degrees 04 minutes 41 seconds West, 338.37 feet, an iron pin set for a corner;



- 1-

BOOK 5518 PAGE 304    Continuation of Legal Description        ᵇᵒᵒᵏ 5518 ᴾᴬᴳᴱ 111

GF No. or File No.: 69406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet for a corner, (recorded South 17 degrees 08 minutes 44 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 1.37 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 8 degrees 27 minutes 33 seconds East, a distance of 628.25 feet for a corner, (recorded South 8 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 37 minutes 53 seconds West, 5.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 55 minutes East, at a distance of 1,354.18 feet the Northwest corner of a 0.678 Acre tract conveyed by Henry A. Willms, et al. to Brownsville Navigation District by a deed recorded in Volume 3483, Page 213 of the Official Records of Cameron County, Texas, at a distance of 1,313.13 feet the Northeast corner of said 1.678 acre tract, a total distance of 1,461.50 feet to the Northeast corner of said Parcel Four, and the Northeast corner of this 192.634 acre tract, an iron pin found South 67 degrees 26 minutes 11 seconds East, 1.27 feet from said corner;

(10) Thence, South 4 degrees 27 minutes West, at a distance of 131.19 feet the Northeast corner of said 0.678 acre tract an iron pin found North 89 degrees 18 minutes 14 seconds West, 1.27 feet from said corner, at a distance of 250.81 feet the southeast corner of said 0.678 acre tract, an iron pin found South 74 degrees 47 minutes 25 seconds East, 1.29 feet from said corner, a total distance of 961.46 feet (recorded 961.4 feet) to an iron pin set for the Southeast corner of said Parcel Four;

(11) Thence, South 4 degrees 30 minutes West, at a distance of 936.70 feet an iron pin set for the Southeast corner of said Tract 3 of Parcel Two, at a distance of 1,126.99 feet the centerline of a 75.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 204, Page 473 of the Official Records of Cameron County, Texas, at a distance of 1,307.15 feet an iron pin set for the Southeast corner of said Tract 2, Parcel Two, at a distance of 2,353.85 feet an iron pin set for the Southeast corner of Tract 1, Parcel Two, a total distance of 3,795.10 feet to an iron pin set



BOOK 5518 PAGE 30

Continuation of Legal Description

GF No. or File No.: 69406

for the Southeast corner of said Parcel One and the Southeast corner of this 193.634 acre tract;

(12) Thence, North 84 degrees 55 minutes West, along the South line of said Parcel One, at a distance of 1,805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1,855.84 feet to the PLACE OF BEGINNING;

Containing 193.634 acres, more or less, save and except said 0.678 acre tract (5.460 acres of said 193.634 acres is right-of-way of FM-1847);

AND SAVE AND EXCEPT a One Hundred foot (100') wide strip along the South boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 5, 1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acres tract, being described more particularly described by metes and bounds as follows:

(1) Beginning at a "PK" nail found for the Southwest corner of said 193.634 acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

(2) Thence, South 84 degrees 53 minutes East, a distance of 1,854.82 feet to an iron pin set in the East line of said 193.634 acre tract for a corner of this 4.259 acre tract;

(3) Thence, South 4 degrees 30 minutes 00 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 193.634 acre tract;

(4) Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to the PLACE OF BEGINNING;

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 7.847 acre tract as set out in Special Warranty Deed dated December 14, 1997, executed by Titan Wheel International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 4840, Page 174, Official Records, Cameron County, Texas, said 7.847 acre tract being described by metes and bounds as follows:

Commencing at a "PK" nail found for the Southwest corner of said 193.634 acre tract, thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 113.00 feet to the PLACE OF BEGINNING of this 7.847 acre tract;



-3-

BOOK 5518 PAGE 306          BOOK 5519 PAGE

Continuation of Legal Description

GF No. or File No.: 69405

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 4,684.60 feet a "PK" nail found for the Northwest corner of this 7.547 acre tract;

(2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

(3) Thence, along the East line of said 7.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,798.37 feet to the Southern most corner of said 7.372 acre tract. (recorded North 4 degrees 07 minutes 19 seconds East, 1,789.59 feet), an iron pin found North 18 degrees 35 minutes 39 seconds West, 5.90 feet from said corner.

