United States District Court
Southern District of Texas
FILED

NOV 3 0 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | |
| CORPORATION, | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § | |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

## TITAN INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, TITAN INTERNATIONAL, INC., DEFENDANT ("Titan" or "Defendant"), and files this Motion for Summary Judgment. In support thereof Defendant would show the Court the following:

Titan is entitled to summary judgment in its favor for either of the following two reasons:

1.      Plaintiff Greater Brownsville Incentives Corporation ("GBIC" or "Plaintiff") has failed to respond to (1) Titan's Cross-Motion For Summary Judgment, (2) Titan's Motion To Strike Affidavit of Arnold Benson, (3) Titan's Motion To Strike Affidavit of Brian Janis, and (4) Titan's Motion To Strike Plaintiff's Supplemental Exhibits To Its Motion For Summary Judgment. The Southern District of Texas Local Rule 7.4 states that a "Failure to respond **will be taken** as a representation of no opposition." (emphasis added). On this basis, and this basis alone, this Court should enter summary and final judgment in favor

of Titan.

2.    **The Project Agreement, by its own terms, expired on October 31, 2001,**
    twenty five months before the only alleged conduct triggering the so-called
    reversion clause occurred.  For this reason, and this reason alone, Titan is
    entitled to summary and final judgment in this case.

Either of these two reasons justifies an order of summary judgment in Titan's favor.
Combined, they overwhelmingly and conclusively require summary judgment in Titan's
favor.

**I.    Factual Background**

Titan International, Inc., is a publicly traded company with subsidiaries that
produce off-highway tires for the agricultural, construction and military sectors.  In the
mid-nineties, Titan was considering developing a tire manufacturing plant in Texas.
Titan negotiated with GBIC, among others, and reached an agreement regarding
incentives to be paid to Titan in exchange for construction of a tire plant in Brownsville.
The negotiations resulted in the execution of the Project Agreement[1] that was signed on
or about November 7, 1997, but made effective retroactively as of February 1997.

The general terms of the contract called for GBIC to give certain incentives[2] to
Titan and Titan to develop and operate a tire manufacturing facility in or near
Brownsville.  *See, e.g.*, Project Agreement.  Specifically, GBIC would give a "Site
Development Credit" of $1,000,000 in the form of real property rather than cash.  *See id.*
at II. A.  GBIC purchased nearly two hundred acres north of Brownsville at 6700 Paredes

---

[1]    The Project Agreement is attached hereto at Exhibit 1 to the Affidavit of Cheri T. Holey, attached
hereto at Exhibit 1.

[2]    Titan received funds from GBIC on only two occasions:  one payment was made for a site
development credit and the other payment was made in lieu of the promised fill dirt.  Aside from these two
payments, Titan only received grants, credits, and abatements.

Line Road and conveyed the property by special warranty deed[3] to Titan.  Additional "Site Development Credits" in varying amounts were awarded to Titan to cover site improvement expenses such as building the plant, paving an access road, paving a facility parking lot, installation of utilities, acquiring fill dirt to elevate the site of the plant. *See id.* at II. B., C., & D.  GBIC also agreed to a "Lease/Building Assistance Credit" and "Job Creation Credit." *See id.* at II. E. & F.  These credits were to be used by Titan "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby . . .." *See id.* at I.

The Project Agreement was intended to last five years.  Section V. of the Project Agreement contains the following language:

**Term of Agreement**

**The term of this Agreement shall be five (5) years, commencing November 1, 1996, and ending October 31, 2001.**

*See id.* at V. (emphasis added).

Titan's efforts to comply with the Project Agreement were immediately frustrated.  Plant construction was delayed pending the outcome of litigation regarding the proximity of the plant to the Palo Alto Battleground, a National Historic Site.  The delay caused irreparable harm to Titan.  The nearly two year delay in construction coincided with a strike at Titan's flagship plant.  Had the Brownsville plant not been delayed, Titan would have been able to continue production simply by shifting production from Iowa to Brownsville.  Instead, Titan lost manufacturing capacity.

Nonetheless, Titan constructed and opened the tire manufacturing operation at 6700 Paredes Line Road.  Between 1998 and June 2004, Titan made capital investments

---

[3]        The Special Warranty Deed is attached hereto at Exhibit 2 to the Affidavit of Cheri T. Holey.

and capital expenditures exceeding $117,000,000 in the Brownsville Titan facility.[4] That does not take into account the economic benefit to the community which is several times greater.

