IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES CORPORATION, | § § § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. B-03-224 |
| | § § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

**DEFEENDANTS' NOTICE OF INTENTION TO TAKE THE ORAL
DEPOSITION OF JASON C. HILTS & ARNOLD BENSON**

TO:   **JASON C. HILTS & ARNOLD BENSON**, by and through their Attorney of
Record, Mr. Brian G. Janis, SANCHEZ, WHITTINGTON, JANIS &
ZABARTE, 100 North Expressway 83, Brownsville, Texas 78521.

Pursuant to the Federal Rules of Civil Procedure, please take notice that

Defendants in the above-styled and numbered cause will take the oral deposition of

**JASON C. HILTS, at 8:30 o'clock, a.m.** and **ARNOLD BENSON,  at 10:30 o'clock,**

**a.m.** on **Friday, November 19, 2004** at the Law Office of Brian G. Janis, 100 North

Expressway 83, Brownsville, Texas, 78521.

Jason C. Hilts & Arnold Benson shall appear before a certified court reporter at

the place stated above for the purpose of giving their testimony.

Respectfully submitted,

**RODRIGUEZ & NICOLAS, L.L.P.**
319 E. Elizabeth Street
Brownsville, Texas 78520
(956) 574-9333 telephone
(956) 574-9337 facsimile

By: *Michael Rodriguez u/ssu. A.*
Michael Rodriguez

*Benson*
**EXHIBIT NO. 1**
**Bryant & Stingley, Inc.**

State Bar No. 00791553
Federal I.D. No. 18759
Henri E. Nicolas, Jr.
State Bar No. 24014808
Federal I.D. No. 26052
**ATTORNEYS FOR
DEFENDANT TITAN
INTERNATIONAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below by regular US mail, and facsimile, in compliance with the Federal Rules of Civil Procedure on this 16th day of November, 2004.

**Via Regular Mail and Facsimile**

Brian G. Janis
SANCHEZ, WHITTINGTON, JANIS & ZABARTE
100 North Expressway 83
Brownsville, Texas 78521-2284
Phone (956) 546-3731
Facsimile (956) 546-3766

Henri E. Nicolas, Jr.

THE STATE OF TEXAS             §
                               §
COUNTY OF CAMERON              §

## PROJECT AGREEMENT

THIS Project Agreement is made this ___27th___ day of February, 1997 in Brownsville, Cameron County, Texas, between the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas non-profit corporation established pursuant to Article 5190.6 of the Texas Revised Civil Statutes, having a principal place of business at 1 Market Square, Brownsville, Cameron County, Texas  78522, and TITAN WHEEL INTERNATIONAL, INC., an Illinois business corporation, having a principal place of business at 2701 Spruce Street, Quincy, Adams County, Illinois 62301, regarding funding for the establishment of a tire manufacturing operation in Brownsville, as follows:

### I.

### Use Of Funds

The proceeds provided by this Agreement are to be used by TITAN WHEEL INTERNATIONAL, INC. "to enable the initiation of a tire manufacturing operation in or near Brownsville, and to enhance economic development and create jobs thereby," to be itemized in the schedules or plans for same to be provided to the GREATER BROWNSVILLE INCENTIVES CORPORATION, which Project is to be funded in part by the foregoing proceeds (the said funds having been "leveraged" to obtain additional funding for same).

### II.

### Disbursement Of Funds

Such funds will be disbursed in accordance with the following provisions. Assuming compliance with the terms of this Agreement by TITAN WHEEL INTERNATIONAL, INC., such that TITAN WHEEL INTERNATIONAL, INC., is required to create 500 "new jobs" (375 during the first year after construction of the facility for the "Project," 75 during the second year thereafter and 50 during the third year thereafter) over the term of this Agreement (as a condition to funding hereunder), the GREATER BROWNSVILLE INCENTIVES CORPORATION shall pay to TITAN WHEEL INTERNATIONAL, INC., the following:

A - As a "Site Development Credit," the sum of $1,000,000.00, to be paid not in cash but in the form of a grant of a site (of

Doc
@0065176
Bk Vol Pg
OR 9555 295



Benson

EXHIBIT NO. 2

Bryant & Stingley, Inc.

real property, up to 200 acres) north of Brownsville for use as a facility for this "project" (the "plant" for TITAN), such land to be acquired (at a closing to be conducted in the near future) by the GREATER BROWNSVILLE INCENTIVES CORPORATION, constituting part of the "site improvement expense" of TITAN WHEEL INTERNATIONAL, INC., at its new Brownsville area facility, as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the said Brownsville facility (as limited above);

B – As a "Site Development Credit," the sum of $1,000,000.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of the (non-land acquisition) "site improvement expense" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above);

C – As an additional "Site Development Credit," the sum of $460,001.00, paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) a 1/4 mile access road, and (2) a facility parking lot, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), it being provided, however, that the sum of $692,862.00 will be paid directly to the Public Utilities Board (i.e., through the City Of Brownsville) for miscellaneous "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, for (1) extending water/sewer lines to the site, (2) the purchase of water rights, and (3) acreage charges, which is subject to reimbursement (to GBIC) on receipt of funds from pending grant applications under the auspices of the CITY OF BROWNSVILLE (with the U.S. Economic Development Administration);

D – As yet an additional (and final) "Site Development Credit," the sum of $680,000.00 (or if less, the maximum cost of 240,000 cubic yards of dirt, as explained below), paid sixty (60) days after presentation of the relevant invoices, reflecting the amount which is ONE-HUNDRED PER CENT (100%) of additional (non-land acquisition) "site improvement expenses" for TITAN WHEEL INTERNATIONAL, INC., as defined by the guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION,