(4) Thence, along the East line of said 7.372 acre tract, North 11 degrees 06 minutes 22 seconds East, a distance of 339.12 feet (recorded South 10 degrees 06 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

(5) Thence, continuing along the East line of said 7.372 acre tract, North 16 degrees 58 minutes 26 seconds East, a distance of 282.19 feet to an iron pin found for a corner. (recorded South 16 degrees 06 minutes 30 seconds West);

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner. recorded South -- degrees 59 minutes 32 seconds West);

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 02 minutes 15 seconds East, a distance of 542.25 feet a corner, recorded South 17 degrees 05 minutes 46 seconds West), an iron pin found South 18 degrees 02 minutes 15 seconds West, 2.97 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 625.25 feet for a corner in said 192.634 acre tract. recorded South 5 degrees 29 minutes 51 seconds West), an iron pin found North 74 degrees 57 minutes 53 seconds West, 2.56 feet from said corner;

(9) Thence, along the North line of said 192.634 acre tract, South 84 degrees 55 minutes East, a distance of 20.01 feet an iron pin set for a corner of this 7.547 acres tract;

(10) Thence, South 6 degrees 27 minutes 32 seconds West, a distance of 627.76 feet to an iron pin set for a corner of this 7.547 acres tract;

-4-

BOOK 5518 PAGE 307

Continuation of Legal Description

IF No. or File No.: 69406

(11) Thence, South 18 degrees 02 minutes 15 seconds West, a distance of 556.04 feet An iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 27 minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 26 seconds West, a distance of 269.02 feet to an iron pin set for a corner if this 7.547 acres tract;

(14) Thence, South 11 degrees 06 minutes 33 seconds West, a distance of 337.39 feet to an iron pin set for a corner if this 7.547 acres tract;

(15) Thence, South 5 degrees 02 minutes 00 seconds West, a distance of 1,125.19 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 15 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 15 minutes West, a distance of 130.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE: This company does not represent that the acreage and/or square footage calculations are correct.

-5-

BOOK 5518 PAGE 308

1425A

FILED FOR RECORD

AT_____

FEB APR - 7 A D 36

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY, TEXAS
BY_____ DEPUTY

STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the
date and at the time stamped hereon by me and was duly
RECORDED in the Volume and page of the named RECORDS
of Cameron County, Texas as stamped hereon by me

County Clerk
Cameron County, Texas

TR,38 sh.19 ESG

00016672



166985

Return TO:
LexisNexis Document Solution:
801 Adlai Stevenson Drive
Springfield, IL 62703
Phone: (217) 544-8900

FILED FOR RECORD
AT
2003 APR -2 P

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

UCC FINANCING STATEMENT AMENDMENT
166975 3/13/03

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Doc 00016672  Bk OR 8884  Vol  Pg 2x3"

192.634 AC %

8h 19 TR 38 ESG

69406    CCTC (w)

5178ng 107

39431

## OFFICIAL RECORDS

### MEMORANDUM OF MASTER LEASE

THIS MEMORANDUM OF MASTER LEASE ("Memorandum of Lease") is made effective as of the 21st day May, 1998, by and between GENERAL ELECTRIC CAPITAL CORPORATION, FOR ITSELF AND CERTAIN OTHER PARTICIPANTS ("Lessor") and TITAN TIRE CORPORATION OF TEXAS and TITAN INTERNATIONAL, INC. (collectively the "Lessees").