In November 2003, twenty five months after the Project Agreement expired, the tire manufacturing operation in Brownsville had a mass layoff of employees pursuant to the WARN Act. The tire manufacturing operation has never been discontinued, dissolved, or liquidated. It is being maintained until it becomes economically feasible to again produce tires there in mass quantities.

On November 10, 2003, Plaintiff filed this declaratory action case in the 107th judicial district court of Cameron County, Texas, seeking to take possession of Titan's $30,000,000 plant. Plaintiff claims to have spent $4,500,000[5] in credits, abatements and grants.

## II.    Standard for Summary Judgment

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)

---

[4]    *See* Affidavit of Ken Lefoldt, attached hereto at Exhibit 2.
[5]    This amount comes from Plaintiff's notice and demand letter from Brian Janis to Mr. Maurice Taylor. This amount has never been substantiated and is disputed.

("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case"). *See also Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (citing *Celotex*, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See id.* (citing *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *see also* FED. R. CIV. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

## III.    Applicable Law

It is axiomatic that a federal court sitting in diversity jurisdiction applies the state law governing the dispute.  In this case, it is undisputed that substantive Texas law applies.  Under Texas law a petition for declaratory judgment is merely a theory of

recovery.  The Texas Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE. ANN. § 37.001 *et seq.* (Vernon 1997), is merely a procedural device; it does not create any substantive rights or causes of action.  *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993).  Consequently, the Court should construe the request for declaratory judgment as a theory of recovery predicated upon a cause of action for breach of contract, which Plaintiff has neither pled nor proved. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy*, 99 F.3d 746 (5th Cir. 1996).

**IV.    Application of Law to Facts of This Case**

### A. Plaintiff Has Failed To Respond To Any of Titan's Motions; Therefore, Those Motions Are Unopposed and Should be Granted

Titan filed several motions in this matter; Plaintiff has failed to respond[6] to any of Titan's motions.[7]  Titan's Cross-Motion For Summary Judgment, at Docket No. 36, was filed on September 10, 2004.  Titan's Motion To Strike Affidavit of Arnold Benson, at Docket No. 38, was filed on September 10, 2004.  Titan's Motion To Strike Affidavit of Brian Janis, at Docket No. 37, was filed on September 10, 2004.  Titan's Motion To Strike Plaintiff's Supplemental Exhibits To Its Motion For Summary Judgment, at Docket Entry No. 41, was filed on October 19, 2004.  Again, nearly three months later, Plaintiff has not responded.

Pursuant to the Untied States District Court for The Southern District of Texas Local Rule 7.4, "Failure to respond **will be** taken as a representation of no opposition." (emphasis added).  The rule is not discretionary.  It uses the mandatory language "will

---

[6]        *See* Docket Sheet for B-03-224. Titan respectfully requests the Court take judicial notice of its Docket Sheet for this case, attached hereto at Exhibit 3.

[7]        The Southern District of Texas Local Rules gives a party twenty (20) days to respond to a motion. *See* Local Rule 7.3 ("Opposed motions will be submitted to the judge twenty days from filing ....").

be." When a party fails to respond to a routine or non-dispositive motion, the motion is deemed unopposed and granted. *See, e.g., Prevot v. Phillips Petroleum Co.*, 133 F.Supp.2d 937, 941 (S.D. Tex. 2001) (granting motion to compel arbitration).

On the other hand a motion for summary judgment cannot simply be granted because a party failed to respond; however, a failure to respond renders the factual and legal contentions uncontested. Thus, if the movant's legal analysis is correct, summary judgment should be granted. Judges in the Southern District of Texas have explained the procedure when faced with a motion for summary judgment to which a plaintiff failed to respond.

> Although it is reversible error for the Court to grant a summary judgment motion simply because the nonmovant fails to respond, *see John v. Louisiana Bd. of Trs. for State Colls. & Univs.*, 757 F.2d 698, 707- 08 (5th Cir. 1985), the Court may decide the merits of the case based on the Defendant's Motion and supporting evidence since Plaintiff has proffered no controverting evidence. *See Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988) (noting that when the nonmovant submits no summary judgment response, the district court may accept as undisputed the facts in the motion for summary judgment).

*Daniels v. BASF Corp.*, 270 F.Supp.2d 847, 852 (S.D. Tex. 2003).