PROJECT AGREEMENT – PAGE 2

for acquiring fill dirt (the local provider of which is to be identified publicly) to elevate the ground level and to provide a sufficient base for the construction of the buildings and improvements required for the contemplated manufacturing operation of TITAN WHEEL INTERNATIONAL, INC., in or near Brownsville, Texas (as limited above), noting further that the sum of $300,000.00 of the aforesaid sums (i.e., the "site development expenses" payable to TITAN hereunder) is to be paid, instead, to the CITY OF BROWNSVILLE for the "EDA Jose Escandon Road Project," which project is being funded by the CITY for the benefit of TITAN and is to involve some reimbursement or payment from the U.S. Economic Development Administration, and that TITAN must first expend its (own) budgeted funds ($50,000.00) for such fill dirt (and invoices for same must be provided to GBIC) before any of the said funds above (in this sub-paragraph) are expended, and moreover, while GBIC will pay for such fill dirt, it (and the CITY) is not responsible for problems or disputes involving quantity, quality, time of service or method of delivery, or the delivery (to the extent possible, the providers of fill dirt should be from Brownsville or its extraterritorial jurisdiction, for which TITAN will submit a signed contract for same, along with proof of all necessary permits for the site and a Texas Department Of Transportation [required] Traffic Control Plan);

E - As a "Lease/Building Assistance Credit," the sum of $1,712,500.00, paid pro-rata (i.e., annually) over the three years of this Agreement referred to above, after construction of the said facility for the "Project," (i.e., $687,500.00, $737,500.00 and $287,500.00), reflecting the "lease expense" (or the equivalent of such expense to construct a building for manufacturing use) for facilities of TITAN WHEEL INTERNATIONAL, INC. (i.e., 50%, 35% and 20%), as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as limited above), during the said term of this Agreement, subject to the right to carryover funds not used in the first or second years to the third year; and

F - As a "Job Creation Credit," the sum of $975,000.00, paid pro-rata (i.e., annually), in the sum of $780,000.00, $117,000.00 and $78,000.00, reflecting the amount which is TEN (10%) PER CENT of the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., as defined by guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, incurred at the new Brownsville facility of TITAN WHEEL INTERNATIONAL, INC. (as

PROJECT AGREEMENT - PAGE 3

limited above), during the said three (3) years of this Agreement.

The maximum amount of reimbursement is not to exceed (for all credits hereunder) $13,040.73 per "new job created" at TITAN WHEEL INTERNATIONAL, INC. (in or near Brownsville, Texas only), during the term of this Agreement, in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION, provided that the GREATER BROWNSVILLE INCENTIVES CORPORATION has first verified and approved the amount of the "site improvement expenses," the "lease/building expense" and the "annual non-principal wages," and the "new jobs created" are valid, continuous and in force for at least ninety (90) days -- as determined at the close of the second quarter of the relevant year -- which amounts are not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 (noting that $692,862.00 will be paid directly to the Public Utilities Board, by and through the City Of Brownsville), $680,000.00 (or if less, the cost of 240,000 cubic yards of dirt), $1,712,500.00 and $975,000.00, respectively, over the term of this Agreement (i.e., five years).'

The parties agree that in the event that TITAN WHEEL INTERNATIONAL, INC., discontinues operations or is dissolved or liquidated or no longer maintains a tire manufacturing operation in or near Brownsville, or if TITAN WHEEL INTERNATIONAL, INC., does not commence such construction within eleven (11) months, does not commence hiring and training for the plant within ten (10) months (involving Spend Skills Development Training dollars, which must be spent in Brownsville), or does not commence operations within two (2) years in or near Brownsville, from the date of execution of this Project Agreement (February 27, 1997), any properties or assets held by TITAN WHEEL INTERNATIONAL, INC., which were acquired with funds, in whole or in part (including such funds), provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION, shall revert to that CORPORATION (subject to any superior liens); to this extent, any properties or assets acquired by TITAN WHEEL INTERNATIONAL, INC., with funds, in whole or in part, provided by the GREATER BROWNSVILLE INCENTIVES CORPORATION shall not be alienated, conveyed or transferred from TITAN WHEEL INTERNATIONAL, INC., without the prior authorization of the GREATER BROWNSVILLE INCENTIVES CORPORATION (except in the ordinary course of business), and, to avoid commingling or problems with tracing such funds, TITAN WHEEL INTERNATIONAL, INC., shall segregate, for accounting and other similar purposes, all funds (and properties) received from the GREATER BROWNSVILLE INCENTIVES CORPORATION and from other sources.

PROJECT AGREEMENT - PAGE 4

III.

### Consideration

In consideration of the establishment of a tire manufacturing operation in or near Brownsville, Cameron County, Texas, pursuant to this Agreement, which will· create jobs, facilitate commerce and trade and improve the economic infrastructure and labor force of the area, thus enhancing economic development, the stated goal of the GREATER BROWNSVILLE INCENTIVES CORPORATION, said entity will finance, for the benefit of TITAN WHEEL INTERNATIONAL, INC., the said "Site Development Credits," "Lease/Building Assistance Credit" and "Job Creation Credit," to enable the initiation of a tire manufacturing operation in or near Brownsville, funding part of the "cost" of a "project" for economic development thereby, as such terms are described and defined in Article 5190.6 of the Texas Revised Civil Statutes, the said CORPORATION's authorizing legislation, same having been found by the said CORPORATION's Board Of Directors "to be required or suitable for the promotion of development and expansion of manufacturing and industrial facilities, ... distribution centers [etc.] ... ."