#### RECITALS

WHEREAS, Lessor and Lessees have executed that certain Master Lease Agreement ("Master Lease") dated as of May 21, 1998, covering certain property as more particularly described in Annex A attached hereto and incorporated herein by this reference and all improvements which may come to be located on the real property more fully described on Exhibit A attached hereto and incorporated herein by this reference ("Land") (the Land, all Lease Assets and the improvements are referred to herein as the "Parcels"); and

WHEREAS, Lessor and Lessees desire to record notice of the Master Lease in the real estate records of Cameron County, Texas:

NOW, THEREFORE, in consideration of the foregoing, Lessor and Lessees hereby declare as follows:

Demise. Lessor hereby leases the Parcels to Lessees and Lessees hereby lease the Parcels from Lessor, subject to the terms, covenants and conditions contained in the Master Lease.

Expiration Date. The term of the Master Lease ("Term") shall commence on May 21, 1998, and shall expire on September 30, 2002, with three (3) possible one-year renewal terms.

Restrictions on Encumbrances. Lessor is prohibited from recording against the Parcels liens (including, without limitation, deeds of trust), encumbrances, and other matters that would constitute exceptions to title, except for those which result from acts of Lessor or otherwise referenced in or permitted under the Master Lease, and from amending or modifying any of the foregoing that may exist now or during the Term, as more particularly described in the Master Lease.

Restrictions on Transfers by Lessor. Subject to certain exceptions, Lessor may transfer its interest in the Parcels to a third party subject to the restrictions which are set forth with more particularity in the Master Lease.

Counterparts. This Memorandum of Master Lease may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall compose but a single instrument.

Remedies. If a court of competent jurisdiction rules that the Master Lease is a mortgage, deed of trust, or other secured financing, then Lessees hereby mortgage and grant to Lessor a lien against the Parcels with a priority as of the date hereof. Subject to availability of such remedies under state law, upon the occurrence of any Default (as defined in the Master Lease) under the Master Lease, Lessor, may without in any way waiving such Default, in addition to any other rights and remedies that it may have under applicable law and subject to the Master Lease, (1) declare the obligations of Lessees under the Master Lease to be immediately due and payable, (2) sell, assign or transfer the entire lessees'-interests in the Master Lease to any third party or (3) take possession of the Parcels by foreclosure or otherwise and have, hold, manage, lease and operate the same on such terms and for such period of time as Lessor may deem proper, and in connection therewith subject to applicable law, the Lessees, hereby (a) assent to the passage of the decree for the sale of the Parcels by the equity court having jurisdiction, and (b) authorize and empower

VOL. 5178 PAGE 108

Lessor and its successors and assigns to take possession of and sell for in case of the default of any purchaser to resell the Parcels, or any part thereof, all in accordance with the applicable laws and rules of court relating to mortgages or deeds of trust. In the case of any sale hereunder, by virtue of judicial proceedings or otherwise, the Parcels may be sold as an entirety or in separate parcels, by one sale or by several sales, as may be deemed by Lessor to be appropriate and without regard to any right of Lessees or any other person to the marshalling of assets. Any sale hereunder may be made at public auction, at such time or times, at such place or places, and upon such terms and conditions and after such previous public notice as Lessor shall deem appropriate and advantageous and as required by law. Upon the terms of such sale being complied with, Lessor shall convey-ze, and at the cost of, the purchaser or purchasers the interest of the Lessees in the Parcels so sold, free and discharged of and from all estate, title or interest of Lessees, at law or in equity, such purchaser or purchasers being hereby discharged from all liability to see to the application of the purchase money. The profits and proceeds derived from the managing and operating of the Parcels or from the sale or assignment of Lessor's interest in the Master Lease or from the sale of the Parcels shall be applied to the payment of the obligations owed to Lessor in such order of priority as Lessor in its sole discretion may determine and after the payment of all attorneys'-fees and any expenses as a result of a sale, assignment or foreclosure.

IN WITNESS WHEREOF, Lessor and Lessees have executed this Memorandum of Master Lease as of the date and year first written above.