In short, Plaintiff failed to file responses to Titan's three motions to strike, Docket Nos. 37, 38, and 41; therefore, the Court **must** grant those motions and strike Plaintiff's evidence. Having stricken Plaintiff's evidence and there being no response to Titan's Cross-Motion For Summary Judgment, the Court then decides the merits of the case based on Titan' Cross-Motion for Summary Judgment and Titan's supporting evidence, both of which are uncontroverted.

Therefore, Titan respectfully requests that the Court enter an order granting Titan's motions to strike evidence, Docket Nos. 37, 38, and 41, and Cross-Motion For

Summary Judgment, Docket No. 36.

### B. The Alleged Breach Occurred After the Termination of The Project Agreement[8]

"Unlike the mythical Phoenix, contracts that terminate by their express terms do not rise again." *Griffin Indus., Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (Tex. App. Houston [14th Dist.] 2000, pet. denied).   Under Texas law, a contractual obligation "terminates upon termination of the contract by its terms." *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 246 F. Supp. 2d 632, 638 (S.D. Tex. 2003), *reversed by* No. 03-20264, 2004 WL 2491725 at *3 (5th Cir. September 10, 2004). Simply put, any allegation of conduct occurring after a contract expires is **irrelevant** and

---

[8]    From time to time, Plaintiff argues that Titan failed to fulfill obligations under the Project Agreement, namely failing to create five hundred jobs and failing to notify GBIC of a financing arrangement with G. E. Capital. Neither was pled in Plaintiff's petition; neither is relevant to this lawsuit for declaratory relief. They were not pled because Plaintiff has no claim.
    First, Plaintiff has produced absolutely no evidence that Titan failed to create five hundred jobs. Rather, Plaintiff relies on the affidavit of GBIC president Arnold Benson to prove Titan created fewer than five hundred jobs. At his deposition, Benson admitted he had no personal knowledge of the number of employees Titan Tire of Texas Corporation had at any time. In fact, Mr. Benson said of his affidavit in support of GBIC's motion for summary judgment: "If I had never signed it before, I would not sign this document today." Benson Depo., 36:18-20, attached hereto at Exhibit 4.
    Second, Titan entered into a financing arrangement with G. E. Capital. Titan notified GBIC of this financing arrangement through GBIC's counsel, Brian Janis, and during negotiations of the Project Agreement. Cheri Holey Aff., ¶9. Even if Titan had not notified GBIC, Titan was not required to notify GBIC because the transfer was done in the "ordinary course of business." Project Agreement, II. F. (p.4, second full paragraph). Corporations building expensive facilities enter into financing arrangements in the ordinary course of their business, even Jason Hilts admitted as much calling it unusual to do anything other than finance such a project.
    Q.  In your experience with economic development, do you think it's unusual that a company would finance the construction of a 20 million dollar plant?
    A.  That it's unusual for them to finance it, no.  If they did otherwise, I would think it was unusual.
    Q.  So between financing and paying out of your pocket, you think that more likely than not they're going to finance it?
    A.  Sure.
    Q.  It would be unusual if they paid it out of their pocket?
    A.  Yeah.
Hilts Depo, 20:16-21:2. Moreover, GBIC has known about Titan's financing arrangement with G. E. Capital for more than three years. Benson testified he knew of the G. E. Capital financing arrangement before he became President of GBIC in 2001. Benson Depo., 43:23-242:14-18. GBIC knew about the financing arrangement for at least several years and never once complained to Titan.
    These arguments are complete red herrings the Court should disregard.

does not form the basis for a cause of action. *See Mangione v. Government Personnel Mut. Life Ins. Co.*, NO. 04-01-00655-CV, 2002 WL 1677457, at *3 (Tex. App. — San Antonio July 24, 2002, *rev. denied*) (not designated for publication) ("Because the Confidentiality Agreement expired sixty days after its execution, GPM's **actions after that time are irrelevant**. . . We hold the expiration clause in the Confidentiality Agreement is unambiguous, and expired sixty days after its execution.") (citations omitted) (emphasis added). Conduct during a contract period is relevant; conduct after a contract expires is irrelevant and unactionable.