The foregoing credits are supplemented by other incentives provided by the State Of Texas and other entities, as reflected by the listing annexed hereto as Exhibit "A" and incorporated by reference herein (the total amount of incentives including the said credits), it being understood by the parties to this Project Agreement that the GREATER BROWNSVILLE INCENTIVES CORPORATION (and by extension, the CITY OF BROWNSVILLE) does not control the provision of such incentives (by the State Of Texas and other entities) and has no responsibility for the provision of same, as reflected by Paragraph XV. (and other provisions) of this Project Agreement.

IV.

### Performance Of Agreement

In providing a tire manufacturing operation in or near Brownsville, TITAN WHEEL INTERNATIONAL, INC., acting by and through its respective agents, will conduct itself in conformity with the requirements and standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION. To this extent, TITAN WHEEL INTERNATIONAL, INC., will perform all acts necessary to successfully fulfill the purpose of this Agreement and shall, at all times, faithfully, industriously and to the best of its abilities, experience and talents, perform all the duties that may be required of and from it pursuant to the express and implicit terms hereof and to the reasonable satisfaction of the GREATER BROWNSVILLE INCENTIVES CORPORATION.

PROJECT AGREEMENT - PAGE 5

In a manner calculated to achieve the goals of the GREATER BROWNSVILLE INCENTIVES CORPORATION in enhancing economic development and to maximize the value of the said CORPORATION's investments in various economic development projects, pursuant to the policies set by the CORPORATION's Board Of Directors from time to time, TITAN WHEEL INTERNATIONAL, INC., shall keep the said CORPORATION apprised of the status of the said Project, to insure compliance with this Agreement. To this extent, on a quarterly basis, TITAN WHEEL INTERNATIONAL, INC., shall prepare and send to the GREATER BROWNSVILLE INCENTIVES CORPORATION, by and through its Board Of Directors, a report showing the activities conducted pursuant to this Agreement during the preceding quarter and setting forth an accounting of funds received and expended pursuant to this Agreement during the preceding quarter, with each such report showing the cumulative expenses and revenues for the preceding quarter together with all prior quarters during the term of this Agreement, as well as "employment levels" for all such quarters.

TITAN WHEEL INTERNATIONAL, INC., shall have a "review" audit of all funds and activities of this Project prepared annually by a Certified Public Accountant (which auditor may be employed by the company), a copy of which shall be presented to the GREATER BROWNSVILLE INCENTIVES CORPORATION within ninety (90) days of the close of the said company's fiscal year, and further, the said company will provide a copy of its proposed and adopted budgets regarding this Project to the GREATER BROWNSVILLE INCENTIVES CORPORATION as soon as same can be (reasonably) forwarded to the CORPORATION. Additionally, the said company will make available for inspection, at a reasonable time and place, at the request of the CORPORATION, any or all of the said company's financial and payroll records as same relates to this Project, provided however, that all of such records will be deemed "confidential" and not released to third parties (pursuant to the Texas Open Records Act).

V.

Term Of Agreement

The term of this Agreement shall be five (5) years, commencing November 1, 1996 and ending October 31, 2001.

VI.

Termination

This Agreement may be terminated for cause (including the failure to comply with the requirements or standards of the GREATER BROWNSVILLE INCENTIVES CORPORATION, or any action constituting a

PROJECT AGREEMENT - PAGE 6

breach of the terms of this Agreement) by either party, as appropriate, or by mutual agreement of the parties, or in the event of any occurrence (e.g., bankruptcy, dissolution or governmental action, as appropriate) precluding either party from performing the obligations contemplated under this Agreement. In the event of the termination of this Agreement for any reason prior to the expiration of the term of this Agreement, the parties shall be entitled to all compensation earned by them through the effective date of termination, as appropriate, and any remedies available at law or in equity, which rights and remedies shall survive the termination of this Agreement.

VII.

Indemnity

TITAN WHEEL INTERNATIONAL, INC., shall indemnify, protect and hold harmless the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, from any and all liabilities, claims, demands, actions, losses, damages and costs, including all costs of defense thereof, of any nature whatsoever, for injury to or death of persons or loss or damage to property, or for any other reason, including economic or environmental loss of any kind, in any manner arising out of or connected with the performance of TITAN WHEEL INTERNATIONAL, INC., under this Agreement, or arising out of the execution of or performance (or non-performance) of this Agreement, and including claims and actions based upon the acts or omissions of TITAN WHEEL INTERNATIONAL, INC., or its shareholders, directors, officers, agents, employees, representatives, parents, subsidiaries, affiliates, related holding companies, successors, assigns and insurers.

Upon demand, TITAN WHEEL INTERNATIONAL, INC., shall, at its own expense, defend the GREATER BROWNSVILLE INCENTIVES CORPORATION, its directors, affiliates, officers, agents, employees, representatives, successors, assigns and insurers, against any and all such liabilities, claims, demands, actions, losses, damages and costs. Moreover, TITAN WHEEL INTERNATIONAL, INC., shall give the GREATER BROWNSVILLE INCENTIVES CORPORATION prompt notice of any claim within its knowledge that in any way, directly or indirectly, affects either party. Both parties shall have the right to participate in the defense of such claim to the extent of their interests.

PROJECT AGREEMENT - PAGE 7

## VIII.

### Insurance

Both parties agree to obtain insurance (to the extent available) in the type and amount deemed advisable to protect their respective interests. To this extent, the parties agree to provide insurance for their respective conveyances, equipment, facilities and instrumentalities, as appropriate.

## IX.

### Status Of Parties

The parties hereto shall not be construed to have the relationship of partners, joint venturers, principal-agent or employer-employee. The parties hereto are separate entities who enter into this Agreement for their respective benefit.