"Lessees"

TITAN TIRE CORPORATION OF TEXAS

By: _____
Name: _KENT _W_ HACKBARTH__
Title: _____

TITAN INTERNATIONAL, INC.

By: _____
Name: _KENT W. HACKBARTH__
Title: _V.P./ TREASURER__

2

SEP-29-1998  16:24                                              P. 02/03

VOL 5178 PAGE 109

"Lessor"

GENERAL      ELECTRIC       CAPITAL
CORPORATION FOR ITSELF AND AS AGENT
FOR CERTAIN OTHER PARTICIPANTS

By:
Name: Graham S Hauser
Title: V P Marketing

SEP 29 '98 13:25                                      PAGE.02

VOL 5178 PAGE 110

STATE OF ILLINOIS CITY/COUNTY OF ADAMS ____ TO WIT:

I HEREBY CERTIFY, that on this 28th day of September 199_8, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackamack who acknowledged himself/herself to be the Treasurer of Titan Tire Corporation of Texas, a Texas corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/herself as Treasurer.

WITNESS my hand and Notarial Seal.

*OFFICIAL SEAL*
CHERYL A LUTHIN
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/15/2000

_Cheryl Luthin_
Notary Public

My commission expires:

STATE OF ILLINOIS CITY/COUNTY OF ADAMS ____ TO WIT:

I HEREBY CERTIFY, that on this 28th day of September 199_8, before me, the undersigned Notary Public of said State, personally appeared Kent W. Hackamack who acknowledged himself/herself to be the VP Finance of Titan International, Inc., an Illinois corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein contained as the duly authorized officer of said corporation by himself/herself as VP Finance.

WITNESS my hand and Notarial Seal.

_Cheryl Luthin_
Notary Public

My commission expires:

*OFFICIAL SEAL*
CHERYL A LUTHIN
NOTARY PUBLIC STATE OF IL
MY COMMISSION EXPIRES 9/15/2000

4

SEP-29-1998  16:24                                          P. 83/83

                                                    VOL 5178 PAGE 111

STATE OF _CA_, CITY/COUNTY OF _San Francisco_ TO WIT:

    I HEREBY CERTIFY, that on this 29 day of _Sept_, 198_, before me, the undersigned
Notary Public of said State, personally appeared _Frederick J. Cohoon_, who acknowledged himself/herself
to be the _Pres. Manager_ of _General Therrio Capital Corporation_, known-to-me-(or satisfactorily proven) to be
the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the
same, for the purposes therein contained as the duly authorized _Pres. Mgr_ of said corporation by
himself/herself as _Law Wan, et_.

    WITNESS my hand and Notarial Seal.

                                                            _____
                                                     Notary Public

My commission expires:  6-18-1999

                                    GEORIA YUEN
                                 COMM. # 330002
                           Notary Public — California
                          SAN FRANCISCO COUNTY
                         My Comm. Expires JUN 18, 1999

FINAL216534.1                                  5

VOL 5178 PAGE 112

**ANNEX A**
TO MASTER LEASE AGREEMENT DATED AS OF MAY 21, 1998

**DESCRIPTION OF LEASE ASSETS/IMPROVEMENTS**

All of the improvements located on the Land described in Exhibit A attached hereto, including the assets described on Exhibit B attached hereto.

VOL 5178 PAGE 113

Exhibit A Description of Land

GF No. or File No.: 69406

Being a 192.634 acre tract of land out of "Parcel One", "Tracts 1, 2, and 3 of Parcel Two" and "Parcel Four" as described in a deed from Norwill, Incorporated to Henry A. Willms, John F. Willms, Gary A. Willms and Myra Foster. Said deed is recorded in Volume 2200, Page 92 of the Official Deed Records of Cameron County, Texas, said 192.634 acre tract being described more particularly described by metes and bounds as follows:

Commencing at a point in Western boundary of said Share 19 which is 18,427.0 feet from the Northwest corner of Survey 38, said point is North 84 degrees 55 minutes West 30.00 feet from the Northwest corner of "Las Lagunas Subdivision", A subdivision of the Southern 169.62 Acres of said Survey 38. Subdivision "D" of Share 19. Said Las Lagunas Subdivision is recorded in Volume 7, Page 66 of the Map Records of Cameron County, Texas;

Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, a distance of 936.30 feet to a "PK" nail set for the Southwest corner and PLACE OF BEGINNING of this 192.634 acre tract;

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 38 and the original centerline of FM-1847, at a distance of 941.30 feet a "PK" nail set for the Northwest corner of said Parcel One, at a distance of 1,887.75 feet a "PK" nail set for the Northwest corner of Tract 1, Parcel Two, at a distance of 2,838.95 feet a "PK" nail set for the Northwest corner of Tract 2, Parce, Two, at a distance of 3,795.11 feet to the Northwest corner of Tract 3, Parce, Two, a concrete nail found North 74 degrees 12 minutes 24 seconds West, a distance 1.44 feet from said corner, at a total distance of 3,796.41 feet a "PK" nail set for the Northwest corner of Parcel Four and the Northwest corner of this 192.634 acre tract;

2. Thence, South 84 degrees 19 minutes East, a distance of 50.06 feet to the Northwest corner of a 7.372 acre tract conveyed by Henry A. Willms, et al to the State of Texas by a deed recorded in Volume 1483, Page 203 of the Official Records of Cameron County, Texas;

3 Thence, along the West line of said 7.372 acre tract, South 5 degrees 25 minutes West, a distance of 1,796.5 feet to the Southern most corner of said 7.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,795.19 feet), an iron pin found North 15 degrees 25 minutes 19 seconds West, 3.33 feet from said corner;

4. Thence, along the East line of said 7.372 acre tract, North 11 degrees 24 minutes 22 seconds East, a distance of 339.11 feet, recorded South 11 degrees 16 minutes 41 seconds West, 338.27 feet, an iron pin set for a corner;



—1—

VOL 5178 PAGE 114

**Continuation of Legal Description**

GF No. or File No.: 49406

(5) Thence, continuing along the East line of said 7.372 acre tract, North 14 degrees 18 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, recorded South 14 degrees 05 minutes 30 seconds West;

(6) Thence, continuing along the East line of said 7.372 acre tract, North 78 degrees 57 minutes 29 seconds East, a distance of 77.71 feet to an iron pin found for a corner, recorded South 77 degrees 59 minutes 32 seconds West;

(7) Thence, continuing along the East line of said 7.372 acre tract, North 18 degrees 42 minutes 11 seconds East, a distance of 542.23 feet for a corner, recorded South 17 degrees 75 minutes 44 seconds West; An iron pin found South 18 degrees 22 minutes 13 seconds West, 1.2 feet from said corner;

(8) Thence, continuing along the East line of said 7.372 acre tract, North 6 degrees 27 minutes 32 seconds East, a distance of 428.23 feet for a corner, recorded South 8 degrees 29 minutes 41 seconds West; An iron pin found North 4 degrees 37 minutes 53 seconds West, 0.66 feet from said corner, said corner on the North line of said Parcel Four;

(9) Thence, along the North line of said Parcel Four, South 84 degrees 55 minutes East, at a distance of 1,154.28 feet the Northwest corner of a 0.678 acre tract conveyed by Henry A. Willms, et al, to Brownsville Navigation District by a deed recorded in Volume 1481 Page 212 of the Official Records of Cameron County, Texas at a distance of 1,813.13 feet the Northeast corner of said 0.678 acre tract, a total distance of 1,441.52 feet to the Northeast corner of said Parcel Four, and the Southeast corner of this 192.694 acre tract, at a total distance of South 87 degrees 38 minutes 11 seconds East 1.4 feet from said corner;