In its *Millenium* decision, the Fifth Circuit clearly explained the distinction between a claim arising during a contractual period and a claim arising after the contractual period. The Fifth Circuit contrasted the factual situations in *Millennium* and *Griffin Indus.*, both of which concerned contractual indemnification. In *Griffin Indus.*, the court held there was no indemnity obligation when a cause of action both arose and was filed after the termination of the indemnity contract. 22 S.W.3d at 36. On the other hand, the *Millennium* court held there was an indemnity obligation when the cause of action arose before the expiration of the indemnity contract. 2004 WL 2491725 at *3 ("In this case, it is undisputed that at least some of the claimants may have been exposed to the asbestos between 1973 and 1993, and hence **prior to the termination of the Contract**.") (emphasis added). In both cases the determining factor was whether the cause of action arose during the contractual period or after the expiration of the contract.

In this case, under the aptly named heading **Term of Agreement**, the Project Agreement contains the following language:

> **The term of this Agreement shall be five (5) years, commencing November 1, 1996, and ending October 31, 2001.**

Project Agreement, Section V. (emphasis added).  This term or duration clause is the simplest and easiest to comprehend in the entire contract.

In fact, it is so easy to comprehend that even Mr. Benson and Mr. Hilts admitted the contract expired on October 31, 2001.

> Q.  Could you read that clause starting with "Term of Agreement."
> A.    "The term of this agreement shall be five years commencing November 1st, 1996, and ending October 31st, 2001."
> **Q.  Doesn't that indicate to you, Mr. Benson, that this contract was to last five years and no longer?**
> **A.  Good point. I don't know.**
> Q.  That's what it says right there, right?  That's what it says right there.
> A.  I understand your question.  And within the scope -- the limited scope of your question, **the answer would seem to be yes.**

Benson Depo., 20:13-25 (emphasis added), attached hereto at Exhibit 4.  Mr. Hilts gave the same response.

> Q.  Turn to page 6 and look at V.  If you could just read that starting right under the V out loud.
> A.    "The term of this agreement shall be five years commencing November 1st, 1996, and ending October 31st, 2001."
> Q.  So this agreement was to last five years.  Is that way you read that?
> A.  That's what it says.
> Q.  So the contract ended October 31st, 2001?
> A.  That's what it says.

Hilts Depo., 14:4-13, attached hereto at Exhibit 5.  At their depositions, neither Mr. Benson nor Mr. Hilts requires judicial assistance to accurately comprehend the duration of the Project Agreement.

Mr. Hilts, the President of Brownsville Economic Development Council ("BEDC") which spearheads all deals between GBIC and companies locating in Brownsville, admitted Titan had no duties under the Project Agreement after October 31, 2001.

Q. And do you believe that Titan has any duties under the project agreement as of today?

**A. Do I believe they have any duties under that agreement today? No, I guess not.**

\*\*\*

Q. Okay. But my question is, under the project agreement, how long do you believe Titan was required to operate a tire manufacturing facility in Brownsville?

**A. The terms of the contract is five years.**

\*\*\*

Q. Okay. So once the five years was up, they didn't have an obligation to operate a tire manufacturing facility in Brownsville, Texas, under this project agreement; is that correct?

**A. It's a five-year agreement.**

Hilts Depo., 30:12-15; 31:13-17; & 32:1-5 (emphasis added). Therefore, the termination date of the contract is absolutely uncontroverted; neither GBIC nor BEDC believes Titan has any obligations under the Project Agreement after October 31, 2001.

When did the alleged breaching conduct occur? By Plaintiff's own admission, in pleadings and elsewhere, Titan "discontinued its tire manufacturing operation in Brownsville in July 2003."[9] Pl.'s Mot. Summ. J., at p.11.

Therefore, as a matter of law, the contract was fully performed, no obligations existed, and no breach of contract could have occurred after October 31, 2001. Just like in the *Griffin Indus.* case, the allegations in Plaintiff's complaint demonstrate that the cause of action arose, if at all, well after the expiration of the Project Agreement. Like in *Griffin Indus.*, this Court should dismiss Plaintiff's claims.

### (1) The Reversion Clause is VOID If It is Not Controlled by The Duration Clause

In the face of a definite duration clause, Plaintiff argues that the reversion clause outlives the contract by nearly two years. Even more audacious, Plaintiff claims that

---

[9]     The WARN Act layoffs occurred in November 2003, twenty five months after the expiration of the Project Agreement. Titan contends that it maintains a tire manufacturing facility at the Brownsville plant.

*Titan International, Inc.'s Motion For Summary Judgment*

Titan is obligated to operate a tire manufacturing facility forever, without ceasing. [10]

> Q. Okay. When you say "continuously," could you quantify that for me?
> A. Without ceasing operations.
> Q. And do you mean without ever ceasing operations?
> A. Yes.