## X.

### Compliance With Law

The parties will act, at all times, in compliance with all pertinent and applicable laws.

## XI.

### Entire Agreement

This Agreement contains the entire agreement between the parties relating to the rights herein granted and the obligations herein assumed, and supersedes any prior understandings, representations, memorandums or agreements regarding the service relationship that is the subject of this Agreement. Any oral representations or modifications concerning this instrument shall be of no force or effect. This Agreement may be amended, provided that no amendment, modification or alteration of the terms of this Agreement shall be binding unless the same is in writing and duly executed by the parties hereto.

## XII.

### Law Governing; Venue

This Agreement shall be governed by and construed in accordance with the laws of the State Of Texas (and where applicable, the laws of the United States Of America), and, the

PROJECT AGREEMENT - PAGE 8

obligations and undertakings of each of the parties to this Agreement shall be performable in Cameron County, Texas.

XIII.

### No Waiver

Any waiver by any party of any default under or breach of this Agreement shall not be construed as a continuing waiver of such default or breach, nor as a waiver of or permission for (express or implied) any other or subsequent default or breach.

XIV.

### No Assignment

This Agreement shall not be assigned in whole or in part by either party without the consent and approval of the other party, set forth in writing and signed by both parties. Any assignee will be bound by the terms of this Agreement.

XV.

### No Warranties Or Representations

The parties to this Agreement specifically acknowledge that the GREATER BROWNSVILLE INCENTIVES CORPORATION (or by extension, the CITY OF BROWNSVILLE) shall not be obligated to pay any funds to TITAN WHEEL INTERNATIONAL, INC., beyond the (contingent) payments contemplated by this Agreement, as set forth above, which are not to exceed the sum that is: $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00 (as set forth above) for the "site improvement expenses," $1,712,500.00 for the "lease/building expense" and $975,000.00 for the "annual non-principal wages" of TITAN WHEEL INTERNATIONAL, INC., and/or the sum representing $13,040.73 per "new job created," in accordance with guidelines of the GREATER BROWNSVILLE INCENTIVES CORPORATION -- for the "Site Development Credits" (not to exceed the sum of $1,000,000.00, $1,000,000.00, $460,001.00 or $680,000.00, as set forth above), for the "Lease Assistance Credit" (not to exceed the sum of $1,712,500.00), and for the "Job Creation Credit" (not to exceed the sum of $975,000.00).

NO WARRANTY OR REPRESENTATION OF ADDITIONAL PAYMENTS OR FUNDING OR CREDIT OR THE EXTENSION OF CREDIT HAS BEEN MADE, IS BEING MADE OR WILL BE MADE BY THE GREATER BROWNSVILLE INCENTIVES CORPORATION (OR THE CITY OF BROWNSVILLE). FURTHERMORE, NO WARRANTY OR REPRESENTATION OF ANY KIND WHATSOEVER IS BEING MADE BY THE

PROJECT AGREEMENT - PAGE 9

GREATER BROWNSVILLE INCENTIVES CORPORATION OR TITAN WHEEL INTERNATIONAL, INC., IN CONNECTION WITH THE EXECUTION OR PERFORMANCE OF THIS AGREEMENT, except to the extent set forth in this instrument.

## XVI.

### Parties Bound

This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, legal representatives, successors and assigns, as appropriate.

## XVII.

### Notices

Any notice to either party shall be sent by certified or registered mail, addressed to the parties as set forth above, at their respective addresses set forth above or such other address as may be designated.

## XVIII.

### Invalidity

If any term, provision, covenant or condition of this Agreement is held by a tribunal of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. Moreover, it is the intention of the parties to this Agreement that in lieu of each clause or provision of this Agreement that is held to be invalid, void or unenforceable, there be added as a part of this Agreement a clause or provision as similar in terms to such invalid, void or unenforceable clause or provision as may be feasible which shall nevertheless be valid, legal and enforceable.

## XIX.

### Arbitration

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH, TERMINATION OR INVALIDITY THEREOF, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT AND THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION, USING ONE ARBITRATOR -- SUCH ARBITRATION TO BE CONDUCTED IN BROWNSVILLE, CAMERON COUNTY, TEXAS,

IN THE ENGLISH LANGUAGE -- AND A JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

XX.

### Attorney Fees

If any proceeding is initiated to resolve a dispute arising under or relating to this Agreement by either of the parties hereto, it is expressly agreed that the prevailing party shall be entitled to recover from the other party reasonable attorney fees and expenses in addition to any other relief that may be awarded.

XXI.

### Construction Of Instrument

Each of the parties hereto have been represented by the attorneys of their choice in the negotiation and drafting of this Agreement. Accordingly, this Agreement shall not be construed in favor of either party.

XXII.

### Authority

The parties to this Agreement, to-wit, TITAN WHEEL INTERNATIONAL, INC., and the GREATER BROWNSVILLE INCENTIVES CORPORATION, specifically warrant and represent that the signatories below are authorized to act on behalf of the respective party to this instrument, that the signatories have been specifically authorized to execute this Project Agreement by said parties in accordance with the requisite corporate formalities of each such party, that the execution of this instrument by said signatories constitutes the binding act of each such party to this instrument and that the execution of this instrument and the adoption of same by each party is authorized by law.

EXECUTED in duplicate (as revised) on the ⎯7th⎯ day of November, 1997 at Brownsville, Cameron County, Texas.

GREATER BROWNSVILLE INCENTIVES CORPORATION

BY: _____
    Eduardo R. Rodriguez, President

PROJECT AGREEMENT - PAGE 11

ATTEST:

_Irv Downing, Secretary_

TITAN WHEEL INTERNATIONAL, INC.