(10) Thence, South 4 degrees 27 minutes West, at a distance of 121.39 feet the Northwest corner of said 0.678 acre tract an iron pin found North 85 degrees 18 minutes 13 seconds West, 1.27 feet for said corner, at a distance of 250.41 feet the Southeast corner of said 0.678 acre tract, an iron pin found South 81 degrees 47 minutes 28 seconds East, 1.23 feet from said corner, a total distance of 841.16 feet recorded 841.4 feet to an iron pin set for the Southwest corner of said Parcel Four;

(11) Thence, South 4 degrees 20 minutes West, at a distance of 956.31 feet an iron pin set for the Southeast corner of said Tract 3 in Parcel Two, at a distance of 111.59 feet the centerline of a 53.00 feet wide easement conveyed to Central Power and Light Company by a deed recorded in Volume 406, Page 475 of the Official Records of Cameron County, Texas, at a distance of 1,220 an iron pin set for the Southeast corner of said Tract 3, Parcel Two, at a distance of 1,483.48 feet an iron pin set for the Southeast corner of Tract 4, Parcel Two, a total distance of 1,798.40 feet to an iron pin set

VOL. 5178 PAGE 115

Continuation of Legal Description

GF No. or File No.: 49406

for the Southeast corner of said Parcel One and the Southeast corner of this 192.634 acre tract;

(12) Thence, North 84 degrees 55 minutes West, along the South line of said Parcel One, at a distance of 1,805.84 feet a concrete monument found on the East right-of-way of FM-1847, a total distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 192.634 acres, more or less, save and except said 0.6"8 acre tract 5.260 acres of said 192.634 acres is right-of-way of FM-1847;

AND SAVE AND EXCEPT a one hundred foot (100'' wide strip along the South Boundary line dedicated to the City of Brownsville for Jose Escandon Road by Special Warranty Deed dated January 9  1998, executed by Greater Brownsville Incentives Corporation, a Texas Non-Profit Corporation to the City of Brownsville, recorded in Volume 4841, Page 169, Official Records, Cameron County, Texas, said 100 foot wide strip, a 4.259 acres tract, being described more particularly described by metes and bounds as follows:

(1) Beginning at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 5 degrees, 05 minutes East, a distance of 100.00 feet a point for a corner of this 4.259 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 1,854.82 feet to an iron pin set at the East line of said 192.634 acre tract for a corner of this 4.259 acre tract.

3) Thence, South 4 degrees 10 minutes 40 seconds West, a distance of 100.00 feet to an iron pin found for the Southeast corner of said 192.634 acre tract;

4) Thence, North 84 degrees 55 minutes West, a distance of 1,855.84 feet to the PLACE OF BEGINNING.

Containing 4.259 acres, more or less;

FURTHER SAVE AND EXCEPT a 0.54" acre tract as set out in Special Warranty Deed dated December 31, 199", executed by Titan Wheel International, Inc., an Illinois Business Corporation to the City of Brownsville, recorded in Volume 4841, Page 174, Official Records, Cameron County, Texas, said 0.247 acre tract being described by metes and bounds as follows:

Commencing at a "PK" nail found for the Southwest corner of said 192.634 acre tract, thence, North 4 degrees 10 minutes East, along the West line of said Survey 28 and the original centerline of FM-1847, a distance of 100.00 feet to the PLACE OF BEGINNING of this 0.247 acre tract;



-3-

VOL 5178 PAGE 116

Continuation of Legal Description

GF No. or File No.: 49426

(1) Thence, North 5 degrees 05 minutes East, along the West line of said Survey 18 and the original centerline of FM-1847, a distance of 4,696.60 feet a "PK" nail found for the Northwest corner of this ".547 acre tract;

2) Thence, South 84 degrees 55 minutes East, a distance of 50.00 feet to the Northwest corner of a 3.72 acre tract conveyed by Henry A. Willms, et al, to the State of Texas by a deed recorded in Volume 3483, Page 203, Official Records of Cameron County, Texas.