Benson Depo., 11:7-12; *see also* Pl.'s Mot. Summ. J., at p. 18 ("there is no time limit").

If Plaintiff is correct, then the Project Agreement is void.

Indefinite and interminable contracts, as well as contracts requiring successive performances, are terminable at will of the parties. They are invalid.

> Under Texas law, when a contract "contemplate[s] continuing performance (or successive performances) and ... [is] indefinite in duration," it may be terminated at the will of either party. Moreover, "[the Fifth Circuit] "does not favor perpetual contracts" and "presumes that [any such] contract is terminable at will."

*Trient Partners I, Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir.1996) (citations omitted); *see also Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 390 (Tex. 1977). Although the contract in *Trient* specifically stated that it was indefinite in duration, the case did not suggest that this rule only applied to contracts with an express indefinite term; therefore, it should apply equally to a case that is implicitly indefinite, as Plaintiff claims is the case here. The Project Agreement,

---

[10]    Mr. Benson testified that despite the fact that the contract expired after five years, he believed the contract required Titan to continuously operate a tire manufacturing facility in Brownsville. The source of that obligation, he claimed, is "implied" in the contract. Benson Depo., 19:5-10. He could point to no clause that explicitly stated that obligation.

Plaintiff should not be allowed to testify or argue regarding its interpretation of the contract or what it believes is "implied" in the contract. The parol evidence rule dictates that when a written contract is complete and unambiguous, the court shall not admit extrinsic evidence regarding prior or contemporaneous agreements. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). The rule rests in part on the principle that "[n]egotiations preceding a written contract should not displace the terms of the written contract." *Fisher Controls Intern., Inc. v. Gibbons*, 911 S.W.2d 135, 141-42 (Tex. App.--Houston [1st Dist.] 1995, writ denied). The rule of merger, a corollary to the parol evidence rule, provides, "Absent pleading and proof of ambiguity, fraud, or accident, a written instrument presumes that all the parties' earlier agreements relating to the transaction have merged into the written instrument." *Texas A & M Univ.-Kingsville v. Lawson*, 127 S.W.3d 866, 872 (Tex. App.--Austin 2004, no pet. h.).

therefore, is void.

If the contract is not void but is indefinite, then the Court must determine the actual duration of the Project Agreement. "[Contracts of] indefinite duration are arguably subject to the principle that a reasonable duration will be implied during which time the agreement is not terminable at will." *See Clear Lake,* 549 S.W.2d at 391. As is the case here, when a contract is unambiguous, the court will not imply language, add to language or interpret it other than pursuant to its plain meaning. *Breitenfeld v. SAS Institute, Inc.,* No. 05-04-00131-CV, 2004 WL 2404548, at *3 (Tex. App.-Dallas Oct. 28, 2004). Whether a contract is ambiguous is a question of law for the court to decide. *Texas Farm Bureau Mutual Insurance Company v. Sturrock* 146 S.W.3d 123, 126 (Tex. 2004). An ambiguity exists only if it a contract is open to two or more reasonable interpretations. *Id., See e.g. Dameron Oil Company, Inc. v. Majeed,* No. 10-01-00401-CV, 2004 WL 1211620, at *2 (Tex. App.-Waco June 2, 2004); *Davis v. Devon Energy Production, Co., L.P.,* 136 S.W.3d 419, 422 (Tex. App.-Amarillo 2004). Plaintiff has not pled that the Project Agreement is ambiguous. It is not. The Project Agreement unambiguously states that its term is five years and should be interpreted pursuant to its plain meaning.

In this case, a reasonable duration during which the Project Agreement was not terminable at will would be the duration actually found in the contract, five years ending October 31, 2001, rather than an arbitrary date selected by the Plaintiff. Even Mr. Hilts does not know why the contract would last longer than five years.

> Q. Okay. But this one [Project Agreement] lasts five years, ends on
> October 31st, 2001, correct?
> A. That's what this says.
> Q. Okay. You don't know any reason why anyone would think that it
> would last longer than that, do you?
> A. No.

Hilts Depo., 14:23-15:4.

Whether the Project Agreement is void because it is indefinite or the Court implies a reasonable period during which the Project Agreement was not voidable, after October 31, 2001, the contract expired long before the alleged breach. Either way, as a matter of law Plaintiff cannot state a claim against Titan.