BY: _____

Gary Carlson, Vice-President

ATTEST:

Name: _____

Title: _____

PROJECT AGREEMENT - PAGE 12

UN1TED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GREATER BROWNSVILLE INCENTIVES | § | CIVIL ACTION |
| CORPORATION, | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | NO. B-03-224 |
| | § | |
| TITAN INTERNATIONAL, INC., | § | |
| Defendant | § | |

### AFFIDAVIT OF ARNOLD BENSON

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned authority, on this day personally appeared ARNOLD BENSON, known to me, and being by me duly sworn, deposed and said on his oath that:

1 - I am of the age of majority, of sound mind and capable of making this Affidavit.

2 - I am personally acquainted with the facts stated in this Affidavit.

3 - I submit this Affidavit in support of the foregoing Motion For Summary Judgment filed in this action on behalf of GREATER BROWNSVILLE INCENTIVES CORPORATION (GBIC).

4 - At all material times, I was (and am) the President of the GREATER BROWNSVILLE INCENTIVES CORPORATION, a Texas economic development corporation, hereinafter referred to as "GBIC," which expends public funds it receives (from city sales taxes) for economic development purposes (and projects), and I am authorized to act on behalf of GBIC in this matter.

5 - GBIC filed a suit for declaratory relief (only) in state district court regarding a certain (economic development) Project Agreement (contract) with and a related Deed to Defendant, TITAN INTERNATIONAL, INC., hereinafter referred to as "TITAN," previously known as "TITAN WHEEL INTERNATIONAL, INC.," as set forth in Plaintiff's Original Petition filed in

AFFIDAVIT OF ARNOLD BENSON - PAGE 1

Benson
EXHIBIT NO. 3
Bryant & Stingley, Inc.

the 107th Judicial District Court of Cameron County, Texas, and docketed as Cause No. 2003-11-5493-A (having the same style as set forth in the caption above).

6 -   As set forth in detail in that Petition; and in the foregoing Motion For Summary Judgment, the GBIC is an economic development corporation created under Texas (statutory) law that enters into project agreements with various business concerns, almost always to create jobs, in consideration for certain incentives (such as building/lease assistance and/or site development funding).

7 -   In this instance, GBIC and TITAN entered into a Project Agreement, which involved the funding of millions of dollars for the establishment by TITAN of a tire manufacturing operation in or near Brownsville, which was anticipated to enhance economic development and to create 500 jobs; a copy of the Project Agreement was filed with the Court as Exhibit 2 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment.

8 -   A large part of the funds paid for by GBIC was for the purchase of the land -- as reflected by a Special Warranty Deed from GBIC, a copy of which was filed with the Court as Exhibit 4 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, conveying the land to TITAN, pursuant to the Project Agreement -- and site improvements and/or construction of the facility to operate the tire manufacturing plant of TITAN in Brownsville.

9 -   However, TITAN created no more that 122 jobs at the Brownsville facility, resulting in an overpayment by GBIC, and a claim letter being submitted to TITAN by GBIC, a copy of which was filed with the Court as Exhibit 1 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, advising TITAN of the situation.

10 -  As part of the Project Agreement, particularly Subparagraph A. of Paragraph II., one of the incentives to be paid to TITAN by GBIC was a "Site Development Credit" in the sum of $1,000,000.00, which was not paid in cash as such but in the form of a grant (i.e., conveyance) of a site to locate the facility needed for this project.

11 -  This site (land), of up to two-hundred acres north of Brownsville, to locate the facility for this project (the

AFFIDAVIT OF ARNOLD BENSON - PAGE 2

"plant" of TITAN) in or near Brownsville, was acquired (i.e., paid for) by GBIC as a "site improvement expense."

12 - Subsequently, a Special Warranty Deed (Exhibit 4), dated November 14, 1996, was executed by GBIC in favor of TITAN, with an effective date of February 28, 1997, pursuant to the said Project Agreement.

13 - The Deed indicates that the consideration given "is in accordance with [the] Project Agreement by and between [the] Grantor and Grantee" (i.e., GBIC and TITAN), and involved the conveyance of 192 acres (more or less), to provide a site for the construction and operation of the said tire manufacturing facility (of TITAN) in or near Brownsville.

14 - Under the Project Agreement, which explicitly refers to a conveyance of land by GBIC for the use of TITAN, as evidenced by the Special Warranty Deed, the land was granted, sold and conveyed to TITAN by GBIC. However, this conveyance is <u>subject to</u> other provisions of the said Project Agreement, such as the third (unnumbered) subparagraph of Paragraph II. (entitled "Disbursement Of Funds"), at Page 4 of the Agreement.

15 - As set forth in the Petition, the Motion For Summary Judgment and the Project Agreement itself (at Paragraph II., as referred to in Paragraph 14 above), there is a provision in that contract that was <u>agreed to by the parties</u>, to the effect that <u>if</u> TITAN discontinued its "operations or ... no longer maintains a -tire manufacturing operation in or near Brownsville ..." at any time after the execution of the "Agreement (February 27, 1997), any properties or assets held by TITAN ... acquired with funds, in whole or in part (including such funds), provided by" GBIC, "shall revert" to GBIC.

16 - According to information received by GBIC, including but not limited to a press release to this effect, a copy of which (the press release) was filed with the Court as Exhibit 3 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment, TITAN publicly announced that its tire manufacturing operation in Brownsville would be consolidated (with all of its tire manufacturing operations) into its principal tire facility located in Des Moines, Iowa.

17 - This press release was augmented by a recent advertisement that appeared in The Brownsville Herald reflecting that "limited quantities" of tires could be purchased, as part of

AFFIDAVIT OF ARNOLD BENSON - PAGE 3

a "year end inventory liquidation," at the TITAN facility in Brownsville, a copy of which (the advertisement) was filed with the Court as Exhibit 5 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment.