3) Thence, along the West line of said 3.372 acre tract, South 5 degrees 05 minutes West, a distance of 1,786.13 feet to the Southern most corner of said 3.372 acre tract, recorded North 4 degrees 07 minutes 19 seconds East, 1,789.49 feet, an iron pin found North 15 degrees 25 minutes 39 seconds West, 1.90 feet from said corner.

4) Thence, along the East line of said 3.372 acre tract, North 11 degrees 04 minutes 22 seconds West, a distance of 339.12 feet (recorded South 10 degrees 36 minutes 41 seconds West, 338.37 feet) an iron pin set for a corner.

5) Thence, continuing along the East line of said 3.373 acre tract, North 14 degrees 58 minutes 24 seconds East, a distance of 282.19 feet to an iron pin found for a corner, (recorded South 14 degrees 06 minutes 30 seconds West);

6) Thence, continuing along the East line of said 3.372 acre tract, North 78 degrees 3" minutes 09 seconds East, a distance of 77.71 feet to an iron pin found for a corner, (recorded South 77 degrees 19 minutes 12 seconds West);

7) Thence, continuing along the East line of said 3.372 acre tract, North 19 degrees 12 minutes 21 seconds East, a distance of 142.23 feet a corner, recorded South 17 degrees 15 minutes 44 seconds West), an iron pin found North 14 degrees 42 minutes 13 seconds West, 2.97 feet from said corner;

8) Thence, continuing along the East line of said 3.372 acre tract, North 6 degrees 29 minutes 32 seconds East, a distance of 623.25 feet for a corner in said 192.434 acre tract, recorded South 6 degrees 29 minutes 32 seconds West, an iron pin found North 74 degrees 27 minutes 49 seconds West, 1.56 feet from said corner.

9) Thence, along the North line of said 192.434 acre tract, South 84 degrees 25 minutes East, a distance of 29.31 feet an iron pin set for a corner of this 3.547 acre tract.

10) Thence, South 6 degrees 29 minutes 32 seconds West, a distance of 427.76 feet to an iron pin set for a corner of this 3.547 acre tract;



-4-

VOL 5178 PAGE 117

Continuation of Legal Description

GF No. or File No.: 69456

(11) Thence, South 18 degrees 22 minutes 15 seconds West, a distance of 556.04 feet an iron pin set for a corner of this 7.547 acres tract;

(12) Thence, South 78 degrees 5" minutes 29 seconds West, a distance of 76.98 feet for a corner of this 7.547 acres tract;

(13) Thence, South 14 degrees 58 minutes 24 seconds West, a distance of 269.02 feet to an iron pin set for a corner of this 7.547 acres tract;

(14) Thence, South 11 degrees 56 minutes 22 seconds West, a distance of 337.39 feet to an iron pin set for a corner of this 7.547 acres tract;

(15) Thence, South 5 degrees 05 minutes 00 seconds West, a distance of 1,415.18 feet for a corner of this 7.547 acres tract;

(16) Thence, South 39 degrees 15 minutes 00 seconds East, a distance of 70.71 feet to an iron pin set for a corner of this 7.547 acres tract;

(17) Thence, North 84 degrees 55 minutes West, a distance of 138.00 feet to the PLACE OF BEGINNING.

Containing 7.547 acres, more or less.

NOTE: This company does not represent that the acreage and/or square footage calculations are correct.

VOL. 5178 PAGE 118   Exhibit B to Annex A



Exhibit B to Annex A (Continued)

Return to:
Darlene Davis
Ober/Kaler
120 E. Baltimore St.
Baltimore, MD
21202-1643



VOL 5178 PAGE 120

39431

FILED FOR RECORD

2000 SEP 30 P 3 19

CLERK COUNTY COURT
CAMERON COUNTY TEXAS
BY _____ DEPUTY