<h3 align="center">(2) The Reversion Clause Expired in February 1999</h3>

Even assuming the implausible – that the explicit five year term clause in Section V. does not apply to the reversion clause – the reversion clause itself contains a more restrictive term clause. The reversion clause requires that Titan performs certain acts – commence construction, commence hiring, and operate a tire manufacturing facility in Brownsville, Texas – "within two (2) years . . . from the date of execution of this Project Agreement." Project Agreement, Section II. F. Therefore, the reversion clause expired in February 1999, nearly four years before the alleged breach occurred that is supposed to have triggered the reversion clause.

> The parties agree that in the event that TITAN WHEEL INTERNATIONAL, INC., discontinues operations or is dissolved or liquidated or no longer maintains a tire manufacturing operation in or near Brownsville, or if TITAN WHEEL INTERNATIONAL, INC., does not commence such construction within eleven (11) months, does not commence hiring and training for the plant within ten (10) months (involving Spend Skills Development Training dollars, which must be spent in Brownsville), or does not commence operations within two (2) years in or near Brownsville, from the date of execution of this Project Agreement (February 27, 1997); . . .

Project Agreement, Section II. F. The two-year limitation applies to each and every clause preceding the semicolon, including the clause regarding maintenance of a tire manufacturing facility.

### (3) Titan Currently Operates A Tire Manufacturing Plant in Brownsville

Titan currently maintains and operates a tire manufacturing plant in Brownsville. *See* Def.'s Rsp. To Pl.'s First Req. For Admissions, at Question 10. When asked by Plaintiff to admit that neither Titan Tire Corporation of Texas nor Titan International, Inc., are manufacturing tires at the Brownsville facility, Defendant responded "Deny." *See id.* Plaintiff's evidence merely shows that Defendant has reduced its workforce and capacity, which is completely legal and proper, and not in violation of the Project Agreement. Plaintiff also cites a newspaper advertisement for a year-end inventory liquidation sale. This is not evidence that Titan Tire of Texas is not manufacturing tires. In fact, it is evidence only that Titan is selling tires. Plaintiff has no evidence that Defendant no longer maintains a tire manufacturing plant in Brownsville. Their evidence – Defendant's admissions and newspaper clippings – demonstrates that Defendant is operating a tire manufacturing plant in Brownsville.

Moreover, the press release Plaintiff touts simply states that Titan will suspend production until market demand increases. *See* Pl.'s Ex. No. 3. Operations have not been discontinued and the plant has neither been dissolved or liquidated. The tire manufacturing operation has been maintained as a distribution and warehouse center, as the press release states, and stands ready to increase production once the market improves.

Assuming Plaintiff is correct in its interpretation of the law, Plaintiff has failed to demonstrate there is no genuine issue of material fact on the issue of whether the Brownsville tire manufacturing plant is still in operation. That fact is controverted. If

anything, the evidence is uncontroverted that the plant is still operational. Plaintiff has produced no evidence, much less any admissible evidence, that the plant is no longer maintained by Titan. Thus, the Court should grant summary judgment in favor of Defendant Titan.

### (4)    Titan's Defenses Are Applicable

Titan has pled valid defenses; however, the Court need not even reach these issues because Plaintiff's claim fails as a matter of law.

#### (i)    Waiver

GBIC has waived its rights to bring this lawsuit. "The elements of waiver include (1) an existing right, benefit, or advantage; (2) a knowledge, actual or constructive, of its existence; and (3) an actual intention to relinquish it (which can be inferred from conduct)." *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.- Texarkana 1992, writ denied). The terms of the Project Agreement condition GBIC's crediting of incentives, credits, and abatements upon Titan's satisfactory compliance with the terms of the Project Agreement. *See* Project Agreement, Section II ("Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., . . . the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following: . . .."). GBIC claims to have had a right to certain conditions; GBIC actually knew of its right to those conditions, having drafted the Project Agreement; and GBIC actually intended to relinquish those rights by extending incentives to Defendant without either enforcing all the terms of the contract or notifying Titan of any alleged non-compliance.

#### (ii)    The Contract Expired

This defense is detailed *supra*. The Project Agreement expired on October 31, 2001, by its own terms. Under Texas law contractual obligations do not outlive the duration of the contract. *See supra*. Therefore, any alleged breach after October 31, 2001, is by definition not a breach. There can be no cause of action premised on conduct after October 31, 2001.