18 - As such, TITAN <u>discontinued</u> its operations in Brownsville and "no longer maintains a tire manufacturing operation in or near Brownsville" (as is set forth in the provision above [referred to in Paragraph 15]).

19 - Thus, two of the reasons (or contingencies) to invoke the said provision (in Paragraph II. of the Project Agreement) have occurred, and therefore the land conveyed by GBIC to TITAN (subject to the said condition), and the improvements thereon (to the extent same has also been financed by GBIC), has <u>reverted</u> to GBIC, under and pursuant to the Project Agreement.

20 - Therefore, GBIC, as set forth in the said claim letter, invoked the reversion clause and sought the return of the land (which "shall revert," according to that clause) it purchased for TITAN and that portion of the improvements thereon paid for by GBIC.

21 - In that TITAN did not respond to the said claim letter by acknowledging the reversion clause or that the reversion clause was activated by TITAN's action to discontinue its operations in Brownsville, it became apparent that TITAN was not going to honor its obligation to GBIC under the Project Agreement (under that clause), necessitating the judicial enforcement of the reversion clause, to confirm the reversion of the land and improvements, resulting in a suit for declaratory relief being filed, seeking that relief, in addition to costs of court and attorney fees.

22 - In filing this case, the only issue is the matter of the reversion of the land and the improvements thereon, under the Project Agreement, according to the directives of the Board Of Directors of GBIC (the debt claim, as regards the said overpayment, and other matters are <u>not</u> at issue in this case).

23 - Thus, GBIC filed suit to obtain a judicial declaration that under the Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements

AFFIDAVIT OF ARNOLD BENSON - PAGE 4

a "year end inventory liquidation," at the TITAN facility in Brownsville, a copy of which (the advertisement) was filed with the Court as Exhibit 5 of Plaintiff's Exhibits In Support Of Its Motion For Summary Judgment.

18 - As such, TITAN <u>discontinued</u> its operations in Brownsville and "no longer maintains a tire manufacturing operation in or near Brownsville" (as is set forth in the provision above [referred to in Paragraph 15]).

19 - Thus, two of the reasons (or contingencies) to invoke the said provision (in Paragraph II. of the Project Agreement) have occurred, and therefore the land conveyed by GBIC to TITAN (subject to the said condition), and the improvements thereon (to the extent same has also been financed by GBIC), has <u>reverted</u> to GBIC, under and pursuant to the Project Agreement.

20 - Therefore, GBIC, as set forth in the said claim letter, invoked the reversion clause and sought the return of the land (which "shall revert," according to that clause) it purchased for TITAN and that portion of the improvements thereon paid for by GBIC.

21 - In that TITAN did not respond to the said claim letter by acknowledging the reversion clause or that the reversion clause was activated by TITAN's action to discontinue its operations in Brownsville, it became apparent that TITAN was not going to honor its obligation to GBIC under the Project Agreement (under that clause), necessitating the judicial enforcement of the reversion clause, to confirm the reversion of the land and improvements, resulting in a suit for declaratory relief being filed, seeking that relief, in addition to costs of court and attorney fees.

22 - In filing this case, the only issue is the matter of the reversion of the land and the improvements thereon, under the Project Agreement, according to the directives of the Board Of Directors of GBIC (the debt claim, as regards the said overpayment, and other matters are <u>not</u> at issue in this case).

23 - Thus, GBIC filed suit to obtain a judicial declaration that under the Project Agreement (and related Special Warranty Deed), by virtue of TITAN removing its operations from Brownsville, such that it is no longer operating in Brownsville and no longer maintains a tire manufacturing operation in or near Brownsville, the land and improvements

AFFIDAVIT OF ARNOLD BENSON - PAGE 4

thereon (as indicated above), as purchased through funds of GBIC, reverted to GBIC.

24 - As I understand this case, it only deals with the matter of the property and the title to same, under the reversion provision referred to above (in the Project Agreement), and I have been advised that the effort to enforce the contract (specifically the reversion clause), to require or mandate a transfer of land and the improvements on the land (judicially), is very similar to a suit for injunction or what has been referred to as "specific performance" of a contract.

25 - Throughout this Affidavit, reference has been made to certain documents, to-wit, a claim letter of GBIC, a Project Agreement, a news release of TITAN, a Special Warranty Deed and an advertisement published by TITAN (the said Exhibits 1-5), which are records of regularly conducted activity of GBIC (and some are recorded instruments as well); to this extent, I hereby aver that I am a custodian of all such records of GBIC, as referenced above and throughout this Affidavit, a copy or original of which (depending on the document) has been kept by me in the regular course of business (of an economic development corporation), it being in the regular course of such business for an employee or representative of such business, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in such record, any such record having been made or recorded at or near the time of the act or event (recorded) or reasonably soon thereafter, and the foregoing and above-referenced records being the original of same or an exact duplicate of the original.

26 - TITAN has not set forth any basis whatsoever for GBIC's claims in this case not to be enforced and reduced to judgment, regardless of various affirmative defenses asserted, which GBIC contends are groundless, inapplicable or both (for the reasons set forth below).

27 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of waiver/estoppel for the reason that GBIC has not, at any time, knowingly or voluntarily waived any of its rights under the Project Agreement (or at law) to enforce the reversion that is at issue in this case.

28 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of laches for the reason that TITAN discontinued its Brownsville tire manufacturing

operation in July of 2003 and suit was filed in November of 2003 (within four months), so it cannot be asserted that GBIC "slept on its rights."