## V.    Declaratory Relief is Improper in This Case

Plaintiff has impermissibly dressed up a breach of contract claim as a request for declaratory relief. Despite repeatedly claiming that it is not alleging a breach of contract but is only alleging a declaratory judgment cause of action, Plaintiff tellingly requests relief far beyond that allowed by a declaratory action. Plaintiff seeks judicial findings that Defendant has breached the contract. Moreover, Plaintiff seeks an order from the Court that Defendant specifically perform a portion of the contract.

Plaintiff seeks an order from the Court adjudicating Defendant in breach of the contract and ordering specific performance of a contractual term. Plaintiff seeks "declaratory relief to judicially confirm the reversion of the land and improvements thereon (from TITAN) to GBIC . . .." Pl.'s Mot. Summ J., at p. 24. "[T]he Court should declare such in the disposition of this case, judicially confirming such reversion, and resolving this case by summary judgment in favor of GBIC . . .." Pl.'s Mot. Summ J., at p. 25. Finally, in its prayer for relief, Plaintiff requests the following:

> A Declaration that under the said Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements thereon (as indicated above), as purchased through funds of GBIC, have reverted to GBIC.

Pl.'s Mot. Summ J., at p. 25. This requested relief is not permissible in a declaratory relief action.

Texas courts have held that declaratory judgment is not appropriate when plaintiff's cause of action for damages on the same claim is justiciable and provides an appropriate remedy. *See Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex. App. 1994, no writ) ("declaratory judgment action is not appropriate where plaintiff's cause of action is mature and enforceable"*); Southern Traffic Bureau v. Thompson*, 232 S.W.2d 742, 750-51 (Tex. Civ. App. 1950, writ ref'd n.r.e.) ("'If adequate relief, and an appropriate remedy, are presently available to the complaining party through the means of other existing forms of action or proceeding, jurisdiction for a declaratory judgment will not ordinarily be entertained.'") (citation omitted); *see also Janik v. City of Dallas*, 1998 WL 204623, *5 (N.D. Tex. April 16, 1998) ("Plaintiffs have a justiciable claim for negligence under the Tort Claims Act. Therefore, declaratory judgment is not appropriate for this claim."); *cf. See Sylvester v. Watkins*, 538 S.W.2d 827, 831 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.). Declaratory relief is not available to Plaintiff under the facts of this case or the relief sought by Plaintiff.

The relief Plaintiff requests belies its fervent insistence that this is not a breach of contract case. Accordingly, Plaintiff's claim for declaratory relief should be denied.

## VI.    Titan Is Entitled To Attorneys' Fees

Upon the Court's entry of judgment in Titan's favor, Titan will seek attorneys' fees and costs for its defense in this matter. Titan will submit a separate affidavit and fee bill.

## VII.    Conclusion

WHEREFORE, PREMISES CONSIDERED, Defendant, Titan International, Inc. respectfully requests that this Court grant Titan's Motion For Summary Judgment on either of the bases in this motion, namely that Plaintiff failed to respond to Titan's previously filed motions to strike evidence and cross-motion for summary judgment or that the reversion clause does not outlive the five year Term of Agreement.

Respectfully submitted,

RODRIGUEZ & NICOLAS, L.L.P.

By:_____

Michael Rodriguez
State Bar No.00791553
Federal I.D. No. 18759
Henri E. Nicolas, Jr.
State Bar No. 24014808
Federal ID No. 26052
319 East Elizabeth Street
Brownsville, Texas 78520
Telephone: (956) 574-9333
Facsimile: (956) 574-9337

## CERTIFICATE OF CONFERENCE

I, Henri E. Nicolas, Jr., do hereby, certify that on November 22, 2004 I contacted the Plaintiff's counsel, Mr. Brian Janis regarding this response and motion. Mr. Janis is opposed.

_____
Henri E. Nicolas, Jr.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below on November 30, 2004 been forwarded to:

**VIA REGULAR MAIL & HAND DELIVERY**
Brian G. Janis
Brian G. Janis, P.C.
1325 Palm Blvd., Suite B
Brownsville, Texas 78520
Telephone (956) 541-2168
Facsimile (956) 541-8663

**VIA REGULAR MAIL & FACSIMILE**
James R. Goza
City Attorney, City of Brownsville, Texas
P.O. Box 911
Brownsville, Texas 78522
Telephone (956) 548-6011
Facsimile (956) 546-4291

_____
Henri E. Nicolas, Jr.