29 - TITAN cannot preclude .GBIC's claims for declaratory and related relief on the basis of an arbitration agreement for the reason that this case does not involve a dispute under the contract (for debt and the like) but involves (only) a judicial confirmation of a right that has already come into existence by the fulfillment of a condition or contingency under that contract, to-wit, a reversion of land and improvements as a result of a failure to continue a tire manufacturing operation in Brownsville, this suit being in, the nature of equitable (e.g., injunctive) relief (fundamentally, a matter that can only be resolved by a court).

30 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged failure to mitigate damages for the reason that this case does not· involve a damage claim; this case is limited to declaratory and related relief.

31 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged failure to comply with its duties and obligations under the contract for the reason that GBIC has performed all of its duties under the Project Agreement, and it is TITAN that does not acknowledge its duties under the contract at issue in the only particular at issue in this case, to-wit, the acceptance of the reversion of the land and improvements arising under the contract.

32 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC's alleged delay in the construction of the tire manufacturing plant for the reason that GBIC has never invoked that item (construction completion) as a basis for a reversion (although that is another basis in the same provision of the contract for such reversion to arise) and GBIC could not, since it was not acting as a contractor, delay the construction, plus GBIC has always acted to expedite the project (the plant) as it was in the mutual interest of the parties to do so (such as adding funds for additional site development credits, at TITAN's request).

33 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of GBIC allegedly failing to provide all incentives promised to TITAN for the reason that

AFFIDAVIT OF ARNOLD BENSON - PAGE 6

this case does not involve a damage claim (this case is limited to declaratory and related relief), but GBIC awarded all incentives set forth in the Project Agreement that TITAN was entitled to receive, in accordance with the Project Agreement.

34 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of TITAN complying with the Project Agreement, which terminated (i.e., expired) prior to this case being filed, for the reason that this case does not involve a damage (debt) claim, the only issue in <u>this</u> case is TITAN complying with the Project Agreement in regard to the reversion of the land and the improvements (by recognizing and acknowledging the reversion), and the expiration of a contract's term does not nullify the terms of the contract -- particularly where there is no time limit on the provision at issue in the contract.

35 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of frustration for the reason that this case does not involve a damage claim and TITAN did <u>not</u> have to discontinue its Brownsville tire manufacturing operation: it did so knowingly and voluntarily, thus invoking (by its own action) the reversion clause of the Project Agreement.

36 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of accord and satisfaction, or satisfaction, for the reason that GBIC has not entered into any new agreements with TITAN regarding the subject of the said Project Agreement (or Special Warranty Deed).

37 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of (statute of) limitations for the reason that TITAN discontinued its Brownsville tire manufacturing operation in July of 2003 and this suit was filed in November of 2003 (within four months), so it cannot be asserted that GBIC's claim in the instant case is barred by limitations.

38 - TITAN cannot preclude GBIC's claims for declaratory and related relief on the basis of "illusory contract" for the reason that the contract reflected the agreement of the parties in writing, executed after months of "arm's length" negotiations and involving sophisticated parties represented by counsel, supported by substantial consideration as to both

parties, including the reversion clause (which was the "basis for the bargain" [at least in part]).

39 - TITAN cannot preclude GBIC's claim for declaratory and related relief on the basis of "failure of condition precedent' for the reason that the Project Agreement does not contain a "condition precedent" provision as such, GBIC performed all of its obligations under the Project Agreement -- in accordance with its terms -- and the condition precedent -- if this refers to the event giving rise to the reversion (the discontinuance of operations at the said tire manufacturing facility and/or the failure to maintain an ongoing tire manufacturing facility in Brownsville) -- did in fact occur.

40 - Accordingly, TITAN has not presented a valid affirmative defense that bars or precludes GBIC's action (its _prima_ _facie_ case) for declaratory and related relief.

FURTHER AFFIANT SAYETH NOT.

ARNOLD BENSON, President
GREATER BROWNSVILLE INCENTIVES
CORPORATION


SUBSCRIBED AND SWORN TO BEFORE ME on the 9th day of July, 2004, to certify which witness my hand and official seal.



Notary Public in and for
The State Of Texas

AFFIDAVIT OF ARNOLD BENSON - PAGE 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GREATER BROWNSVILLE INCENTIVES      §        CIVIL ACTION
CORPORATION,                        §
                    Plaintiff       §
                                    §
VS.                                 §        NO. B-03-224
                                    §
TITAN INTERNATIONAL, INC.,          §
                    Defendant       §

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION**

TO:  Defendant TITAN INTERNATIONAL, INC., by and through its
counsel of record, Michael Rodriguez, 319 East Elizabeth
Street, Brownsville, Texas 78520

COMES NOW, as Plaintiff, GREATER BROWNSVILLE INCENTIVES

CORPORATION, hereinafter "GBIC," by and through its undersigned

counsel, pursuant to Rules 26 and 34 of the Federal Rules Of Civil

Procedure, and responds to the Defendant's Request For Production

propounded to Plaintiff, which responses are set forth immediately

below each of the corresponding requests, which are annexed hereto

and incorporated by reference herein as if fully copied and set

forth at length (at Pages 4 - 7 hereto).

DATED this 19th day of August, 2004.

                            Respectfully submitted,

                            GREATER BROWNSVILLE INCENTIVES
                              CORPORATION, Plaintiff



PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 1

BY: 
_____
Brian G. Janis

Southern District Of Texas
Federal Admissions ID. No. 1201
(Texas State Bar No. 10570300)

ATTORNEY-IN-CHARGE FOR PLAINTIFF

100 North Expressway 83
Brownsville, Texas 78521-2284
Telephone: 956/546-3731
Telefax: 956/546-3766

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Plaintiff's (GBIC's) Response To Defendant's Request For Production has been served upon Michael Rodriguez, counsel of record for Defendant, at 319 East Elizabeth Street, Brownsville, Texas 78520, by mailing same United States Mail, postage prepaid and properly addressed, and by hand-delivering same, on this 19th day of August, 2004.

_____
Brian G. Janis

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 2**

## I.

## GENERAL OBJECTIONS

### A.

GBIC objects to the requests propounded by Defendant to it, to the extent that what is sought is the production of documents subject to the attorney/client privilege, the work product privilege and other protections afforded by or recognized under Rule 26 of the Federal Rules Of Civil Procedure, or any other applicable privilege or immunity. By responding to these requests, GBIC does not waive any privilege or immunity, but instead, relies specifically on all such privileges and immunities.

### B.

GBIC's responses to the said requests for production are made under the Federal Rules Of Civil Procedure, using the ordinary definitions of words contained within those requests. To the extent that the definitions or instructions given by Defendant are in conflict with, or are inconsistent with, the Federal Rules Of Civil Procedure, GBIC objects to same.

### C.

GBIC objects to Defendant's requests to the extent that they seek the disclosure of information that is within the control of Defendant or other parties, and is less readily available to GBIC (or alternatively, is equally available to Defendant).

PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 3

D.

In providing these responses, GBIC has made a reasonable effort to locate the pertinent records, and these responses are based upon such information as is reasonably available to GBIC and susceptible to retrieval through reasonable efforts.

E.

GBIC objects to these requests to the extent they purport to impose upon GBIC a general duty to file supplementary responses to these requests; GBIC does not agree to undertake a continuing duty to supplement its responses to these requests, and will do so only as required by the Federal Rules Of Civil Procedure.

*                    *                    *

Subject to the foregoing (general) objections, which are specifically incorporated into each of the following responses, GBIC hereby responds (one-by-one) to Defendant's Request For Production of documents (as follows):

II.

<u>RESPONSES TO REQUESTS FOR PRODUCTION</u>

1 - All photographs of which you have knowledge, either directly or indirectly, or within the knowledge of your attorney, or other representative of any object relevant to this lawsuit, including but not limited to any photographs of Defendant's manufacturing facility. This request also refers to any movies, videotapes or motion pictures as well as photographs.

**RESPONSE:** None.

2 - Any documents and/or tangible things including all reports, physical models, compilations of data or other material prepared by any expert hired by Plaintiff or for any experts hired by Plaintiff in anticipation of the expert's trial and/or deposition testimony.

**RESPONSE:** None.

3 - Any settlement agreement and/or agreements with any individual, entity, party or potential party arising out of the subject matter of this lawsuit or the transaction in question.

**RESPONSE:** None.

4 - Any and all documents and/or documentary evidence relevant to your claims in this lawsuit.

**RESPONSE:** All of same is already on file in this case, as attachments to GBIC's various pleadings.

5 - Any and all invoices, bills, statements, records or other documents in your possession, custody or control which would indicate any costs or expenses which Plaintiff has or will be alleging as damages to be assessed against Defendant in this lawsuit.

**RESPONSE:** None (there are no damage claims in this action for declaratory relief).

6 - Any document in your possession or under your control that was generated by TITAN INTERNATIONAL, INC., and/or its employees, and/or that you contend may have been generated by TITAN INTERNATIONAL, INC., relating to the subject matter made the

PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 5

basis of this (instant) suit and which was not provided to you by the attorney for TITAN INTERNATIONAL, INC.

**RESPONSE**: All of same (to the extent same exists) is already on file in this case, as attachments to GBIC's various pleadings.

7 - All documents which you believe or claim were found in the files of TITAN INTERNATIONAL, INC., and/or its employees, even if not authorized by TITAN INTERNATIONAL, INC., and/or its employees.

**RESPONSE**: None.

8 - Any written or recorded statement in this lawsuit taken from Defendant or any of its agents, representatives or employees.

**RESPONSE**: None.

9 - Any and all documentation, including title, deeds, abstracts or any information about the property made the basis of this lawsuit.

**RESPONSE**: All of same is already on file in this case, as attachments to GBIC's various pleadings.

10 - Any written or recorded "witness statement" in this lawsuit of any person with knowledge of relevant facts.

**RESPONSE**: None.

PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 6

basis of this (instant) suit and which was not provided to you by the attorney for TITAN INTERNATIONAL, INC.

**RESPONSE:** All of same (to the extent same exists) is already on file in this case, as attachments to GBIC's various pleadings.


7 - All documents which you believe or claim were found in the files of TITAN INTERNATIONAL, INC., and/or its employees, even if not authorized by TITAN INTERNATIONAL, INC., and/or its employees.

**RESPONSE:** None.


8 - Any written or recorded statement in this lawsuit taken from Defendant or any of its agents, representatives or employees.

**RESPONSE:** None.


9 - Any and all documentation, including title, deeds, abstracts or any information about the property made the basis of this lawsuit.

**RESPONSE:** All of same is already on file in this case, as attachments to GBIC's various pleadings.


10 - Any written or recorded "witness statement" in this lawsuit of any person with knowledge of relevant facts.

**RESPONSE:** None.


PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION - PAGE 6

11 - Any documents, tangible things, reports or data compilations that have been provided to, reviewed by or prepared by or for an expert in anticipation of a testifying expert's testimony.

**RESPONSE:** None.

12 - Any documents supporting your allegation that Defendant breached, if at all, the Project Agreement.

**RESPONSE:** All of same (to the extent same exists) is already on file in this case, as attachments to GBIC's various pleadings.